UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC, *et al.*[1] | ) | Case No. 21-61491 |
| | ) | (*Request for Joint Administration Pending*) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE MIDWEST DATA COMPANY LLC TO OBTAIN DEBTOR IN POSSESSION FINANCING; (II) MODIFYING THE AUTOMATIC STAY; (III) APPROVING DIP LOAN AND SECURITY AGREEMENT WITH INSTANTIATION LLC; (IV) SETTING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), in the above-captioned Chapter 11 cases (the "Cases"), hereby move (the "Motion") for entry of interim and final orders: (i) Authorizing Secured Postpetition Financing to Debtor The Midwest Data Company LLC ("MWDC" or "Borrower") on Superpriority Basis Pursuant to Section 364 of Title 11 of the United States Code (the "Bankruptcy Code") and the Terms and Conditions of the Interim Order (attached hereto as Exhibit A); (ii) Modifying the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code; (iii) Approving MWDC's DIP Loan and Security Agreement with Instantiation LLC ("Instantiation" or "Lender"); (iv) Setting a Final Hearing; and (v) Granting Such Other and Further Relief as this Court Deems Necessary and Proper.

In support of this Motion, the Debtors state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and The Midwest Data Company LLC (1213), case no. 21-61492.

# BANKRUPTCY RULE 4001 CONCISE STATEMENT

By this Motion, the Debtors request entry of the proposed interim order substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>" and, together with the Interim Order, the "<u>DIP Orders</u>"): (i) Authorizing Secured Postpetition Financing to MWDC on Superpriority Basis Pursuant to Section 364 of the Bankruptcy Code and the Terms and Conditions of the Interim Order; (ii) Modifying the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code; (iii) Approving MWDC's DIP Loan and Security Agreement with Instantiation (the "Loan Agreement"); (iv) Setting a Final Hearing; and (v) Granting Such Other and Further Relief as this Court Deems Necessary and Proper.

Pursuant to Bankruptcy Rule 4001, the following are the material provisions of the DIP Loan (defined below):

| | |
|---|---|
| **Borrower**<br>*Bankruptcy Rule 4001(c)(1)(B)* | MWDC |
| **DIP Lender**<br>*Bankruptcy Rule 4001(c)(1)(B)* | Instantiation |
| **Term**<br>*Bankruptcy Rule 4001(c)(1)(B)* | The earliest of: (a) the expiration of ten (10) Business Days following written notice from Lender to Borrower of the occurrence of any material breach by (i) Borrower of the terms of the Loan Agreement, any other Loan Document, or the APA, including, for the avoidance of doubt, any Event of Default, or (ii) SQRL of the terms of the APA; (b) the closing of a sale of all or substantially all of the assets of Borrower and SQRL pursuant to a sale under Section 363 of the Bankruptcy Code in compliance with the terms of the APA; (c) the effective date of a confirmation of Borrower's plan of reorganization in connection with the Bankruptcy Case; (d) the conversion of Borrower's bankruptcy case from a case under subchapter V of Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; (e) the dismissal of Borrower's bankruptcy case, (f) appointment of a Chapter 11 trustee in Borrower's case, or (g) February 28, 2022. |

