| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC[1] | ) | Case No. 21-61491 |
| | ) | *(Request for Joint Administration Pending)* |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |

**MOTION FOR AN ORDER (A)(I) ESTABLISHING AND APPROVING BID PROCEDURES RELATED TO THE SALE OF CERTAIN OF THE DEBTORS' ASSETS PURSUANT TO 11 U.S.C. §§ 105(A), INCLUDING THE DESIGNATION OF A STALKING HORSE BIDDER AND RELATED BID PROTECTIONS; (II) APPROVING CONTRACT/LEASE ASSUMPTION AND ASSIGNMENT PROCEDURES AND THE FORM AND NOTICE THEREOF; (III) SCHEDULING THE AUCTION; (IV) SCHEDULING A HEARING AND OBJECTION DEADLINE WITH RESPECT TO THE SALE; (V) APPROVING THE FORM AND NOTICE THEREOF; AND (VI) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF</u>**

Squirrels Research Labs LLC ("**SQRL**") and The Midwest Data Company LLC ("**MWDC**," and collectively with SQRL, the "**Debtors**"), the debtors and debtors-in-possession in the above-captioned in the above-captioned Chapter 11 case, submit this motion (the "**Motion**") pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**") and rules 2002, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an Order: (A)(I) establishing and approving bid procedures to be used in connection with the proposed sale of the Debtors' assets to Instantiation LLC and/or its assigns (the "Stalking Horse Bidder"), subject to higher and better offers, pursuant to 11 U.S.C. §§ 105(A),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and The Midwest Data Company LLC (1213), case no. 21-61492.

363, and 365 and including the terms of the proposed purchase agreement substantially in the form attached hereto as **Exhibit B** (the "APA"); (II) approving contract/lease assumption and assignment procedures and the form and notice thereof; (III) approving Bid Protections (as defined herein) for the Stalking Horse Bidder; (IV) scheduling the auction; (V) scheduling a hearing and objection deadline with respect to the sale; (VI) approving the form and notice thereof; and (VII) granting related relief; and (B)(I) authorizing sale of certain of the Debtors' assets free and clear of liens, claims, encumbrances, and interests pursuant to 11 U.S.C. §§ 105 and 363; and (II) approving assumption and assignment of executory contracts and unexpired leases; and (C) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested herein is sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9006 of the Bankruptcy Rules.

## BACKGROUND

4. On November 23, 2021, the Debtors filed voluntary petitions for relief under subchapter v of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

5. The Debtors are operating their businesses as debtors and debtors-in-possession pursuant to 11 USC § 1108 and 1184. A request for joint administration of the cases is pending with the Court. No trustee or examiner has been appointed in these cases.

6.     SQRL, is a limited liability company organized under the laws of the State of Ohio and is located in Canton, Ohio. MWDC is a limited liability company organized under the laws of the State of Ohio and is located in Canton, Ohio.

### Summary of Capital Structure and Current Business Operations

7.     Prior to the Petition Date, SQRL executed and delivered to Avnet: (i) a promissory note in the original principal amount of $4,621,092.50 dated March 26, 2019 (the **"Initial Note"**) and (ii) a Security Agreement dated as of March 20, 2019 granting a lien in the collateral described therein in favor of Avnet to secure payment of amounts invoiced by Avnet (the **"Security Agreement"**)

8.     The Initial Note was amended and restated pursuant to a promissory note executed by SQRL and delivered to Avnet dated April 8, 2021 in the original principal amount of $7,864,779.76 (the **"Amended and Restated Note"**), which Amended and Restated Note is secured by the lien granted by the Security Agreement.

9.     As of November 22, 2021, SQRL remained obligated to Avnet in the principal amount of $7,864,779.76 plus accrued and accruing interest, fees, costs, and other charges (including attorneys' fees and costs) (the "**Avnet Claim**"), as set forth in the Account Settlement and Sale Support Agreement (the **"Support Agreement"**) by and between Avnet, the Debtors, and Instantiation, LLC.

10.    Prior to the Petition Date, as set forth in the Asset Purchase Agreement dated as of November 23, 2021 with Instantiation LLC (the "**APA**"), the Debtors received an offer for the proposed purchase and sale of the Debtors' assets identified and described therein, including SQRL assets subject to the liens, claims and encumbrances of Avnet (collectively, the **"Avnet Lien"**) pursuant to the Security Agreement (such assets, the **"Avnet Collateral"**).

11.     Pursuant to the Support Agreement, the parties thereto expressed their mutual support and commitment with respect to, inter alia, a value-maximizing sale of the SQRL and MWDC assets described and set forth in the APA, including the Avnet Collateral, as set forth upon the terms and conditions described in the Support Agreement (such transaction, the "**Sale Transaction**") and reached the Avnet Settlement (as defined in the Support Agreement), which, as more fully described in the Support Agreement, reduced the Avnet Claim to $5,751,000 and determined the amount of the Avnet Claim, pursuant to section 506 of the Bankruptcy Code, to be a secured claim in the amount of **$3,000,000.00 (the "Avnet Secured Claim")**.

