**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC, | ) | Case No. 21-61491 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |
| An Ohio Limited Liability Company | ) | |
| (Employer Tax I.D. No. 83-0829310) | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| The Midwest Data Company LLC, | ) | Case No. 21-61492 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |
| An Ohio Limited Liability Company | ) | |
| (Employer Tax I.D. No. 84-3221213) | ) | |

**DECLARATION OF DAVID STANFILL IN SUPPORT
OF FIRST DAY FILINGS**

I, David Stanfill, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am the president of Squirrels Research Labs LLC ("SQRL" or "Debtor"). I am familiar with the operations and business affairs of the Debtor.

2. I am the president of The Midwest Data Company LLC ("MWDC" or "Debtor," and collectively with SQRL, the "Debtors"). I am familiar with the operations and business affairs of MWDC.

3. I own or control 16.7% of the membership units in SQRL and 40% of the membership units in MWDC.

4. I submit this declaration (the "Declaration") in support of the voluntary petitions for relief under subchapter v of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), filed concurrently herewith, by SQRL and MWDC and other relief, in the form of motions that the Debtors have requested of this Court (the "First Day Motions"). I believe that the relief sought in the First Day Motions is necessary and critical to the Debtors' efforts to maximize the value of their assets through a sale process and orderly liquidation of remaining assets.

5. All of the facts set forth in this Declaration are based on my personal knowledge and/or upon information supplied to me by others at the Debtors' businesses, or upon my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## PART I
## BACKGROUND

6. On November 23, 2021 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code. The Debtors are continuing to operate their businesses as debtors in possession pursuant to section 1184 of the Bankruptcy Code.

7. SQRL is an Ohio limited liability company headquartered in North Canton, OH. SQRL creates, manufactures, and repairs hardware, including Datacenter Accelerator Boards, used in cryptocurrency mining machines.

8. MWDC is an Ohio limited liability company headquartered in North Canton, Ohio. MWDC provides hosting services for cryptocurrency mining machines.

9. Debtors' business operations are housed in two locations: 8050 Freedom Avenue, North Canton, OH 44720 pursuant to a lease with One Haines Company, LLC and 7579 Freedom Avenue, NW, North Canton, OH 44720 pursuant to a lease with Skymax.

10. Prior to the Petition Date, SQRL executed and delivered to Avnet, Inc. ("Avnet"): (i) a promissory note in the original principal amount of $4,621,092.50 dated March 26, 2019 (the **"Initial Note"**) and (ii) a Security Agreement dated as of March 20, 2019 granting a lien in the collateral described therein in favor of Avnet to secure payment of amounts invoiced by Avnet (the **"Security Agreement"**).

11. Debtor SQRL began the process of seeking counterparts for a recapitalization or sale of the company's assets in late 2020 on account of then-existing capital constraints arising from a global shortage of computer chips and other critical components required for the manufacturing of cryptocurrency mining equipment. As a result of the COVID-19 pandemic, the world-wide supply chain for, among other things, computer chips was severely disrupted, leading to lengthy delays in SQRL obtaining components required for its products. The foregoing supply chain disruptions have continued to date, thereby significantly detrimentally impacting SQRL's ability to manufacture cryptocurrency mining equipment.

12. SQRL's efforts in seeking additional capital or a sale of substantially all assets resulted in the execution and delivery of a Membership Unit Purchase Agreement with Fleur-de-Lis, LLC ("F-d-L") dated as of December 31, 2020 whereby F-d-L was to purchase 51% of the membership interests in SQRL from SQRL's treasury for $10 million on or before January 30, 2021. F-d-L thereafter breached the Membership Unit Purchase Agreement by failing to pay any of the $10 million purchase price on or before January 30, 2021. SQRL filed a complaint for

damages and injunctive relief against F-d-L and others in the Stark County Court of Common Pleas on March 1, 2021. That action remains pending.

13. Also during 4th quarter of 2020 and throughout the 1st quarter of 2021, SQRL negotiated numerous settlements with trade vendors and suppliers resulting in approximately $617,000 of trade debt to suppliers being settled and compromised for approximately $324,00, plus the release of certain consigned goods and delivery of components previously ordered. In addition, SQRL also negotiated a settlement of certain obligations with an equipment lessor resulting in a reduction of monthly costs from approximately $90,000 per month to approximately $53,000 per month with corresponding extensions of the terms of said leases and increased balloon payments to be due at the ends of the lease terms.

