**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



_Russ Kendig_
**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 09:15 AM December 2, 2021**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC, *et al.*[1] | ) | Case No. 21-61491 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |

### INTERIM ORDER: (I) AUTHORIZING SECURED POSTPETITION FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) MODIFYING THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF

This matter coming before the Court on the Motion of Debtors (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") for entry of interim and final orders: (i) Authorizing Secured Postpetition Financing to Debtor The Midwest Data Company LLC ("<u>MWDC</u>") on Superpriority Basis Pursuant to Section 364 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and the Terms and Conditions of the Interim Order; (ii) Modifying the Automatic Stay Pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and The Midwest Data Company LLC (1213), case no. 21-61492.

Section 362 of the Bankruptcy Code; (iii) Approving MWDC's DIP Loan and Security Agreement with Instantiation LLC ("Instantiation" or "Lender"); (iv) Setting a Final Hearing; and (v) Granting Such Other and Further Relief as this Court Deems Necessary and Proper.

The court having considered the Motion, and, in accordance with Bankruptcy Rule 4001(c), requisite notice of the Motion and the DIP Loan Documents having been provided; and an interim hearing to consider approval of the DIP Loan[2] having been held and concluded (the "Interim Hearing"); and upon all the pleadings filed with the Court and the record made by the Debtors at the Interim Hearing; and it appearing to the Court that the relief requested by the Motion is in the best interests of the Debtors and their creditors and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration and good and sufficient cause appearing therefore:

IT IS HEREBY FOUND that:

A.     Debtors filed voluntary petitions for relief under subchapter v of Chapter 11 of the Bankruptcy Code on November 23, 2021 (the "Petition Date"), and thereafter Debtors have continued in the management and possession of their businesses and property as debtors-in-possession.

B.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' Chapter 11 Cases in this district and division is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), in which the Court may enter a final order.

C.     Notice of the Interim Hearing on the Motion is adequate and sufficient under the particular circumstances, for purposes of Sections 102(1), 105, 361, and 363 of the Bankruptcy

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion [Docket #3].

Code and Rules 2002, 4001, 9007, 9013, and 9014 of the Bankruptcy Rules and other applicable law and rules of Court.

D.     In order to maintain and preserve the assets and to maximize the value of the potential sale, MWDC needs to expend funds as set forth in Budget attached hereto as <u>Exhibit A.</u>

E.     Debtors assert that Instantiation is the only lender prepared to provide financing to MWDC. Instantiation is willing to advance a loan not to exceed a maximum amount of $350,000 to MWDC (the "<u>DIP Loan</u>") pursuant to the terms of the Debtor in Possession Loan and Security Agreement attached as <u>Exhibit B</u> (the "<u>Loan Agreement</u>"), and a promissory note in the form attached as <u>Exhibit C</u> (collectively, the "Loan Documents"), which in general: (i) provide financing to MWDC in the amount of $350,000; (ii) allow the Debtors to have the cash necessary to operate their businesses; and (iii) grant Instantiation a superpriority administrative expense claim; and (iv) grant Instantiation security in MWDC's Collateral (as defined in the Loan Agreement), which security is: (a) subject to a Carve Out (as defined in the Loan Agreement) for certain administrative fees and expenses, including fees and expenses for the Debtors' professionals and the subchapter v Trustee; and (b) subordinate and junior in right of payment to the Avnet Secured Claim.

F.     The Debtors' need for financing is immediate. In the absence of the DIP Loan, the Debtors would not be able to consummate the proposed sale, and serious and irreparable harm to the Debtors and their estates would occur.

G.     Given the Debtors' current financial condition, financing arrangements and capital structure, the Debtors cannot obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is not otherwise available without: (i) granting, pursuant to Section 364(c)(1) of the Bankruptcy Code, a claim having priority over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(b) of the Bankruptcy Code and otherwise; and (ii) securing, pursuant to Section 364(c)

3

and (d) of the Bankruptcy Code, such indebtedness and obligations with security interests in and liens on the Collateral as provided below and in the Loan Documents.

H.     The Lender is willing to provide the DIP Loan subject to the conditions set forth herein and in the Loan Documents, including, without limitation, execution by MWDC of the Promissory Note and Loan and Security Agreement attached the Motion, and pursuant to the provisions of this Order, assuring that the Post-Petition Liens (as defined hereinafter) and the various claims, superpriority claims and other protections granted pursuant to this Order and the DIP Loan will not be affected by any subsequent reversal or modification of this Order or any other order which is applicable to the DIP Loan, as provided in Section 364(e) of the Bankruptcy Code.

I.     The proposed DIP Loan is subject to, and Lender is entitled to the benefits of, Section 364(e) of the Bankruptcy Code.  The terms of the Loan Documents between MWDC and Lender pursuant to which the DIP Loan and other credit accommodations may be made or provided to Debtor by Lender were negotiated in good faith and at arm's length, within the meaning of Section 364(e) of the Bankruptcy Code, and such terms and agreements are in the best interests of the Debtors, their creditors and their estates.

J.     A critical need exists for MWDC to borrow funds under the provisions of the DIP Loan.  Without working capital available, the Debtors will be unable to meet the expenses needed to preserve and maintain property of the estate and prepare the property for the pending sale in a manner that will avoid irreparable harm to the Debtors' estate and creditors.  At this time, the Debtors have no ability to finance their operations and insufficient working capital to preserve and maintain their businesses.

K.      Debtors assert that they are unable to obtain replacement financing in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code.

