UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC, *et al.*[1] | ) | Case No. 21-61491 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |

## MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION SQUIRRELS RESEARCH LABS LLC FOR AN ORDER AUTHORIZING THE REJECTION OF EQUIPMENT LEASE AGREEMENTS WITH BITTWARE, INC.

Squirrels Research Labs LLC ("SQRL"), one of the above-captioned debtors and debtors-in-possession, hereby moves the Court for entry of an order authorizing SQRL to reject the Equipment Lease Agreements (defined below) with BittWare, Inc. ("BittWare"), *nunc pro tunc* to November 23, 2021 (the "Petition Date") or, in the alternative, determining the Equipment Lease Agreements with BittWare are not true leases, but are, in fact, disguised unperfected financings. In support of this Motion, SQRL respectfully represents as follows:

### JURISDICTION & VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein is section 365 of the Bankruptcy Code.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and the Midwest Data Company LLC (1213), case no. 21-61492.

1

## BACKGROUND

4. On the Petition Date, SQRL filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.

5. SQRL is operating its business as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code. Frederic P. Schwieg has been appointed as the subchapter V Trustee.

6. SQRL is an Ohio limited liability company headquartered in North Canton, OH. SQRL creates, manufactures, and repairs hardware, including Datacenter Accelerator Boards, used in cryptocurrency mining machines.

7. As of the Petition Date, SQRL was indebted to Avnet in the principal amount of $7,864,779.76 plus accrued and accruing interest, fees, costs, and other charges (including attorneys' fees and costs) (the "Avnet Claim"), as set forth in the Account Settlement and Sale Support Agreement (the "Support Agreement") by and between Avnet, the Debtors, and Instantiation, LLC. Pursuant to the Support Agreement, the parties agreed to the Avent Settlement (as defined in the Support Agreement), which, as more fully described in the Support Agreement, reduced the Avnet Claim to $5,751,000.00 and determined the amount of the Avnet Claim, pursuant to section 506 of the Bankruptcy Code, to be a secured claim in the amount of $3,000,000.00 (the "Avnet Secured Claim"). Avnet holds a blanket perfected security interest in all of SQRL's assets.

8. As part of its prepetition business operations, SQRL entered into the Equipment Lease Agreements with BittWare. Under the first agreement, effective on March 20, 2020 (the "First Agreement"), BittWare agreed to provide 500 complete accelerator boards (the "Boards") to SQRL in exchange for 36 monthly payments. A true and accurate copy of the First Agreement is attached hereto as **Exhibit A**. Under the second agreement, effective on May 29, 2020 (the

"Second Agreement"), BittWare agreed to provide 500 chips (the "Chips") meant to be assembled into accelerator boards to SQRL in exchange for 24 monthly payments. A true and accurate copy of the Second Agreement is attached hereto as **Exhibit B**.

9. The Equipment Lease Agreements expressly incorporate, and are subject to, terms and conditions supplied by BittWare's parent company, Molex, (the "Standard Terms and Conditions"), attached hereto as **Exhibit C**. The Equipment Lease Agreements, subject to the Standard Terms and Conditions, each contain the following material provisions that are hallmarks of a disguised security agreement rather than a true lease:

- SQRL is obligated to make monthly payments to BittWare for the full term of the agreement (Ex. A at 1-2; Ex. B at 1-2);
- SQRL bears the full risk of loss with respect to the Boards and Chips (Ex. A at 2-3; Ex. B at 2-3);
- SQRL is fully responsible for insuring and maintaining the Boards and Chips (Ex A at 2-3; Ex. B at 2-3);
- BittWare is authorized to file financing statements and continuation statements to protect its interest in the Boards and Chips, and SQRL agrees to provide BittWare assistance with respect to same (Ex. A at 3; Ex. B at 3);
- Title to the Boards and Chips will transfer to SQRL upon BittWare's receipt of lease payments in a certain aggregate amount (the "Title Transfer Provision") (Ex. A at 2; Ex. B at 2);
- Orders may not be cancelled or rescheduled, and goods may not be returned, without BittWare's prior written consent (Ex. C at 2);
- Either party may immediately terminate the agreement if the other party is in default that is not cured within 30 days following written notice of the default. In the event the agreement terminates due to a default, SQRL will be granted title to a certain number of units, which number is based on a set formula based in part on the total payments made by SQRL (the "Termination Provision") (Ex. A at 4; Ex. B at 4).

