# EQUIPMENT LEASE AGREEMENT

This Equipment Lease Agreement (this "**Agreement**"), is made as of March 20, 2020 (the "**Effective Date**"), by and between BittWare, Inc. ("**Lessor**"), with an address located at 45 S. Main St., Concord, NH 03301 and Squirrels Research Labs LLC ("**Lessee**"), with an address located at 121 Wilbur Drive NE, North Canton, OH 44720.  Lessor and Lessee are collectively the "**Parties**" and each a "**Party**".

## BACKGROUND

A.  Lessor is the owner of the equipment listed on <u>Exhibit A</u> attached hereto (the "**Leased Equipment**").

B.  Lessor desires to lend to Lessee, and Lessee desires to use, the Leased Equipment pursuant to the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and of the respective covenants and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  **Delivery and Use of the Leased Equipment.**

    a.  Lessor hereby leases the Leased Equipment to Lessee.

    b.  Lessor will deliver the Leased Equipment as follows: FCA Lessor's location.

    c.  Title to the Leased Equipment will at all times remain with Lessor, subject to Section 3 below.

2.  **Terms and Conditions.**  This Agreement is subject to Lessor's Standard Terms and Conditions of Sale located at the following site:

    www.molex.com/contact/terms/

    The terms set forth in this Agreement will govern to the extent of any conflict with the Standard Terms and Conditions of Sale.

    The warranty period for the Leased Equipment is 90 days following receipt of the Leased Equipment.

3.  **Payment.**

    a.  Lessee will pay to Lessor the following amounts (collectively, the "**Lease Payments**"):

        i.  During the 12 month period following the Effective Date:

            $52,083.33 per month, to be paid on the fifteenth of each month starting on the first full month

        ii.  During the second 12 month period following the Effective Date:

            $31,250, to be paid on the fifteenth of each month

        iii.  During the third 12 month period following the Effective Date:

In the event that Lessee's net revenue from operation of Leased Equipment exceeds $2.00 per day on average for any given month, Lessee will pay $3,250 for such month. This amount shall be doubled for each $2 per day net revenue achieved. Such amount will be paid on the 15th of every month.

<u>Example</u>: $4-5.99 per day net revenue yields $13 per unit of Leased Equipment per month, $6-7.99 per day net revenue yields $19.50 per unit of Leased Equipment per month, and so on.

    b.    Lessee will pay to Lessor a fee of 1.5% per month for any delay in making the payments listed above.

4. **Title Transfer.**

    a.    Lessor will be deemed to have sold, conveyed and transferred to Lessee, and Lessee will be deemed to have purchased and accepted, all right, title and interest in and to the Leased Equipment upon Lessor's receipt of $1,000,000 of Lease Payments in the aggregate.

    b.    Such transfer will be automatic without any additional action by either Party.

5. **Location and Identification of Leased Equipment**.

    a.    The Leased Equipment will be held by Lessee pursuant to this Agreement at its facility located at 8050 Freedom Avenue, Suite B, North Canton, Ohio 44720 (the "**Location**"). Lessee must not, except as contemplated by this Agreement, move, or permit to be moved, the Leased Equipment to any other location. In the event Lessee desires to relocate the Leased Equipment to a new location permitted by Lessor, such relocation will be at Lessee's sole cost and risk.

    b.    Lessee will (i) segregate the Leased Equipment from any other equipment and inventory, (ii) indicate Lessor's retention of title to the Leased Equipment on all books and records relating thereto, and (iii) maintain a current list of all Leased Equipment in a form reasonably satisfactory to Lessor.

    c.    Lessee will provide Lessor, at Lessor's request, access during normal business hours to and the right to inspect the Leased Equipment and all books and records related thereto (including the right to make copies).

    d.    Lessee will promptly provide written notice to Lessor if any other party claims any lien, encumbrance or similar interest ("**Liens**") in the Leased Equipment.

    e.    The Leased Equipment will always remain and be deemed personal property, even thought it may become attached to realty.

