EXHIBIT C

# GENERAL TERMS AND CONDITIONS OF SALE (North, Central and South America)
# (GOODS AND SERVICES)

1. **Application.** These General Terms and Conditions of Sale ("**Terms and Conditions**") are hereby incorporated into the quotation, invoice or other document to which they are attached or referenced ("**Order**" and, together with the Terms and Conditions, the "**Contract**"), and apply to the customer, owner or its agent ("**Buyer**") and the seller ("**Seller**") listed on the Order. All purchases by Buyer and sales by Seller are expressly limited and conditioned upon acceptance of the Terms and Conditions. Seller objects to and rejects any provision additional to or different from the Terms and Conditions that may appear in Buyer's purchase order, acknowledgement, confirmation, writing, or in any other prior or later communication from Buyer to Seller, unless such provision is expressly agreed to by Seller in a writing signed by Seller. For the purposes of these Terms and Conditions, the term "**Goods**" will refer to the goods, material and equipment listed on the Order as well as all equipment or other materials provided in connection with any Services, and the term "**Services**" will refer to the services listed on the Order as well as all ancillary services provided with any Goods. Terms not defined herein will have the meanings set forth in the Order.

2. **Quotations & Prices.** Unless specifically stated otherwise in Seller's quotation, prices are Free Carrier (FCA) the Seller location listed in the Order per Incoterms 2010. Prices are subject to change upon notification by Seller. Seller reserves the right to increase prices upon giving notice to Buyer. Once Seller provides notice of a price increase, all current and open backlog orders will be adjusted to the new price 30 days from notification date, and all unshipped orders will then be adjusted to the new price. Written quotations automatically expire 30 calendar days from the date issued and are subject to termination by notice within that period. Quotations may not be disclosed to any third party or used in preparation of any request for quotation for goods similar to, or as a substitution for, Goods quoted by Seller. Prices for Goods and Services are exclusive of all city, state and federal excise taxes, including taxes on manufacture, sales, receipts, gross income, occupation, use, and similar taxes. Wherever applicable, such tax or taxes will be added to the invoice as a separate charge to be paid by Buyer.

3. **Delays.** Seller will use reasonable efforts to meet Buyer's requested delivery date, but Seller does not guarantee a specific delivery date. In addition, delivery of Goods and Services are subject to, and contingent upon, delay directly or indirectly caused by, or in any manner arising from, fires, floods, accidents, weather related events, disease, riots, acts of God, war, government interference, embargoes, priorities, regulations, strikes, labor difficulties, shortages of labor, fuel, power, materials or supplies, transportation delays, compliance with any law, statute, ordinance, regulation, policy, order or request of any federal, state, provincial or local government unit, or any officer, department, agency, or committee thereof, Seller's production schedules, or any other cause or causes (whether or not similar in nature to any of these hereinbefore specified) beyond Seller's control and Seller will not be liable for any loss or damage suffered by Buyer arising therefrom. Seller will have the right, in the event of the happening of any of the above contingencies, at its option, to cancel the Contract any part thereof without any resulting liability.

4. **Partial Shipment.** All shipments of Goods by Seller may be within 10% over or under the exact quantity ordered by Buyer, and price for order will be adjusted by the unit amount for such overage or underage, if any. Seller reserves the right to make delivery in installments. All such installments will be separately invoiced and paid for when due, without regard to subsequent deliveries. Delay in delivery of any installment will not relieve Buyer of its obligation to accept remaining deliveries.

5. **Release Quantity.** The total release quantity of Goods used for pricing must be requested for shipment. If multiple shipments are required, all requested shipments must be within a 60 calendar day period after purchase order placement. Modifications in schedule made by Seller will not affect Buyer pricing. Invoicing is based on Buyer accepting all scheduled shipments. If shipments are cancelled or reduced in quantity, Seller reserves the right to invoice with prices based on the actual shipped quantity meeting the indicated requirements.

6. **Storage.** In case of any delay in shipment of Goods caused by Buyer, Seller may place the Goods in storage and Buyer will pay all handling, insurance and storage charges. Buyer will pay such charges promptly upon receipt of invoice and will pay for Goods placed in storage in accordance with the terms originally specified by Seller.

7. **Transfer of Title.** Title to the Goods will transfer from Seller to Buyer at the same time as risk of loss is transferred from Seller to Buyer under the applicable Incoterm.

8. **Cancellation, Rescheduling and Returns.** Orders may not be cancelled or rescheduled, and goods may not be returned, without Seller's prior written consent.

