# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| SQUIRRELS RESEARCH LABS, LLC, *et al.,* | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| | ) | |
| | ) | |

## REPLY TO DEBTORS' OBJECTION TO MOTION FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS

Carl Forsell ("Movant"), by his undersigned counsel, replies to *Debtors' Objection to Movant's Motion for 2004 Examination and Production of Documents* (Docket No. 137) (the "Objection"). The Debtors' concerns with Movants 2004 Examination raised in their Objection are meritless for several reasons:

1)  The Debtors' assertion that it is too early in this Case to evaluate chapter 5 avoidance actions fails to consider that (i) the Debtors chose to avail themselves to the Bankruptcy Code and subchapter v of chapter 11, (ii) the Debtors' chapter 11 plan is due in thirty-one (31) days, and (iii) the Debtors have already consummated a sale of substantially all of their assets. The assertion that it is early in this subchapter v case is meritless.

2)  For reasons detailed below, Movant is not required to wait for Debtors to have a first and exclusive investigation period before Movant conducts his own investigation, and, regardless, Movant is not required to accept the conclusions of Debtors' investigations into their own insiders and business affiliates.

3)  Any investigation of the Debtors into their own affairs and own insiders, given the admitted financial posture of the Debtors, would necessarily require an examination of the documents requested by Movant. It should be no burden for the Debtors to simply share documents which they themselves will have to procure and examine in order to conduct a complete and thorough investigation.

## IT IS NOT EARLY IN THIS BANKRUPTCY CASE

1.      Debtors filed their chapter 11 bankruptcy petition on November 23, 2021, and elected subchapter v treatment. It is an axiom of the Bankruptcy Code that Debtors must broadly and openly disclose their financial dealings if they choose to avail themselves to the awesome power of a bankruptcy discharge. *See In re Hickman*, 616 B.R. 815, 822 (Bankr. W.D. Okla. 2020) (internal citations and quotations omitted) ("in exchange for that 'fresh start,' the Code requires debtors to accurately and truthfully present themselves before the court."). The fresh start of a discharge is not free, but rather earned through scrutiny by interested parties. *See id.* The Debtors were not forced by any parties to file for bankruptcy and submit to the complete and total financial disclosures required by a business availing itself to the privileges of the Bankruptcy Code. Accordingly, Debtors should be required to comply with Movant's 2004 Examination.

2.      Subchapter v of the Bankruptcy Code, which Debtors chose of their own volition, is intended to be an expedited trip through the bankruptcy process, and in fact, any extension of the ninety-day period to file a plan should only be granted if "stringent" requirements are satisfied showing that per section 1189 of the Bankruptcy Code, there are "circumstances for which the debtor should not justly be held accountable." *In re Online King LLC*, 629 B.R. 340, 349 (Bankr. E.D.N.Y. 2021). Debtors filed this case knowing they had ninety days to file a plan, and there are only thirty days left in that window… "[s]ubchapter V by its very nature is intended to be an expedited process. ... [a]nd to balance the special new powers available to small business debtors, Congress granted creditors a very important protection: the requirement that a Subchapter V case proceed expeditiously"). *Id.* at 350 (Bankr. E.D.N.Y. 2021).

3.      Debtors' Objection bluntly states that Debtors "intend to propose a plan that will be funded, in part, by the pursuit and recovery of [chapter 5 actions]." Objection, ¶ 10. This means

that Debtors should already be well along in their investigations of chapter 5 causes of action if it is their intention to timely file a plan. It is unacceptable if it is the Debtors' intent to conduct a lengthy and exclusive investigation of chapter 5 causes of action *after* filing their plan. Such post-plan investigation will essentially act as work-around to the 90-day rule for filing a plan under subchapter v, because the plan will later have to be amended once the Debtors conduct their proposed exclusive, first-look at chapter 5 transfers. If a *post-confirmation* investigation into chapter 5 causes of action is the Debtors intention, then the Debtors have no hope of proposing a consensual plan where the creditors are expected to wait post-confirmation for the results of their exclusive, first-look investigation. Such a scheme is contrary to the purpose of subchapter v, which requires that a subchapter v case proceed expeditiously, and for reasons that will be detailed below, Debtors' creditors should not be forced to accept a plan where they take it on faith that Debtors will conduct a thorough investigation of chapter 5 causes of action.

