# Exhibit A

(consisting of the following 65 pages)

**Docket, Process, Pleadings, and Orders
from the Stark County Case**

## 🖾 Case Information

# SQUIRRELS RESEARCH LABORATORIES LLC VS FLEUR DE LIS DEVELOPMENT LLC ET AL

Assigned to Judge Forchione in Stark County Common Pleas Court

## 2021CV00251

**Case Type**

Other Civil

**Filed On**

Mar 1, 2021

**Case Status**

Open Case

**Next Action**

None

**Financials**

| Costs | Payments | Balance |
|-------|----------|---------|
| $394.40 | $394.40 | $0.00 |

**Parties**

| Type | Name / Address | Attorney |
|------|----------------|----------|
| Plaintiff | SQUIRRELS RESEARCH LABS LLC<br>121 WILBUR DR NE N CANTON OH 44720 | JACK COOPER |
| Defendant | FLEUR DE LIS DEVELOPMENT LLC<br>C/O GINA PIACENTINO COLUMBUS OH 43215 | BRITTANY STEPHEN<br>JAMEEL TURNER |
| Defendant | PIACENTINO, ROCCO<br>2626 S WHETSTONE RIVER RD MARION OH 43302 | BRITTANY STEPHEN<br>JAMEEL TURNER |
| Defendant | HEINZ, CYNTHIA<br>3009 AURORA DR PLANO TX 75093 | JAMEEL TURNER<br>BRITTANY STEPHEN |

## 🖺 Docket

| ▲ Date | Docket Entry |
|--------|--------------|

| ▲Date | Docket Entry |
|---|---|
| Mar 1, 2021 | DEPOSIT RECEIVED FROM MILLIGAN PUSATERI CO LPA RECEIPT NO. CV448177 IN THE AMOUNT OF $323.00 |
| Mar 1, 2021 | DEPOSIT RECEIVED FROM MILLIGAN PUSATERI CO LPA RECEIPT NO. CV448178 IN THE AMOUNT OF $200.00 |
| Mar 1, 2021 | COMPLAINT FILED INSTRUCTIONS FOR SERVICE FILED. SUMMONS AND COPIES OF COMPLAINT SENT TO FLEUR DE LIS DEVELOPMENT LLC BY CERTIFIED MAIL (###432152021CV00251000!!!); CYNTHIA HEINZ BY CERTIFIED MAIL (###750932021CV00251001!!!); ROCCO PIACENTINO BY PROCESS SERVER; |
| Mar 1, 2021 | DESIGNATION FORM FILED |
| Mar 1, 2021 | JURY DEMAND - PLAINTIFF |
| Mar 3, 2021 | MOTION FOR SPECIAL PROCESS SERVER |
| Mar 4, 2021 | ORDER FOR SPECIAL PROCESS SERVER - GRANTING - MOTION FOR SPECIAL PROCESS SERVER |
| Mar 16, 2021 | SERVICE COMPLETE FOR SERVICE ISSUED 03-01-2021 CERTIFIED MAIL TO CYNTHIA HEINZ 3009 AURORA DR PLANO TX 75093 ON 03-09-2021 |
| Mar 16, 2021 | SERVICE COMPLETE FOR SERVICE ISSUED 03-01-2021 CERTIFIED MAIL TO FLEUR DE LIS DEVELOPMENT LLC C/O GINA PIACENTINO 88 E BROAD, SUITE 1560 COLUMBUS OH 43215 ON 03-10-2021 |
| Mar 18, 2021 | SERVICE COMPLETE FOR SERVICE ISSUED 03-01-2021- PROCESS SERVER - ROCCO PIACENTINO SERVICE TYPE: PERSONAL ON 03-18-2021 |
| Apr 6, 2021 | ANSWER AND COUNTERCLAIM - FOR FLEUR DE LIS DEVELOPMENT LLC, ROCCO PIACENTINO AND CYNTHIA HEINZ AND ROCCO PIACENTINO WITH JURY DEMAND. WITH PROOF OF SERVICE. ** FAX FILED ** |
| Apr 7, 2021 | ORDER AND NOTICE OF CASE MANAGEMENT CONFERENCE ON 05-10-2021 AT 1:30 PM |
| Apr 13, 2021 | DEPOSIT RECEIVED FROM BAILEY CAVALIERI LLC RECEIPT NO. CV449877 IN THE AMOUNT OF $93.00 |
| May 3, 2021 | ANSWER TO COUNTER CLAIM - FOR SQUIRRELS RESEARCH LABS LLC WITH JURY DEMAND. WITH PROOF OF SERVICE. ** FAX FILED ** |
| May 11, 2021 | PRE-TRIAL ORDER TRIAL ON 11-29-2021 FINAL PRETRIAL ON 11-15-2021 AT 4:00 PM |
| Jul 30, 2021 | PLAINTIFF SQUIRRELS RESEARCH LABS LLC - MOTION TO EXTEND EXPERT DEADLINE - WITH PROOF OF SERVICE FILED ** FAX FILED ** |
| Aug 11, 2021 | JUDGMENT ENTRY - GRANTING - PLAINTIFF SQUIRRELS RESEARCH LABS LLC MOTION TO EXTEND EXPERT DEADLINE TO 8-30-21 |

| ▲ Date | Docket Entry |
|--------|--------------|
| Sep 22, 2021 | JAMEEL S TURNER - FAX FILING REJECTED -- IT REQUIRES A JUDGE'S SIGNATURE ----- COST APPLIED TO CASE IS 2.50 |
| Sep 30, 2021 | ORDER REJECTING THE AGREED ORDER TO AMEND CASE SCHEDULE |
| Oct 19, 2021 | DEFENDANT'S - UNOPPOSED APPLICATION TO SCHEDULE PRETRIAL CONFERENCE TO DISCUSS PROPOSED AMENDED CASE SCHEDULE - WITH PROOF OF SERVICE FILED |
| Oct 28, 2021 | JUDGMENT ENTRY - DENYING - DEFENDANT'S UNOPPOSED APPLICATION TO SCHEDULE PRETRIAL CONFERENCE TO DISCUSS PROPOSED AMENDED CASE SCHEDULE |
| Nov 24, 2021 | PLAINTIFF SQUIRRELS RESEARCH LABS LLC - NOTICE OF BANKRUPTCY/SUGGESTION OF STAY WITH PROOF OF SERVICE ** FAX FILED ** |
| Nov 29, 2021 | ORDER AND NOTICE OF ADDITIONAL STATUS CONFERENCE ON 12-17-2021 AT 9:30 AM |



## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

| | |
|---|---|
| SQUIRRELS RESEARCH LABS, LLC,<br>121 WILBUR DR NE,<br>NORTH CANTON, OH 44720 | CASE NO.<br>2021 C V 0 0 2 5 1<br>JUDGE ~~Farchdone~~ |
| PLAINTIFF, | COMPLAINT |
| v. | |
| FLEUR-DE-LIS DEVELOPMENT, LLC<br>C/O GINA PIACENTINO | *Jury demand endorsed hereon.* |
| 88 EAST BROAD, SUITE 1560<br>COLUMBUS OH 43215 | *Injunctive relief requested.* |
| ROCCO PIACENTINO,<br>2626 S. WHETSTONE RIVER RD<br>MARION, OH 43302, AND | |
| CYNTHIA HEINZ<br>3009 AURORA DR<br>PLANO, TX 75093 | |
| DEFENDANTS. | |

For its complaint against the above-named defendants, Plaintiff alleges as follows:

1. This is an action for breach of contract, defamation, fraud, misappropriation of trade secrets, trade practices, and intentional interference with contract and business relationships. Compensatory damages are expected to exceed $1 million. In addition Plaintiff seeks punitive damages, attorneys fees, and injunctive relief.

## PARTIES

2. Plaintiff Squirrels Research Labs, LLC ("SQRL") is an Ohio limited liability company with its principal place of business in North Canton, Stark County, Ohio.



ENTERED BY TO

3. SQRL is a world-leader in "blockchain" technology, including hardware and software used for "cryptocurrency mining,"

4. "Cryptocurrency" is a new form of digital asset based on computer networks distributed across a large number of computers. This decentralized structure allows them to exist outside the control of governments and central authorities. Common examples are Bitcoin and Ethereum.

5. Cryptocurrencies allow for the secure payments online that are denominated in terms of virtual "tokens," which are represented by ledger entries internal to the system, which is in turn distributed across a network of computers.

6. The security of cryptocurrency is based on "blockchains." Blockchains are organizational methods for making sure that the same unit of cryptocurrency is not doubly spent by a particular owner. Blockchains provide the provenance for particular unit of cryptocurrency.

7. Cryptocurrency "mining" is the process of confirming the validity of cryptocurrency transactions by evaluating blockchains to establish the provenance of particular units of cryptocurrency.

8. Cryptocurrency mining can be done by anyone with the appropriate equipment, software, and access to the particular network. Multiple cryptocurrency "miners" check each cryptocurrency transaction.

9. Cryptocurrency miners are compensated for confirming a particular transaction, but only if they are the first among the various competing miners confirming that blockchain who also solve an additional complicated computing problem.

10. Cryptocurrency mining is highly competitive, and prevailing in being the first to solve the computing problem depends upon a miner having ever increasing computing speed and power, along with the maintenance of cutting edge technology.

2

11. Defendant Fleur-De-Lis Development, LLC ("FDLD") is an Ohio limited liability company that holds itself out as a venture capital investor.

12. Defendant Rocco Piacentino is a resident of Marion County, Ohio, and is the managing member of FDLD.

13. Defendant Cynthia Heinz is an individual and resident of the state of Texas. Cynthia Heinz is an employee and/or member of FDLD.

14. This Court has personal jurisdiction over the Defendants as FDLD is incorporated in Ohio, and Defendant Piacentino is an Ohio resident. Furthermore, Defendant Heinz conducted activities in Ohio sufficient for personal jurisdiction to attach.

15. Venue is proper in Stark County pursuant to Civil Rule 3(C)(6). Furthermore, this action arises out of an agreement between SQRL and FDLD, one term of which requires venue for any lawsuits to be in Stark County.

## TRANSACTION AND BREACH

16. On November 17, 2020, SQRL and FDLD signed a certain Letter of Intent ("LOI"), an authentic copy of which is attached as Exhibit "A." The LOI contained a confidentiality provision that required the parties to maintain the confidentiality of all information exchanged.

17. In connection with the LOI, SQRL and FDLD signed a certain Membership Interest Purchase Agreement ("Purchase Agreement") on December 31, 2020, pursuant to which FDLD was to purchase 51% of the membership interest in SQRL from SQRL's treasury for $10 million on or before January 30, 2021. An authentic copy of the Purchase Agreement is attached as Exhibit "B."

3

18. Part of the purchase price was to be paid by FDLD to a business partner of SQRL, in part to pay for additional computer processing "chips" that SQRL was buying from that business partner.

19. As Defendants knew, time was of the essence in completing the transaction contemplated in the Purchase Agreement.

20. In addition, Defendant Piacentino orally contracted with SQRL to purchase a SMART board (interactive touch screen) for $5,000.00.