| | |
|---|---|
| **Loan Commitment**<br>*Bankruptcy Rules 4001(c)(1)(B)* | $350,000 |
| **Interest Rate**<br>*Bankruptcy Rule 4001(c)(1)(B)* | 10% per annum |
| **Fees**<br>*Bankruptcy Rule 4001(c)(1)(B)* | No commitment fee, but Borrower to reimburse Lender for its reasonable legal fees and expenses incurred in connection with documenting, negotiating, implementing and enforcing the DIP Loan, payable out of Advances, if elected by Lender. Alternatively, Lender may require that Borrower reimburse these sums to Lender within ten (10) Business Days following written demand for payment. |
| **Use of Proceeds**<br>*Bankruptcy Rule 4001(c)(1)(B)* | The proceeds shall be used in accordance with the Budget attached as <u>Exhibit A</u> to the Interim Order, which is attached hereto as Exhibit A. |
| **Carve-Out**<br>*Bankruptcy Rule 4001(c)(1)(B)* | Claims of the Debtors' Professionals up to an aggregate amount of $150,000 and up to an aggregate amount of $50,000 in fees payable to the subchapter v Trustee. |
| **Liens and Priorities**<br>*Bankruptcy Rule 4001(c)(1)(B)(i)* | All obligations under the DIP Loan will be:<br><br>(a) entitled to superpriority claim status pursuant to Section 364(c)(1) of the Bankruptcy Code; and<br>(b) secured by a first priority perfected security interest in and lien on the Collateral, pursuant to Section 364(c)(2) of the Bankruptcy Code, senior in priority to all other security interests and liens, subject only to the Carve Out and Avnet's Secured Claim. |
| **Events of Default**<br>*Bankruptcy Rule 4001(c)(1)(B)* | The following constitute an Event of Default:<br><br>• The non-payment by Borrower or SQRL of any costs, or any other amount due under this Agreement, the other Loan Documents, or the APA, or the failure of Borrower or SQRL to perform as required under the Loan Documents or the APA (whether monetary or non-monetary in nature), in each case, to the extent such non-payment or non-performance is not cured by Borrower and/or SQRL within two (2) Business Days' notice thereof;<br><br>• Any expenditures in excess of the amount allocated to such item under the Budget; provided, however, that |

|  |  |
|---|---|
|  | Borrower is permitted a 5% variance from the Budget as set forth under Section 5 of the Loan Agreement; |
|  | • The entry of any Bankruptcy Court order that adversely affects the DIP Loan or Lender's rights, remedies, liens, priorities, benefits and protections under any or all of the Bankruptcy Court orders or the DIP Loan. |
| **Waiver or Modification of the Automatic Stay**<br>*Bankruptcy Rule 4001(c)(1)(B)(iv)* | The automatic stay is modified to the extent necessary to permit all acts, actions, and transfers relating to perfection of interests contemplated therein. |
| **Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection or Enforcement of a Lien**<br>*Bankruptcy Rule 4001(c)(1)(B)(viii)* | All DIP Liens granted for the benefit of the DIP Lender shall be valid, enforceable and deemed perfected, effective upon entry of the Interim Order, and no further action shall be required to effect such perfection. |
| **Conditions to Borrowing**<br>*Bankruptcy Rule 4001(c)(1)(B)* | • Entry of an order of the Bankruptcy Court approving the DIP Loan and creation of the court-ordered super priority claims and security interests;<br>• No Event of Default;<br>• The Termination Date shall not have occurred;<br>• Execution delivery, and continued effectiveness of APA and all Loan Documents. |
| **Subordination**<br>*Bankruptcy Rule 4001(c)(1)(B)* | The Loan Agreement, the other Loan Documents, and the obligations of the Borrower (and the rights of the Lender) hereunder and thereunder are subordinate and junior in right of payment to the Avnet Secured Claim. |

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and by virtue of the general order of reference of the United States District Court for the Northern District of Ohio entered April 4, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The venue of the Debtors' Chapter 11 Cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the Local Bankruptcy Rules.

## BACKGROUND

3. On November 23, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under subchapter v of Chapter 11 of the Bankruptcy Code.

4. The Debtors are operating their businesses as debtors-in-possession pursuant to Section 1184 of the Bankruptcy Code. No trustee or examiner has been appointed.

**Summary of Capital Structure and Current Business Operations**

5. SQRL is an Ohio limited liability company headquartered in North Canton, OH. SQRL creates, manufactures, and repairs hardware, including Datacenter Accelerator Boards, used in cryptocurrency mining machines.

6. MWDC is an Ohio limited liability company headquartered in North Canton, Ohio. MWDC provides hosting services for cryptocurrency mining machines.