## Sale of Assets

12.     Debtors believe that a sale of their assets pursuant sections 105(a) and 363 of the Bankruptcy Code will result in the maximum possible value for their assets and have determined that Instantiation, LLC should be the Stalking Horse Bidder in that pursuit. The sale to the Stalking Horse Bidder is subject to receipt of higher and better offers and an auction.

13.     Accordingly, the Debtors now seeks the Court's approval to sell the Assets free and clear of all liens, claims, encumbrances and interests pursuant to sections 105(a) and 363 of the Bankruptcy Code. The Debtors further seek approval of certain bid procedures, the designation of Instantiation as the Stalking Horse Bidder, and a procedure for the assumption and assignment of executory contracts and unexpired leases in connection with such sale.

## RELIEF REQUESTED

14.     The Debtors seeks entry of an order, substantially in the form attached hereto as **EXHIBIT A** (the "Bidding Procedures Order"):

      a. Authorizing and approving the proposed bidding procedures attached as **EXHIBIT 1** to the Bidding Procedures Order (the "Bidding Procedures") by

4

which the Debtors will conduct a sale of the Assets under section 363 of the Bankruptcy Code;

b.  Approving the Bid Protections (as defined below) to be provided to the Stalking Horse Bidder for the Assets;

c.  Establishing procedure for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures") attached as **EXHIBIT 3** to the Bidding Procedures Order (the "Cure Notice");

d.  Scheduling an auction in connection with the Sale Transaction (the "Auction") to take place on January 3, 2022;

e.  Scheduling a hearing on January 11, 2022 (the "Sale Hearing"), and scheduling an objection deadline of January 10, 2022 (the "Sale Objection Deadline");

f.  Approving the form and manner of notice of the Auction and Sale Transaction, attached as **EXHIBIT 2** to the Bidding Procedures Order (the "Auction and Sale Notice"); and

g.  Granting related relief.

15.  The Debtors request that the Bidding Procedures Order establish certain dates and deadlines as set forth herein, subject to extension or modifications by the Debtors, as set forth in the Bidding Procedures.

16.  Additionally, by this Motion the Debtors seek, following the conclusion of the Sale Hearing, entry of an order (a "Sale Order") by no later than January 11, 2022 (a) authorizing (i) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances, other than

5

those expressly assumed and (ii) the assumption and assignment of certain executory contracts and unexpired leases, and (b) granting related relief.

### A. Bidding Procedures

17.    The Bidding Procedures include comments from Avnet and certain of the key terms of the Bidding Procedures are summarized in the chart below:

| MATERIAL TERMS OF THE PROCEDURES | |
|---|---|
| Participation and Due Diligence | |
| Identification of Potential Competing Bidders and Confidentiality Agreement | Debtors shall distribute the notice of the sale, these Bidding Procedures, a copy of the Stalking Horse Bidder's Asset Purchase Agreement ("APA"), and a form or confidentiality agreement (a "Confidentiality Agreement") to those parties Debtors determine may have or demonstrate an interest in purchasing the Assets. |
| | |
| Due Diligence | After a party delivers the executed Confidentiality Agreement in accordance with the Bidding Procedures, the party shall receive access to the data room and due diligence information, as reasonably requested by such party, and all written due diligence provided to any such party shall be available in the data room. |
| | |
| Stalking Horse Bidder and Bid Protections | |
| Stalking Horse Bidder | The Debtors have received from Instantiation, LLC a bid (the "Stalking Horse Bid") to purchase their assets, as set forth in APA, and have selected Instantiation, LLC to act as Stalking Horse Bidder, and have agreed, subject to Court approval, to certain protections consisting of: an amount in cash |

| | |
|---|---|
| | equal to the sum of (a) 3.0% of the Purchase Price plus (b) all of the Purchaser's documented out-of-pocket costs and expenses (including legal fees) incurred in connection with the transactions contemplated by this Agreement, up to a maximum amount of $200,000 (collectively, the "***Break-Up Fee***") (the "Bid Protections"). |
| Stalking Horse Bid Protections | In connection with the Stalking Horse Bid, the Debtor shall be authorized to provide the Bid Protections. |

### COMPETING BID DEADLINES

Each party that submits, at least five (5) days prior to the Bid Deadline an executed Confidentiality Agreement and reasonable evidence demonstrating the party's financial capability to consummate a Sale as reasonably determined by the Debtors shall be an "Eligible Competing Bidder." Avnet is an Eligible Competing Bidder as set forth in section 3.D of the Bidding Procedures.

Any Eligible Competing Bidder that desires to make a binding offer (each, a "Competing Bid") shall transmit the Competing Bid to the Debtors so as to be actually received on or before 5 p.m. PST thirty days after the entry of the Bidding Procedures Order (the "Bid Deadline").

The Bid Deadline may be extended by the Debtors, in consultation with Avnet and the Stalking Horse Bidder.