14. Faced with severe liquidity constraints, SQRL raised capital from existing members and certain new members throughout the first and second quarters of 2021 in order to pay the obligations to vendors described in paragraph 13 above and the obligations to Avnet described in paragraph 15 below.

15. In March 2021, SQRL commenced negotiations with Avnet, who had historically been a major supplier of key components critical to SQRL's business. At that time, SQRL's outstanding indebtedness to Avnet under the Initial Note was approximately $8,191,000. SQRL and Avnet were able to reach a framework for the restructuring of SQRL's account with Avnet, the principal terms of which were: (i) a payment of $369,300 to Avnet on account of the then-existing balance due under the Initial Note on or before March 31, 2020, (ii) monthly payments thereafter pursuant to an amended and restated promissory note executed by SQRL and delivered to Avnet dated April 8, 2021 in the original principal amount of $7,864,779.76 (the "**Amended and Restated Note**"), which Amended and Restated Note remained secured by the lien granted

by the Security Agreement, and (iii) a purchase by SQRL and shipment by Avnet of 3,676 VU35P and VU33P FPGA chips for $2,630,700 immediately thereafter. Avnet did not thereafter deliver the full amount of SQRL's order of the VU35P and VU33P FPGA chips, and instead only delivered 3,611 VU35P chips. SQRL nonetheless made the initial monthly payment to Avnet and monthly payments under the Amended and Restated Note through the payment due for June, but thereafter defaulted in making monthly payments to Avnet. Avnet declared SQRL in default under the terms of the Amended and Restated Note and the Security Agreement on August 20, 2021, thereby freezing SQRL's use of cash collateral and ability to pay operating expenses.

16. Beginning in the second quarter of 2021, an existing customer/client of began initiating orders with third parties for cryptocurrency mining machines to be manufactured by SQRL which were neither authorized nor approved by either of SQRL or MWDC. Due to the supply chain disruptions described above, SQRL was unable to obtain sufficient component parts to satisfy the foregoing orders in a timely manner, and, upon information and belief, the unauthorized party or parties initiating those orders did not advise any of the ordering parties that SQRL would be unable to meet the production schedule promised. The foregoing has led to threats of litigation against, among others, MWDC.

17. On the night of July 15, 2021, a fire at the Debtors' business location interrupted business operations and caused significant damage to SQRL production equipment, work-in-progress, finished goods inventory and also certain customer-owned equipment hosted by MWDC. SQRL's operations remain temporarily paused as SQRL seeks through this subchapter V to maximize and preserve the value of SQRL's assets through a sale and plan process. MWDC continues to provide hosting services to its customers and has paid certain operating expense obligations of SQRL from and after SQRL's default under the Amended and Restated Note and

Security Agreement. Insurance claims have been filed by the Debtors, but remain unresolved as of the Petition Date.

18. Shortly after the July 15, 2021 fire, an existing customer/client asserted a direct claim against the Debtors' insurance carrier for alleged damages and for loss of cryptocurrency mining revenues and has subsequently threatened litigation against, among others, MWDC.

19. As of November 22, 2021, SQRL remained obligated to Avnet in the principal amount of $7,864,779.76 plus accrued and accruing interest, fees, costs, and other charges (including attorneys' fees and costs) (the "**Avnet Claim**").

20. Prior to the Petition Date, the Debtors received an offer to purchase certain of their assets, as set forth in the Asset Purchase Agreement dated as of November 23, 2021 from Instantiation LLC and intend to file, promptly following the commencement of these Chapter 11 cases, a motion seeking the establishment of certain bid procedures for the sale of substantially all of the assets of both SQRL and MWDC (the "Sale") and Bankruptcy Court authorization and approval of the Sale.

21. On November 23, 2021, Avnet, SQRL, MWDC, and Instantiation, LLC entered into an Account Settlement and Sale Support Agreement whereby those parties agreed, as of the Effective Date thereof, that in order to support the Chapter 11 process, Instantiation LLC will provide debtor in possession financing to MWDC in the original principal amount of $350,000 as described in the DIP Loan documents evidencing and memorializing same necessary to fund these Chapter 11 cases and the related sale process, and seek to purchase the Debtors' assets. In addition, Avnet agreed to support the Sale, not object to the debtor-in-possession financing to be provided by Instantiation, and SQRL and Avnet agreed to a resolution of the amount and

treatment of the Avnet Claim, such that the Avnet Claim is reduced to the amount $5,751,000 (the "Reduced Avnet Claim").

22. The Debtors believe that following the Sale there will be unencumbered assets remaining in their estates, primarily comprised various causes of action, including those arising pursuant to Chapter 5 of the Bankruptcy Code, to be administered for the benefit of unsecured creditors.