L.      Debtors request immediate entry of this Interim Order pursuant to Rule 4001(c)(2) so that MWDC may use the proceeds of the DIP Loan from the Petition Date through the earlier of December 23, 2021or such time as the Court can conduct a Final Hearing (defined below) and enter a final order approving the DIP Loan (the "Interim Period").

**IT IS HEREBY ORDERED**:

1.      The Motion is **GRANTED** on an interim basis, to the extent set forth herein.

2.      The DIP Loan is hereby approved on an interim basis, and MWDC is expressly authorized, empowered and directed to execute and deliver the Loan Documents and all other documents and to perform its obligations hereunder and thereunder in accordance with, and subject to, the terms of this Order and the DIP Loan.  MWDC is hereby authorized and directed to pay the fees and other expenses described in the DIP Loan as such become due.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan shall constitute a valid and binding obligation of MWDC, enforceable against MWDC in accordance with its terms.

3.      From and after the Petition Date through the expiration of the Interim Period (as defined herein) and subject to the terms and conditions of this Order and the DIP Loan, MWDC is hereby authorized to borrow funds pursuant to the terms and provisions of the DIP Loan and this Order, up to the principal amount of $350,000, with up to $279,030 during the Interim Period, which is the total amount of projected expenses per the DIP Budget for November-December, 2021, with the expectation that draw requests by MWDC will be reduced by amounts actually collected from customers during this period.

4. As security for all loans, advances and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by MWDC to the Lender under the Loan Documents or hereunder, including, without limitation, all principal and accrued interest, costs, fees and expenses (the "DIP Obligations") MWDC is hereby authorized and directed to grant to the Lender, valid, binding, enforceable and perfected liens (the "DIP Liens") pursuant to Section 364(c)(2) of the Bankruptcy Code as follows: a perfected first-priority security interest in and lien against the Collateral (as defined in the Loan Documents) that is: (i) subject to the Carve Out; (ii) subordinate and junior in right of payment to the Avnet Secured Claim; and (iii) subordinate to any pre-petition mechanic's lien, artisans' liens, or tax liens, to the extent any such liens exist.

5. The automatic stay of Section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit Instantiation to receive, collect and apply payments and proceeds with respect to the Collateral and to execute and record security agreements and loan documents executed in accordance with the terms and provisions of this Order and the DIP Loan.

6. The Lender shall have no obligation to make any loan or advance under the DIP Loan unless the conditions precedent to the making of such loan or advance set forth in the Loan Documents are satisfied.

7. Instantiation's security interests and liens in the Collateral shall: (i) at all times be senior to the rights of the Debtors; and (ii) be subordinate only to the Carve Out, Avnet Secured Claim, and any pre-petition mechanic's lien, artisans' liens, or tax liens, to the extent any such liens exist. The security interests and liens granted to Instantiation herein shall not be made on a parity with, or subordinated to, any other security interest or lien, except as provided in this Order and except for valid, perfected and unavoidable prepetition liens, the priority of which shall not be changed or affected by this Order. To the extent that they are senior and first priority as of the

6

Petition Date, Instantiation's security interests, liens, and mortgages in the Collateral shall at all times remain senior and first priority.

8.      A "Carve Out" may be taken from the Collateral for: (i) the payment of fees and expenses of professionals retained by Debtors up to an aggregate amount not to exceed $150,000; (ii) fees payable to the subchapter v trustee up to an aggregate amount not to exceed $50,000; and (iii) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), if any.

9.      If Instantiation hereafter requests MWDC to execute and deliver to Instantiation financing statements or other instruments or documents considered by Instantiation to be necessary or desirable to further evidence the perfection of the liens and security interests granted in this Order, MWDC is hereby authorized and directed to execute and deliver those financing statements, instruments, and documents.  Instantiation may, in its sole discretion, file financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded as of the Petition Date.

10.      Subject to the applicable provisions of the Bankruptcy Code and except for the Carve Out, no costs or expenses of administration that have been or may be incurred in these proceedings, or in any conversion of these proceedings pursuant to Section 1112 of the Bankruptcy Code or otherwise, or in any other proceedings related thereto, and no priority claims are or will be prior to or on a parity with the claims of Instantiation against MWDC or any successor debtor in possession or trustee or with the security interests and liens of Instantiation upon the Collateral.

11.      During the term of this Order, the Debtors shall provide to Instantiation, the subchapter v Trustee, and counsel for the United States Trustee: (i) copies of the monthly operating

reports filed in these cases; (ii) reasonable priority access to the Debtors' books, records and management personnel; and (iii) such other items as agreed or as required by the Court.

12.     Nothing contained herein shall create or limit the rights of Instantiation to: (i) seek relief from the automatic stay of Section 362 of the Bankruptcy Code at any future time; (ii) request a conversion of any or all of the Debtors' Chapter 11 cases to Chapter 7 or the appointment of a trustee or an examiner under Section 1104 of the Bankruptcy Code; or (iii) take any other action allowed under the Bankruptcy Code.  No stipulations set forth herein shall be binding on any party other than the Debtors and any successor Chapter 7 or 11 trustees to the extent legally permissible.

13.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified as to Instantiation to the extent necessary to implement the terms of this Order.

14.     The Debtors shall not seek or consent to, directly or indirectly any modification, stay, vacation or amendment to this Order.

15.     MWDC shall indemnify and hold harmless the Lender and its respective shareholders, directors, agents, officers, subsidiaries and affiliates, successors and assigns from and against any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages and reasonable expenses of every nature and character arising out of the DIP Loan or the transactions contemplated thereby, pursuant to the terms of the Loan Documents and as further described therein.