10. BittWare did not file a UCC-1 with the Ohio Secretary of State, nor did BittWare otherwise take action to perfect a security interest in the Boards or the Chips.

11. Prior to the Petition Date, in the ordinary course of its business operations, SQRL used the Chips and Boards to fulfill customer orders and the Chips and Boards, as such, are no longer property of SQRL. There may be a *de minimis* amount of Chips remaining in SQRL's possession, but the vast majority of the Chips and Boards were used to fulfill orders and became property of various customers. Thus, SQRL's position is that BittWare has no more than a general unsecured claim whether the Equipment Lease Agreements are true leases or disguised financings.

12. To the extent the Equipment Lease Agreements are unexpired true leases and/or executory contracts governed by section 365 of the Bankruptcy Code, SQRL seeks to reject them. It is SQRL's view, having evaluated the Equipment Lease Agreements, the ongoing costs of such agreements, and the impact on SQRL's business of the assumption or rejection of such agreements, that rejection of the Equipment Lease Agreements, *nunc pro tunc* to the Petition Date, will substantially benefit SQRL's estate.

13. Alternatively, to the extent the Equipment Lease Agreements are not true leases, but rather unperfected financing leases, SQRL seeks a determination as such, and recognition that any claim of BittWare pursuant to the Equipment Lease Agreements is at best a general unsecured claim based on its unperfected financing lease.

## BASIS FOR RELIEF REQUESTED

### *Rejection of the Equipment Lease Agreements Reflects SQRL's Sound Business Judgment*

14. Section 365(a) of the Bankruptcy Code allows a debtor to assume or reject any executory contract or unexpired lease. 11 U.S.C. § 365(a). A debtor may assume or reject an executory contract or unexpired lease if the assumption or rejection represents a reasonable exercise of business judgment. *See, e.g., Phar-Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948, 951-52 (N.D. Ohio 1997); *Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc. (In re Allied Tech.*

*Inc.*), 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982); *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 377 (2d Cir. 2008). Under the business judgment test, the debtor need demonstrate only that the assumption or rejection of the executory contract or unexpired lease will benefit the estate. *See Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 454 (N.D. Ohio 1993) ("The business judgment rule 'presumes that in making a business decision, actions have been taken on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the company.'") (citation omitted). A bankruptcy court will generally approve a debtor or trustee's choice to assume or reject an unexpired lease or executory contract under this "deferential" standard. *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652. 1658 (2019) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523, (1984)); *see, e.g.*, *In re Fashion Two Twenty, Inc.*, 16 B.R. 784, 787 (Bankr. N.D. Ohio 1982) (adopting the "less rigid" business judgment standard and affirming the debtor's rejection of onerous executory contracts).

15. SQRL, in an exercise of its sound business judgment, has determined that the Equipment Lease Agreements do not have any value for SQRL's estate. Considering the fact that most of the Chips and Boards subject to the Equipment Lease Agreements have already been utilized in the ordinary course of SQRL's business operations to fulfill customer orders, SQRL respectfully represents that rejecting the Equipment Lease Agreements is appropriate under the circumstances.

16. Courts in this jurisdiction have approved similar relief to that requested herein. *See, e.g., In re CH Liquidation Ass'n (fka In re Coshocton County Mem'l Hosp. Ass'n)*, No. 16-51552 (AMK) (Bankr. N.D. Ohio Dec. 22, 2016) [Docket No. 322] (authorizing rejection of certain executory contracts and unexpired leases); *In re QSL of Medina, Inc.*, No. 15-52722 (AMK) (Bankr. N.D. Ohio Dec. 15, 2015) [Docket No. 105] (same); *In re Bucyrus Cmty. Hosp., Inc.*, No.

10-61078 (RK) (Bankr. N.D. Ohio June 2, 2010) [Docket No. 204] (same); *In re B&C Corp., Inc.*, Case No. 09-51455 (MSS) (Bankr. N.D. Ohio June 4, 2009) [Docket No. 108] (same).