6. **Care of Leased Equipment; Risk of Loss; Insurance.**

    a.    Upon Lessee's receipt of the Leased Equipment, Lessee will prudently and properly store and care for the Leased Equipment at the Location and will bear the entire risk of loss with respect thereto due to any cause, including, without limitation, failure to properly store or care for the Leased Equipment, shrinkage, fire, theft, flood, weather, strike or public disturbance.

    b.    Lessee will, at its sole cost and expense, insure the Leased Equipment in the name of and with loss payable solely to Lessor or its assigns against loss or damage by fire,

theft, burglary, and such other risks, in an amount equal to not less than the replacement cost of the Leased Equipment. Lessee will promptly notify Lessor of any loss or damage to the Leased Equipment and will deliver to Lessor any insurance proceeds received by Lessee with respect to the Leased Equipment.

    c. Lessee will, at its sole cost and expense, maintain the Leased Equipment pursuant to the instructions provided by Lessor and as required by standard industry practice.

7. **Withdrawal of Equipment.** Lessor will be entitled at any time to withdraw all or any part of the Leased Equipment from the Location. Upon receipt of written instructions from Lessor, Lessee will, either return the Leased Equipment to Lessor, or dispose of the Leased Equipment, pursuant to the following:

8. **Further Assurances.** Lessee authorizes Lessor to file financing statements as Lessor may, from time to time, deem necessary or desirable to carry out the provisions and purposes of this Agreement or to protect the right, title and interest of Lessor in and to the Leased Equipment and the proceeds thereof. Lessee further authorizes Lessor to file any continuation statements or any other documents or instruments necessary or desirable to carry out the terms of this Agreement that may at any time be required in the reasonable opinion of Lessor to protect or enforce Lessor's interest in the Leased Equipment. Lessee hereby agrees to provide Lessor with all reasonable assistance in filing any financing statements.

9. **Software Support**. Lessee will provide a copy of all future Intel bitstream binaries that are either developed by and/or for Lessee or is otherwise available on the AllMine Shell. Lessee further grants to Lessor a worldwide, irrevocable, royalty free, perpetual, assignable, sub-licensable license to use, copy, distribute, and make derivative works of any Intel bitstream binaries developed by or for Lessee or that is available on the AllMine shell. Lessee additionally agrees to modify the Intel bitstream binaries, to the extent necessary, to allow it to function on Lessor's devices.

10. **Representations, Warranties and Additional Covenants.** Lessee represents, warrants and covenants that:

    a. Lessee's exact legal name is "Squirrels Research Labs LLC;"

    b. Lessee is an LLC formed under the laws of Ohio;

    c. Lessee will not change its legal name, organizational form or organizational identification number without at least 60 days prior written notice to Lessor;

    d. The Leased Equipment is and will remain free and clear of all Liens created by or through Lessee;

    e. Lessee will pay all sales or similar taxes levied by any taxing authority against or upon the Leased Equipment or otherwise arising out of this Agreement, exclusive, however, of taxes based on the income of Lessor, which taxes will be paid by Lessor;

    f. Lessee will defend Lessor's title to the Leased Equipment and the proceeds thereof against any Lien created by or through Lessee;

    g. Lessee will make no changes to the Leased Equipment except as specifically provided herein;

    h. This Agreement has been duly authorized, executed and delivered by Lessee and constitutes a legal, valid and binding agreement of Lessee; and

i. This Agreement will not conflict with or violate or constitute a breach of or default under any term or provision of any indenture, agreement or instrument to which Lessee is a party or by which it or any of its property is bound.

11. **Indemnity.** Lessee agrees to defend, protect, indemnify and hold Lessor and its affiliates and its and their respective officers, directors, employees, agents and representatives (collectively the "**Indemnitees**") harmless from and against all claims, liabilities, damages, strict liability claims, penalties, and all other costs or expenses of every kind and character (collectively "**Liabilities**") arising out of or otherwise relating to Lessee's use of the Leased Equipment, including, without limitation, those resulting from injury, death, damage to property, damage to the environment, or a breach by Lessee of any part of this Agreement, but excluding Liabilities to the extent caused by the negligence of the Indemnitees.

12. **Confidentiality.** Lessee acknowledges that all information relating to the Leased Equipment, whether written, oral or provided by observation, including, without limitation, quality and production information, is the confidential information of Lessor and Lessee will not disclose such information to any other party and will use it solely in connection with operating the Leased Equipment as permitted in Section 1.a.

13. **Termination.**

    a. Either Party may immediately terminate this Agreement if the other Party is in default that is not cured within 30 days following written notice of such default. Promptly following such termination, but in any event no later than 10 business days, Lessee will, at its own cost and expense, return the Leased Equipment to Lessor.

    b. Following any termination, Lessee will be granted title to the number of units of Leased Equipment equal to the following equation (rounded down to the nearest whole number):

    The quotient of (a) Total Lease Payments received by Lessor at the time of termination, divided by (b) 2,000.