9. **Warranty.**

    a. Seller warrants to Buyer for a period of one year* from the date of shipment of the Goods to Buyer that (i) the Goods will conform to the Seller's specifications for the Goods in force at the date of shipment of the Goods to Buyer, and (ii) the Goods will be free from material defects in materials and workmanship. Seller's sole liability for any breach of warranty under this paragraph confirmed by Seller will be to repair or replace, at its option and at its expense, the defective or nonconforming Goods to a condition as warranted.

        *90 days for Polymicro Goods

    b. Seller warrants to Buyer for a period of 90 days following completion of any Services that the Services will be performed in a workmanlike manner in accordance with the agreed to specifications.

    c. Any replacement Goods or re-performed Services will be warranted for the unexpired portion of the warranty period listed above.

    d. EXCEPT AS EXPRESSLY PROVIDED IN THE PARAGRAPH ABOVE, SELLER MAKES NO WARRANTY EXPRESS OR IMPLIED, REGARDING THE GOODS OR SERVICES. ALL IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED.

    e. SELLER EXPRESSLY DISCLAIMS ANY WARRANTY OBLIGATIONS IN THOSE INSTANCES WHERE THE FAILURES RESULTED FROM (I) THE MODIFICATION OF THE GOODS OR SERVICES BY BUYER OR ITS CUSTOMER, (II) IMPROPER HANDLING, STORAGE, INSTALLATION, MAINTENANCE OR ANY FAILURE TO FOLLOW ACCEPTED INDUSTRIAL PRACTICE OR ANY SPECIFIC INSTRUCTIONS PROVIDED BY SELLER, (III) BUYER HAS USED OR REPAIRED THE GOODS OR THE SUBJECT OF THE SERVICES AFTER DISCOVERY OF THE DEFECT WITHOUT SELLER'S PRIOR WRITTEN CONSENT, (IV) BUYER REFUSES TO PERMIT SELLER TO EXAMINE THE GOODS OR THE OBJECT OF THE SERVICES AND OPERATING DATA TO DETERMINE THE NATURE OF THE DEFECT CLAIMED; (V) BUYER FAILS TO MEET ITS OBLIGATIONS, OR (VI) ANY OTHER CAUSE BEYOND THE CONTROL OF SELLER. GOODS NOT MANUFACTURED BY SELLER ARE SUBJECT ONLY TO WARRANTIES OF SELLER'S VENDORS AND SELLER HEREBY ASSIGNS TO BUYER ALL RIGHTS IN SUCH VENDOR'S WARRANTIES, HOWEVER, SELLER WILL FURNISH TO BUYER REASONABLE ASSISTANCE IN ENFORCING SUCH RIGHTS.

10. **Claims.** A Return Material Authorization from Seller will be required for any product returned to Seller. No claims will be allowed for labor, rework, transportation or other expense incurred by Buyer, without prior written approval of Seller. If the Goods fail to meet the warranty specified in the paragraph on express product warranty above, Buyer will not return them but will notify Seller within the five day period, stating full particulars in support of its claim, and Seller will, at its option, either replace the Goods upon return of the nonconforming goods or otherwise adjust the matter fairly and promptly. SELLER DOES NOT WARRANT OR GUARANTEE

THE TECHNICAL ADVICE GIVEN BY IT IN CONNECTION WITH THE INSTALLATION OR THE USE OF GOODS SOLD HEREUNDER.