### DEBTORS HAVE NO RIGHT TO AN EXCLUSIVE, FIRST-LOOK AT CHAPTER 5 TRANSFERS, AND CREDITORS SHOULD NOT HAVE TO RELY ON THE DEBTORS INVESTIGATION OF THEIR OWN INSIDERS AND AFFILIATES

4.      No creditor's committee has been appointed in these cases, and Movant is not requesting that one be appointed. Movant must point out, however, that he is willing to fund his own investigation of potential chapter 5 causes of action in these cases, whereas Debtors' counsel will certainly be charging the estate to conduct their own investigation. Movant would only have a basis to apply for an administrative expense if his investigation was successful in uncovering transfers, while the estate will pay for Debtors' own investigation whether it discovers recoverable transfers or not.

5.      Movant and other unsecured creditors should not be forced to rely on Debtors' investigation of its own insiders and business affiliates. Rule 2004 is broad and powerful and Movant should not be required to prove why he is distrustful of the Debtors to obtain his rightful

3

discovery. In fact, Movant has fair reason to be distrustful of the Debtors investigation. By way of example, Debtors' principal, David Stanfill, testified repeatedly and forcefully at the meeting of creditors that Debtor, Squirrels Research Labs, had a "no-refund" policy on the sale of all of VCU1525-Blockchain Edition computer hardware, and specifically that this policy existed when Movant purchased such hardware in Q2 2018. This statement is directly contradicted by statements of Mr. Stanfill on chat site, Discord, under the user-handle "GPUHoarder," where Mr. Stanfill told customers that anyone who purchased items in Q2 had the right to a refund, and that Squirrels Research Labs would follow procedures provided by the Federal Trade Commission (the "FTC"):



**GPUHoarder** 06/11/2018
Anyone who filled out the refund survey refunded
Several people that emailed for refunds but didn't fill our survey have to be contacted to get payment info



**GPUHoarder** 13/08/2018
@TheTechnicals just proper business when a ship date changes, we are required to allow refunds. There is far more demand for those refunded cards than we have cards



**GPUHoarder** 15/08/2018
These officially ship in Q4. If you purchase from the refund stock you are acknowledging that and all sales are final.
If you purchased from the stock sold under the August ship date, you have the right to request a refund
Or you can choose to keep your order place in line



**GPUHoarder** 22/01/2019
For the record, we've followed all the FTC refunds / opt-ins, etc.



**GPUHoarder** 22/01/2019
Everyone automatically got a refund and was forced to let us know if they wanted to stay.

4

This is just one example of the pattern of dishonesty and evasion practiced by the Debtors and its officers over several years, and again, Movant is not required to prove or even show why he would be skeptical of Debtors' exclusive first-look investigation into their own insiders and business affiliates, but offers this contradiction as one example of Debtors' duplicity.

6.    Debtors state that it is "duplicative" for creditors to investigate chapter 5 causes of action in these cases. Objection, ¶12. In these cases, the redundancy is a feature and not a bug of a creditor-led investigation, particularly when the investigation will be self-funded by Movant, and as will be detailed below, it should require very little in the way of cost or burden to the Debtors to produce the requested documents if they are conducting a thorough investigation themselves. *In re Recoton Corp.,* 307 B.R. 751, 756 (Bankr.N.D.N.Y.2004) ("The Rule 2004 discovery sought by the Committee is thus prima facie consistent with [Rule 2004's] ... purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estate exist and whether to pursue such claims.").

## IT IS NOT BURDENSOME FOR THE DEBTORS TO PRODUCE DOCUMENTS THEY SHOULD ALREADY HAVE IN THEIR POSSESSION

7.    Given the four-year lookback period of Ohio's fraudulent transfer statute, and the financial posture of the Debtors as insolvent since at least early 2019, if not earlier, and undercapitalized if not insolvent since 2018, when the Debtors lost over one million dollars due to conducting transactions in cryptocurrency (which directly impacted customers who dealt with Debtors only in fiat currency), the Debtors will, by necessity, have to examine their own banking records, internal accounting documents, and all other documents requested in the 2004 Motion to conduct a thorough and proper investigation of potential chapter 5 causes of action. The expense of producing these documents that Debtors should already have in their possession should be as simple as setting up file-sharing or attaching PDFs to emails. If the Debtors have not already

procured these documents by doing the simple ask of asking their banks for their own statements, they will need to do these tasks in the very near future, regardless of whether they also send the documents along to Movant. It should be a simple matter to forward these documents at no great time and expense – unless the Debtors spend considerable time fine-combing the documents prior to their production, which would of course be to the benefit of the potential transferees, and not to the benefit of Debtors' bankruptcy estates or their unsecured creditors.