21. Defendant FDLD breached the Purchase Agreement by failing to pay any of the purchase price.

22. Following the breach of the Purchase Agreement, FDLD began intentionally defaming SQRL to others in the industry, including vendors, customers and potential customers.

23. Following the breach of the Purchase Agreement, Defendant Piacentino threatened physical harm to Plaintiff's President and to at least one of Plaintiff's vendors.

24. Following the breach of the Purchase Agreement, FDLD, through Piacentino, caused at least one customer of SQRL's to back out of a purchase. This was done, in part, by Piacentino defaming SQRL.

25. Similarly FDLD breached the confidentiality provisions of the LOI by disclosing confidential and/or proprietary information owned by SQRL to nonparties, including customers and potential customers of SQRL. Furthermore, FDLD breached the LOI by using trade secrets and other confidential and/or proprietary information owned by SQRL in FDLD's own business activities.

26. Finally, SQRL delivered the SMART board to Piacentino on December 23, 2020, and Piacentino did not pay for it as promised.

4

## CAUSES OF ACTION

### COUNT I (BREACH OF CONTRACT)

27. Plaintiff incorporates the allegations in paragraphs 1 through 26 as if fully set forth herein.

28. All conditions precedent to bringing this action have occurred or have been waived.

29. FDLD breached the Purchase Agreement by, among other things, failing to pay the purchase price as agreed in the Purchase Agreement.

30. This breach damaged SQRL in that SQRL did not receive the agreed upon purchase price.

31. Damages from the breach also include that SQRL was unable to take advantage of identified business opportunities that were in contemplation of SQRL and FDLD at the time of signing the LOI and the Purchase Agreement. These include the loss of the opportunity to purchase computer chips at a price advantage and at a time when demand for the chips in the marketplace had drastically increased to create a shortage.

32. FDLD breached the LOI by disclosing SQRL's trade secrets and other confidential and/or proprietary information, causing further damages to Plaintiff.

33. FDLD breached the LOI by using Plaintiff's trade secrets and other confidential and/or proprietary information, causing further damages to Plaintiff.

34. The disclosure and use of SQRL's trade secrets and other confidential and/or proprietary information has caused SQRL irreparable harm, and will continue to do so.

35. Defendant Piacentino breached his oral contract with SQRL by failing to pay for the SMART board as promised. This breach damaged Plaintiff.

### COUNT II (DEFAMATION)

36. Plaintiff incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

5

37. Defendant Piacentino made false statements about SQRL to customers, potential customers, vendors and others in the industry aimed to injure SQRL's reputation and to affect SQRL in its trade and industry. This was done orally and in writing.

38. Defendant Piacentino was acting individually and in the course and scope of his employment with FDLD when he defamed Plaintiff.

39. Plaintiff has been damaged and irreparably harmed by Defendant Piacentino's defamatory statements.

## COUNT III (FRAUD)

40. Plaintiff incorporates the allegations in paragraphs 1 through 39 as if fully set forth herein.

41. Defendants FDLD and Piacentino induced SQRL into entering the Purchase Agreement by fraudulently representing, in the month leading up to the execution of that agreement, that all funding for the transaction was secured from identified investors. This was represented by Defendants Piacentino and Heinz.

42. These false representations include email messages on December 10, 2020 and December 16, 2020, from Piacentino to Jessica Gritzan of SQRL, confirming that investors were committed, and an early December 2020 phone call wherein Piacentino told David Stanfill of SQRL that the funds were available at that time and could be released the following day.

43. Those representations were false and Defendants Piacentino and Heinz knew that at the time the representations were made.

44. Defendants Piacentino and Heinz made the false representations intending for Plaintiff to rely on them.

6

45. FDLD is responsible for the fraud of Piacentino and Heinz as each of them were acting in the course and scope of their employment with FDLD when they made the fraudulent statements.

46. Plaintiff reasonably relied on these representations to its detriment, and was damaged as a result.

## COUNT IV (TRADE SECRETS ACT)

47. Plaintiff incorporates the allegations in paragraphs 1 through 46 as if fully set forth herein.

48. Defendants' actions of using and disclosing Plaintiff's trade secrets constitute illegal misappropriation under ORC §1333.61(B).

49. Defendants' misappropriation of trade secrets has damaged Plaintiff.

50. Plaintiff is entitled to injunctive relief as to any further misappropriation pursuant to ORC §1333.62. Further, this misappropriation has caused irreparable harm to Plaintiff and will continue to do so.

## COUNT V (INTENTIONAL INTERFERENCE)

51. Plaintiff incorporates the allegations in paragraphs 1 through 50 as if fully set forth herein.

52. FDLD and Piacentino intentionally and tortiously interfered with contracts that SQRL had with vendors and customers, thereby damaging SQRL.

53. FDLD and Piacentino intentionally and tortiously interfered with SQRL's advantageous business relationships, thereby damaging SQRL.

54. This intentional and tortious interference has irreparably harmed Plaintiff and will continue to do so.

7

## COUNT VII (PUNITIVE DAMAGES)

55. Plaintiff incorporates the allegations in paragraphs 1 through 54 as if fully set forth herein.

56. Defendants' conduct described above demonstrates malice, as well as aggravated and egregious fraud such that Plaintiff is entitled to punitive damages against each Defendant.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A. Compensatory damages against FDLD for breach of contract;

B. Compensatory damages against Piacentino for breach of contract;

C. Compensatory damages against FDLD and Piacentino for defamation, misappropriation of trade secrets, and intentional interference;

D. Compensatory damages against FDLD, Piacentino, and Heinz for fraud;

E. Punitive damages against all Defendants;

F. An award of attorneys' fees against all Defendants;

G. Injunctive relief against both Defendants preventing them from defaming Plaintiff, interfering with contracts and business relationships, and misappropriating trade secrets;

H. Prejudgment and post-judgment interest;

I. The costs of this action; and

J. Such further relief as the Court considers just and appropriate.

Jack B. Cooper (#0069327)
Milligan Pusateri Co., LPA
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735

8

Phone: (234) 209-9793
Fax: (330) 409-0249
Email: jcooper@milliganpusateri.com
Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues presented herein.

Jack B. Cooper (#0069321)

## DIRECTIONS FOR SERVICE

TO THE HONORABLE CLERK OF COURTS:

Please serve Defendant Fleur-De-Lis Development, LLC with the summons and complaint via its registered agent at the address in the caption, by certified mail, return receipt requested.

Please issue the summons and complaint to be served upon Defendant Piacentino personally by private process server.

Please serve Defendant Cynthia Heinz with the summons and complaint at the address in the caption, by certified mail, return receipt requested.

Jack B. Cooper (#0069321)

9

November 17, 2020

Squirrels Research Labs, LLC
Attn: David Stanfill
121 Wilbur Drive NE
North Canton, OH 44720

Re: Letter of Intent - Potential Transaction Between SQRL and FDLD

Dear Mr. Stanfill:

This Letter of Intent ("Letter") sets forth our proposal with respect to the potential purchase transaction by and between Squirrels Research Labs, LLC ("SQRL") and Fleur-De-Lis Development LLC or other entity to be formed by Fleur-De-Lis Development LLC. ("FDLD") for total consideration to be determined by the parties, which transaction shall be referred to herein as the "Strategic Partnership".

The purpose of this Letter is to serve as framework for the completion of each party's due diligence investigation and the preparation of formal legal documents. The provisions of this paragraph and of the portions of this Letter titled "Part I. Proposed Strategic Partnership" and "Part II. Binding Agreements" are intended to be legally binding on the parties hereto and create a legally enforceable obligation to negotiate in good faith toward the consummation of a Strategic Partnership. The parties hereto shall be legally bound with respect to the obligations related to the Strategic Partnership only upon the execution of and delivery of the definitive legal documents which are to govern the Strategic Partnership as further described herein.

**Part I. Proposed Strategic Partnership.**

A. *Proposed Structure of Strategic Partnership.* On the terms and subject to the conditions to be set forth in one or more definitive legally binding written agreements to be negotiated and entered into between SQRL and FDLD or its designee, the parties intend to enter into a purchase transaction in which FDLD will purchase fifty-one percent (51%) of SQRL's outstanding membership interests for a purchase price of Ten Million Dollars ($10,000,000). Prior to consummating the purchase transaction, FDLD shall undertake due diligence to determine whether it is able to negotiate the reduction of SQRL's existing debt with Avnet upon terms acceptable to FDLD and SQRL; FDLD will make best effort to negotiate terms with Avnet by 12/31/2020. SQRL may also request that FDLD perform some ancillary services on SQRL's behalf in connection with the Strategic Partnership for additional compensation to be determined by the parties.

B. *No Guarantee of Cash Consideration; Continued Good Faith Negotiation.* No cash consideration is guaranteed to FDLD or SQRL pursuant to this Letter. The proposed structure of the Strategic Partnership shall remain open to negotiation between the parties during any Due Diligence Period authorized by this Letter (as further defined below).

C. *Closing Date.* The Closing Date shall be March 15, 2021 or as soon as possible thereafter, and both SQRL and FDLD will act expeditiously to this end. If the closing is not held by March 15, 2021 the transaction may be terminated and abandoned by either party without any further liability or obligation other than continuing confidentiality and nondisclosure restrictions. The obligation to close the transaction will be subject to: (i) the completion of due diligence by FDLD, its counsel and other advisers; (ii) the consent of any lenders to SQRL's proposed debt resolution; and (iii) the drafting, execution and mutual

1



delivery of formal legal documents embodying the terms set forth in this letter and such other terms as are customary in similar transactions, including covenants, representations, warranties, conditions and indemnities.

## Part II. Binding Agreements.

A. *Due Diligence Investigation.* In connection with the Strategic Partnership, FDLD shall have ninety (90) days to conduct a due diligence investigation on SQRL, its books and records and its debt structures and facilities (the "Due Diligence Period"). SQRL will grant FDLD access to its books and records, its accountants and legal counsel as necessary upon request so that FDLD may perform its due diligence investigation in connection with the Strategic Partnership. FDLD will conduct its due diligence investigation in a reasonable manner during regular business hours. FDLD will treat all information concerning SQRL and its business, that is not otherwise publicly available and which is furnished by or on behalf of SQRL, as confidential information which will be used by FDLD solely for the purpose of evaluating the Strategic Partnership. FDLD will cause its officers, directors, employees, accountants and legal counsel to neither disclose such information to a third party nor use it for their own benefit. If the Strategic Partnership is not consummated, FDLD will return to SQRL all documents which contain such confidential information and which are identified as containing confidential information by SQRL prior to their delivery to FDLD. Before the expiration of the Due Diligence Period, the parties hereto may agree to extend the Due Diligence Period in a writing signed by both parties.

B. *Designation of FDLD as Agent of SQRL During Due Diligence Period.* During the Due Diligence Period, SQRL shall designate FDLD and Rocco Piacentino as designated agents of SQRL for the purpose of gathering information about SQRLs outstanding debt and potentially negotiating resolution of outstanding debt. SQRL shall execute any reasonable document provided by FDLD or its counsel that designates FDLD or Rocco Piacentino as its agent for the limited purposes necessary for FDLD's due diligence investigation.