7. The events leading to the filing of these Chapter 11 Cases are set forth in the Declaration of David Stanfill filed with the Court on November 23, 2021.

8. The Debtors are in need of post-petition financing for additional working capital in order to avoid immediate and irreparable harm to their operations and the value thereof.

**Prepetition Debt Structure**

9. Prior to the Petition Date, SQRL executed and delivered to Avnet: (i) a promissory note in the original principal amount of $4,621,092.50 dated March 26, 2019 (the "Initial Note"); and (ii) a Security Agreement dated March 20, 2019 granting a lien in the collateral described therein in favor of Avnet to secure payment of amounts invoiced by Avnet (the "Security Agreement").

10. The Initial Note was amended and restated pursuant to a promissory note executed by SQRL and delivered to Avnet dated April 8, 2021 in the original principal amount of

$7,864,779.76 (the "Amended and Restated Note"), which Amended and Restated Note is secured by the lien granted by the Security Agreement.

11. Prior to the Petition Date, the Debtors received an offer to purchase certain of their assets, as set forth in the Asset Purchase Agreement dated as of November 23, 2021 (the "APA") from Instantiation and intend to file, promptly following the commencement of these Chapter 11 Cases, a motion seeking the establishment of certain bid procedures for the sale of substantially all of the assets of both SQRL and MWDC (the "Sale") and Bankruptcy Court authorization and approval of the Sale.

12. Prior to the Petition Date, on November 23, 2021, Avnet, SQRL, MWDC, and Instantiation entered into an Account Settlement and Sale Support Agreement (the "Support Agreement") whereby those parties agreed, as of the Effective Date thereof, that in order to support the Chapter 11 process, Instantiation will provide debtor in possession financing to MWDC necessary to fund these Chapter 11 Cases and the related sale process, and seek to purchase the Debtors' assets. In addition, Avnet agreed to support the Sale, not object to the debtor-in-possession financing to be provided by Instantiation, and, finally SQRL and Avnet agreed to a resolution of the amount and treatment of the Avnet Claim.

13. As set forth in the Support Agreement, Avnet has agreed to reduce its claim (the "Reduced Avnet Claim"), such that on November 23, 2021 SQRL remained obligated to Avnet in the amount of $5,751,000 (the "Reduced Avnet Claim").

14. SQRL acknowledges and agrees that: (i) the value of the Avnet Collateral is not less than $3,000,000.00; and (ii) pursuant to Section 506 of the Bankruptcy Code, the Reduced Avnet Claim is a secured claim in the amount of not less than $3,000,000.00 (the "Avnet Secured Claim") and an unsecured claim for the remainder.

15. Debtors acknowledge and agree that the Avnet Secured Claim and Avnet Lien shall be at all times senior in priority to any other liens on, or security interests in, the Avnet Collateral and to any other claims against SQRL in the Bankruptcy Case, including any liens, security interests or superpriority or ordinary administrative claims granted under the DIP Loan Documents.

16. Instantiation is willing to advance a loan not to exceed a maximum amount of $350,000 to MWDC (the "DIP Loan") pursuant to the terms of the Loan and Security Agreement dated November 23, 2021 (attached hereto as Exhibit B), a promissory note in substantially the form attached to the Loan agreement (attached hereto as Exhibit C), and such other documents, agreements, filings and instruments required by Instantiation in its sole and absolute discretion (collectively, the "Loan Documents").

## RELIEF REQUESTED

17. Pursuant to Sections 105, 363 and 364 of the Bankruptcy Code, the Debtors seek entry of the DIP Orders authorizing the DIP Loan.

## BASIS FOR RELIEF REQUESTED

18. Instantiation is prepared to provide financing to MWDC as set forth in the Loan Documents which in general: (i) provide financing to MWDC in the amount of $350,000; (ii) allow the Debtors to have the cash necessary to operate their business; (iii) grant Instantiation a superpriority administrative expense claim; and (iv) grant Instantiation security in MWDC's Collateral (as defined in the Loan Documents), which security is: (a) subject to a Carve Out (as defined in the Loan Documents) for certain administrative fees and expenses, including fees and expenses for the Debtors' professionals and the subchapter v Trustee; and (b) subordinate and junior in right of payment to the Avnet Secured Claim.