### Competing Bid Requirements

All Competing Bids must be submitted in writing and satisfy the requirements as fully set forth in the Bidding Procedures (collectively, the "Bid Requirements"), and use the APA as a template, clearly marked to show changes from the APA, which include the following key requirements:

| | |
|---|---|
| Purchase Price | Each Competing Bid must clearly set forth the purchase price to be paid, specifying (i) any cash and (ii) any non-cash components, in sufficient detail satisfactory to the Debtor (the "Purchase Price") and have value to the bankruptcy estate that is greater than the sum of value offered under the APA, plus (1) the amount of the Break-Up Fee, (2) the DIP Loans, and (3) Fifty Thousand Dollars ($50,000) (the "***Bidding Increment***"). For clarity's sake, each Competing Bid must offer a cash component greater than the total of |

| | |
|---|---|
| | $3,010,000, the break-up fee, the outstanding DIP Loans, and the Bidding Increment. A qualified competing bid must therefore exceed three million sixty thousand dollars ($3,060,000) plus the outstanding amount of the DIP Loan and the Break-Up Fee (the "***Opening Bid***"), plus the value of Assumed Liabilities under the APA, and otherwise meet the financing and other requirements set forth herein (such bid, a "***Qualified Competing Bid***"). <br><br> Each Competing Bid for a combination of Assets, other than for the same combination set forth in the APA, must: (a) provide for a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid; (b) state whether the Bid is conditioned on being the Winning Bid for any of the other Assets included in the Bid (and if so, clearly identify which Assets); and (c) state whether the Eligible Competing Bidder is willing to purchase any of the Assets included in the Bid individually, and if so, the price such Eligible Competing Bidder would pay for each such Asset. |
| Deposit | Each Competing Bid must be accompanied by a good faith deposit in the amount of One Hundred Fifty Thousand Dollars ($150,000) as a nonrefundable deposit (in the event the Competing Bid is selected as the Winning Bid (defined below)). |
| Committed Financing | Each Competing Bid must contain a representation that the bidder has the financial ability to perform and provide evidentiary documentation demonstrating such financial ability to close (e.g., financial statements and bank statements that show available cash necessary to close the transaction) that are satisfactory to the Sellers in its reasonable discretion. <br><br> Each Competing Bid must contain a representation that bidder shall be able to close the transaction no later than fifteen (15) |

21-61491-rk    Doc 6    FILED 11/23/21    ENTERED 11/23/21 18:36:45    Page 8 of 29

| | |
|---|---|
| | calendar days after entry of the Sale Order. |
| No Financing or Diligence Outs | A Competing Bid shall not be conditioned on the obtaining or sufficiency of financing or any internal approval, or on the outcome or review of due diligence, or on the receipt of any regulatory third party approvals, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which representations and warranties shall be similar, and in any event, not more expansive, than the representations and warranties set forth in the APA.<br><br>Each Competing Bid must contain a representation that the bidder is duly authorized to submit the bid and close the transaction and has already obtained all necessary approvals (e.g., board approvals), plus, if requested by Sellers, supporting documents satisfactory to Sellers in its reasonable discretion; |
| Assumed Liabilities | Each Competing Bid must identify the Debtors' liabilities, if any, that each Eligible Competing Bidder seeks to assume. |
| Adequate Assurance of Future Performance | Each Competing Bid must: (i) identify any and all executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (ii) demonstrate, in the Debtors' reasonable business judgment, that the Eligible Competing Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. |
| As-Is, Where-Is | Each Competing Bid must include a written acknowledgment and representation that the Eligible Competing Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of documents and the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, |

9

| | |
|---|---|
| | promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidding Procedures and in the representations and warranties contained in the Sale Documents submitted as a part of the Bid (as modified before acceptance and execution by the Debtors) and disclaims reliance on any such written or oral statements, representations, promises, warranties, or guaranties. |
| Honoring the Bidding Procedures | Each Competing Bid must affirmatively state agreement, and by submitting its Competing Bid, each Eligible Competing Bidder is so agreeing, to abide by and honor the terms of the Bidding Procedures (including if such Competing Bid is declared the Successful Bidder or Backup Bidder (as defined below)) and to refrain from submitting a Competing Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Competing Bid shall constitute a binding and irrevocable offer to purchase the Assets. Each Competing Bid must state that the Eligible Competing Bidder consents to the jurisdiction of the Court and to the entry of a final judgment or order with respect to the Competing Bid, as well as with respect to any aspect of these Bidding Procedures, and all orders of the Court entered with respect to the Sale. |
| Additional Diligence | Each Eligible Competing Bidder shall comply with all reasonable requests for additional information and due diligence access by Debtors or its advisors regarding the Competing Bid. |
| Expenses | Each Competing Bid, except for the Stalking Horse Bid, shall not contemplate or request (and no Eligible Competing Bidder) any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of |