# PART II
# FIRST DAY PLEADINGS

**A. Motion for Expedited Hearing on First Day Motions**

23. Given the importance of the relief sought in the First Day Motions to Debtors' ability to continue their operations and maximize the value of their assets, the Debtors have filed a motion requesting the entry of an order scheduling an expedited hearing on the First Day Motions. The Debtors' financial resources have been strained since the fire in July, and the relief requested in these motions will help facilitate the stabilization of the Debtors' operations and sale to a new owner.

**B. Motion for Joint Administration**

24. The Debtors seek entry of an order directing joint administration of their related chapter 11 cases. The Debtors also request that a docket entry be entered on the docket of each of the Debtors' cases indicating the joint administration.

25. The Debtors in these chapter 11 cases are "affiliates" as that term is defined in section 101(2) of the Bankruptcy Code. As discussed above, I own 16.7% of the membership units of SQRL and 40% of the membership units of MWDC, and SQRL and MWDC share operations in the same physical locations. As such, joint administration of these chapter 11 cases will provide significant administrative convenience without harming the substantive rights of any

party in interest. Many of the motions, hearings, and orders that will arise in these chapter 11 cases will affect each Debtor. In addition, joint administration will reduce fees and costs by avoiding duplicative filings and objections. Joint administration will also allow the Office of the United States Trustee for Region 9 and all parties in interest to monitor these chapter 11 cases with greater ease and efficiency. Based on the foregoing, I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors, their estates and all parties in interest and should be approved.

**C. Motion to Authorize Debtor in Possession Financing**

26. MWDC has filed a motion for entry of interim and final orders: (i) Authorizing Secured Postpetition Financing to Debtor The Midwest Data Company LLC ("MWDC") on Superpriority Basis Pursuant to Section 364 of Title 11 of the United States Code (the "Bankruptcy Code") and the Terms and Conditions of the Interim Order (attached hereto as Exhibit A); (ii) Modifying the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code; (iii) Approving DIP Loan and Security Agreement with Instantiation LLC ("Instantiation" or "Lender"); (iv) Setting a Final Hearing; and (V) Granting Such Other and Further Relief as this Court Deems Necessary and Proper.

27. The Debtors have attempted to obtain and presently are unable to borrow additional funds on an unsecured basis under any conditions set forth in section 364(a) or (b) of the Bankruptcy Code. However, as set forth in the financing motion, the DIP Lender has indicated a willingness to lend money to MWDC upon the terms and conditions set forth in the DIP Loan Documents, subject to the limitations imposed by the DIP Budget.

28. I submit that the terms and conditions contained in the proposed Interim Order governing the DIP Loan, pursuant to which the post-petition loans, advances, and other credit

and financial accommodations will be made or provided to the Debtors, have been negotiated in good faith and in an arms' length, open and honest fashion. I represent that the DIP Lender is extending financing to the Debtor in good faith and that the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

29. Further, the relief requested by the motion is necessary to avoid additional irreparable harm to the Debtors' estates.

**D. Utility Motion**

30. MWDC has filed a motion for entry of interim and final orders: (a) prohibiting any utility from altering, refusing, or discontinuing services to, or discriminating against, the Debtor on account of prepetition invoices; (b) determining that all utilities are adequately assured of future payment; and (c) approving procedures for requests for additional assurance.

31. AEP Ohio is MWDC's electricity provider and is the only utility in MWDC's name. The other utilities are in the names of the landlords.

32. Uninterrupted utility service is essential to the Debtors' ongoing operations and, therefore, to the success of the Debtors' reorganization. The Debtors cannot maintain its hosting services or operate its business, as necessary, without continuous utility service.

33. Further, the relief requested by the motion is necessary to avoid additional irreparable harm to the Debtors' estates.

**E. Sale and Bidding Procedures**

34. Contemporaneous with or promptly following the filing of this Declaration, the Debtors intend to file a motion seeking authority to sell their assets and to establish procedures for the sale of their assets. The Debtors request the Court consider entry of the bidding procedures on an expedited basis in order to maximize the time the assets are exposed to the

market for sale and allow Debtors to move swiftly towards a completed sale which will lend stability to the Debtors' operations.

## CONCLUSION

In furtherance of its chapter 11 efforts, for the reasons stated herein and in each of the First Day Motions, I respectfully request the Court grant the relief requested. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

November __23__, 2021                              _____
                                                                                David Stanfill

[1349204.4]