16.     The provisions of this Order shall be binding upon and inure to the benefit of the Lender and the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) whether in these Chapter 11 Cases, in any subsequent cases under Chapter 7 of the Bankruptcy Code or upon dismissal of any such Chapter 11 or Chapter 7 case.

8

17. Based on the findings set forth in this Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the Loan Documents contemplated by this Order, in the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any Lien or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Lender hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order, and the Lender, as the case may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the Postpetition Liens and Super Priority Claims granted herein, with respect to any such claim.

18. **NOTICE IS HEREBY GIVEN that a FINAL hearing is scheduled for December 9, 2021 at 10:00 a.m.** (the "**Final Hearing**") with the Honorable Russ Kendig, United States Bankruptcy Judge. The Final Hearing will be conducted **telephonically** in the Bankruptcy Courtroom at the Ralph Regula Federal Building and U.S. Courthouse, 401 McKinley Ave SW, Canton, Ohio 44702, **Dial In: (888) 684-8852; Access Code: 3303949#.**[3] Any creditor or other party in interest who objects to the entry of a further order on the Motion, or who objects to the terms and provisions of a final Order, shall file and serve a written indication of same containing a showing of good cause therefor, upon counsel for the Debtors, Instantiation, the Office of the United States Trustee, and the subchapter v Trustee not later than **Noon** on **December 8, 2021.**

---

[3] For further details on telephonic participation, please refer to Judge Kendig's Notice of Telephonic Hearing Procedure, dated March 18, 2020, at https://www.ohnb.uscourts.gov/sites/default/files/memoranda/telephonic-hearing-procedure-31820.pdf

9

19.     The Debtors shall serve a copy of this Order upon the Notice Parties, which shall constitute adequate and sufficient notice of the Final Hearing for all purposes under applicable law and rules of Court, within two (2) business days after entry of this Order.

# # #

SUBMITTED BY:

/s/Julie K. Zurn
Marc B. Merklin (0018195)
Julie K. Zurn (0066391)
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@brouse.com

*Proposed Counsel for Debtors
and Debtors in Possession*

**EXHIBIT A**
(Budget)

| Item | November | December | January | Line Total |
|---|---|---|---|---|
| Everstream | $ 7,000.00 | $ 7,000.00 | $ 7,000.00 | $ 21,000.00 |
| Employees | $ 26,351.00 | $ 52,702.03 | $ 52,702.03 | $ 131,755.06 |
| Rent-8050 | | $ 60,886.14 | $ 60,886.14 | $ 121,772.28 |
| Utilities-Grant | | $ 10,000.00 | $ 10,000.00 | $ 20,000.00 |
| AEP | | $ 110,000.00 | $ 110,000.00 | $ 220,000.00 |
| Business Ins-Cincinnati | | $ 5,088.00 | $ 5,088.00 | $ 10,176.00 |
| Sub V Trustee* | | | | $ 50,000.00 |
| Debtors Professionals* | | | | $ 150,000.00 |
| AEP Deposit | | | $ 25,000.00 | $ 25,000.00 |
| | | | | |
| Total Operating Cost | | | | $ 749,703.34 |
| Total to Collect from Customers | | $ 172,130.00 | $ 172,130.00 | $ 344,260.00 |
| Total Shortage | | | | $ 405,443.34 |

**EXHIBIT B**
(Loan & Security Agreement)

## AMENDED AND RESTATED LOAN AND SECURITY AGREEMENT

THIS AMENDED AND RESTATED LOAN AND SECURITY AGREEMENT (**"Agreement"**), dated as of December 1, 2021, is between The Midwest Data Company LLC, an Ohio limited liability company (**"Borrower"**), and Instantiation LLC, a Delaware limited liability company (**"Lender"**). Lender and Borrower are referred to herein individually as a "**Party**" and, collectively, as the "**Parties**".

## RECITALS

**WHEREAS**, Borrower and Squirrels Research Labs LLC ("**SQRL**") commenced voluntary petitions for relief (the "**Bankruptcy Case**") under subchapter V (§§ 1181-1195) of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Norther District of Ohio, Canton Division (the "**Bankruptcy Court**");

**WHEREAS**, upon filing the Bankrtupcy Case, Borrower (a) became a debtor-in-possession under title 11 of the Bankruptcy Code, and (b) requires post-petition financing, without which it will suffer immediate and irreparable harm, for additional working capital to fund its operations;

**WHEREAS**, Lender is willing to advance a loan not to exceed a maximum principal amount of $350,000 to Borrower pursuant to the terms of this Agreement and the other Loan Documents (the "**DIP Loan**");

**WHEREAS**, any Advances made under this Agreement shall be evidenced by a promissory note of even date herewith made by Borrower in favor of Lender in the original principal amount of $350,000 (as amended, restated, supplemented, modified, extended, or renewed from time to time, the "**Note**"), and such other documents, agreements, filings and instruments required by the Lender in Lender's sole and absolute discretion (collectively with this Agreement, the "**Loan Documents**");

**WHEREAS**, other than the financing pursuant to the post-petition financing proposed hereunder, Borrower has been unable to obtain additional needed unsecured credit, allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code, or sufficient secured credit secured by a junior security interest on encumbered property of the estate under § 364(c)(3) of the Bankruptcy Code, or a senior security interest on unencumbered property of the estate under § 364(c)(2), and Borrower believes that it cannot obtain credit from any other lender on terms better than those set forth in this Agreement;