***The Court Should Authorize, But Not Direct, Rejection of the Equipment Lease Agreements Effective Nunc Pro Tunc to the Petition Date***

17. SQRL respectfully requests that the Petition Date be deemed the effective date of the rejection of the Equipment Lease Agreements. Bankruptcy courts are empowered to authorize retroactive rejection of an executory contract or unexpired lease under section 365(a) of the Bankruptcy Code when the balance of the equities favors retroactive rejection. *See, e.g., BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 02-CIV-6419, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) (concluding that a bankruptcy court may assign a retroactive rejection date when "'the principles of equity so dictate'") (citing *Thinking Machs. Corp. v. Mellon Fin. Svcs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995)); *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CH Liquidation Ass'n (In re Coshocton County Mem'l Hosp. Ass'n)*, No. 16-51552 (AMK) (Bankr. N.D. Ohio Dec. 22, 2016) [Docket No. 322] (authorizing rejection of certain executory contracts and unexpired leases *nunc pro tunc*); *In re Contech U.S., LLC*, No. 09-42392 (SWR) (Bankr. E.D. Mich. June 29, 2009) [Docket No. 645] (same). Likewise, Courts in this District have found that the equitable power under Bankruptcy Code section 105(a) also confers the authority to grant *nunc pro tunc* relief as "an appropriate remedy in furtherance of Bankruptcy Code objectives." *See Vaughn v. Meridian Nat'l Corp. (In re Ottawa River Steel Co.)*, 331 B.R. 340, 344 (Bankr. N.D. Ohio 2005) (noting *nunc pro tunc* orders are an example of the bankruptcy courts' authority to give orders and judgments antecedent and prospective effectiveness).

18. Here, the balance of equities favors authorizing SQRL to reject the Equipment Lease Agreements *nunc pro tunc* to the Petition Date. Any postponement of the effective date of rejection would cause SQRL to incur unnecessary administrative expenses under the Equipment Lease Agreements without providing any accompanying tangible benefits to the estate, given that most of the Chips and Boards have already been used in SQRL's ordinary course of business. The equities further weigh in favor of granting the relief effective as of Petition Date given the real nature of the Equipment Lease Agreements, the lack of perfection by BittWare of any security interest in the Chips and Boards, and Avnet's blanket lien on SQRL's assets.

19. The relief requested herein has been granted in other chapter 11 cases, and SQRL submits that similar relief is warranted in this case. *See*, *e.g.*, *In re GDS Express, Inc.*, Case No. 19-53034 (AMK) (Bankr. N.D. Ohio Mach 4, 2020) (authorizing debtor to reject lease agreements, to extent lease agreements were still in effect, *nunc pro tunc* to the petition date); *In re Furniture Brands International, Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013) (authorizing rejection of leases, subleases, and ancillary agreements effective *nunc pro tunc* to petition date); *In re Friendly Ice Cream Corp.*, Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (authorizing rejection of leases *nunc pro tunc* to date debtors vacated premises); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (authorizing rejection of "dark store" leases *nunc pro tunc* to petition date); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010) (entering omnibus order authorizing rejection of certain unexpired leases for closed restaurants *nunc pro tunc* to petition date); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 23, 2009) (authorizing rejection of leases *nunc pro tunc* to petition date); *In re Sun-Times Media Grp., Inc.*, Case No. 09-11092 (CSS) (Bankr. D. Del. Apr. 28, 2009) (same); *In re*

*Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008) (authorizing rejection of leases *nunc pro tunc* to petition date).

20. Thus, SQRL requests the Court, considering the equities, authorize the Debtor's rejection of the Equipment Lease Agreements effective as of the Petition Date.

***The Equipment Lease Agreements Are Unperfected Disguised Financings Rather Than True Leases, and as Such, BittWare, at Most, Has Only a General Unsecured Claim Against the Estate***

21. In the alternative, SQRL seeks a determination that the Equipment Lease Agreements are not true leases, but rather unperfected financing leases. As such, SQRL also seeks recognition that any claim of BittWare pursuant to the Equipment Lease Agreements is at best a general unsecured claim based on its unperfected financing lease.