    Example: If the agreement is terminated after Lessor receives $500,000 in Lease Payments, Lessee may retain 250 units (500,000 divided by 2,000 = 250).

14. **Miscellaneous**

    a. **Governing Law.** This Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or in any way relates to this Agreement, will be governed by the internal laws of the State of Illinois (including its laws regarding statutes of limitations), without application of that State's conflict of law principles. The Parties hereby consent and agree to submit to the exclusive jurisdiction of the State and federal courts located in Cook County, Illinois for any litigation or other proceeding that may be based upon, arise out of or in any way relates to this Agreement. Neither Party may commence any litigation or other proceeding with respect to this Agreement except in such court. The Parties further consent and agree that they will accept service of process by U.S. certified mail, return receipt required and postage prepaid, to the addresses set forth above. THE PARTIES EACH WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION, CLAIM OR PROCEEDING RELATING TO THIS AGREEMENT.

b. **Entire Agreement.** This Agreement, together with all exhibits attached hereto, constitutes the entire agreement and understanding of the Parties with respect to the subject matter hereof and may not be modified, altered or amended except in writing and executed by both Parties to this Agreement.

c. **Headings.** Headings in this Agreement are for convenience only and will not be considered in the interpretation of this Agreement.

d. **Notices.** Any notice or written communication required or permitted to be given by a Party hereunder will be made by hand delivery, facsimile transmission (promptly confirmed by another permitted method of delivery) or overnight delivery at the address specified above or at such other addresses as the Party may specify in writing. Any such notice will be considered to have been received on the date of hand delivery or the next business day after sent by overnight delivery service.

e. **Severability.** If any provision of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, then such provision will be deemed automatically modified to conform to the requirements for validity and enforceability as declared at that time, and as so modified, will be deemed a provision of this Agreement as though originally included herein.

f. **Assignment.** The Services to be performed by Lessee under this Agreement are personal and unique. Lessee may not assign this Agreement or any rights or obligations hereunder (including, but not limited to, entering into any subcontract) to any party without the written consent of Lessor.

g. **Counterparts.** This Agreement may be executed in separate counterparts, and all such counterparts will constitute one and the same instrument. Electronic and facsimile copies of an original executed signature page (including, without limitation, copies electronically transmitted in portable document format or ".pdf") will be deemed the same as the original executed signature page. Electronically executed versions of a signature page through the DocuSign, Inc. electronic signing system or any similar service implemented by Lessee will also be deemed the same as an original executed signature page. At the request of either party at any time, the parties will promptly confirm all electronic or facsimile copies, and all electronically executed versions, of any signature page by manually executing and delivering a duplicate original signature page.

h. **Audits.** Lessor will have the right, at any reasonable time and from time to time, to audit any and all records, documents and other data pertaining to this Agreement, and Lessee will cooperate in furnishing to Lessor all such records, documents and other data in connection with any such audit.

i. **Waiver.** No waiver by Lessor of any breach of any terms, conditions or obligations under this Agreement will be deemed a waiver of any continuing or subsequent breach of the same or any other terms, conditions or obligations hereunder.

j. **Export Control.** Lessee hereby agrees to comply fully with all applicable U.S., E.U. and other National sanctions and export control laws and regulations, including without limitation those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control ("**OFAC**"), Department of State, ITAR Regulations, and the U.S. Commerce Department's, Bureau of Industry and Security. Specifically, Lessee covenants that it will not directly or indirectly sell, provide, export, re-export, transfer, divert, loan, lease, consign, or otherwise dispose of any portion of the Leased Equipment to any person, entity, or destination, or for any activity or use prohibited by the

laws or regulations of the United States without obtaining prior authorization from the competent government authorities, including but not limited to the Dept. of State and/or Dept. of Commerce, as required by those laws and regulations.

*[Signature Page Follows]*

The Parties have executed this Agreement as of the date set first forth above and effective as of the Effective Date.

| BittWare, LLC | Squirrels Research Labs LLC |
|---|---|
| By: *Jessica Gritzan* | By: *[signature]* |
| Name: Jessica Gritzan | Name: Jeff Milrod |
| Title: COO | Title: President BittWare |
| 3.23.20 | 2020, 03-23 |

**Exhibit A**
**Description of Leased Equipment**

**500 CVP-13 – Liquid cooled**