11. **Default.** Upon the occurrence of any of the following events: (a) Seller, or any affiliate of Seller, has not received a payment due from Buyer, or any affiliate of Buyer, hereunder by the date such payment is due under the Contract, and such failure remains uncured for a period of three business days after Buyer's receipt of written notice from Seller of such non-payment; (b) the failure of Buyer or Seller to perform any other obligation in the Contract (excluding providing Performance Assurances (as that term is defined in Section 16), which is subject to (d) below) and such failure is not excused or cured within 30 days after written notice thereof; (c) the occurrence of a Bankruptcy Event; or (d) the failure of Buyer to timely provide prepayment or Performance Assurance, then the non-defaulting party, in its sole discretion and without prior notice (other than as provided above) to the defaulting party, may do any one or more of the following: (x) suspend performance under the Contract; or (y) terminate the Contract, whereby any and all obligations of the defaulting party, including payments or deliveries due, will, at the option of the non-defaulting party, become immediately due and payable or deliverable, as applicable. If, as a result of a default by Buyer, Seller suspends performance and withholds delivery of the Goods as permitted above, it may sell or scrap the Goods to a third party and deduct from the proceeds therefrom, if any, the purchase price and all reasonable costs resulting from Buyer's default as identified above, including all costs associated with the transportation (including demurrage and other vessel or shipping related charges), storage, and sale of the Goods. The foregoing rights, which will include specific performance, will be cumulative and alternative and in addition to any other rights or remedies to which the non-defaulting party may be entitled at law or in equity. The non-defaulting party will be entitled to recover from the defaulting party all court costs, reasonable attorneys' fees and expenses incurred by the non-defaulting party in connection with the defaulting party's default, and interest on past due amounts as set forth in Section 16, PAYMENT TERMS. In addition, Seller will have the right to maintain a lien on the Goods until payment in full is received by Seller. "**Bankruptcy Event**" means the occurrence of any of the following events with respect to either Buyer or Seller : (a) filing of a petition or otherwise commencing, authorizing or acquiescesing in the commencement of a proceeding or cause of action under any bankruptcy, insolvency, reorganization or similar law; (b) making of an assignment or any general arrangement for the benefit of creditors; (c) having a bankruptcy petition filed against it and such petition is not withdrawn or dismissed within 30 days after such filing; (d) otherwise becoming bankrupt or insolvent (however evidenced); (e) having a liquidator, administrator, custodian, receiver, trustee, conservator or similar official appointed with respect to it or any substantial portion of its property or assets; or (f) being generally unable to pay its debts as they fall due.

12. **Limitation of Liability.**

    a. IN NO EVENT WILL EITHER PARTY BE LIABLE TO EACH OTHER OR TO ANY THIRD PARTY FOR THE COST OF PROCURING SUBSTITUTE GOODS OR SERVICES, LOST PROFITS, LOSS OF USE, LOSS OF DATA OR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, OR SPECIAL DAMAGES, WHETHER UNDER CONTRACT, TORT, WARRANTY OR OTHERWISE, ARISING IN ANY WAY OUT OF THIS OR ANY OTHER RELATED AGREEMENT, WHETHER OR NOT SUCH PARTY HAD ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES.

    b. IN NO EVENT WILL THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES BE IN EXCESS OF AN AMOUNT EQUAL TO THE LESSER OF (1) THE PAYMENTS RECEIVED BY SELLER IN THE 12 MONTH PERIOD IMMEDIATELY PRECEDING THE FIRST CLAIM BROUGHT BY BUYER UNDER THIS ORDER, OR (2) $500,000 USD, WHETHER ARISING UNDER WARRANTY/GUARANTEE, CONTRACT, NEGLIGENCE, STRICT LIABILITY, INDEMNIFICATION, DEFENSE OR ANY OTHER CAUSE OR COMBINATION OF CAUSES WHATSOEVER. ALL INSURANCE, BOND AND BANK GUARANTEE OR LETTER OF CREDIT PROCEEDS WHICH MAY BE PAID TO BUYER BY THE INSURERS, SURETIES OR BANKS OF SELLER OR ITS AFFILIATES WILL BE CREDITED AGAINST THE LIMITATION STATED ABOVE AND REDUCE THE AMOUNT OF THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES.

c.  SELLER'S PRICE HAS BEEN NEGOTIATED IN CONSIDERATION OF THE ALLOCATION OF RISKS AND ESTABLISHMENT OF LIMITATIONS OF LIABILITY STATED IN THIS CONTRACT, BUT FOR WHICH SELLER WOULD NOT HAVE ENTERED INTO THE CONTRACT.

d.  BUYER'S REMEDIES ARE LIMITED TO THOSE REMEDIES EXPRESSLY STATED IN THIS CONTRACT; AND, THESE REMEDIES WILL NOT FAIL THEIR ESSENTIAL PURPOSE BECAUSE BUYER IS LIMITED TO THE EXCLUSIVE REMEDIES AS STATED HEREIN.

e.  THESE LIMITATIONS WILL APPLY NOTWITHSTANDING ANY FUNDAMENTAL BREACH OR FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

13. **IP Infringement.**

    a.  Seller will indemnify, defend and hold harmless Buyer from and against all claims, suits and actions (collectively "**Claims**") brought against Buyer, and for any direct damages that arise directly from Claims that the Goods infringe the intellectual property rights of a third party.  Seller will not be responsible for any infringement to the extent such infringement is the result of (i) use of the Goods in combination with any other products not provided by Seller if the infringement would not have occurred but for such combination, (ii) any alteration or modification of the Goods not undertaken or authorized by Seller if the infringement would not have occurred but for such alteration or modification, (iii) Seller's compliance with Buyer's specifications if the infringement would not have occurred but for such compliance, or (iv) Buyer's failure to comply with Seller's instructions regarded as necessary to render the Product(s) non-infringing if the infringement would not have occurred if Buyer would have complied with Seller's instructions.  Buyer will indemnify, defend and hold harmless Seller and its officers, directors, employees, successors and assigns (collectively "**Indemnitees**") from and against any Claims brought against Indemnitees by any third party based on claims resulting from exceptions (i) through (iv) above.