## CONCLUSION

8.      Debtors' stated reasons for their inability to timely comply with Movant's 2004 Motion seem, at-best, spurious, and at-worst, pretextual. The Debtors' creditors, which lack the protection of a creditors' committee in this case, should not have to wait for Debtors to conduct an exclusive, first-look investigation which has no basis under the Bankruptcy Code. The more time that passes is time for potential transferees to have any recoverable funds transferred once again, creating another barrier for unsecured creditors to realize a recovery in these cases. The Debtors have the burden to demonstrate that the Movant's 2004 requests are unreasonable, and their Objection does not make this demonstration. *In re Roman Cath. Church of Diocese of Gallup*, 513 B.R. 761, 767 (Bankr. D.N.M. 2014) ("If the target of Rule 2004 discovery believes the request is unduly burdensome, it has the burden of showing that the burden is in fact undue."). Movant notes that the requests are limited to documents within Debtors' possession or reasonably under their control, it does not extend to documents that do not already exist, for example, it does not contemplate that Debtors run accounts receivable reports, that do not already exist. These items should be on-hand and readily producible if they exist.

6

Respectfully, Movant requests that the Court (i) overrule Debtors' Objection, (ii) grant his 2004 Motion, and (iii) afford Movant any other relief which this Court deems just and proper under the circumstances.

Dated: January 21, 2022    Respectfully submitted,

/s/ *Bryan J. Sisto*
Bryan J. Sisto (OH 0088143)
**FROST BROWN TODD LLC**
400 W. Market Street, Suite 3200
Louisville, KY 40202
Phone: (502) 589-5400
Email: bsisto@fbtlaw.com

*Counsel for Carl Forsell*

7

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| SQUIRRELS RESEARCH LABS, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon the following on January 10, 2022, via the Court's electronic mail notice list:

• **John C. Cannizzaro** John.Cannizzaro@icemiller.com,

lauren.prohaska@icemiller.com

• **Christopher Paul Combest** christopher.combest@quarles.com

• **John G. Farnan** jfarnan@westonhurd.com

• **Robert E. Goff** rgoff@westonhurd.com, jroberts@westonhurd.com

• **Jeannie Kim** JeKim@sheppardmullin.com, dgatmen@sheppardmullin.com

• **Marc Merklin** mmerklin@brouse.com, tpalcic@brouse.com;mmiller@brouse.com

• **Christopher Niekamp** cniekamp@bdblaw.com

• **Paul J. Schumacher** pschumacher@dmclaw.com, tgross@dmclaw.com

• **Frederic P. Schwieg** fschwieg@schwieglaw.com

• **Frederic P. Schwieg** fschwieg@schwieglaw.com

• **United States Trustee** (Registered address)@usdoj.gov

• **Joshua Ryan Vaughan** jvaughan@amer-collect.com,

8

SAllman@AMER-COLLECT.COM; HouliECF@aol.com

• **Julie K. Zurn** jzurn@brouse.com, tpalcic@brouse.com

• **Kate M. Bradley ust44** kate.m.bradley@usdoj.gov

Via regular U.S. Mail:

**Brouse McDowell**
388 South Main Street
Suite 500
Akron, OH 44311-4407

**Jason R. Schendel**
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA 94111

Dated: January 21, 2022                    Respectfully submitted,

                                           /s/ *Bryan J. Sisto*
                                           Bryan J. Sisto (OH 0088143)
                                           **FROST BROWN TODD LLC**
                                           400 W. Market Street, Suite 3200
                                           Louisville, KY 40202
                                           Phone: (502) 589-5400
                                           Email: bsisto@fbtlaw.com

                                           *Counsel for Carl Forsell*

0149594.0752621  4864-0641-4090v2

9