C. *Confidentiality.* SQRL and FDLD recognize that the contemplated transactions and all discussions relating thereto are strictly confidential and they will not disclose the existence of such negotiations without the consent of the other.

D. *Exclusivity.* During the Due Diligence Period, SQRL agrees that it will not sell or market any sales of its membership interests to any person or entity and will negotiate exclusively with FDLD or Rocco Piacentino until this Letter terminates by its own terms. If SQRL violates this provision of the Letter, then FDLD may seek an injunction in any court of competent jurisdiction to prevent SQRL from consummating any transaction that impacts the parties' good faith negotiation of the Strategic Partnership described herein.

E. *Expenses.* SQRL and FDLD will each pay their own expenses, including attorneys' and accountants' fees incurred in connection with the transactions described herein.

F. *Governing Law and Counterparts..* The validity, terms, performance and enforcement of this letter shall be governed by those laws of the State of Ohio and the United States of America that are applicable to agreements negotiated, delivered and performed solely in the State of Ohio. This Letter may be executed in separate counterparts and each signature shall be deemed part of a single document.

If the foregoing is agreeable to you, please sign and return to us two executed copies of this letter before November 30, 2020. It is with great enthusiasm that we look forward to proceeding with this transaction and working with you toward that end.

2

Very truly yours,

FDLD:

FLEUR-DE-LIS DEVELOPMENT LLC

By: _____
Rocco Piacentino, Managing Member

ACCEPTED AND AGREED:

**SQRL:**

**SQUIRRELS RESEARCH LABS, LLC**

By: _____
Name: David Stanfill
Title: CEO
Date: 11/17/2020

3

Execution Version



## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This **MEMBERSHIP INTEREST PURCHASE AGREEMENT** (this "Agreement") dated as of December 31, 2020 (the "Effective Date"), is by and among, **FLEUR DE LIS DEVELOPMENT LLC,** an Ohio limited liability company (the "Buyer"), and **SQUIRRELS RESEARCH LABS LLC,** an Ohio limited liability company (the "Seller" or the "Company"). The Buyer and the Seller are sometimes referred to in this Agreement individually as a "Party" and collectively as the "Parties."

### RECITALS:

**WHEREAS,** the Seller wishes to sell, and the Buyer wishes to purchase, 51% of the outstanding membership interests in the Seller (the "Membership Interest"); and

**WHEREAS,** the Seller will issue the Membership Interest in the Seller from the Seller's treasury; and

**WHEREAS,** the delivery of the Membership Interest is contingent upon the Buyer's fulfillment of the conditions precedent as described in this Agreement; and

**WHEREAS,** the Buyer and Seller have agreed to this purchase transaction upon the terms set forth below.

### AGREEMENT:

**NOW, THEREFORE,** in consideration of the representations, warranties, covenants and agreements contained herein, the Parties agree as follows:

## 1.   PURCHASE

**1.1   Option to Purchase Membership Interest.** Seller hereby offers to Buyer for purchase, Fifty-One Percent (51%) of the total outstanding membership interests in the Company free and clear of all security interests, liens or encumbrances, such that upon execution of this Agreement and fulfillment of any conditions precedent as described herein, Buyer will own Fifty-One Percent (51%) of the total outstanding membership interests in the Company (the "Membership Interest").

**1.2   Purchase Price.** In consideration of this Agreement, Buyer shall pay Ten Million Dollars ($10,000,000) at a closing on a date and time agreed upon by the Parties. The Purchase Price may be paid directly to creditors of the Seller as agreed upon by the Parties in accordance with Section 1.5 below.

**1.3.   Payment of Purchase Price.** Buyer may pay the Purchase Price on or before January 30, 2021 or on a date sooner as negotiated with creditors as set forth in Section 1.5.

**1.4   Seller's Deliveries.** The Seller shall execute and deliver from time to time at the request of Buyer all such further documents and instruments as, in the reasonable opinion of

Buyer's counsel, may be required in order to vest in Buyer full and complete title to the Membership Interest.

**1.5. Conditions Precedent.** As conditions precedent to each Party's obligations hereunder:(1) Buyer will negotiate the resolution of the Company's debt with Avnet, Inc., which is acceptable to Buyer and Seller, and memorialize the resolution and payment of the debt in a written agreement or agreements; and (2) the Parties will agree on the resolution and payment of Company's debt with other creditors of the Company. Further, the obligations of the Seller to consummate the transactions contemplated by this Agreement are conditioned upon the continuation of employment, and execution of employment agreements or ownership buy-outs, with current members and key management personnel within fourteen (14) days of Closing.

## 2. REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer that the statements contained in this Article 2 are correct and complete as of the Effective Date.

**2.1 Title to Membership Interest.** The Seller is not a party to any agreement, written or oral, creating rights in respect to the Membership Interest in any third person or entity other than the Operating Agreement of the Company. The Seller is the lawful owner of and currently possesses all right, title and interest in and to the Membership Interest, free and clear of all security interests, liens or encumbrances.

**2.2 Disclosures of Material Facts.** To the best of Seller's knowledge, the Seller does not have knowledge of any events, transactions or other facts which, either individually or in the aggregate, may give rise to circumstances or conditions which could have a material effect on the general affairs, business, prospects, properties, financial position, results of operations or net worth of the Company. The Seller warrants that any financial information provided to Buyer is true and accurate to the best of Seller's knowledge. ·

**2.3 Authority.** The Seller has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement has been duly executed and delivered by Seller and this Agreement is a valid and legally binding obligation of Seller, enforceable in accordance with its terms.

**2.4 Noncontravention.** To the best of Seller's knowledge, neither the execution, delivery and performance of this Agreement nor the consummation of the transactions contemplated herein will (a) constitute or cause a material breach, default or violation of any contract to which the Seller is a party or any other covenant or obligation binding upon the Seller or affecting any of its assets or properties, (b) result in the acceleration of or the right to accelerate any obligation under or the termination of or the right to terminate any such contract, or (c) require a consent of any person or entity to prevent such breach, default, violation, acceleration, right or termination or to permit the consummation of the transactions contemplated by this Agreement.

**2.5 Compliance with Applicable Laws.** To the best of Seller's knowledge, Seller hereby represents and warrants that, as of the Effective Date, the Company is in compliance with all applicable federal and state laws.

## 3. REPRESENTATIONS AND WARRANTIES OF BUYER

The Buyer represents and warrant to the Seller that the statements contained in this Article 3 are correct and complete as of the Effective Date.

**3.1.    Authority.**  The Buyer represents and warrants to the Seller that the Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement has been duly executed and delivered by Buyer and this Agreement is a valid and legally binding obligation of Buyer, enforceable in accordance with its terms.

**3.2.    Noncontravention.**  Neither the execution, delivery and performance of this Agreement nor the consummation of the transactions contemplated herein will (a) constitute or cause a breach, default or violation of any contract to which the Buyer is a party or any other covenant or obligation binding upon the Buyer or affecting any of his assets or properties, (b) result in the acceleration of or the right to accelerate any obligation under or the termination of or the right to terminate any such contract, or (c) require a consent of any person or entity to prevent such breach, default, violation, acceleration, right or termination or to permit the consummation of the transactions contemplated by this Agreement.

**3.3.    Absence of Noncompete or Similar Restriction.**  Buyer is not subject to any noncompetition agreements or other similar restrictions that would prevent Buyer from performing accounting, auditing and similar services on behalf of the Company upon the execution of this Agreement.

**3.4    Acceptance of Terms of Company's Operating Agreement.**  Upon signing this Agreement and meeting its obligations hereunder, Buyer agrees to be bound by the terms of the Company's existing operating agreement until such time as the Agreement is modified or amended.

**3.5    Due Diligence.**  Buyer acknowledges that it has had ample opportunity to conduct due diligence related to the Company, including the Company's finances and creditors, and the transactions contemplated herein.

## 4. INDEMNIFICATION

**4.1    Indemnification.**  Without limiting any other rights or remedies available to a Party, each Party (the "Indemnifying Party") shall indemnify, defend and hold harmless the other Party (the "Indemnitee") from, against and with respect to any claim, liability, obligation, loss, damage, assessment, judgment, settlement, cost and expense, reasonable attorneys' and accountants' fees, and costs and expenses reasonably incurred in investigating, preparing, defending against or prosecuting any litigation or claim, action, suit, proceeding or demand (individually, a "Loss" and collectively, "Losses"), of any kind or character arising out of or in any manner incidental to, relating or attributable to any breach of any representation or warranty of the Indemnifying Party in this Agreement, including, but not limited to all Losses related to any time period when Sellers owned the Membership Interest.

**4.2     Survival of Representations and Warranties.** The representations and warranties contained in this Agreement and the indemnification obligations of the Sellers and the Buyer pursuant to this Article 4 shall survive for a period of two (2) years from the Effective Date.

**4.3  .  Basket and Cap.** The aggregate liability of any Party for a breach of representations and warranties, or any indemnification obligation pursuant to Article 4 of this Agreement, shall in no event or circumstance exceed, in the aggregate, an amount equal to $25,000.00 (the "Cap Amount"). Further, a Party shall not have any liability pursuant to Article 4 of this Agreement unless and until the aggregate amount of any claim exceeds $10,000 (the "Basket Amount").

## 5.     POST-CLOSING COVENANTS

**5.1     Personal Guarantees and Indemnification.** The Buyer, as majority-member post-Closing, will use it best efforts to remove existing members as personal guarantors of Company obligations and debt within twenty-four (24) months of Closing.  Buyer agrees to indemnify, defend and hold harmless existing members, as the Indemnitee, in, from, against and with respect to any Losses of any kind or character arising out of or in any manner incidental to, relating or attributable to existing members' personal guaranty obligations.

## 6.     GENERAL

**6.1     Construction; Governing Law.** This Agreement and determination of any rights, duties or remedies of the Parties arising out of or relating to this Agreement shall be governed by and construed in accordance with Ohio law without regard to choice of law principles.  The parties further agree that any and all disputes arising from this Agreement shall be resolved in the local courts sitting in Stark County, Ohio.

**6.2     Entire Agreement, Waiver.** This Agreement constitutes the entire agreement among the Parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the Parties, and there are no representations, warranties, covenants or other agreements between the Parties in connection with the subject matter hereof except as set forth specifically herein.  No amendment, supplement, modification, waiver or termination of this Agreement shall be implied or be binding (including any alleged waiver based on a Party's knowledge of any inaccuracy or incompleteness in any representation or any breach of any warranty or covenant contained herein) unless in writing and signed by the Party against which such amendment, supplement, modification, waiver or termination is asserted.  No waiver of a provision of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly therein provided.

**6.3     Binding Effect; Successors; Assignment.** All of the terms and provisions of this Agreement by or for the benefit of the Parties shall be binding upon and inure to the benefit of their respective successors, permitted assigns, heirs and personal representatives, except as otherwise provided herein.  The rights and obligations provided by this Agreement shall not be assignable by any Party.  Except as otherwise provided in Article 4 with respect to Indemnities,

nothing herein is intended to confer upon any person or entity, other than the Parties and their respective successors and permitted assigns, any rights or remedies under or by reason of this Agreement.