19. The Debtors' need for financing is immediate. In the absence of the DIP Loan, the Debtors would not be able to consummate the proposed Sale, and serious and irreparable harm to the Debtors and their estates would occur.

20. Given the Debtors' current financial condition, financing arrangements and capital structure, Debtors cannot obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtors: (i) granting, pursuant to Section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(b) of the Bankruptcy Code and otherwise; and (ii) securing, pursuant to Section 364(c) and (d) of the Bankruptcy Code, such indebtedness and obligations with security interests in and liens on MWDC's property as provided below and in the Loan Documents.

21. The Lender is willing to provide the DIP Loan subject to the conditions set forth herein and in the Loan Documents, including, without limitation, execution by MWDC of the Loan Agreement, and pursuant to the provisions of the proposed Order, assuring that the DIP Liens (as defined in the Loan Documents) and the various claims, superpriority claims and other protections granted pursuant to this Order and the DIP Loan will not be affected by any subsequent reversal or modification of this Order or any other order which is applicable to the DIP Loan, as provided in Section 364(e) of the Bankruptcy Code.

22. The Debtors assert that the proposed DIP Loan is subject to, and Lender is entitled to the benefits of, Section 364(e) of the Bankruptcy Code. The terms of the Loan Documents between MWDC and Lender pursuant to which the DIP Loan and other credit accommodations may be made or provided to MWDC by Lender were negotiated in good faith and at arm's length within the meaning of Section 364(e) of the Bankruptcy Code, and such terms and agreements are in the best interests of MWDC, its creditors and its estate.

23. A critical need exists for MWDC to borrow funds under the provisions of the DIP Loan. Without working capital available, the Debtors will be unable to meet the expenses needed to preserve and maintain property of the bankruptcy estates and prepare the property for the pending sale in a manner that will avoid irreparable harm to the Debtors' estates and creditors. At this time, the Debtors have no ability to finance their operations and insufficient working capital to preserve and maintain the property owned by the Debtors.

24. The Debtors are unable to obtain replacement financing in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code.

## REQUEST FOR FINAL HEARING

25. Pursuant to Bankruptcy Rule 4001(c)(2), a final hearing on this matter may not be commenced earlier than fourteen days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on such motion and authorize obtaining of credit to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(c)(2).

26. The Debtors request that the Court: (i) conduct an expedited hearing with respect to this Motion for purposes of entry of the Interim Order; and (ii) schedule the final hearing at the earliest possible date in accordance with Bankruptcy Rule 4001(c).

## NOTICE AND SERVICE

27. Notice of this Motion has been given to: (i) United States Trustee; (ii) the subchapter v Trustee; (iii) counsel for Instantiation; (iv) the Debtors' 20 largest unsecured creditors; and (v) counsel for Avnet, and (vi) those persons who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules (the "Notice Parties"). In light of the nature of the relief sought

in this Motion, the Debtors respectfully submit that no further notice is required and that no hearing need be held to consider entry of the Order.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the DIP Orders: (i) Authorizing Secured Postpetition Financing to MWDC on Superpriority Basis Pursuant to Section 364 of the Bankruptcy Code and the Terms and Conditions of the Interim Order; (ii) Modifying the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code; (iii) Approving MWDC's DIP Loan and Security Agreement with Instantiation; (iv) Setting a Final Hearing; and (v) Granting Such Other and Further Relief as this Court Deems Necessary and Proper.

Date: November 23, 2021

Respectfully submitted,

/s/ *Julie K. Zurn*
Marc B. Merklin (0018195)
Julie K. Zurn (0066391)
BROUSE McDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@brouse.com

*Proposed Counsel for the Debtors
and Debtors-in-Possession*