10

| | |
|---|---|
| | payment or reimbursement, and by submitting its Competing Bid, each Eligible Competing Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code. |
| **Designation of Qualified Competing Bidder** | |
| Qualified Bidder | A Bid will be considered a "Qualified Competing Bid" and each Eligible Competing Bidder that submits a Qualified Competing Bid will be considered a "Qualified Competing Bidder," if the Debtors determine in their reasonable business judgment, in consultation with Avnet, that such Bid: (i) satisfies the Bid Requirements; and (ii) is reasonably likely (based on availability of financing, experience, and other considerations) to be consummated, if selected as the Winning Bid, within a time frame reasonably acceptable to the Debtors. |
| Notification | No later than two business days after the Bid Deadline, the Debtors will notify each Eligible Competing Bidder whether such party is a Qualified Competing Bidder. |
| Bid Modification | Between the date that Debtor notifies a Bidder hat it is a Qualified Competing Bidder and the Auction: (i) the Debtors may discuss, negotiate, or seek clarification of any Qualified Competing Bid from a Qualified Bidder; and (ii) a Qualified Bidder may not, without the prior written consent of the Debtor modify, amend, or withdraw its Qualified Competing Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, provided that any improved Qualified Bid must continue to comply with the requirements for Qualified Competing Bids set forth in the Bidding Procedures. |

11

| Bid Selection and Criterion | |
|---|---|
| Opening Bid | Not later than one business day before the Auction, Debtors will notify all Qualified Competing Bidders, and the Stalking Horse Bidder, of the Opening Bid, such bid being the highest or otherwise best Qualified Competing Bid with respect to the Debtors' Assets, which Qualified Bid may be the Stalking Horse Bid and the Debtors shall provide copies of the documents supporting the Opening Bid to all Qualified Bidders (defined below). |
| Bid Assessment Criteria | The determination of which Qualified Bid constitutes the Opening Bid and, ultimately, the Winning Bid shall take into account any factors the Debtors, in consultation with Avnet, reasonably deems relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (i) the amount and nature of the Purchase Price; and (ii) the Qualified Bidder's ability to consummate the Sale and the timing thereof. |
| Credit Bids | Avnet shall have the right to credit bid for the Assets without the need to provide a deposit and Avnet shall be deemed to be an Eligible Bidder, and shall have the right to credit bid any portion and up to the entire amount of its outstanding Reduced Avnet Claim (as defined in the Support Agreement) pursuant to section 363(k) of the Bankruptcy Code for its collateral, which credit bid shall be deemed to be a Qualified Bid (the "Credit Bid Right"), provided that any such credit bid is submitted by the Bid Deadline, provided however, that Avnet waives its rights under section 363(k) of the Bankruptcy Code to credit bid for the Assets, provided that a sale of Avnet's collateral is pursued and consummated pursuant to the Bidding Procedures Order and these Bidding Procedures. Otherwise, Avnet retains and will retain all of its rights to credit bid its claims under applicable law. |

| The Auction Procedure | |
|---|---|
| Time and Place | If there is a Qualified Competing Bid, Debtors shall hold an auction for the Acquired Assets (the "**_Auction_**") within five (5) Business Days of the Bid Deadline, provided, however, if the fifth (5th) day is not a Business Day, then the first Business Day following the fifth (5th) day, and as more fully described in the Bidding Procedures (the "**_Auction Date_**"). The Auction shall take place on January 3, 2022 at __:__ __.m. [EST/PST]] and will (unless the Debtors provide notice otherwise) be held electronically via video/telephone, or at such later date, time, or other place as selected by the Debtors, in consultation with Avnet, and the Stalking Horse Bidder, or approved by order of the Court.<br><br>If the Debtors do not receive any Qualified Competing Bids with respect to the Assets, then the Auction will not be held and Debtors will seek approval of the Sale to the Stalking Horse Bidder pursuant to the APA. |
| Eligibility | Only Qualified Competing Bidders that have submitted Qualified Competing Bids by the Bid Deadline, Avnet, to the extent it exercises its Credit Bid rights, and the Stalking Horse Bidder (together the "Qualified Bidders") are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with the Bidding Procedures; provided that such other limitations are (i) not inconsistent with the Bidding Procedures Order, any other order of the Bankruptcy Court, or the Bankruptcy Code, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors, in consultation with Avnet, to further the goals of the Bidding Procedures. |
| Attendance | Qualified Bidders participating in the Auction must appear at the Auction, or through a duly authorized representative, proof of which authority has been provided to Debtors at least |