**WHEREAS**, Borrower, in order to satisfy their need for post-petition financing, desires to borrow up to $350,000 and obtain Advances from Lender, which Advances shall be made pursuant to the terms of this Agreement and the other Loan Documents;

**WHEREAS**, on November 22, 2021, Borrower, SQRL, and Lender entered into an Asset Purchase Agreement (the "**APA**") pursuant to which the Lender has agreed to acquire, and Borrower and SQRL have agreed to sell, subject to the terms and conditions of the APA, the Acquired Assets;

**WHEREAS**, contemporaneous therewith, Borrower, SQRL, Avnet, Inc., a New York corporation ("**Avnet**"), and Lender entered into an Account Settlement and Sale Support Agreement (the "**Support Agreement**"); and

**WHEREAS**, on November 22, 2021, Borrower and Lender entered into a Loan and Security Agreement (the "**Original LSA**"); and

**WHEREAS**, Borrower and Lender desire to amend and restate the Original LSA, pursuant to Section 20 of the Original LSA, in its entirety on the terms and subject to the conditions set forth herein.

## AGREEMENT

NOW THEREFORE, the parties enter into the following agreement:

1. <u>Recitals; Defined Terms</u>.

    1.1. The foregoing recitals are incorporated herein by reference.

    1.2. *Certain Definition*.

    1.2.1. "**Collateral**" means all of the property, assets or interests in property or assets of Borrower of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including all property of Borrower's bankruptcy estates (within the meaning of the Bankruptcy Code), including all causes of action, accounts, inventory, chattel paper, contract rights, instruments, documents, general intangibles (including all intellectual property, copyrights, deposit accounts, licensing agreements, patents, trademarks and trade names), machinery and equipment, real property, leases, cash, bank accounts and other investment property (but specifically excluding all causes of action arising under chapter 5 of the Bankruptcy Code, related state court provisions incorporated through chapter 5 of the Bankruptcy Code ("**Avoidance Claims**"), and the proceeds of Avoidance Claims) together with all proceeds, rents, products and profits of any of the foregoing. For the avoidance of doubt, the Insurance Claims shall be deemed to constitute Collateral.

    1.2.2. "**Petition Date**" means the date on which Borrower and SQRL file the Bankrtupcy Case with the Bankrtupcy Court.

    1.2.3. Other capitalized terms used but not defined herein shall have the meanings ascribed thereto in (a) the APA or (b) the Delaware Uniform Commercial Code.

2. <u>Loan Advances</u>.

    2.1. Subject to the provisions of Section 11, Lender shall make advances (each such extension of credit being herein called an "**Advance**" and collectively, the "**Advances**") to Borrower under the DIP Loan up to the principal amount of $350,000. Interest of 10% per annum (the "**Interest Rate**") shall be charged against Advances, calculated on the basis of a 360-day year and actual days elapsed. Advances may be made at any time and from time to time upon no less than five Business Days prior notice; provided that Lender shall not be required to make any Advance that is less than $10,000 and the aggregate of all Advances under this Agreement shall in no event exceed $350,000. Borrower shall repay all outstanding Advances, together with interest accrued at the Interest Rate, upon maturity of the DIP Loan. Lender shall make available the entire principal balance of $350,000

during the term of this Agreement consistent with the Budget so long as an Event of Default has not been declared.

2.2. There is no prepayment penalty for any payment of principal under the DIP Loan. All payments on the DIP Loan shall be applied first to accrued interest, then to any cost or expenses owed to Lender and then the remainder to the principal balance of the DIP Loan. Borrower may prepay any portion or all of the DIP Loan but may not make a partial prepayment of less than $10,000. Amounts prepaid may not be reborrowed.

2.3. Lender shall keep a record of the payments made under this Agreement and the Note on its books which records shall be prima facie evidence of the amounts paid under this Agreement and the Note absent manifest error.

2.4. Borrower shall make all payments due to Lender in lawful money of the United States, in immediately available funds.

2.5. Whenever any payment due under this Agreement or the other Loan Documents shall fall due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall be included in the computation of interest or fees, as the case may be.

2.6. Upon the occurrence of and during the continuance of an Event of Default, all amounts unpaid under this Agreement and the other Loan Documents shall bear interest at a default interest rate equal to the Interest Rate plus 5% per annum (such sum, the "**Default Rate**"). Interest shall continue to accrue at the Default Rate, and continue to be paid even after default, maturity, acceleration, the entry, recording or obtaining of a judgment against Borrower, bankruptcy or proceeding of any kind or nature.

2.7. If any term or provision of this Agreement or any other Loan Document is in conflict with applicable usury law, this Section 2.7 governs as to such term or provision, and this Agreement and the other Loan Documents remain in all other respects in full force and effect. If any transaction contemplated by this Agreement and the other Loan Documents would be usurious, the aggregate of all consideration that constitutes interest under applicable law that is contracted for, charged, or received under this Agreement and the other Loan Documents shall not exceed the maximum interest allowed by applicable law. Accordingly, if interest in excess of the legal maximum is contracted for, charged, or received: (a) this Agreement and the other Loan Documents shall be reformed automatically so that the effective rate of interest is reduced to the maximum rate of interest permitted by applicable law, (b) for the purpose of determining the maximum rate and to the extent permitted by applicable law, all interest contracted for, charged, or received shall be amortized, prorated, and spread throughout the full term of this Agreement and the other Loan Documents so that the effective rate of interest is uniform throughout the life of this Loan Agreement and the other Loan Documents, and (c) any excess of interest over the maximum amount allowed under applicable law shall be applied as a credit against the then unpaid principal amount of the Note.