22. In determining whether the Equipment Lease Agreements are true leases or disguised security agreements, bankruptcy courts look to the relevant state law. *Sunshine Heifers, LLC v. Citizens First Bank (In re Purdy)*, 763 F.3d 513, 519 (6th Cir. 2014) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). Here, the Equipment Lease Agreements expressly provide that they will be governed by the laws of the State of Illinois. (Ex. A at 4; Ex. B at 4).[2] Thus, Illinois law is determinative as to whether the Equipment Lease Agreements are true leases or disguised security agreements. *See*, *e.g.*, *Purdy*, 763 F.3d at 519 (parties' choice-of-law provisions in agreements directed court to look to Arizona law to determine true nature of agreements).

23. Section 1-203 of the Illinois Uniform Commercial Code (the "I-UCC") sets forth the standard for determining whether a transaction in the form of a lease is actually a security agreement. That section provides, in relevant part:

---

[2] The Standard Terms and Conditions provide that Delaware law governs; however, the Equipment Lease Agreements provide that the terms set forth in the Equipment Lease Agreements will control to the extent of any conflict with the Standard Terms and Conditions.

> (a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>
> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
>> (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>>
>> (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>>
>> (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>>
>> (4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

810 ILCS 5/1-203. "Under the bright line, per se test set out in this portion of the statute, a contract will be construed as a security interest as a matter of law if the lessee cannot terminate the agreement and any one of the four requirements is satisfied." *Mason v. Heller Fin. Leasing, Inc. (In re JLL Liquidating, Inc.)*, 341 B.R. 256, 268 (Bankr. C.D. Ill. 2006) (collecting cases). "'If the Court determines that the transaction is not a disguised security agreement *per se*, it must then look at the specific facts of the case to determine whether the 'economics of the transaction' suggest such a result.'" *Royal T. Energy, LLC v. ENGS Comm. Fin.Co. (In re Royal T. Energy, LLC)*, 596 B.R. 525, 530 (Bankr. E.D. Tex. 2019) (quoting *Banterra Bank v. Subway Equip. Leasing Corp. (In re Taylor)*, 209 B.R. 482, 484 (Bankr. C.D. Ill. 1997)).

24. In this case, SQRL was required to make monthly payments to BittWare for the right to possess and use the Chips and Boards, and this obligation was for the full term of the Equipment Lease Agreements. SQRL had no right to cancel orders or return equipment without

BittWare's consent, and SQRL's obligation to pay was not subject to termination by SQRL except upon BittWare's default. Thus, SQRL's obligation to pay was "not subject to termination" within the meaning of Section 1-203(b) of the I-UCC. *See*, *e.g.*, *Lyon Fin. Svcs., Inc. v. Ill. Paper & Copier Co.*, No. 10-C-7064, 2016 WL 147654, at *11-13 (N.D. Ill. Jan. 13, 2016) (provision giving lessee authority to terminate agreement was construed as a provision that "simply authorized a remedy for default" rather than giving purported lessee a "meaningful right of termination" for purposes of Section 1-203(b) of the I-UCC). Moreover, the original terms of the Equipment Lease Agreements were greater than the remaining economic life of the Chips and Boards, as evidenced by the fact that the Chips and Boards have already been utilized in the ordinary course of SQRL's business operations to fulfill customer orders.[3] Thus, the Equipment Lease Agreements are *per se* disguised security agreements.

25. Even if the Equipment Lease Agreements are not *per se* disguised security agreements, the "economics of the transaction" indicate such a result. *Duke Energy Royal, LLC v. Pillowtex Corp. (In re Pillowtex, Inc.)*, 349 F.3d 711, 717 (3d Cir. 2003); *In re Grubbs Const. Co.*, 319 B.R. 698 (Bankr. M.D. Fla. 2005); *Taylor*, 209 B.R. at 484. "The precise contours of the economics-of-the-transaction test are rather unclear, but courts have largely focused upon two particular factors: (1) whether the lease contains a purchase option price that is nominal; and (2) whether the lessee develops equity in the property, such that the only economically reasonable option for the lessee is to purchase the goods." *Purdy*, 763 F.3d at 520 (citations and quotation marks omitted); *cf. Pillowtex*, 349 F.3d at 719 (stating that factors relevant to evaluating economic reality include whether the purchase price is nominal, whether the lessee's aggregate payments

---

[3] Even if Section 1-203(b)(1) of the I-UCC is not satisfied, SQRL was bound to become the owner of most if not all of the equipment based on the language of either the Title Transfer Provision or the Termination Provision. (Ex. A at 2, 4; Ex. B at 2, 4). Thus, Section 1-203(b)(2) is satisfied.

have a present value equaling or exceeding the original cost of the leased property, and whether the term of the lease covers the useful life on the equipment).