    b.  Upon a finding of infringement, Seller will, at its sole discretion, in addition to any indemnification, take one of the following actions: (i) obtain all rights required to permit the manufacture, sale, import, and use of the Seller Goods, (ii) modify or replace the Seller Goods so that they are no longer infringing, or if (i) and (ii) are not commercially reasonable alternatives, (iii) refund Buyer's purchase price for any Seller connectors found to be infringing and returned to Seller.

14. **Intellectual Property.**  Each party owns or possesses intellectual property rights developed or acquired prior to or independently of this Contract, and each party will continue to own all such intellectual property rights and any improvements or extensions thereof.  Seller retains all intellectual property rights, whether registered or un-registered, including trademarks, patents, and copyright of all documents, drawing rights, design rights, developed programs, software, models and other data provided or developed in the course of the Contract.  Seller will, if so required by Buyer, grant Buyer a non-exclusive, non-assignable royalty free license to use the same only for the purposes of operating or maintenance of the Goods by Buyer.

15. **Changes in Specifications or Drawings.**  All additional expense to Seller due to changes in specifications or drawings and for any Goods and Services furnished in addition to that herein specified, will be added to the purchase price and paid by Buyer.

16. **Payment Terms and Revocation of Credit.**  Invoice payment terms are Net 30 days from invoice date. If the payment due date is not a business day, Seller must receive such payment on the next business day after such due date. Each shipment of Goods and each provision of Services is a separate transaction and payment will be made accordingly.  Interest may be charged on all past due amounts owed by Buyer hereunder at an interest rate equal to the prevailing EURIBOR rate of interest, expressed as an annual percent, plus 3% from the payment due date until paid in full, or the highest interest rate allowed by applicable law, whichever is less.  Seller reserves the right at any time to revoke any credit extended to Buyer because of Buyer's failure to pay for any Goods when due or for any other reason deemed good and sufficient by Seller, and in such event all subsequent shipments will be paid for on delivery.  In addition, Seller may require Buyer to provide collateral in the form of either cash or

letter(s) of credit in a form, and from an issuing bank, acceptable to Seller (collectively, "**Performance Assurances**"), upon notice no later than three business days prior to a scheduled shipment of Goods or provision of Services.

17. **Software.** If the Goods or Services include providing access to any computer software (installed on the Goods or otherwise available) ("**Software**") Buyer agrees to comply with Seller's most current standard license agreement regarding such Software (available upon request).

18. **Reservation of Rights.** Payment by Buyer of any "tooling charge" or other similar expense will not vest any right or title in Buyer, and Seller will have unrestricted right and authority to produce, use and/or sell identical machinery, Goods or Services to others.

19. **Export Compliance.**

    a. Buyer hereby agrees to comply fully with all applicable U.S., E.U. and other National sanctions and export control laws and regulations, including those regulations maintained by the U.S. Treasury Department's Office of Foreign Assets Control ("**OFAC**"), Department of State, ITAR Regulations, and the U.S. Commerce Department's, Bureau of Industry and Security. Specifically, Buyer covenants that it will not- directly or indirectly sell, provide, export, re-export, transfer, divert, loan, lease, consign, or otherwise dispose of any product, services, software, source code, or technology (collectively, "Goods") received from Seller under this Contract to any person, entity, or destination, or for any activity or use prohibited by the laws or regulations of the United States without obtaining prior authorization from the competent government authorities, including but not limited to the Dept. of State and/or Dept. of Commerce, as required by those laws and regulations.

    b. To the extent required under U.S. law, Buyer further covenants to screen all customers and business partners against all relevant U.S., EU and Canadian Government lists of persons denied export privileges or otherwise subject to trade, export, or financial sanctions, including the U.S. Treasury Department's OFAC list of SDN, U.S. Department of Commerce "BIS" Denied Persons List and Entity List, U.S. State Department DPL, The Canadian DPL, and the EU Consolidated List before providing or agreeing to provide any Goods to any person.

    c. Buyer acknowledges and agrees that Seller's right to furnish certain products to Buyer is subject to and conditioned upon applicable sanctions and export control laws and regulations, and that Seller will have no liability for acting in a manner Seller deems to be in compliance with such laws and regulations

20. **Anti-Bribery and Corruption Laws.** Each party hereunder represents and warrants compliance with all applicable U.S. and foreign anti-bribery and corruption laws and regulations including, but not limited to, the U.S. Foreign Corrupt Practices Act ("**FCPA**"), the U.K. Bribery Act, The OECD Anti-Bribery Convention and the Brazilian Clean Companies Act. Each Party agrees to defend, indemnify, and hold harmless the other Party from any claims, costs, liabilities, penalties, obligations, and damages such other Party may incur, including without limitation reasonable court, attorney and expert fees, and costs, as a result of such Party's breach or violation of this warranty.