**6.4   Validity; Breach.**  The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. The term "including" shall mean including without limitation. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

**6.5   Counterparts.**  This Agreement may be executed in counterparts by the Parties. All counterparts shall be construed together and shall constitute one agreement. This Agreement may be executed by facsimile signature.

**6.6   Confidentiality.**  Each of Parties agrees to keep the terms of this Agreement confidential and not to disclose the terms of this Agreement to any person or entity other than his, her or its attorney and/or tax advisor, provided, however, that the fact of the existence of this Agreement and/or the terms of this Agreement may be disclosed if compelled by court order.

[signature page immediately follows]

DocuSign Envelope ID: DE2B8678-34A8-4714-B9F1-43A19F7EA09D

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

BUYER:                                SELLER:

FLEUR DE LIS DEVELOPMENT              SQUIRRELS RESEARCH LABS, LLC
LLC
      DocuSigned by:                        DocuSigned by:

By: _Rocco Piacentino_                By: _David Stanfill_
Name: Rocco Piacentino               Name: David Stanfill
Title: Partner                       Title: CEO
Date: 12/31/2020                     Date: 12/31/2020

STARK COUNTY COMMON PLEAS COURT
CIVIL DESIGNATION FORM
**PURSUANT TO LOCAL RULE 9.02, THIS FORM MUST BE FILLED OUT IN ITS ENTIRETY.
IF THIS FORM IS NOT FILLED OUT IN ITS ENTIRETY, THE COMPLAINT AND ALL
OTHER DOCUMENTS WILL BE RETURNED BY THE CLERK WITHOUT FILING.**

CASE NUMBER _____ **2021CV00251**

PLAINTIFF _____ Squirrels Research Laboratories, LLC

-vs-

Fleur-De-Lis Development, LLC

DEFENDANT

Has this case been previously filed and dismissed? ____ Yes ✓ No. If yes, list case no. and
judge._____

List all related pending case(s) including case number and judge. **None**

## CIVIL CATEGORIES: PLACE (X) IN ONE CATEGORY ONLY

{ } A. Professional Tort            { } E. Foreclosure
     { } Medical Malpractice
     { } Dental Malpractice
     { } Optometric Malpractice         { } F. Administrative Appeal
     { } Chiropractic Malpractice
     { } Legal Malpractice            { } G. Complex Litigation Classification Requested
     { } Other Malpractice

{ } B. Product Liability

{ } C. Other Tort            (X) H. Other Civil
     { } Personal Injury           (✓) Contract Case
     { } Personal Injury- Auto       { } Miscellaneous Civil
     { } Miscellaneous             { } Real Property
                                     { } Consumer Sales Practices Act

{ } D. Workers Compensation         { } Credit Card Case

**Brief Factual Summary:**

Corporate defendant breached a purchase agreement, with related claims.

Description of damages including all special damages to date:

In excess of $1 million.

Do you think this case should be referred to the Court Mediation Program at this time? __ Yes ✓ No
Reasons: Yes. Usually helpful.

Is this case based on a violation of the Ohio Mortgage Broker Act (ORC 1322) ? ____ Yes ✓ No

Milligan Pusateri, LPA

Firm Name (Print or Type)

P.O. Box 35159 4684 Douglas Circle N.W. Canton, Ohio 44735

Address

234-209-9793

Telephone
REV. 9/09

Jack B. Cooper

Attorney of Record (Print or Type)

Signature

0069321

Attorney Registration Number

LYNN M.
CLERK OF COURTS
STARK COUNTY, OHIO

2021 MAR -3 PM 2: 34

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS, LLC,    )    CASE NO. 2021CV00251
                                 )
              PLAINTIFF,         )    JUDGE FORCHIONE
        v.                       )
                                 )    MOTION TO APPOINT PROCESS
FLEUR-DE-LIS DEVELOPMENT, LLC,   )    SERVER
et. al.                          )
                                 )
              DEFENDANTS.        )

Now comes Plaintiff, Squirrels Research Labs, LLC, and hereby moves the Court for an Order

designating Keith Roach, who is not party to this entitled action, and is over eighteen (18) years

of age, to effect service of all legal process; summons(es), subpoena(s), etc., for deposition(s),

hearing(s), arbitration, trial, etc., pertaining to the initiation, discovery, trial, and/or post judgement

procedure in the instant action.

/s/ Jack B. Cooper
Jack B. Cooper (#0069321)
Milligan Pusateri Co., LPA
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735
Phone: (234) 209-9793
Fax: (330) 409-0249
Email: jcooper@milliganpusateri.com
Counsel for Plaintiff

ENTERED BY LS



CLERK OF COURTS
STARK COUNTY, OHIO

## IN THE COURT OF COMMON PLEAS 2021 MAR -4 PM 2: 18
### STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS, LLC,   )   CASE NO. 2021CV00251

                                             )

             PLAINTIFF,           )   **JUDGE FORCHIONE**

        v.                        )

                                             )   **JUDGEMENT ENTRY**

FLEUR-DE-LIS DEVELOPMENT, LLC,   )

et. al.                                      )

                                             )

          DEFENDANTS.         )

     This matter came before the Court on motion of Jack B. Cooper, Attorney for Plaintiff, for an order appointment Keith Roach to be a special process server to Plaintiff in the captioned case. The Court finds the motion to be well taken.

     THEREFORE, IT IS ORDERED that Keith Roach be appointed as a special process server and is hereby permitted to serve papers on behalf of Plaintiff.

                              JUDGE FORCHIONE

DATED:_____



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 03/15/2021

STARK COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 9489 0090 0027 6312 7157 68. Our records indicate that this item was delivered on 03/10/2021 at 09:55 a.m. in COLUMBUS, OH 43215. The scanned image of the recipient information is provided below.

Signature of Recipient :
(Authorized Agent)

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:     0364063 338613292021CV00251000



**UNITED STATES**
**POSTAL SERVICE**₀

Date Produced: 03/15/2021

STARK COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 9489 0090 0027 6312 7157 75. Our records indicate that this item was delivered on 03/09/2021 at 11:59 a.m. in PLANO, TX 75093. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:          0364063 338613292021CV00251001

## RETURN OF SERVICE (PERSONAL)

CASE NO. _2021 CV 00251_

Personal Service of Summons was made upon _Rocco Placentino_

_____ by locating _Him / Personal_

and tendering a copy of summons and accompanying documents on _3-18_, 20_21_. @ 0930HRS

I received this summons on _3-17_, 202_1_ at _4_ o'clock.

BY _____, Process Server

---

## RETURN OF SERVICE (RESIDENCE/CORPORATE)

CASE NO. _____

Residence/Corporate service of Summons was made upon

_____ by leaving

at the usual place of residence/business with _____ a person of suitable age and

discretion then residing therein, a copy of the summons, complaint and accompanying documents on

_____, 20 _____

I received this summons on_____, 20__ at_____ o'clock.

BY_____, Process Server

---

## RETURN OF SERVICE OF SUMMONS (FAILURE OF SERVICE)

CASE NO. _____

I was unable to serve a copy of summons, complaint and accompanying documents upon

_____for the following reasons:_____

_____

_____

I received this summons on _____, 20 __ at _____ o'clock

BY _____, Process Server

ENTERED BY M

## LYNN M. TODARO
## STARK COUNTY CLERK OF COURTS

Process Server

SQUIRRELS RESEARCH LABS LLC
PLAINTIFF,

VS.                                          CASE NUMBER :          2021CV00251

FLEUR DE LIS DEVELOPMENT LLC                 ASSIGNED JUDGE :       FRANK G. FORCHIONE
,ET AL

DEFENDANT,

# SUMMONS

March 4, 2021

TO THE FOLLOWING NAMED DEFENDANT:
ROCCO PIACENTINO
2626 S WHETSTONE RIVER RD
MARION, OH 43302

YOU HAVE BEEN NAMED A DEFENDANT IN A COMPLAINT FILED IN STARK COUNTY COURT OF COMMON
PLEAS, STARK COUNTY COURT HOUSE, CANTON, OHIO 44702 BY:
SQUIRRELS RESEARCH LABS LLC -
121 WILBUR DR NE
N CANTON, OH 44720                                              PLAINTIFF.

A COPY OF THE COMPLAINT IS ATTACHED HERETO. THE NAME AND ADDRESS OF THE PLAINTIFF'S
ATTORNEY IS:
JACK COOPER
4684 DOUGLAS CIR NW
PO BOX 35459
CANTON, OH 44735

YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON THE PLAINTIFF'S ATTORNEY, OR UPON THE
PLAINTIFF, IF HE HAS NO ATTORNEY OF RECORD, A COPY OF AN ANSWER TO THE COMPLAINT WITHIN
TWENTY-EIGHT DAYS AFTER THE SERVICE OF THIS SUMMONS ON YOU, EXCLUSIVE OF THE DAY OF SERVICE.
YOUR ANSWER MUST BE FILED WITH THE COURT WITHIN THREE DAYS AFTER THE SERVICE OF A COPY OF
THE ANSWER ON THE PLAINTIFF'S ATTORNEY.

IF YOU FAIL TO APPEAR AND DEFEND, JUDGMENT BY DEFAULT WILL BE RENDERED AGAINST YOU FOR THE
RELIEF DEMANDED IN THE COMPLAINT.

LYNN M. TODARO
CLERK OF COURTS
STARK COUNTY, OHIO

J. LAWRENTZ, DEPUTY CLERK

## FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | 13304517853 |
| FROM | Bailey Cavalieri Fax Columbus 2 |
| DATE | 2021-04-06 21:57:12 EDT |
| RE | Fax Filing for Case No. 2021CV00251 |

## COVER MESSAGE

RECIPIENT INFORMATION:

NAME OF COURT: Stark County Common Pleas Court

FAX NUMBER: 330-451-7853

SENDING PARTY INFORMATION:

NAME: Jameel S. Turner

SUPREME COURT REGISTRATION NUMBER: 0078251

OFFICE/FIRM: Bailey Cavalieri LLC

ADDRESS: 10 West Broad Street, Suite 2100, Columbus, Ohio 43215

TELEPHONE NUMBER: (614) 229-3250

FAX NUMBER: (614) 221-0479

E-MAIL ADDRESS: jturner@baileycav.com

CASE INFORMATION:

TITLE OF THE CASE: Squirrels Research Labs, LLC v. Fleur-de-Lis Development LLC, et al.