| | |
|---|---|
| | one business day before the Auction.<br><br>The Auction will be conducted openly and all creditors and counsel or other professional advisors may be permitted to attend. Only Qualified Bidders will be permitted to participate in the Auction. |
| Closing the Auction | The Auction shall continue until the Debtors, in consultation with Avnet, select, the Winning Bid. To determine the Winning Bid, the Debtors shall evaluate the value to be provided under the bids, including the net economic effect upon Debtors' estates, taking into account the Break-Up Fee owed to the Stalking Horse Bidder and the obligations assumed by the Stalking Horse Bidder under the APA.<br><br>Such Bid shall be declared the "Winning Bid" and such Bidder, the "Successful Bidder," and at such point, the Auction will be closed.<br><br>As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause such definitive documentation to be filed with the Court. The acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid. |
| **Terms of Competing Bids** | |
| Any bids made at the Auction by a Qualified Bidder after the announcement of the Opening Bid shall be "Overbids" and must comply with the conditions set forth below and shall be made and received on an open basis, with all material terms of each Overbid fully disclosed to all other Qualified Bidders. | |
| | |
| Minimum Overbid Increment | Any Overbids must exceed the Opening Bid by at least Fifty Thousand Dollars ($50,000). Thereafter and continuing until there is only one (1) bidder remaining, each bidder must increase the subsequent bid in an amount of at least Fifty Thousand Dollars ($50,000) to |

14

| | |
|---|---|
| | remain a bidder in the Auction. |
| Announcing Highest Bid | After each Overbid, the Debtors shall announce the material terms of the Overbid, including the value attributed to the Overbid. |
| **Backup Bidder** | |
| Designation of Backup Bidder | If the Stalking Horse Bidder is not the Successful Bidder at the Auction, the Stalking Horse Bidder shall be required to serve as a back-up bidder.<br><br>If the Stalking Horse Bidder is the Successful Bidder at the Auction, then the Qualified Competing Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets, as determined by the Debtors in the exercise of its reasonable business judgment shall be required to serve as a Backup Bidder until such time as the applicable Sale is consummated, and each Qualified Bidder shall agree and be deemed to be the Backup Bidder if so designated by the Debtor. |
| Identity of Backup Bidder | The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until such time as the Sale is consummated. |
| Consummating a Sale with Backup Bidder | If a Successful Bidder fails to consummate the approved Sale contemplated by its Winning Bid, then the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. |

15

| Sale Hearing | The evidentiary hearing to consider approval of the Winning Bid (the "Sale Hearing") will be held on or around 10:00 a.m. on January 11, 2022, or such other date and time as the Court's docket may accommodate. The Sale Hearing may be adjourned or rescheduled as ordered by the Court, or by the Debtors, but without further notice to creditors and parties in interest other than by announcement by the Debtors of the adjourned date at the Sale Hearing. |
|---|---|
| **Return of Deposits** | |

The Deposits for each Qualified Competing Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) within three business days after the Auction is closed, or as soon as is reasonably practicable thereafter. Upon the return of the Deposits, the applicable Qualified Competing Bidders shall receive any interest that will have accrued thereon.

The Deposit of the Successful Bidder shall be applied to the purchase price of such Sale at closing. If a Successful Bidder (including a Backup Bidder which becomes a Successful Bidder) fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any rights, remedies, or causes of action that may be available to Debtors. If, through no fault of the Successful Bidder, the Court does not approve the transaction or the transaction does not close, the Bidder's Deposit shall be returned within three business days thereof, or as soon as is reasonably practicable thereafter.

18. The Debtors believe that the process created by the Bidding Procedures will provide them with the flexibility to sell the Assets and to select bids that will result in the highest and best purchase price for the Assets. Accordingly, the Debtors believe that the approval of the Bidding Procedures provides the Debtors with the best possibility of maximizing the value of the Assets for the benefit of creditors. Accordingly, Debtors requests that the Court approve the Bidding Procedures.

B. **Stalking Horse Bidders and Bid Protections**

19.    The Debtors request that the Court grant it authority to (i) select Instantiation LLC as Stalking Horse Bidder and to enter into the APA with such Stalking Horse Bidder, and (ii) in connection with the APA with the Stalking Horse Bidder, provide the Bid Protections consisting of: to the sum of (a) 3.0% of the Purchase Price plus (b) all of the Purchaser's documented out-of-pocket costs and expenses (including legal fees) incurred in connection with the transactions contemplated by this Agreement, up to a maximum amount of $200,000 (collectively, the "***Break-Up Fee***").

C. **Timeline and Deadlines**

20.    The Debtors seek approval of the following timeline, subject to modification in accordance with the Bidding Procedures:

| Key Dates | |
|---|---|
| Date/Time | Event |
| December 17, 2021 | Deadline by which Debtors must file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties |
| December 31, 2021 | Deadline by which Bids (as well as Deposits and all other documentation required under the Bidding Procedures) must be submitted in accordance with the Bidding Procedures |
| December 31, 2021 | Deadline by which to file Assigned Contract Objections |
| January 3, 2022 | Date on which Auction (if any) shall be held electronically via video/telephone, or at such later date, time, or other place, as selected by Debtors, in consultation with Avnet, and the Stalking Horse Bidder, or approved by order of the Court. |
| January 10, 2022 | Deadline by which objections to the Sale Transaction must be filed |
| January 11, 2022 | Date on which the Sale Hearing shall occur, subject to the Court's availability |