3. <u>Loan Documents</u>. Any Advances made hereunder shall be subject to the terms of this Agreement, the Loan Documents, and any applicable order of the Bankruptcy Court approving the DIP Loan.

4. <u>Lender Records</u>. The amount of each Advance shall be recorded on the books and records of Lender, and such record shall constitute proof of such Advance, and shall be admissible in evidence on such issue.

5. <u>Borrower's Business Operations</u>. Borrower shall operate its business pursuant to the budget attached to the final DIP Order as <u>Exhibit A</u> (the "**Budget**"), and may use the Advances for the purposes described in and up to the amounts listed in the Budget (or according to deviations from the Budget expressly approved by Lender in writing) solely for the working capital and general corporate purposes of Borrower and payment of costs of administration of the Bankruptcy Case. The aggregate actual disbursements by Borrower measured on a rolling cumulative four-week basis shall be no greater than 105% of the aggregate amount of projected disbursements for such four-week period as set forth in the Budget. During the term of this Agreement, Borrower shall conduct its business in compliance with Section 5.1 of the APA.

6. <u>Reimbursement of Expenses</u>. Borrower agrees to reimburse Lender for its reasonable legal fees and expenses incurred in connection with documenting, negotiating, implementing and enforcing the DIP Loan, payable out of Advances, if elected by Lender. Alternatively, Lender may require that Borrower reimburse these sums to Lender within ten (10) Business Days following written demand for payment.

7. <u>Grant of Superpriority Administrative Expense Claim and DIP Liens</u>.

   7.1. As security for repayment of the DIP Loan, Borrower hereby grants and Lender shall have the following: (a) a superpriority administrative expense claim for Advances, pursuant to §364(c)(1) of the Bankruptcy Code ("**Superpriority Claim**") and (b) a fully perfected, first priority security interest in and lien under §364(c)(2) of the Bankruptcy Code on all Collateral. The liens granted under clause (b) herein shall be referred to as the "**DIP Liens**". Any Superpriority Claim and DIP Liens shall be subordinate only to the Carve Out. For the avoidance of doubt, the Superpriority Claim shall not be payable from proceeds of Avoidance Claims, and the DIP Liens shall not attach to the Avoidance Claims or proceeds thereof. The DIP Liens and the perfection thereof shall be effective by entry of the DIP Order and can be further evidenced and accomplished by a security agreement executed by Borrower and the filing of such UCC-1 Financing Statements and such other instruments, filings and actions as Lender determines to be necessary or appropriate in order to properly grant and perfect such security interests under applicable law and to otherwise protect Lender.

   7.2. For the avoidance of doubt, the security interest granted by this Agreement also secures future advances on the DIP Loan.

   7.3. Borrower authorizes Lender to file financing statements, financing statement addenda, continuation statements and financing statement amendments in such form and in such

filing offices as Lender may require to perfect or to preserve, maintain or continue the perfection of the security interest in the Collateral and its priority. Borrower further agrees to execute and deliver to Lender, or to cooperate with Lender in obtaining from any third party, upon Lender's request, any control agreement, acknowledgment of bailment, or other document Lender may request in order to perfect or to preserve, maintain, or continue the perfection of any security interest in the Collateral granted to Lender and its priority. Borrower shall pay the out-of-pocket costs of filing any financing statement, financing statement addendum, continuation statement or termination statement as well as any recordation or transfer tax required by law to be paid in connection with the filing or recording of any such document and such costs may, at Lender's election, be drawn from an Advance. A carbon, photographic, or other reproduction of this Agreement is sufficient as a financing statement. Borrower shall not file any amendments, correction statements or termination statements concerning the Collateral without the prior written consent of Lender.

7.4. Borrower authorizes Lender to request other secured parties of Borrower to provide such accountings, confirmations of collateral and confirmations of statements of account concerning Borrower as Lender may require. Borrower hereby appoints Lender or any officer of Lender as Borrower's attorney in fact for purposes of endorsing Borrower's name on any such requests to be delivered to other secured parties of Borrower, which power of attorney is coupled with an interest and irrevocable.

8. <u>Carve Out</u>. The DIP Liens shall be subject to the following carve out expenses (the "**Carve Out**"):

8.1. fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6);

8.2. up to an aggregate of $50,000 fees payable to the Subchapter V Trustee pursuant to 28 U.S.C. § 1183; and

8.3. up to an aggregate of $150,000 for all claims of the respective retained professionals of Borrower whose retention is approved by the Bankruptcy Court during the Bankruptcy Case pursuant to Sections 327 and 328 of the Bankruptcy Code (collectively, the "**Retained Professionals**") for fees and expenses which were incurred at any time on and after the Petition Date and before the Termination Date; provided that, in each case, such fees and expenses of the Retained Professionals are (i) expressly set forth in the Budget and (b) ultimately allowed on a final basis by the Bankrtupcy Court under sections 328, 330 and 331 of the Bankruptcy Code (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses).

For the sake of clarity, in the event the DIP Loan is terminated, or there are insufficient funds to repay the DIP Loan in full, the Carve Out shall not be subject to recovery by the Lender.

9. <u>Subordination</u>. Notwithstanding anything herein or in any other Loan Document to the contrary, this Agreement, the other Loan Documents and the obligations of the Borrower (and the rights of the Lender) hereunder and thereunder are subordinate and junior in right of

payment to the Avnet Secured Claim. Avnet, as holder of the Avnet Secured Claim, is intended to be a third party beneficiary of this Section 9. No amendment or modification of the provisions of this Section 9 shall be effective without the prior written consent of Avnet.