26. SQRL developed equity in the Chips and Boards based on the fact that the Termination Provision expressly provides that, upon termination, SQRL will receive title to some of the Chips and Boards based in part on the number of payments made by SQRL under the Equipment Lease Agreements. In addition, the terms of the Equipment Lease Agreements extend beyond the useful lives of the Chips and Boards. Thus, the economics of the transaction indicate that the Equipment Lease Agreements are disguised security agreements.

27. The Equipment Lease Agreements are characterized as "leases" rather than security agreements. However, when determining whether a contract is a true lease or a disguised security agreement, "'substance prevails over form.'" *Lyon Fin. Svcs., Inc.*, 2016 WL 147654, at *11 (quoting *United Airlines, Inc. v. HSBC Bank, USA, N.A.,* 416 F.3d 609, 614 (7th Cir. 2005)). Here, the material provisions of the Equipment Lease Agreements are hallmarks of a disguised security agreement rather than a true lease. For example, in addition to the provisions previously discussed, the Equipment Lease Agreements provide that SQRL bears the full risk of loss with respect to the Boards and Chips, SQRL is fully responsible for insuring and maintaining the Boards and Chips, and BittWare is authorized to file financing statements and continuation statements to protect its interest in the Boards and Chips. *See*, *e.g.*, *K.L.C., Inc. v. Brookside Drug Store Inc.*, 3 B.R. 120, 123 (Bankr. D. Conn. 1980) (explaining that an agreement is indicative of a security agreement rather than a lease when the agreement, among other things, requires the lessee "to maintain the equipment at his expense," "place[s] the entire risk of loss upon the lessee," and "require[s] the lessee to join the lessor, or permit the lessor by himself, to execute a UCC financing statement"); *HPSC, Inc. v. Wakefield (In re Wakefield)*, 217 B.R. 967, 971 (Bankr. M.D. Ga. 1998) (concluding

11

that fact that "debtor bore the risk of loss or damage" indicated that "agreement was not a true lease").

28. Therefore, the Equipment Lease Agreements are unperfected, disguised security agreements. In either event, BittWare has no more than a general unsecured claim because the vast majority of the Chips and Boards were used to fulfill customer orders.

## RESERVATION OF RIGHTS

29. Nothing contained in this Motion or any actions taken by the Debtor pursuant to the relief granted in the Order is intended or should be construed as: (a) an admission as to the validity or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtor's rights to dispute any particular claims on any grounds; (c) a promise or requirement to pay any particular claims; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a waiver or limitation on the Debtor's rights under the Bankruptcy Code or any other applicable law; (f) a waiver by the Debtor of its right to assert that the Equipment Lease Agreements terminated prior to the Petition Date; or (g) a concession or evidence that the Equipment Lease Agreements have expired, been terminated, or otherwise currently are not in full force and effect.

## NOTICE

30. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for Region 9; (b) Avnet, Inc.; (c) Instantiation, LLC; (d) BittWare; (e) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (f) all parties that have appeared in this case and will automatically receive notice via the Court's ECF system.

31. No prior request for the relief sought in this Motion has been made to this or any other Court.

12

21-61491-tnap    Doc 88    FILED 12/22/21    ENTERED 12/22/21 11:36:43    Page 12 of 13

## CONCLUSION

WHEREFORE, SQRL respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit D**, granting the Motion and (a) authorizing SQRL to reject the Equipment Lease Agreements *nunc pro tunc* to the Petition Date or, in the alternative, determining the Equipment Lease Agreements with BittWare are not true leases, but are, in fact, disguised unperfected financings, and (b) granting such other and further relief as the Court may deem just and proper.

Dated: December 22, 2021

Respectfully submitted,

*/s/Julie K. Zurn*
Marc B. Merklin (0018195)
Julie K. Zurn (0066391)
BROUSE McDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@brouse.com

*Counsel for the Debtors
and Debtors-in-Possession*