21. **Governing Law.** All questions concerning the validity, operation, interpretation, and construction of this Contract will be governed by and determined in accordance with the laws of Delaware, without giving effect to its choice of law provisions. Any action or proceeding between Buyer and Seller relating to the Contract will be commenced and maintained exclusively in the State or federal courts in Wilmington, Delaware, and Buyer submits itself unconditionally and irrevocably to the personal jurisdiction of such courts. BUYER AND SELLER EACH WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION, CLAIM OR PROCEEDING RELATING TO THE CONTRACT.

22. **Notice.** All notices, consents, communications or transmittals under the Contract will be in writing and will be deemed received on the day of delivery if personally hand delivered or sent by facsimile or electronic transmission (with written confirmation of the completed transmittal); or within two business days if mailed as certified or registered mail with return receipt, postage prepaid addressed to the party to whom such notice is given at the address of such party stated in the Contract.

23. **Entire Agreement; Amendment; Waivers.** The Contract will supersede all prior negotiations, discussions, and dealings concerning the subject matter hereof, and will constitute the entire agreement between Seller and Buyer concerning the subject matter hereof. There are no understandings, inducements, commitments, conditions, representations or warranties of any kind, whether direct, indirect, collateral, express or implied, oral or written, from either party to the other, other than as contained in this Agreement. Neither party will claim any amendment, modification or release of any provisions hereof unless the same is in writing and signed by both parties. No waiver by Buyer of any breach of any terms, conditions or obligations under the Contract will be deemed a waiver of any continuing or subsequent breach of the same or any other terms, conditions or obligations hereunder.

24. **Electronic Transactions.** The Contract may be digitally copied and stored on computer tapes and disks (the "**Imaged Agreement**"). The Imaged Agreement (once digitally regenerated to paper form), and any facsimile, and all computer records of the foregoing, if introduced as evidence in any judicial, arbitration, mediation or administrative proceedings, will be admissible as between the parties to the same extent and under the same conditions as other business records originated and maintained in documentary form and neither party will object on the basis that such business records were not originated or maintained in documentary form under any rule of evidence.

25. **Severability.** The invalidity or unenforceability of any provision of the Contract will not affect the validity or enforceability of its other provisions and the remaining provisions will remain in full force and effect.

26. **Confidentiality.** All information that Buyer acquires from Seller hereunder, directly or indirectly, and all information that arises out of the sale of the Goods or Services hereunder, concerning such Goods, Services, and/or proprietary processes involved, including information concerning Seller's current and future business plans, information relating to Seller's operations, know-how, and other Seller-furnished information will be deemed Seller's "**Confidential Information**". Buyer will (a) hold Seller's Confidential Information in strictest confidence, (b) not disclose it to others, (c) use it solely for purposes of this Agreement and (d) upon Seller's request, either promptly deliver to Seller all such Confidential Information that is in written, electronic or other form, including copies and summaries, or, at Seller's option, destroy such Confidential Information and provide Buyer certification of such destruction. The obligations under this Section will survive the expiration or termination of the Contract.

27. **Miscellaneous.** The captions and section headings set forth in the Contract are used for convenience only and will not be used in defining or construing any of the terms and conditions set forth in the Contract. The term "**days**", as used herein, will mean actual days occurring, including, Saturdays, Sundays and holidays where banks are authorized to be closed in the city where Seller's chief executive office is located. The term "**business days**" will mean days other than Saturdays, Sundays and holidays where banks are authorized to be closed in the city where Seller's chief executive office is located. The term "**including**" or any variation thereof means "**including, without limitation**" and will not be construed to limit any general statement that it follows to the specific items immediately following it. Unless the context indicates otherwise, words importing the singular number will include the plural and vice versa, and words importing person will include firms, association, partnerships and corporations, including public bodies and governmental entities, as well as natural persons, and words of masculine gender will be deemed to include correlative words of the feminine gender and vice versa as the circumstances may require. The United Nations Convention on Contracts for the International Sale of Goods will not apply.