CASE NUMBER: 2021CV00251

TITLE OF THE DOCUMENT: Defendants' Answer to Plaintiff's Complaint and Counterclaim of Defendant Fleur-de-Lis Development LLC

JUDGE: Forchione

FILING INFORMATION:

DATE OF FAX TRANSMISSION: April 6, 2021

NUMBER OF PAGES (including this page): 10  11

Brittany Stephen *Associate*

BAILEY | CAVALIERI

ENTERED BY LH

4/7 - called & will mail CK of 93.00 -

10 W. Broad Street, Ste. 2100 ◦ Columbus, OH 43215-3422
direct: 614.229.3250 ◦ main: 614.221.3155 ◦ fax: 614.221.0479
bstephen@baileycav.com | baileycav.com

Bailey Cavalleri LLC

## IN THE COMMON PLEAS COURT OF STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS, LLC,          :

               PLAINTIFF,          :          **CASE NO. 2021CV00251**

        v.          :          **JUDGE FORCHIONE**

FLEUR-DE-LIS DEVELOPMENT LLC,          :          **JURY DEMAND**
*ET AL.,*

                    :

           DEFENDANTS.          :

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT
## AND
## COUNTERCLAIM OF DEFENDANT FLEUR-DE-LIS DEVELOPMENT LLC

### ANSWER

Now come Defendants, Fleur-de-Lis Development LLC ("FDLD"), Rocco Piacentino ("Mr. Piacentino"), and Cynthia Heinz ("Ms. Heinz") (collectively "Defendants"), and for their Answer to the Complaint (the "Complaint") of Plaintiff, Squirrels Research Labs, LLC ("Plaintiff"), hereby state as follows:

1.     Paragraph 1 of the Complaint does not require a response because it is a request for relief and contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

2.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, deny the same.

3.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint and, therefore, deny the same.

4.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint and, therefore, deny the same.

5.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint and, therefore, deny the same.

6.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint and, therefore, deny the same.

7.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint and, therefore, deny the same.

8.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint and, therefore, deny the same.

1

9.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint and, therefore, deny the same.

10.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and, therefore, deny the same.

11.     In response to Paragraph 11 of the Complaint, Defendants admit that FDLD is an Ohio limited liability company and involved in venture capital industries and denies the remaining allegations therein.

12.     Defendants admit the allegations in Paragraph 12 of the Complaint.

13.     Defendants admit the allegations in Paragraph 13 of the Complaint.

14.     Paragraph 14 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

15.     Paragraph 15 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

16.     In response to Paragraph 16 of the Complaint, Defendants admit that FDLD and Plaintiff signed the document attached to the Complaint as Exhibit A. To the extent that the allegations in Paragraph 16 seek to paraphrase or characterize the contents of that Exhibit A, Defendants state that Exhibit A is a written document which speaks for itself and deny the remaining allegations contained in Paragraph 16 to the extent they are inconsistent with Exhibit A.

17.     In response to Paragraph 17 of the Complaint, Defendants admit that FDLD and Plaintiff signed the document attached to the Complaint as Exhibit B on November 30, 2020. To the extent that the allegations in Paragraph 17 seek to paraphrase or characterize the contents of that Exhibit B, Defendants state that Exhibit B is a written document which speaks for itself and deny the remaining allegations contained in Paragraph 17 to the extent they are inconsistent with Exhibit B.

18.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint and, therefore, deny the same. To the extent that the allegations in Paragraph 18 seek to paraphrase or characterize the contents of that Exhibits A or B, Defendants state that Exhibits A and B are each a written document which speaks for itself and deny the remaining allegations contained in Paragraph 18 to the extent they are inconsistent with Exhibits A or B.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint.

22.     Defendants deny the allegations in Paragraph 22 of the Complaint.

23.     Defendants deny the allegations in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations in Paragraph 26 of the Complaint.

## COUNT I: BREACH OF CONTRACT

27.     Paragraph 27 of the Complaint does not require a response because it is a transitional statement. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

2

28.    Paragraph 28 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

29.    Paragraph 29 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

30.    Paragraph 30 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

31.    Paragraph 31 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

32.    Paragraph 32 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

33.    Paragraph 33 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

34.    Paragraph 34 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

35.    Paragraph 35 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

## COUNT II: DEFAMATION

36.    Paragraph 36 of the Complaint does not require a response because it is a transitional statement. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

37.    Paragraph 37 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

38.    Paragraph 38 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

39.    Paragraph 39 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

## COUNT III: FRAUD

40.    Paragraph 40 of the Complaint does not require a response because it is a transitional statement. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

3

41.     Paragraph 41 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

42.     Defendants deny the allegations in Paragraph 42 of the Complaint.

43.     Paragraph 43 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

44.     Paragraph 44 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

45.     Paragraph 45 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

46.     Paragraph 46 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

COUNT IV: TRADE SECRETS ACT

47.     Paragraph 47 of the Complaint does not require a response because it is a transitional statement. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

48.     Paragraph 48 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

49.     Paragraph 49 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

50.     Paragraph 50 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

COUNT V: INTENTIONAL INTERFERENCE

51.     Paragraph 51 of the Complaint does not require a response because it is a transitional statement. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

52.     Paragraph 52 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

53.     Paragraph 53 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

54.     Paragraph 54 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

4

## COUNT VII: PUNITIVE DAMAGES[1]

55.     55 of the Complaint does not require a response because it is a transitional statement. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

56.     Paragraph 56 of the Complaint does not require a response because it contains a legal conclusion. To the extent a response is necessary, Defendants deny the truth of the allegations therein.

57.     Defendants deny the truth of every allegation contained in the Complaint that is not specifically admitted in this Answer.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's claims against Mr. Piacentino and Ms. Heinz are barred because Mr. Piacentino and Ms. Heinz are not legally responsible for the alleged acts in the Complaint.

3.     Plaintiff's claims are barred due to its own negligence, misconduct, assumption of the risk, and/or unclean hands.

4.     Plaintiff's claims are barred by the doctrines of laches, estoppel, waiver, consent, ratification, and accord and satisfaction.

5.     Plaintiff's claims are barred by the statute of frauds.

6.     Plaintiff's claims are barred by Plaintiff's failure to mitigate their damages.

7.     Plaintiff's claims are barred by the failure of a condition.

8.     Plaintiff's claims are barred because the Plaintiff prevented and frustrated Defendants' performance and Plaintiff failed to perform.

9.     Plaintiff's claims are barred by the Parol Evidence Rule.

10.     Plaintiff's claims are barred because Plaintiff failed to plead fraud with specificity.

11.     Plaintiff's claims are barred because Plaintiff suffered no actual injury.

12.     Plaintiff's claims are barred because Plaintiff is seeking to recover damages that are completely speculative in nature.

13.     Defendants reserve the right to assert additional affirmative defenses as they become known and as discovery in this matter is ongoing.

## COUNTERCLAIM OF FLEUR-DE-LIS DEVELOPMENT LLC

Now comes Defendant/Counter-Claimant, Fleur-de-Lis Development LLC ("FDLD"), and for its Counterclaim against Plaintiff/Counter-Defendant, Squirrels Research Labs, LLC ("SQRL") (FDLD and SQRL are collectively the "Parties"), hereby states as follows:

### PARTIES

1.     FDLD is an Ohio limited liability company organized and existing under the laws of the State of Ohio with its primary place of business in Franklin County, Ohio.

2.     SQRL is an Ohio limited liability company organized and existing under the laws of the State of Ohio with its primary place of business in Stark County, Ohio.

---

[1] The Complaint does not contain a Count VI.

5

3.  SQRL is subject to the jurisdiction of this Court and venue is proper in this Court pursuant to Rule 3 of the Ohio Rules of Civil Procedure.

## FACTS

4.  SQRL is in the business of offering high-performance cryptocurrency mining hardware.

5.  FDLD is in the business of investing in conventional, seed, and technology ventures.

6.  FDLD and SQRL were interested in pursuing a strategic partnership with each other whereby FDLD would provide certain services and funds in exchange for a majority membership interest in SQRL.

7.  Part of the services that the Parties agreed that FDLD would provide to SQRL included FDLD identifying and increasing SQRL's investor base and negotiating certain of SQRL's debts.

8.  On or about November 17, 2020, FDLD and SQRL entered into a letter of intent with respect to a potential purchase transaction whereby FDLD would purchase fifty-one percent (51%) of SQRL. A true and accurate copy of the letter of intent is attached to the Complaint as Exhibit A.

9.  On December 31, 2020, FDLD and SQRL formalized this letter of intent through a Membership Interest Purchase Agreement (the "Agreement"). A true and accurate copy of the letter of intent is attached to the Complaint as Exhibit B.

10. The Parties agreed that, as a condition precedent to FDLD's purchase of the SQRL membership interests, FDLD would negotiate the resolution of SQRL's debt with one of SQRL's creditors (the "Creditor").

11. The Parties agreed that, as a condition precedent to FDLD's purchase of the SQRL membership interests, the Parties would agree on the resolution and payment of SQRL's debt with other creditors of SQRL.

12. SQRL represented and warranted that it was the lawful owner of and currently possesses all right, title and interest in and to its membership interest in SQRL, free and clear of all security interests, liens, or encumbrances.

13. SQRL represented and warranted that it disclosed all facts that could have a material effect on the general affairs, business, prospects, properties, financial position, results of operations, or net worth of SQRL.

14. SQRL warranted that any financial information it provided to FDLD was true and accurate to the best of SQRL's knowledge.

15. SQRL provided FDLD with its alleged financial position, including its quarterly and annual revenues.

16. Despite SQRL's representations and warranties in the Agreement that all financial information provided to FDLD in connection with the Agreement were true and correct, at all times during the negotiation of the Agreement, SQRL knew that its representations regarding SQRL's financial position were false.

17. In addition, despite SQRL's representations and warranties in the Agreement that all financial information it provided to FDLD in connection with the Agreement were true and correct, SQRL knew that it had taken substantial loans from the Teamsters Union upon terms that were usurious and unfair to SQRL and jeopardized SQRL's financial position on a monthly basis when exorbitant payments were due to the Teamsters Union to pay back loans.

6

18.    Based upon SQRL's representations and warranties in the Agreement, FDLD immediately identified and began to foster investor relationships on behalf and in favor of SQRL.

19.    After the execution of the Agreement and after FDLD began successfully identifying and fostering investor relationships, FDLD became aware that SQRL made various misrepresentations and omissions of fact in relation to the Agreement, including information about SQRL's exorbitant debt owed to the Teamsters Union.

20.    Around six weeks after SQRL and FDLD signed the Agreement and after FDLD obtained information about the Teamsters Union's debt, SQRL had no choice but to provide FDLD with substantially different and less favorable financial information.

21.    SQRL knew or should have known that financial information that SQRL initially provided to FDLD was grossly inflated or incorrect.

22.    Upon information and belief, SQRL intended to misrepresent its financial condition to FDLD to induce FDLD to enter into the Agreement.

23.    After learning about SQRL's financial misrepresentations, FDLD was required to disclose the accurate financial information to the potential investors it was already courting.

24.    Additionally, after SQRL and FDLD signed the Agreement, and without the knowledge or consent of FDLD, SQRL contacted the Creditor directly to try to negotiate a reduction of its debt outside of the Agreement with FDLD and essentially frustrate FDLD's ability to perform under the Agreement.

25.    In SQRL's conversations with the Creditor and in order to frustrate FDLD's prospects of performing under the Agreement, SQRL made untrue and damaging statements about FDLD and its members.