**Form and Manner of Notice**

21.    The Debtors request approval of 7 days notice of this Motion to establish the Bidding Procedures and Bid Protections, as set forth more fully in the Debtors' Motion to Shorten Time to

17

Respond To, And Expedite the Hearing on consideration of the Bidding Procedures and Bid Protections filed contemporaneously with the filing of this Motion. The Debtors further request that the Court approve the form of Auction and Sale Notice attached as Exhibit 2 to the Bidding Procedures Order. The Debtors propose that within 3 business days of the entry of the Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice and the Bidding Procedures Order (with the Bidding Procedures attached) upon: (a) the Office of the United States Trustee for Northern District of Ohio; (b) counsel for Avnet; (c) all creditors and parties in interest, include the Contract Counterparties; (d) the Internal Revenue Service; (e) government entities, including the real estate taxing authority; (f) counsel for Instantiation; and (g) all entities known to have asserted a lien or security interest against the Assets.

22.     Debtors submit that notice of this Motion and the Auction and Sale Notice constitutes good and adequate notice of the Auction and Sale and satisfies the requirements of Bankruptcy Rule 2002. Accordingly, Debtors request the form and manner of the Auction and Sale Notice be approved and the Court determine no other or further notice is required.

**Summary of Assumption and Assignment Procedures**

23.     The Debtors also request that the Court approve the form of Assumption and Assignment Notice attached as EXHIBIT 3 to the Bidding Procedures Order. The Debtors propose the procedures set forth below (the "Assumption and Assignment Procedures") for notifying the counterparties to any executory contract or unexpired lease to which a Debtor is a party (the "Contract Counterparties") of proposed cure amounts in the event a Debtor decides to assume and assign such contracts or leases in connection with the Sale.

24.     On or before December 17, 2021 (the "Assumption and Assignment Service Date") the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract

Counterparties and shall include as EXHIBIT 3 to the Cure Notice a list (the "Assigned Contracts Schedule") that specifies: (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale, including the name of the Contract Counterparty to each such contract; (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); (c) any proposed adequate assurance of future performance (the "Adequate Assurance"); and (d) the deadline by which any Contract Counterparty to a potentially Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto, provided that the Debtors may supplement the Assigned Contract Schedule by filing and serving an additional Cure Notice no later than seven days prior to the Sale Objection Deadline.

25.    A Contract Counterparty listed on a Cure Notice may file an objection ("Assigned Contract Objection") only if such objection is to (a) the proposed assumption and assignment of the applicable Assigned Contract; (b) proposed Cure Costs; and/or (c) the Proposed Adequate Assurance (collectively, the "Assigned Contract Objection Basis"). All Assigned Contract Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing this Chapter 11 case; (iii) state with particularity the nature of the objection and, if the objection pertains to the Cure Cost or the proposed Adequate Assurance, state with specificity the amount purportedly required to cure and/or the amount required for adequate assurance and (iv) be filed by no later than one business day prior to the Auction.

26.    If a Contract Counterparty files an Assigned Contract Objection and the Successful Bidder has designated that it wishes to take assignment of such Assigned Contract, and the parties have been unable to consensually resolve the dispute prior to the Sale Hearing, then such objection

19

will be resolved at the Sale Hearing or such later hearing as may be agreed between the Successful Bidder and the Contract Counterparty, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Successful Bidder's discretion. If an Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such contract.

27.     If a Contract Counterparty does not file an Assigned Contract Objection: (a) the Cure Costs and Adequate Assurance, if any, set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document; and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs and Adequate Assurance, if any, and will be forever barred from objecting the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs and Adequate Assurance, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder.

28.     The inclusion of an Assigned Contract on the Assigned Contract Schedule will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

**A. Bidding Procedures are in the Best Interests of the Debtors' Estates and Should be Approved**

29.     Adoption of bidding procedures is a valid exercise of a debtor's business judgment. Debtors submit that the proposed Bidding Procedures are reasonable under the facts and circumstances of this case and are a valid exercise of the Debtors' business judgment. Through the use of such Bidding Procedures, and the additional marketing period that will occur between the hearing on the Bidding Procedures and the Bid Deadline, the Debtors believe they will be able to maximize the value of the Assets and obtain the highest and best price possible.

30. Debtors believe that the process created by the Bidding Procedures will provide it with the flexibility to select Bids from a final set of Qualified Bidders. Accordingly, the Debtors believe that the approval of the Bidding Procedures provides the Debtors with the best possibility of maximizing the value of the Assets for the benefit of creditors, and, accordingly, requests that the Court approve the Bidding Procedures.