10. <u>Termination Date</u>. This Agreement shall terminate upon the earliest of: (a) the expiration of ten (10) Business Days following written notice from Lender to Borrower of the occurrence of any material breach by (i) Borrower of the terms of this Agreement, any other Loan Document, the APA, or the Support Agreement, including, for the avoidance of doubt, any Event of Default, (ii) SQRL of the terms of the APA or the Support Agreement; (b) the closing of a sale of all or substantially all of the assets of Borrower and SQRL pursuant to a sale under Section 363 of the Bankruptcy Code in compliance with the terms of the APA; (c) the effective date of a confirmation of Borrower's plan of reorganization in connection with the Bankrtupcy Case; (d) the conversion of Borrower's bankruptcy case from a case under subchapter V of Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; (e) the dismissal of Borrower's bankruptcy case, (f) appointment of a Chapter 11 trustee in Borrower's case, or (g) February 28, 2022 (the earliest such event or date, referred to herein as the "**Termination Date**").

11. <u>Effect of Termination</u>. If this Agreement is terminated pursuant to Section 10, except upon the effective date of a confirmed plan of reorganization, Lender shall have a right to seek relief from the automatic stay on shortened notice, with a hearing on such relief to be held with fourteen (14) Business Days' notice from the Lender to Borrower seeking such relief. In addition, if this Agreement is terminated pursuant to Section 10, (i) Lender shall automatically have no further obligation to Borrower other than in connection with the subordination of its lien and priority claim to the Carve-Out if not previously funded, (ii) any Advances then outstanding shall be immediately due and payable upon Lender's written notice that such termination has occurred, (iii) and, except as otherwise provided in this Agreement, Lender shall be permitted to pursue any and all available rights and remedies against Borrower and the Collateral.

12. <u>Conditions to Advances under this Agreement</u>. Each Advance by Lender to Borrower under this Agreement and the Note shall be subject to the following conditions precedent:

   12.1.    The DIP Financing Order (as such term is defined in the Support Agreement), in form and substance satisfactory to Lender in respect of the approval of the DIP Loan and creation of the court-ordered super priority claims and security interests provided for herein shall have been made by the Bankruptcy Court.

   12.2.    No Event of Default shall have occurred or be continuing.

   12.3.    The Termination Date shall not have occurred.

   12.4.    Execution, delivery, and continued effectiveness of the APA and all Loan Documents.

13. <u>Binding Effect</u>. This Agreement shall be binding upon Borrower and Lender, their respective successors, assigns and heirs, including any subsequent trustee for Borrower in reorganization

or otherwise, and shall inure to the benefit of Borrower, Lender and their respective successors, assigns and heirs except that Borrower may not assign or transfer their rights hereunder without the express prior written consent of the Lender, which may be granted or withheld in the sole discretion of the Lender. The terms of this Agreement and the other Loan Documents shall be valid and enforceable obligations of Borrower jointly and severally, and all such obligations and the security interests, liens, rights and privileges granted to Lender survive the termination of this Agreement, the appointment of a trustee for Borrower in reorganization or otherwise, conversion of the bankruptcy cases to cases under Chapter 7, and the confirmation of a subchapter V of Chapter 11 plan of reorganization. If any or all of the provisions of this Agreement are hereafter modified, vacated, or stayed by subsequent agreement, such action shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority or claim agreed to herein with respect to the obligation arising in the Loan Documents incurred by Borrower prior to the effective date of such subsequent agreement.

14. <u>Reasonableness of Terms</u>. The terms of the DIP Loan are fair and reasonable, were negotiated by the Parties at arm's length and in good faith, and are the best terms available to Borrower under present market conditions and Borrower's financial circumstances. Any credit extended under the DIP Loan by Lender is extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

15. <u>Representations and Warranties</u>. It is acknowledged that each Party has read this Agreement, the other Loan Documents, and the APA and has consulted counsel, or knowingly chose not to consult counsel, before executing the same; each Party has relied upon their own judgment and/or that of their counsel in executing this Agreement, the other Loan Documents, and the APA, and has not relied on or been induced by any representation, statement or act by any party that is not referred to in this Agreement, the other Loan Documents, or the APA; each Party enters into this Agreement, the other Loan Documents, and the APA voluntarily, with full knowledge of its significance; and this Agreement is in all respects complete and final. Borrower represents and warrants to the Lender that: it is a limited liability company duly incorporated, organized and validly existing under the laws of its jurisdiction of incorporation; it has all requisite power and authority to enter into and perform its obligations hereunder; and its execution and delivery of this Agreement, the other Loan Documents, and the APA, and the performance of its obligations hereunder and thereunder have been duly authorized by all necessary action.

16. <u>Covenants by Borrower</u>. Borrower covenants and agrees that:

    16.1.     it shall comply with all laws, rules, regulations and orders applicable to it and its assets except as prohibited under the Bankruptcy Code or other applicable laws;

    16.2.     it shall maintain in good standing at all times all insurance coverage as is customarily carried by companies which are engaged in the same or similar business to the business of Borrower or as may be reasonably required by the Lender; and

    16.3.     ; and

16.4.      it shall permit the Lender, its representatives and agents, to have access, during normal business hours and subject to reasonable time, to its books, records, property and premises.