26.    Additionally, according to Section 4.1 of the Agreement, FDLD is entitled to recover attorneys' fees and other costs and expenses arising out of or in any matter incidental to, relating or attributable to any breach of any representation or warranty of the Agreement.

## COUNT I: BREACH OF FIDUCIARY DUTY

27.    FDLD hereby restates, realleges, and incorporates by reference each of the above allegations as if fully rewritten herein.

28.    SQRL owes certain fiduciary duties to FDLD according to Ohio law and Ohio Revised Code Chapter 1705, including a duty of loyalty and duty of care.

29.    SQRL breached its fiduciary duty of loyalty to FDLD.

30.    SQRL breached its fiduciary duty of care to FDLD.

31.    SQRL's breaches of fiduciary duty were undertaken with deliberate intent to cause injury to FDLD's interests in SQRL or the overall interests of SQRL or undertaken with reckless disregard for the best interests of the SQRL.

32.    As a result of the foregoing, FDLD has been damaged in an amount over $25,000, plus attorney fees, costs, and interest.

## COUNT II: BREACH OF CONTRACT

33.    FDLD hereby restates, realleges, and incorporates by reference each of the above allegations as if fully rewritten herein.

34.    The Agreement represents a valid and binding contract between the Parties.

35.    SQRL failed to comply with the requirements of the Agreement.

36.    SQRL made representations and warranties in the Agreement that were not true at the time they were made.

7

37. As a result, SQRL is in breach of the Agreement.

38. SQRL's breach of the Agreement relieves FDLD from any further obligations under the Agreement.

39. As a result of the foregoing, FDLD has been damaged in an amount over $25,000, plus attorney fees, costs, and interest.

## COUNT III: FRAUDULENT MISREPRESENTATION

40. FDLD hereby restates, realleges, and incorporates by reference each of the above allegations as if fully rewritten herein.

41. At the time of the Agreement, SQRL represented that it was at a certain financial condition.

42. At the time of the Agreement, SQRL knew or should have known its actual current financial condition.

43. Upon information and belief, SQRL knew that its representations were false.

44. SQRL's representations were material to FDLD's willingness to enter into the Agreement, engage in a business relationship with SQRL, and seek investors on behalf of SQRL.

45. FDLD's reliance on SQRL's representations was justified.

46. SQRL's representations were made with malice or ill will and its conduct rises to the level of gross or egregious conduct necessary to entitle FDLD to punitive damages.

47. As a result of the foregoing, FDLD has been damaged in an amount over $25,000, plus attorney fees, costs, and interest.

## COUNT IV: FRAUDULENT CONCEALMENT

48. FDLD hereby restates, realleges, and incorporates by reference each of the above allegations as if fully rewritten herein.

49. SQRL had a duty to disclose the financial information to FDLD.

50. SQRL intentionally concealed the financial information that was otherwise unknown to FDLD.

51. SQRL intended to deceive FDLD by concealing the financial information.

52. FDLD acted in justifiable reliance on SQRL's concealment.

53. As a result of the foregoing, FDLD has been damaged in an amount over $25,000, plus attorney fees, costs, and interest.

## COUNT V: DEFAMATION

54. FDLD hereby restates, realleges, and incorporates by reference each of the above allegations as if fully rewritten herein.

55. SQRL made false and defamatory statements of fact about FDLD to customers, potential customers, vendors, and others in the industry.

56. SQRL's statements were aimed to injure FDLD's reputation and to affect FDLD in its trade and industry.

57. SQRL's statements were made with actual malice, gross negligence, or negligence, and without privilege.

58. As a result of the foregoing, FDLD has been damaged in an amount over $25,000.

**WHEREFORE,** Defendants request that the Court dismiss Plaintiff's Complaint with prejudice and that judgment be entered for Defendants on Plaintiff's Complaint; grant judgment

8

in favor of FDLD for the relief requested in its Counterclaim; and grant Defendants any further relief that the Court may deem just and fair.

Respectfully submitted,

BAILEY CAVALIERI LLC

Jameel S. Turner (0078251)
Brittany P. Stephen (0092178)
10 W. Broad St., Suite 2100
Columbus, OH 43215
Phone (614) 221-3250
Fax    (614) 221-0479
jturner@baileycav.com
bstephen@baileycav.com
*Counsel for Defendants*

## JURY DEMAND

FDLD hereby demands a jury trial on the issues set forth in its Counterclaim above.

Jameel S. Turner (0078251)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all parties to this action by sending a copy to each of the following by first-class U.S. mail, postage prepaid, this April 6, 2021.

Jack B. Cooper
Milligan Pusateri Co., LPA
P.O. Box 35459
4684 Douglas Circle NW
Canton, Ohio 44735
jcooper@milliganpusateri.com
*Counsel for Plaintiff*

Jameel S. Turner (0078251)

9

# FAX RX Result Report

MFP

## TASKalfa 5501i

Firmware Version 2N9_2000.005.105 2016.06.27



04/06/2021 22:20
[2N7_J000.006.001] [2N4_1100.001.002] [2N4_7000.005.103]

Job No.: 145041          Total Time: 0°08'57"          Page: 011

# Complete

Document:          doc20210406221059

| No. | Date and Time | Destination | Times | Type | Result | Resolution/ECM |
|-----|---------------|-------------|-------|------|--------|----------------|
| 001 | 04/06/21 22:10 | 16142210479 | 0°08'57" | FAX P1 | OK | 200x200 Fine/On |

1

[ L7J6511357 ]



IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS LLC ) CASE NO. 2021CV00251
)
   PLAINTIFF )  JUDGE FORCHIONE
)
 VS. )  ORDER
)
FLEUR-DE-LIS DEVELOPMENT LLC, )
ET AL )
)
   DEFENDANT )

   Pursuant to Ohio Civ.R. 26, the parties in this case are ordered to arrange and participate in a discovery planning meeting three weeks prior to the Court's scheduled Case Management Conference. Please find included herein the Court's form *"Report of the Parties' Civ.R. 26(F) Planning Meeting"*. Parties are to complete initial disclosures prior to this Court's Case Management Conference as set forth in Civ.R(B)(3)(c). Failure to file your Discovery Planning Report will result in the Court adopting its proposed dates and no case management conference will take place.

   The Court has set a trial date and a final pretrial date for this case, which can be found within the form – the parties are to use these dates as guidelines for their planning process. This form is to be completed and filed with the Court no later than 14 days prior to the scheduled telephone pretrial conference. '

   A Case Management Conference is scheduled for <u>May 10, 2021 at 1:30 p.m.</u> with Magistrate Gretchen Stocker. *Plaintiff is to initiate the phone conference. Magistrate Stocker can be reached at 330.451.7676.*

JUDGE FRANK G. FORCHIONE

cc:  Jack B. Cooper, Esq.
   Jameel S. Turner, Esq.

## FACSIMILE FILING COVER
### RECIPIENT INFORMATION:

**NAME OF COURT:**    STARK COUNTY COMMON PLEAS

**FAX NUMBER:**    **330-451-7853**

### SENDING PARTY INFORMATION:

NAME:    Jack B. Cooper

SUPREME COURT REGISTRATION NO. 0069321

OFFICE/FIRM:    Milligan Pusateri Co., LPA

ADDRESS:    4684 Douglas Circle, Canton, OH 44718

TELEPHONE NO.:    234-209-9793

FAX NUMBER:    330-409-0249

E-MAIL ADDRESS: jcooper@milliganpusateri.com

### CASE INFORMATION:

TITLE OF THE CASE:    ﹕    Squirrels Research Labs LLC. v Fleur De Lis Development, LLC

CASE NUMBER:    2021CV00251

TITLE OF THE DOCUMENT:    Answer to Counterclaim

JUDGE    Forchlone

### FILING INFORMATION:

DATE OF FAX TRANSMISSION:    May 3, 2021

NUMBER OF PAGES (including this page):    7

ENTERED BY 80

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

| | | |
|---|---|---|
| SQUIRRELS RESEARCH LABS, LLC, | ) | CASE NO. 2021CV00251 |
| | ) | |
| PLAINTIFF, | ) | JUDGE FORCHIONE |
| v. | ) | |
| | ) | PLAINTIFF'S     ANSWER     AND |
| FLEUR-DE-LIS DEVELOPMENT, LLC, | ) | AFFIRMATIVE     DEFENSES     TO |
| et al, | ) | COUNTERCLAIM |
| | ) | |
| DEFENDANTS. | ) | *(Trial by Jury Demanded)* |

For its answer to the Counterclaim filed by Defendant Fleur-De-Lis Development, LLC ("FDLD"), Plaintiff would state as follows:

1. Defendant admits the allegations in paragraphs 1, 2, 3, 17, 20, and 23.

2. In response to the allegations in paragraph 4, Plaintiff admits it is an Ohio limited liability company with its principal place of business in North Canton, Stark County, Ohio, and that it is a world-leader in "blockchain" technology, including hardware and software used for "cryptocurrency mining. Plaintiff denies the remainder of the allegations in that paragraph.

3. In response to the allegations in paragraph 5, Plaintiff admits that FDLD is an Ohio limited liability company that holds itself out as a venture capital investor. Plaintiff denies the remainder of the allegations in that paragraph.

4. In response to the allegations in paragraph 6, Plaintiff admits that FDLD and Plaintiff contemplated a business relationship as set forth in that certain Letter of Intent ("LOI"), an authentic copy of which was attached as Exhibit "A" to the Complaint, and that certain Membership Interest Purchase Agreement ("Purchase Agreement"), an authentic copy of

the Purchase Agreement was attached as Exhibit "B" to the Complaint. Plaintiff denies the remainder of the allegations in that paragraph.

5. In response to the allegations in paragraph 7, Plaintiff admits that the Purchase Agreement contains the terms of the agreement between FDLD and Plaintiff. Plaintiff denies the remainder of the allegations in that paragraph.

6. In response to the allegations in paragraph 8, Plaintiff admits it entered the LOI with FDLD on November 17, 2020, and that the terms of the LOI, which is attached to the Complaint as Exhibit "A", speak for themselves. Plaintiff denies the remainder of the allegations in that paragraph.

7. In response to the allegations in paragraph 9, Plaintiff admits it entered the Purchase Agreement with FDLD on December 31, 2020, and that the terms of the Purchase Agreement, which is attached to the Complaint as Exhibit "B", speak for themselves. Plaintiff denies the remainder of the allegations in that paragraph.

8. In response to the allegations in paragraph 10, Plaintiff admits that the Purchase Agreement contains all of the terms of the agreement between FDLD and Plaintiff. Plaintiff denies the remainder of the allegations in that paragraph.

9. In response to the allegations in paragraph 11, Plaintiff admits that the Purchase Agreement contains all of the terms of the agreement between FDLD and Plaintiff. Plaintiff denies the remainder of the allegations in that paragraph.

10. In response to the allegations in paragraph 12, Plaintiff admits that the Purchase Agreement contains all of the representations and warranties that Plaintiff made to FDLD. Plaintiff denies the remainder of the allegations in that paragraph.