**B. Stalking Horse Bid Protections is a Sound Exercise of Debtors' Business Judgment and Should be Approved**

31.     In order to induce the Stalking Horse Bidder to expend the time, energy and resources necessary to submit a stalking horse bid, the Debtors have agreed, subject to Court approval, to provide Bid Protections (as defined herein). Courts within the Sixth Circuit have approved agreements to compensate "stalking horse bidders" when they are successfully overbid by other parties in connection with substantial asset sales in bankruptcy. These agreements, which may provide for break-up fees, topping fees, or reimbursement of expenses, are warranted to compensate an unsuccessful purchaser whose initial offer served as the basis and catalyst for higher or better offers. *See, e.g., In re Hupp Industries, Inc.,* 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992). The court in *Hupp*

*Industries* identified a number of factors in determining whether to authorize compensation for the initial bidder, including:

- whether the fee requested correlates with a maximization of value to the debtor's estate;

- whether the fee is part of an arms-length transaction between the debtor's estate and the purchaser;

- whether the subject-break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

- whether the dollar amount of the break-up fee is so substantial that it provided a "chilling effect" on other potential bidders; and

- the existence of available safeguards beneficial to the debtor's estate.

32. The Bid Protections has been determined to correlate with the maximization of the value of the Assets. There is a limited circumstance under which the Bid Protections is payable, as set forth more fully in the APA attached hereto. The Debtors therefore state that the Court should grant the Debtors the authority to incur and pay the Break-Up Fee in their discretion as a valid exercise of the Debtor's business judgment.

### C. Form and Manner of Notice Should be Approved

33. Pursuant to Rule 2002(a)(2) of the Bankruptcy Rules, the Debtors shall provide to all creditors 21 days' notice of "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

34. Furthermore, Rule 2002(c)(1) of the Bankruptcy Rules requires that the notice of a sale of estate property include the time and place of any public sale, the terms and conditions of any private sale, the time fixed for filing objections and a general description of the property to be sold. The Debtors submit that service of this Motion, the Auction and Sale Notice and any later filed notice to the parties identified above satisfies this requirement.

22

D. **Assumption and Assignment Procedures Should be Approved**

35.    To facilitate and effectuate the Sale, the Debtors are also seeking approval of the Assumption and Assignment Procedures.

36.    The Assumption and Assignment Procedures are reasonable and necessary to properly notify parties of potential assumptions and/or assignments and provide the contract and lease counterparties with sufficient time to determine the accuracy of the proposed cure amount and whether the Debtors have provided adequate assurance of future performance.

37.    The Debtors will demonstrate at the Sale Hearing that the requirements for assumption and assignment of the Assigned Contracts to the Successful Bidder will be satisfied. As required by the Bidding Procedures, the Debtors will evaluate the financial ability of potential bidders before designating such party a Qualified Bidder or Successful Bidder. Further, the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance and object to the assumption of the Assigned Contracts or proposed cure amounts.

38.    Accordingly, the Debtors submit that the Assumption and Assignment Procedures should be approved as reasonable and necessary measures to adequately notify parties in interest and conduct the proposed sale process in a fair and efficient manner.

E. **Debtors May Sell the Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to Section 363(f) of the Bankruptcy Code**

39.    Debtor, SQRL, has concluded that a sale of its Assets is necessary in order to satisfy its secured obligations.

40.    In connection with this Motion, the Debtors requests that the Court find and conclude that the Debtors have acted with valid business justification and in good faith, in determining to sell the Assets, within the meaning of Bankruptcy Code Section 363(m), that notice of the sale will be sufficient, and that the relief requested is in the best interests of the Debtors' estates.

41. Section 363(f) of the Bankruptcy Code permits debtors to sell assets free and clear of liens, claims, encumbrances and interests with any such encumbrances attaching to the net proceeds of the sale. Section 363(f) provides:

> The trustee may sell property under subsections (b) or (c) of this section free and clear of any interest in such property of any entity other than the estate, only if –
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents
> >
> > (3) such interest is a lien and the price at which property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Bankruptcy courts may enter orders authorizing the sale of a debtor's assets free and clear of any liens, claims, encumbrances or interests that are binding against any such lien or interest holders pursuant to Section 105 of the Bankruptcy Code. *See In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the Court's equitable powers when necessary to carry out the provisions of Title 11").

42. As set forth above, Avnet holds the first lien on the Avnet Collateral. Avnet, through the Support Agreement, agreed to the terms on which a sale of the Assets, including the Avnet Collateral, would take place. The Debtors therefore propose to go forward with the marketing and sale of the Assets consistent with the terms of the Order and in the manner which brings the highest value. Avnet shall be entitled to payment in full of the Avnet Secured Claim at closing from the proceeds of a Sale Transaction, an Alternative Transaction (as defined in the APA), and/or other liquidation of the Avnet Collateral; to the extent the net sales proceeds exceed the Avnet Secured

24

Claim, the excess proceeds shall be held by the Debtors pending further order of the Court.

43.     The Debtors believes that the marketing and sale of Assets as set forth above, is in the best interest of its estate, is supported by a sound business purpose, and is justified under applicable law.