17. <u>Reporting Covenants</u>. Borrower shall deliver to the Lender by 5:00 p.m. (PT) on Tuesday of each week starting with the first Tuesday following the date of this Agreement:

17.1.      line-by-line variance reports (in form and scope reasonably acceptable to the Lender) by week for the immediately preceding weekly period and on a cumulative basis from the beginning of the Budget period comparing actual cash disbursements to cash disbursements forecasted in the Budget for such period on a line-by-line basis. The variance report will include explanations of any variances of 5% or greater;

17.2.      written update on the progress of and efforts of Borrower's activities related to the sale of the Acquired Assets and Borrower's and SQRL's compliance with the term of the APA, including, but not limited to a listing of parties to be contacted, those contacted, who has expressed interest, which ones have executed a non-disclosure agreement, what materials were sent to each party and next steps in the process and data room usage reports;

17.3.      prompt notice of any breach of covenant or other obligation of Borrower under or in connection with this DIP Loan (including, for the avoidance of doubt, any breach of the terms of the Loan Documents or the APA by Borrower, SQRL, or any of their respective Affiliates);

17.4.      promptly, upon receipt, copies of all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of Borrower with the Bankruptcy Court; and

17.5.      such further reports and information as Lender may reasonably request from time to time.

18. <u>Events of Default</u>. The occurrence of any one or more of the following events shall constitute an Event of Default which can be declared by Lender in writing:

18.1.      The non-payment by Borrower or SQRL of any costs, or any other amount due under this Agreement, the other Loan Documents, or the APA, or the failure or Borrower or SQRL to perform as required under the Loan Documents or the APA (whether monetary or non-monetary in nature), in each case, to the extent such non-payment or non-performance is not cured by Borrower and/or SQRL within three (3) Business Days' notice thereof;

18.2.      Any expenditures in excess of the amount allocated to such item under the Budget;

18.3.      The entry of any Bankruptcy Court order that adversely affects the DIP Loan or Lender's rights, remedies, liens, priorities, benefits and protections under any or all of the Bankruptcy Court orders or the DIP Loan. In the event of a dispute regarding the

materiality of the adverse effect of such order, the Bankruptcy Court shall determine the dispute through a motion and an adversary proceeding will not be required;

18.4.     Breach by Borrower of any of the covenants set forth in Section 16 or Section 17, in each case, to the extent such non-payment or non-performance is not cured by Borrower within three (3) Business Days' notice thereof;

18.5.     Borrower seeks or consents to any other plan of reorganization or liquidation or any other plan of arrangement;

18.6.     Borrower incurs any senior indebtedness after the date hereof; or

18.7.     Borrower merges, amalgamates, consolidates, reorganizes, or sells any assets or licenses any technology outside of the ordinary course of business, unless expressly approved by the Bankruptcy Court.

Upon the occurrence of an Event of Default and at all times after the Termination Date, any right of Borrower to receive any Advance or other extension of credit from the Lender shall be immediately terminated, and further Advances or extensions of credit (if any) made thereafter shall be in the sole and absolute discretion of Lender.  Upon the occurrence of an Event of Default amounts owed by Borrower to the Lender shall become immediately due and payable, and Lender shall have the right to exercise all remedies under applicable law, including, without limitation, the right to realize on all Collateral.

19. <u>Indemnification</u>.  Subject to Bankrtupcy Court approval, Borrower shall indemnify, defend with counsel acceptable to Lender and hold harmless Lender, its affiliates and its officers, directors, managers, members, employees, agents, attorneys and advisors (each, an "**Indemnified Person**") from and against any and all suits, actions, proceedings, orders, claims, damages, losses, liabilities and expenses (including legal fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or asserted against or incurred by any such Indemnified Person as a result of or in connection with credit having been extended, suspended or terminated under or in relation to the DIP Loan, or the use of the proceeds thereof, and the administration of such credit, and in connection with or arising out of the transactions contemplated hereunder and any actions or failures to act in connection therewith, including the taking of any enforcement action by Lender and its representatives, and including any and all environmental liabilities and legal costs and expenses arising out of or incurred in connection with disputes between or among any parties hereto, except to the extent that the suit, action, proceedings, orders, claims, damages, losses, liabilities and expenses arose directly from the gross negligence or willful misconduct of the Indemnified Person or breach of this Agreement by the Indemnified Person. All such indemnified amounts, if not immediately paid by Borrower upon demand, shall be secured by the Collateral.

20. <u>Amendment of Agreement</u>.  This Agreement shall not be amended except by a writing signed by all Parties.

21. Governing Law; Waiver of Jury Trial. Section 9.14 of the APA is incorporated herein *mutatis mutandis*.

22. Entire Agreement. This Agreement (together with the other Loan Documents and the APA) sets forth the entire agreement between the Parties, and there are no other agreements or understandings between them related to the subject matter hereof and thereof.

23. Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but such counterparts shall together constitute one and the same agreement. Execution and delivery of this Agreement by electronic exchange bearing the copies of a Party's signature shall constitute a valid and binding execution and delivery of this Agreement by such party. Delivery of an executed counterpart of the signature page to this Agreement by email, facsimile, portable document format (pdf) or any electronic signature complying with the U.S. federal ESIGN Act of 2000 (including DocuSign) shall be as effective as delivery of a manually executed counterpart of this Agreement. Such electronic copies shall constitute enforceable original documents.