11. In response to the allegations in paragraph 13, Plaintiff admits that the Purchase Agreement contains all of the representations and warranties that Plaintiff made to FDLD. Plaintiff denies the remainder of the allegations in that paragraph.

12. In response to the allegations in paragraph 14, Plaintiff admits that the Purchase Agreement contains all of the representations and warranties that Plaintiff made to FDLD. Plaintiff denies the remainder of the allegations in that paragraph.

13. In response to the allegations in paragraph 15, Plaintiff admits that it made complete and accurate disclosures of its financial position to FDLD and that any future projections were made in good faith based on the information available at the time. Plaintiff denies the remainder of the allegations in that paragraph.

14. Defendant denies the allegations in paragraphs 16, 18, 19, 21, 22, 25, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, 43, 44, 45, 46, 47, 50, 51, 52, 53, 55, 56, 57, and 58.

15. In response to the allegations in paragraph 24, Plaintiff admits that it contacted a certain creditor, after FDLD breached the Purchase Agreement, to attempt to salvage the business relationship, resolve the debt, and to inform the creditor that FDLD's representations and allegations were false. Plaintiff denies the remainder of the allegations in that paragraph.

16. In response to the allegations in paragraph 26, Plaintiff admits that the Purchase Agreement contains all of the terms of the agreement between FDLD and Plaintiff. Plaintiff denies the remainder of the allegations in that paragraph.

17. In response to the allegations in paragraph 27, Plaintiff incorporates its responses to paragraphs 1 through 26 as if fully set forth herein.

18. In response to the allegations in paragraph 33, Plaintiff incorporates its responses to paragraphs 1 through 32 as if fully set forth herein.

19. In response to the allegations in paragraph 34, Plaintiff admits that the Purchase Agreement was valid and binding when signed, and that FDLD's breach relieved Plaintiff of any duties under that agreement. Plaintiff denies the remainder of the allegations in that paragraph.

20. In response to the allegations in paragraph 40, Plaintiff incorporates its responses to paragraphs 1 through 39 as if fully set forth herein.

21. In response to the allegations in paragraph 41, Plaintiff admits that is disclosed its financial circumstances to FDLD in connection with the Purchase agreement. Plaintiff denies the remainder of the allegations in that paragraph.

22. In response to the allegations in paragraph 42, Plaintiff admits that it had and disclosed accurate information about its financial condition. Plaintiff denies the remainder of the allegations in that paragraph.

23. In response to the allegations in paragraph 48, Plaintiff incorporates its responses to paragraphs 1 through 47 as if fully set forth herein.

24. In response to the allegations in paragraph 49, Plaintiff admits that the Purchase Agreement contains all of the terms of the agreement between FDLD and Plaintiff. Plaintiff denies the remainder of the allegations in that paragraph.

25. In response to the allegations in paragraph 54, Plaintiff incorporates its responses to paragraphs 1 through 53 as if fully set forth herein.

26. Plaintiff denies any allegations not specifically admitted herein.

## AFFIRMATIVE DEFENSES

For her affirmative defenses to the allegations in the Counterclaim filed by FDLD, Plaintiff would state as follows:

1. Defendant's claims are barred because they fail to state a claim upon which relief can be granted.

2. Defendant's claims are barred to the extent that it failed to mitigate its damages.

3. Defendant's claims are barred because Plaintiff was privileged and acted to protect its legitimate interests.

4. Defendant's claims are barred by the doctrine of unclean hands.

5. Defendant's claims are barred by the Statute of Frauds.

6. Defendant's claims are barred because Plaintiff's actions were legally justified.

7. Defendant's claims are barred by the doctrine of Equitable Estoppel.

8. Defendant's claims are barred by the doctrine of Waiver.

9. Defendant's claims are barred because of its own misconduct, as described in the Complaint.

10. Defendant's claims are barred because at all times Plaintiff acted in good faith.

11. Defendant's claims are barred because its own misconduct prevented or frustrated Plaintiff's performance, as described in the Complaint.

12. Defendant's claims are barred to the extent that they rely on parol evidence.

13. Defendant's claims are barred based on failure of a condition precedent

14. Defendant's claims are barred because its damages are speculative.

15. Defendant's claims are barred because Plaintiff was fraudulently induced to enter the subject transaction as described in the Complaint.

16. Defendant's claims are barred to the extent Plaintiff is entitled to a setoff from Defendant.

17. Defendant failed to plead fraud with particularity and therefore its fraud claim is barred.

Jack B. Cooper (#0069321)
Milligan Pusateri Co., LPA
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735
Phone: (234) 209-9793
Fax: (330) 409-0249
Email: jcooper@milliganpusateri.com
Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues presented herein.

Jack B. Cooper (#0069321)

## PROOF OF SERVICE

This will certify that a copy of the foregoing was served on the following by the method(s)

indicated below, on May 3, 2021:

Jameel S. Turner (0078251)
Brittany P. Stephen (0092178)
10 W. Broad St., Suite 2100
Columbus, OH 43215
Phone (614) 221-3250
Fax (614) 221-0479
jturner@baileycav.com
bstephen@baileycav.com

By First Class U.S. Mail and electronic mail

Jack B. Cooper (#0069321)

# FAX RX Result Report

MFP

## TASKalfa 5501i

Firmware Version 2N9_2000.005.105 2016.06.27



05/03/2021 11:01
[2N7_1000.006.001] [2N4_1100.001.002] [2N4_7000.005.103]

Job No.: 148309          Total Time: 0°04'24"          Page: 008

# Complete

Document:          doc20210503105631

| No. | Date and Time | Destination | Times | Type | Result | Resolution/ECM |
|-----|---------------|-------------|-------|------|--------|----------------|
| 001 | 05/03/21 10:56 | 13303133789 | 0°04'24" | FAX P1 | OK | 200x200 Fine/On |

1

[ L7J6511357 ]

IN THE COURT OF COMMON PLEAS, STARK COUNTY, OHIO
JUDGE FRANK G. FORCHIONE
JUDGMENT ENTRY / MAGISTRATE'S PRE-TRIAL ORDER

| CASE NO. | 2021 CV 251 | | |
|---|---|---|---|
| **PLAINTIFF** | SQUIRRELS RESEARCH LABS LLC | **DEFENDANT** | FLEUR DE LIS DEVELOPMENT, LLC, ET AL., |
| **ATTORNEY** | JACK COOPER | **ATTORNEY** | JAMEEL TURNER |

TRIAL DATE _____11/29/21_____ STAND BY WEEK

THE WEEK YOUR CASE HAS BEEN SCHEDULED FOR TRIAL IS FOR THE **WEEK OF**. THE COURT RESERVES THE RIGHT TO BEGIN YOUR TRIAL AT ANY TIME DURING THE WEEK. CRIMINAL TRIALS TAKE PRECEDENCE. THE EARLIEST THAT YOUR TRIAL WILL START IS MONDAY AT 1:30 P.M.

ALL REQUIRED COURT COST DEPOSITS FOR JURY DEMANDS MUST BE PAID WITHIN FIVE (5) DAYS OF THIS ORDER. SHOULD COSTS FOR A JURY DEMAND NOT BE PAID, THE COURT WILL STRIKE THE JURY DEMAND. THE FACT THAT ONE PARTY HAS MADE A JURY DEMAND DOES NOT ACT AS A VALID JURY DEMAND UNLESS THE COURT COSTS HAVE BEEN PAID AS REQUIRED BY THIS ORDER.

CLIENTS & THOSE WITH FULL
SETTLEMENT AUTHORITY MUST

| FINAL PRETRIAL | 11/15/21 | AT | 4:00 PM | ATTEND |
|---|---|---|---|---|
| MOTIONS IN LIMINE | 10/29/21 | | | |
| JURY INSTRUCTIONS | @ FPT | | | ALL PROPOSED JURY INSTRUCTIONS/INTERROGATORIES/VERDICT FORMS SHOULD BE EMAILED IN WORD FORMAT TO: GLSTOCKER@STARKCOUNTYOHIO.GOV |
| DISCOVERY CUTOFF | 8/27/21 | | | |
| DISPOSITIVE MOTIONS | 9/24/21 | | | A COPY OF ALL UNREPORTED CASES MUST BE ATTACHED |
| RESPONSE | SEE CIV. R. 6 | | | |
| REPLY | SEE CIV. R. 6 | | | |

IDENTIFICATION OF EXPERTS WITH SUMMARY REPORT:

PLAINTIFF TO IDENTIFY: _____7/30/21_____

DEFENDANT TO IDENTIFY: _____10/1/21_____

MEDIATION DATE:

NOTES: _____

_____

ATTORNEYS PRESENT IN-PERSON / BY TELEPHONE AT PRE-TRIAL:

DATE: ____5-10-21____          MAGISTRATE _____

## FACSIMILE FILING COVER
## RECIPIENT INFORMATION:

NAME OF COURT:          STARK COUNTY COMMON PLEAS

FAX NUMBER:          330-451-7853

### SENDING PARTY INFORMATION:

NAME:          Jack B. Cooper

SUPREME COURT REGISTRATION NO. 0069321

OFFICE/FIRM:          Milligan Pusateri Co., LPA

ADDRESS:          4684 Douglas Circle, Canton, OH 44718

TELEPHONE NO.:   234-209-9793

FAX NUMBER:     330-409-0249

E-MAIL ADDRESS: jcooper@milliganpusateri.com

### CASE INFORMATION:

TITLE OF THE CASE:          Squirrels Research Labs LLC v. Fleur de Lis De

CASE NUMBER:          2021CV00251

TITLE OF THE DOCUMENT:   Plaintiff's Motion to Extend Expert Deadline

JUDGE          Forchione

### FILING INFORMATION:

DATE OF FAX TRANSMISSION:   July 30, 2021

NUMBER OF PAGES (including this page):   3

ENTERED BY 80

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

| | |
|---|---|
| SQUIRRELS RESEARCH LABS, LLC, ) | CASE NO. 2021CV00251 |
| ) | |
| PLAINTIFF, ) | JUDGE FORCHIONE |
| v. ) | |
| ) | PLAINTIFF'S MOTION TO EXTEND |
| FLEUR-DE-LIS DEVELOPMENT, LLC, ) | EXPERT DEADLINE |
| et al, ) | |
| ) | |
| DEFENDANTS. ) | |

Plaintiff hereby moves for an order extending its time to disclose experts and provide summary reports until August 30, 2021. The grounds of this motion are that Plaintiff's main business location at 8050 Freedom Ave. SW North Canton, Ohio suffered a fire on July 16, 2021, which resulted in the complete cessation of Plaintiff's business while the facility is restored. Among other things, the fire damages computers at the facility, which are currently under repair. Plaintiff needs the additional time to work with experts to complete their reports.