44.     By selling the Assets, the Debtors will reduce debt and eliminate assets it otherwise must maintain and insure against loss.  The Debtors have concluded that the value of the Debtors' estates will be maximized through a sale of the Assets.  As the set forth in the proposed Bidding Procedures, the Debtors will seek competing bids for any offer received for the Assets. As noted above, the bidding process will allow the Debtors to receive a fair price that reflects the market value of the Assets.  Accordingly, the Court should approve the proposed sale of the Assets free and clear of liens, claims, encumbrances and interests pursuant to Sections 105(a) and 363(f).

### F.  Successful Bidder Should be Entitled to Protections of section 363(m) of the Bankruptcy Code

45.     Pursuant to section 363(m) of the Bankruptcy Code, "a 'good faith purchaser' is generally one who purchases assets for value, in good faith, and without knowledge of adverse claims."  *In re Abbott's Dairies of Pennsylvania, Inc.,* 788 F.2d at 147; *In re Youngstown Steel Tank Co.,* 27 B.R. 596, 598 (W.D.Pa. 1983); *see also In re Mark Bell Furniture Warehouse, Inc.,* 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.,* Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007). Judicial inquiry regarding "good faith" in the context of section 363(m) of the Bankruptcy Code focuses on the integrity of the purchaser's conduct during the course of the sale proceedings.  *In re Abbott's Dairies of Pennsylvania, Inc.,* 788 F.3d at 147.

21-61491-rk     Doc 6     FILED 11/23/21     ENTERED 11/23/21 18:36:45     Page 25 of 29

46. The Debtors will adduce facts at the Sale Hearing on any objection demonstrating that any bidder who is deemed a Successful Bidder for all or any portion of the Assets has negotiated at arm's-length, with all parties represented by their own counsel.

47. Accordingly, the Sale Order will include a provision that the Successful Bidder for the Assets, is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtors believe that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Assets and closing of the same will occur promptly.

### G. Credit Bidding Should be Authorized

48. A secured creditor is allowed to "credit bid" the amount of its claim in a sale. Section 363(k) of the Bankruptcy Code provides, in relevant part, that in a sale under section 363 of the Bankruptcy Code, unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured, as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such secured creditor to bid the total face value of its claim and does not limit the credit bid to the claim's economic value. *See Cohen v. KB Mezzanine Fund II, LP* (*In re Submicron Sys. Corp.*), 432 F.3d 448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)").

49. Pursuant to the Bidding Procedures, Avnet shall have the right to credit bid for the Assets without the need to provide a deposit and Avnet shall be deemed to be an Eligible Bidder, and shall have the right to credit bid any portion and up to the entire amount of its outstanding

21-61491-rk   Doc 6   FILED 11/23/21   ENTERED 11/23/21 18:36:45   Page 26 of 29

Reduced Avnet Claim (as defined in the Support Agreement) pursuant to section 363(k) of the Bankruptcy Code for its collateral, which credit bid shall be deemed to be a Qualified Bid (the "Credit Bid Right"), provided that any such credit bid is submitted by the Bid Deadline, provided however, that Avnet waives its rights under section 363(k) of the Bankruptcy Code to credit bid for the Assets, provided that a sale of Avnet's collateral is pursued and consummated pursuant to the Bidding Procedures Order and the Bidding Procedures. Otherwise, Avnet retains and will retain all of its rights to credit bid its claims under applicable law.

### H. Assumption and Assignment of Executory Contracts and Unexpired Leases Should be Authorized

50. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. 365(a).

51. Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. 365(f)(2).

52. To the extent necessary, the Debtor will present evidence at the Sale Hearing to show the financial credibility, willingness and ability of the Successful Bidder to perform under the Assigned Contracts. Indeed, the Bidding Procedures require that each Qualified Bid identify with particularity the Debtor's executory contracts and unexpired leases sought to be assumed and assigned in connection with the Bid and demonstrate that such bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. Additionally, the Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Assigned Contracts as required under section 365(b)(1)(C) of the Bankruptcy Code.

Debtor will give notice to all parties to the Assigned Contracts, which notice will include the amounts the Debtor believe necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

53. Accordingly, the Debtors request approval of the Debtors' assumption and assignment of the Assigned Contracts in connection with the Sale Transaction.

## NOTICE OF THIS MOTION

54. Notice of this Motion will be given to the following parties or, in lieu thereof, to their counsel (if known): (a) the United States Trustee, (b) Avnet; (c) all creditors identified in the Debtors' schedules of assets and liabilities; (d) all relevant taxing authorities; (e) all parties to executory contracts and unexpired leases listed in Debtors' schedules; (f) Instantiation, LLC (g) the subchapter v trustee appointed in these cases and (h) all other parties who have appeared and requested notice pursuant to Bankruptcy Rule 2002.

## No Prior Requests

55. No previous motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Bidding Procedures Order, substantially in the form attached hereto as Exhibit A and grant such other and further relief as the Court deems just and proper.

Dated:  November 23, 2021                    Respectfully submitted,

/s/ *Julie K. Zurn*
Marc B. Merklin  (0018195)
Julie K. Zurn (0066391)
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@ brouse.com

*Counsel for the Debtors*
*and Debtors-in-Possession*