24. Notices. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given or made as follows: (a) if sent by registered or certified mail in the United States return receipt requested, upon receipt; (b) if sent designated for overnight delivery by nationally recognized overnight air courier (such as Federal Express), one Business Day after delivery to such courier; (c) if otherwise actually personally delivered, when delivered; (d) if delivered by electronic mail before 5:00 p.m. (local time at the location of recipient) on a Business Day, when transmitted and receipt is confirmed; and (e) if delivered by electronic mail after 5:00 p.m. (local time at the location of recipient), when transmitted and receipt is confirmed, at 9:00 a.m. (local time at the location of recipient) on the following Business Day, provided that such notices, requests, demands and other communications are delivered to the address set forth below, or to such other address as any party shall provide by like notice to the other parties to this Agreement:

> If to Borrower:      The Midwest Data Company LLC

121 Wilbur Drive NE
North Canton, OH 44720
Attention:     David Stanfill, President
Email:          david@squirrelsresearch.com

with a copy (which shall not constitute notice pursuant to this Section 24) to:

Brouse McDowell, a Legal Professional Association
388 S. Main Street, Suite 500
Akron, OH  44311
Attention:     Marc B. Merklin
Email:          MMerklin@brouse.com

and with an additional courtesy copy (which shall not constitute notice pursuant to this Section 24) to:

United States Department of Justice
Office of the United States Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, Ohio 44114
Attention:     Andrew Vara, United States Trustee for Region 9

If to Lender:     Instantiation LLC
434 Dorado Beach E
Dorado, Puerto Rico 00646
Attention:     Sam Cassatt
Email:          sam@aligned.capital

with a copy (which shall not constitute notice pursuant to this Section 24) to:

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center
17th Floor
San Francisco, California 94111
Attention:     Jason R. Schendel and Jeannie Kim
Email:          jschendel@sheppardmullin.com
                    jekim@sheppardmullin.com

25. <u>Bankrtupcy Approvals</u>.  This Agreement is subject to Bankruptcy Court approval, upon notice and hearing as required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure of the Bankruptcy Court.

26. <u>Headings</u>. Paragraph headings in this Agreement are included herein for convenience of reference only, and shall not constitute a part of this Agreement for any other purpose.

27. <u>Lender's Approvals</u>.  Unless expressly stated to the contrary in this Agreement or the other Loan Documents, any and all matters pertaining to this loan or the making or administration thereof which require Lender's approval, consent, discretion and/or determination shall be subject to Lender's determination in its sole and absolute discretion.

28. <u>Amendment and Restatement</u>. This Agreement amends certain provisions of the Original LSA in their entirety so as to reflect and give effect to such amendments.  All amendments to the Original LSA effected by this Agreement shall have effect from the date of this Agreement, and all other covenants, agreements, terms and provisions of this Agreement, shall have effect from the date of the Original LSA.

*[Signatures on following page]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

BORROWER:                              LENDER

THE MIDWEST DATA COMPANY LLC     INSTANTIATION LLC

By: _____     By: _____
     2B7ED7B7CDB8402                         69FC3B4B32F949A
Name: David Stanfill                 Name: Sam Cassatt
Title:  Authorized Signatory         Title: Managing Member

[Signature Page to Amended and Restated Loan and Security Agreement]

**EXHIBIT C**
(Promissory Note)

PROMISSORY NOTE

Canton, Ohio

Principal Amount: $ _____                                                                          _____, 2021

FOR VALUE RECEIVED, the undersigned, The Midwest Data Company, LLC, an Ohio limited liability company ("Borrower"), hereby, jointly and severally, promises to pay to Instantiation LLC, a Delaware limited liability company (together with any successors and/or assigns, "Lender"), the principal amount of _____ and \_\_/100 Dollars ($_____) or, if less, the aggregate unpaid principal amount of Advances (as defined in the Loan Agreement) of Lender to Borrower, payable at such times and in such amounts as are specified in the Loan Agreement.

The Borrower promises to pay interest on the unpaid principal amount of the Advances represented by this Note from the date made until such principal amount is paid in full, payable at such times and at such interest rates as are specified in the Loan Agreement. Demand, diligence, presentment, protest and notice of non-payment and protest are hereby waived by Borrower, for itself and its successors and assigns.

Both principal and interest are payable in United States dollars in immediately available funds to the Lender, at the Lender's address set forth in the Loan Agreement or as otherwise directed by the Lender to the Borrower from time to time.

This Note is one of the Notes referred to in, and is entitled to the benefits of, the Loan and Security Agreement, dated as of November 22, 2021 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), between Borrower and Lender. This Note is also entitled to the benefits of the other Loan Documents and the security provided for thereby or referred to therein. Capitalized terms used herein without definition are used as defined in the Loan Agreement.

The Loan Agreement, among other things, (a) provides for the Advances made by Lender to Borrower to be evidenced by this Note, (b) contains provisions for acceleration of the maturity of the unpaid balance of the principal amount of the Advances evidenced by this Note, together with all accrued and unpaid interest and premium thereon and any costs, expenses, fees or similar amounts owing, in the manner, upon the conditions and with the effect provided in the Loan Agreement and the other Loan Documents upon the happening of certain stated events and (c) provides for prepayments on account of the principal hereof prior to the maturity of the Advances evidenced by this Note upon the terms and conditions specified in the Loan Agreement.

This Note is a Loan Document, is entitled to the benefits of the Loan Documents and is subject to certain provisions of the Loan Agreement, including Section 21 (Governing Law; Waiver of Jury Trial) thereof.

This Note is a registered obligation, transferable only pursuant to the terms of the Credit Agreement, and no assignment hereof shall be effective until recorded therein.

Section 9.14 of the APA is incorporated herein *mutatis mutandis*.

1

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered by its duly authorized officer as of the day and year and at the place set forth above.

THE MIDWEST DATA COMPANY LLC

By: _____
Name:
Title:

[DIP PROMISSORY NOTE SIGNATURE PAGE]