/s/ Jack B. Cooper

Jack B. Cooper (#0069321)
Milligan Pusateri Co., LPA
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735
Phone: (234) 209-9793
Fax: (330) 409-0249
Email: jcooper@milliganpusateri.com
Counsel for Plaintiff

## PROOF OF SERVICE

This will certify that a copy of the foregoing was served on the following by the method(s)

indicated below, on July 30, 2021:

Jameel S. Turner (0078251)
Brittany P. Stephen (0092178)
10 W. Broad St., Suite 2100
Columbus, OH 43215
Phone (614) 221-3250
Fax (614) 221-0479
jturner@baileycav.com
bstephen@baileycav.com

By electronic mail only

*/s/ Jack B. Cooper*
Jack B. Cooper (#0069321)

| | | |
|---|---|---|
| SQUIRRELS RESEARCH LABS, LLC | ) | CASE NO. 2021 CV 251 |
| | ) | |
| | ) | |
| PLAINTIFF(S), | ) | JUDGE FORCHIONE |
| | ) | |
| VS. | ) | |
| | ) | JUDGMENT ENTRY |
| FLEUR-DE-LIS DEVELOPMENT, LLC, ET AL., | ) | |
| | ) | |
| | ) | |
| DEFENDANT(S). | ) | |

Now comes the Court upon consideration of Plaintiff's Motion to Extend Expert Deadline.

Upon review and for good cause shown, the Court hereby GRANTS said motion. Plaintiff's expert deadline is extending to August 30, 2021.

IT IS SO ORDERED.

_____
FRANK G. FORCHIONE, JUDGE

cc:

Jack Cooper, Esq. (jcooper@milliganpusateri.com)
Jameel Turner, Esq. (jturner@baileycav.com)
Brittany Stephen, Esq. (bstephen@baileycav.com)

ENTERED BY 7

# IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS LLC, )
)
) CASE NO. 2021 CV 251
)
PLAINTIFF(S), ) JUDGE FORCHIONE
)
VS. )
) ORDER
FLEUR-DE-LIS DEVELOPMENT LLC, ET )
AL., )
)
DEFENDANT(S). )

Now comes the Court upon receipt of the Agreed Order to Amend Case Schedule, submitted to the Court for review and signature, wherein the parties propose to continue all dates in this matter, including the trial date to six months beyond those dates originally set.

The Court does NOT routinely agree to these types of extensions, nor would it have granted a motion had one been filed. If the parties wish to have a pretrial conference set to discuss the issues, which they feel necessitate an extension of dates, they may apply to the Court for scheduling.

**The Agreed Order to Amend Case Schedule is therefore rejected.**

IT IS SO ORDERED.

FRANK G. FORCHIONE, JUDGE

Copies to:
Jack Cooper, Esq. (jcooper@milliganpusateri.com)
Brittany Stephen, Esq. (bstephen@baileycav.com)

ENTERED BY BO

## LYNN M TODARO

## Stark County Clerk of Courts

115 Central Plaza N., Suite 101
PH: 330-451-7801 / FAX: 330-451-7853
www.starkcountyohio.gov/clerk

*9.22.21*
*need Judges sig*

# Rejected Fax Filing

| TO: | Jameel S. Turner | FROM: | Civil Division |
|---|---|---|---|
| FAX: | 614-221-0479 | PAGES: | 1 |

[x] Urgent     [x] For Review     [ ] Please Comment     [ ] Please Reply     [ ] Please Recycle

### Comments:

This is a courtesy notice that your fax filing for case number _____2021CVU0251_

has been rejected. Pursuant to Local Rule 9.09(V)(D) please check the docket.

## IN THE COMMON PLEAS COURT OF STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS LLC,          :

                    PLAINTIFF,          :          **CASE NO. 2021CV00251**

         v.          :          **JUDGE FORCHIONE**

FLEUR-DE-LIS DEVELOPMENT LLC,          :
*ET AL.*,

                  DEFENDANTS.          :


## AGREED ORDER TO AMEND CASE SCHEDULE

      Upon the agreement of Plaintiff, Squirrels Research Labs LLC, and Defendants, Fleur-de-lis Development LLC, Rocco Piacentino, and Cynthia Heinz, the Court hereby amends the case schedule as follows:

| | |
|---|---|
| Trial Date | 7/27/2022 at _____ |
| Final Pretrial | 7/13/2022 at _____ |
| Motions in Limine | 6/22/2022 |
| Jury Instructions | At Final Pretrial |
| Discovery Cutoff | 4/27/2022 |
| Dispositive Motions | 5/25/2022 |
| Response | See Civ. R. 6 |
| Reply | See Civ. R. 6 |

Identification of Experts with Summary Report:

| | |
|---|---|
| Plaintiff | 2/1/2022 |
| Defendant | 3/31/2022 |

#1998794

1

IN THE COMMON PLEAS COURT OF STARK COUNTY, OHIO

SQUIRRELS RESEARCH LABS LLC, :

               PLAINTIFF, :     CASE NO. 2021CV00251

        v. :     JUDGE FORCHIONE

FLEUR-DE-LIS DEVELOPMENT LLC, :
*ET AL.*,

             DEFENDANTS. :

                        :

## UNOPPOSED APPLICATION TO SCHEDULE PRETRIAL CONFERENCE TO DISCUSS PROPOSED AMENDED CASE SCHEDULE

Defendants, Fleur-de-lis Development LLC, Rocco Piacentino, and Cynthia Heinz, hereby respectfully request that this Court schedule a pretrial conference to discuss a proposed amendment to the case schedule in this matter. The proposed amended case schedule was previously submitted to this Court for review through an Agreed Order to Amend Case Schedule and, in response, the Court noted that the parties "may apply to the Court for scheduling" if "the parties wish to have a pretrial conference set to discuss the issues, which they feel necessitate an extension of dates." Plaintiff, Squirrels Research Labs LLC, agrees with the request to schedule a pretrial conference for this purpose.

ENTERED BY 80

As such, Defendants hereby apply to the Court for scheduling of a pretrial conference[1] to discuss the issues they feel necessitate an extension of dates for this matter. If the Court desires, Defendants can submit a Proposed Entry granting the same.

Respectfully Submitted,

BAILEY CAVALIERI LLC

Jameel S. Turner (0078251)
Brittany P. Stephen (0092178)
10 W. Broad St., Suite 2100
Columbus, OH 43215
Phone (614) 221-3250
Fax     (614) 221-0479
jturner@baileycav.com
bstephen@baileycav.com
*Counsel for Defendants*

---

[1] If the Court has availability, the parties are both currently available the afternoon of October 20 and October 22, 2021.

2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all parties to this action by sending a copy to each of the following by email and first-class U.S. mail, postage prepaid, this October 18, 2021.

Jack B. Cooper (#0069321)
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735
Phone: (234) 209-9793
Fax: (330) 409-0249
Email: jcooper@milliganpusateri.com
*Counsel for Plaintiff*

Brittany P. Stephen (0092178)

#2010985

SQUIRRELS RESEARCH LABS LLC, )   CASE NO.  2021 CV 00251
    )
    PLAINTIFF(S), )   JUDGE FORCHIONE
    )
VS. )   JUDGMENT ENTRY – DENYING
    )   UNOPPOSED APPLICATION TO
    )   SCHEDULE PRETRIAL
    )   CONFERENCE
FLEUR-DE-LIS DECELOPMENT LLC, ET )
AL., )
    )
    DEFENDANT(S). )

Now comes the Court in consideration of the Unopposed Application to Schedule Pretrial Conference to Discuss Proposed Amended Case Schedule.

The Court hereby DENIES the motion; this matter is set for a final pretrial on November 15, 2021. The parties may discuss the need for new dates with the Court at that time if the Court finds that it is warranted.

    IT IS SO ORDERED.

FRANK G. FORCHIONE, JUDGE

Copies by electronic transmission:

Jack Cooper, Esq. (jcooper@milliganpusateri.com)
Brittany Stephen, Esq, (bstephen@baileycav.com)

ENTERED BY 80

## FACSIMILE FILING COVER
## RECIPIENT INFORMATION:

**NAME OF COURT:**     **STARK COUNTY COMMON PLEAS**

**FAX NUMBER:**     **330-451-7853**

### SENDING PARTY INFORMATION:

NAME:     JACK B. COOPER

SUPREME COURT REGISTRATION NO. 0069321

OFFICE/FIRM:     Milligan Pusateri Co., LPA

ADDRESS:     4684 Douglas Circle, Canton, OH 44718

TELEPHONE NO.:   330-526-0770

FAX NUMBER:     330-409-0249

E-MAIL ADDRESS: jcooper@milliganpusateri.com

### CASE INFORMATION:

TITLE OF THE CASE:     Squirrels Research v. Fleur-De-Lis

CASE NUMBER:     2021CV00251

TITLE OF THE DOCUMENT:     Plaintiff's Suggestion of Bankruptcy

JUDGE: Forchione

### FILING INFORMATION:

DATE OF FAX TRANSMISSION:  November 24, 2021

NUMBER OF PAGES (including this page): 3

ENTERED BY SO

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

| | |
|---|---|
| SQUIRRELS RESEARCH LABS, LLC, | ) CASE NO. 2021CV00251 |
| | ) |
| PLAINTIFF, | ) JUDGE FORCHIONE |
| v. | ) |
| | ) PLAINTIFF'S SUGGESTION OF |
| FLEUR-DE-LIS DEVELOPMENT, LLC, | ) BANKRUPTCY |
| et al, | ) |
| | ) |
| DEFENDANTS. | ) |

Plaintiff hereby notifies the Court and all parties that it filed a petition for relief under Chapter

11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Ohio, Case No.

21-61491-rk.

/s/ Jack B. Cooper
Jack B. Cooper (#0069321)
Milligan Pusateri Co. LPA
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735
Phone: (234) 209-9793
Fax: (330) 409-0249
Email: jcooper@milliganpusateri.com
Counsel for Plaintiff

## PROOF OF SERVICE

This will certify that a copy of the foregoing was served on the following by the method(s)

indicated below, on November 24, 2021:

Jameel S. Turner (0078251)
Brittany P. Stephen (0092178)
10 W. Broad St., Suite 2100
Columbus, OH 43215
Phone (614) 221-3250
Fax (614) 221-0479
jturner@baileycav.com
bstephen@baileycav.com

By electronic mail only

/s/ Jack B. Cooper
Jack B. Cooper (#0069821)

| | | |
|---|---|---|
| SQUIRRELS RESEARCH LABS LLC, | ) | CASE NO. 2021 CV 251 |
| | ) | |
| | ) | |
| PLAINTIFF(S), | ) | JUDGE FORCHIONE |
| | ) | |
| VS. | ) | |
| | ) | ORDER |
| FLEUR DE LIS DEVELOPMENT LLC, ET AL., | ) | |
| | ) | |
| | ) | |
| DEFENDANT(S). | ) | |
| | ) | |

Now comes the Court and hereby sets an additional status conference in this matter for:

## FRIDAY, DECEMBER 17, 2021 AT 9:30 A.M.

This status conference will be by telephone and parties are to provide the best number to the Court by

December 16, 2021. The Court will initiate the call.

**IT IS SO ORDERED.**

FRANK G. FORCHIONE, JUDGE

Cc:

Jack Cooper, Esq. (jcooper@milliganpusateri.com)
Brittany Stephen, Esq. (bstephen@baileycav.com)