# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| SQUIRRELS RESEARCH LABS, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| | ) | |

## MOTION FOR RELIEF FROM THE SALE ORDER FOR THE LIMITED PURPOSE OF AMENDING THE DISTRIBUTION SCHEME PENDING DISCOVERY

Carl Forsell ("Movant"), by his undersigned counsel, moves this Court (the "Motion"), pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 60 of the Federal Rules of Civil Procedure (the "Fed. R. Civ. Pro."), for an order granting relief from this Court's Order authorizing the sale of Debtors' assets (Doc. No. 131, the "Sale Order"), for the limited purpose of amending the distribution scheme provided in the Sale Order. In support of this Motion, the Movant states as follow:

### PRELIMINARY STATEMENT

As detailed below, partially secured creditor Avnet, Inc. ("Avnet") improperly collected $3,000,000.00 in proceeds from the Sale Order under the auspices that it held a "blanket lien" on the Debtors' assets. In fact, a plain reading of that certain security agreement dated March 26, 2019 (the "Security Agreement") between Avnet and Debtor, Squirrels Research Labs ("SQRL") demonstrates that Avnet's lien was not a "blanket lien," but instead only encumbered goods and the proceeds of goods *actually sold* by Avnet to SQRL. Avnet collected every cent of the $3,000,000.00 proceeds from the Sale Order under the auspices that it held a blanket lien on

Debtors' assets, and Avnet must return proceeds to the Debtors' estate from the sale of any SQRL assets which were unsecured.

## FACTS

1. On November 23, 2021 (the "Petition Date"), the Debtors commenced with this Court voluntary cases under subchapter V of chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").

2. In the *Declaration of David Stanfill in Support of First Day Filings* (Doc. No. 8, the "First Stanfill Declaration"), filed on November 23, 2021, Mr. Stanfill details how the day before the Petition Date, Avnet agreed to reduce its $7,864,779.76 claim against the Debtors to $5,751,000.00. This is significant because if Avnet had not agreed to reduce its claim, the Debtors would not have qualified for subchapter v treatment under section 1182 of the Bankruptcy Code, and thus there would have been less impetus for a rushed sale process.

3. On November 23, 2021, the Debtors also filed their motion to obtain DIP financing (Doc. No. 3, the "DIP Motion"), which was filed as a first day motion with a request for expedited treatment.

4. Notably, the DIP Motion never refers to Avnet's lien as a "blanket lien." In fact, the DIP Motion references the Avnet Collateral (as that term is defined in the DIP Motion) multiple times without ever mentioning that Avnet's Collateral included ***all*** of the assets of the Debtors. Likewise, the First Stanfill Declaration does not refer to Avnet's lien as a "blanket lien," but rather states that the Security Agreement "grant[ed] a lien in the collateral described therein in favor of Avnet to secure payment of amounts invoiced by Avent." *See First Stanfill Decl.*, ¶9.

5. Further, on November 23, 2021, the Debtors filed the motion to sell substantially all the Debtor's assets (Doc. No. 6, the "Sale Motion"), which also requested expedited treatment.

6.      Similar to the First Stanfill Declaration and the DIP Motion, the Sale Motion does not refer to Avnet's lien as a "blanket lien." Instead, the Sale Motion provides that, "Avnet, through the Support Agreement, agreed to the terms on which a sale of the Assets, *including the Avnet Collateral*, would take place" (emphasis supplied), which seems to acknowledge that Avnet's lien is not a "blanket lien." *See Sale Motion*, ¶ 42. Indeed, it would be nonsensical to distinguish between the "Avnet Collateral" and the "Assets" if all the Assets were Avnet's Collateral.

7.      On November 30, 2021, the Office of the United States Trustee filed an objection to the Sale Motion, which expressed discomfort with the rushed nature of the Debtors' sale process. However, the UST Objection did not raise issues concerning Avnet's lien because, at that point, there would have been little reason for any party in interest to be concerned about Avnet's lien.

8.      On a December 1, 2021, the Debtors filed the declaration of David Stanfill in support of the Sale Motion (Doc. No. 37, the "Second Stanfill Declaration").

9.      In the Second Stanfill Declaration, Avnet's lien is described very differently than in the previously filed First Stanfill Declaration, DIP Motion, and Sale Motion. The Second Stanfill Declaration states that "[t]he existence of Avnet's *blanket security interest* has made it more challenging to locate a ready suitor for the purchase of SQRL's assets" (emphasis added). This shift in defining the scope of Avnet's lien as a "blanket lien" is significant both not only for the purposes of this Motion, but also because the existence of Avnet's "blanket lien" is stated as a justification for the difficulty in marketing SQRL's assets.

10.     On December 7, 2021, SQRL's filed its various Schedules (Docket No. 62). On the SQRL's Schedule D, Avnet is listed as having a claim for $5,751,000.00, of which $3,000,000.00 is secured by a "blanket" lien, which covers "all physical assets." *See Schedule D,* 2.1.

3

21-61491-rk    Doc 166    FILED 02/21/22    ENTERED 02/21/22 17:34:09    Page 3 of 16

11. On January 11, 2022, this Court granted the Sale Motion from the bench, On January 18, 2022, this Court formalized its bench order and entered the Sale Order. An auction was not held because no parties bid on the Debtors' assets other than the stalking horse and eventual buyer, Instantiation, LLC, in the monthlong bidding process conducted over the holiday season.

12. The Sale Order authorizes the sale of substantially all of the assets of the Debtors to the stalking horse bidder, Instantiation, LLC for $3,000,000.00. Avnet collected every cent of the sale proceeds in satisfaction of its secured claim (which it agreed to be reduced to the exact price the SQRL assets were eventually sold for), and under the auspices that Avnet had a "blanket lien" on all of SQRL's assets, as indicated in the Debtors' Schedules and in the Second Stanfill Declaration. When the Sale Motion was granted from the bench on January 11, 2022, no party would have had reason to believe that there was impropriety surrounding Avnet receiving all of the sale proceeds, as it was understood that Avnet had a "blanket lien" against Debtors' assets.

13. On January 14, 2022, between the Court's order from the bench on the Sale Motion and entering the Sale Order. the 341 meeting of creditors (the "341 Meeting") was held. At the 341 Meeting, SQRL's representative, David Stanfill's, provided testimony and additional information information that would have been useful to the Debtors' creditors prior to the entry of the Sale Order, including, but not limited to, the fact that (i) SQRL lost millions on cryptocurrency market changes immediately after it was formed (SQRL was not formed until late May 2018); (ii) that SQRL has been insolvent at least since early 2019 and likely before; and (iii) that, based on a reasonable interpretation of Mr. Stanfill's testimony, SQRL was undercapitalized for the business it engaged in essentially since the day of SQRL's formation.

14. Based on the testimony offered at the 341 Meeting, Movant determined that it was prudent to ask the Debtors for document production pursuant to Bankruptcy Rule 2004, in order to investigate the Debtors' finances generally, and particularly potential causes of action under Chapter 5 of the Bankruptcy Code and potential fraudulent transfers under Ohio law, given Ohio's four-year lookback period for such fraudulent transfers.[1] Although the Debtors initially objected to the 2004 Motion, the Debtors have since been working consensually with Movant to produce documents requested by Movant.

15. Movant received the first set of documents from SQRL on February 7, 2022, which included the March 26, 2019 Security Agreement between Avnet and SQRL, as defined above, and attached hereto as <u>Exhibit A</u>. The Security Agreement states that Avnet takes a "*purchase money security interest* and continuing lien… in and to the following described collateral" (emphasis added), and goes on to state that the collateral covers assets "…that arise from the sale of the inventory and goods to the Debtor…." The Security Agreement is unambiguous – Avnet's lien was a purchase money security interest ("<u>PMSI</u>") lien covering goods it sold to SQRL, and the proceeds and accounts receivable associated with SQRL's resale of those goods, ***not*** a "blanket lien."

16. On March 29, 2019, Avnet filed a UCC-1 financing statement (the "<u>Financing Statement</u>") with the Ohio Secretary of State's Office, describing the collateral in an identical fashion to the description in the Security Agreement, including the clause "…that arise from the sale of the inventory and goods to the Debtor… ." A true and correct copy Financing Statement is attached hereto as **<u>Exhibit B</u>**.

---

[1] The full bases for Movant's 2004 motion requesting discovery and an examination of a debtor representative and the nature and amount of Movant's claim against the Debtors' bankruptcy estate are detailed in Movant's *Motion for 2004 Examination* (Docket No. 132) (the "<u>2004 Motion</u>") and incorporated herein by reference.

17. The list of assets sold pursuant to the Sale Order is twenty-seven pages long, in Schedule 1.1(a) attached to the Sale Order. At this time, Movant does not know the value of the discrete items sold pursuant to the Sale Order, or which items were legally subject to Avnet's lien prior to the sale. As such, discovery on this issue is necessary. However, upon information and belief, the sale included assets that were not covered by Avnet's lien, and which Avnet had no right to collect as a secured creditor.

18. Since receiving the first document production from SQRL and reviewing the Security Agreement, which alerted Movant for the first time that Avnet's lien was not a "blanket lien," Movant, through counsel, has reached out to counsel for the Debtors, Avnet, and Instantiation, LLC, seeking an explanation for Avnet receiving the complete sale proceeds, when it only had a lien on a portion of the assets that were sold. At the time of filing this Motion, Movant's concerns about the Avnet lien have not been adequately addressed or relieved.

## LAW AND ARGUMENT

19. Bankruptcy Rule 9024 incorporates Fed. R. Civ. Pro. 60 to bankruptcy cases in most instances, including a sale order. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 363 (6th Cir. 1990) ("Bankruptcy Rule 9024 makes Rule 60 applicable to cases under the Bankruptcy Code."). . Fed. R. Civ. Pro. 60(b) provides that, "[o]n motion and just terms, the court may relieve a party… from a final judgment, order, or proceeding for the following reasons: …(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under FRCP 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; … or (6) any other reason that justifies relief."

20. Movant did not gain possession of the Security Agreement until three weeks after the Sale Order was entered, thus making him unable to file a motion for relief pursuant to Fed. R.

Civ. Pro. 59, which is only a fourteen-day window as limited by Fed. R. Civ. Pro. 9023. Therefore, Movant satisfies the Fed. R. Civ. Pro. 60(b)(2) condition for relief from an order because the Security Agreement constitutes newly discovered evidence. *See Davis by Davis v. Jellico Cmty. Hosp. Inc.,* 912 F.2d 129, 135 (6th Cir. 1990) (newly discovered evidence must pertain to facts that existed at time of trial); *In re Gledhill*, 76 F.3d 1070, 1081 (10th Cir. 1996). Movant asserts that it was reasonable for him to wait until after the 341 Meeting to file his 2004 Motion, and that Debtors would likely have objected to the timing of such a Motion while the sale process was pending over the holiday season, and Movant had an upcoming opportunity to ask questions at the 341 Meeting. In fact, Debtors objected to the timing of the 2004 Motion as too early in the case, even after the 341 Meeting. As such, Movant was reasonable in relying on Debtors' Schedules and on the Second Stanfill Declaration which both explicitly stated that Avnet had a "blanket lien."

21. Further, as discovery is taken and facts are developed concerning this Motion, Movant asserts that facts could come to light providing bases under Fed. R. Civ. Pro. 60(b)(3) and/or Fed. R. Civ. Pro. 60(b)(6) for Movant to be allowed to proceed on this Motion and receive an evidentiary hearing on the substantive issues raised.

22. As to Avnet's lien and the Sale Order, it is well settled that a secured creditor only has first priority in the sale of assets *upon which it actually has a security interest*. It is stated direct in section 506(a) of the Bankruptcy Code: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest… *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*" (emphasis added); *see In re Jones,* 152 B.R. 155, 176 (Bankr. E.D. Mich. 1993) ("A basic premise of the Code—that secured creditors are to be regarded as such only to the extent that their liens are supported by the collateral's value …."). Avnet "reducing" its secured claim so that Debtors could squeeze in under subchapter v is

7

21-61491-rk    Doc 166    FILED 02/21/22    ENTERED 02/21/22 17:34:09    Page 7 of 16

completely irrelevant. The amount of a secured claim is not defined by the agreement of the parties, it is defined by the value of the collateral. Avnet's claim could be $50,000,000.00, and it is still only secured as to assets upon which it had a lien. It is improper for the Debtors and Avnet to "agree" to a valuation of the lien that was inconsistent with the value of the underlying assets. The Debtor's assets were sold for $3,000,000.00, and Avnet's secured claim is necessarily less than $3,000,000.00 because assets were sold upon which Avnet never had a lien.

23. In addition, Avnet must be ordered to identify, at its own cost, which assets sold pursuant to the Sale Order were not assets upon which it had a lien. Further, Avnet must provide a good faith valuation of assets sold pursuant to the Sale Order, and then calculate the pro rata percentage of the unsecured assets against the total value of the sale assets. Then, such calculated pro rata percentage must be applied against the $3,000,0000 sale price to accurately allocate sale proceeds belonging to Avnet as secured creditor, and sale proceeds belonging to the Debtors' estate for distribution to general unsecured claimants.

## CONCLUSION

24. Movant asserts that discovery is necessary to fully investigate the circumstances surrounding Avnet's lien, and the sale process generally, given evidence that has emerged after the Sale Order was entered. Such discovery is justified based on what Movant has already discovered in the Security Agreement. This Motion is not intended to present the full evidence or legal position as it may develop concerning the allegations herein, and as such, Movant expressly reserves all such rights to file subsequent briefing and/or motions following adequate discovery.

25. Based on what is known to the Movant at this time, there is a good faith basis to proceed with discovery on this Motion, and for the Court to ultimately hold an evidentiary hearing on the allegations herein, and those that may come to light, once the discovery process is complete.

WHEREFORE, Movant respectfully requests this Court enter an Order:

(1) authorizing Movant to request discovery from Avnet and Instantiation, as it pertains to the allegations in this Motion;

(2) directing Avnet and Instantiation to comply with such discovery requests;

(3) setting a date for an evidentiary hearing on this matter within the next 60-90 days;

(4) all other relief which the Court deems just and proper under the circumstances.

Dated: February 21, 2022

Respectfully submitted,

/s/ *Bryan J. Sisto*
Bryan J. Sisto (OH 0088143)
**FROST BROWN TODD LLC**
400 W. Market Street, Suite 3200
Louisville, KY 40202
Phone: (502) 589-5400
Email: bsisto@fbtlaw.com

*Counsel for Carl Forsell*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | ) Case No. 21-61491 |
| | ) |
| SQUIRRELS RESEARCH LABS, LLC, *et al.*, | ) Chapter 11 |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Judge Russ Kendig |
| | ) |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served upon the following on February 18, 2022, via the Court's electronic mail notice list:

• **John C. Cannizzaro** John.Cannizzaro@icemiller.com, lauren.prohaska@icemiller.com

• **Christopher Paul Combest** christopher.combest@quarles.com

• **John G. Farnan** jfarnan@westonhurd.com

• **Robert E. Goff** rgoff@westonhurd.com, jroberts@westonhurd.com

• **Jeannie Kim** JeKim@sheppardmullin.com, dgatmen@sheppardmullin.com

• **Marc Merklin** mmerklin@brouse.com, tpalcic@brouse.com;mmiller@brouse.com

• **Christopher Niekamp** cniekamp@bdblaw.com

• **Paul J. Schumacher** pschumacher@dmclaw.com, tgross@dmclaw.com

• **Frederic P. Schwieg** fschwieg@schwieglaw.com

• **Frederic P. Schwieg** fschwieg@schwieglaw.com

• **United States Trustee** (Registered address)@usdoj.gov

• **Joshua Ryan Vaughan** jvaughan@amer-collect.com,

SAllman@AMER-COLLECT.COM; HouliECF@aol.com

- **Julie K. Zurn** jzurn@brouse.com, tpalcic@brouse.com

- **Kate M. Bradley ust44** kate.m.bradley@usdoj.gov

Via regular U.S. Mail:

**Brouse McDowell**
388 South Main Street
Suite 500
Akron, OH 44311-4407

**Jason R. Schendel**
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA 94111

Dated: February 21, 2022       Respectfully submitted,

/s/ *Bryan J. Sisto*
Bryan J. Sisto (OH 0088143)
**FROST BROWN TODD LLC**
400 W. Market Street, Suite 3200
Louisville, KY 40202
Phone: (502) 589-5400
Email: bsisto@fbtlaw.com

*Counsel for Carl Forsell*

0149594.0752621   4864-0641-4090v6

11

21-61491-rk   Doc 166   FILED 02/21/22   ENTERED 02/21/22 17:34:09   Page 11 of 16

# **EXHIBIT A**

## SECURITY AGREEMENT

**DEBTOR:**
Squirrels Research Labs LLC

**SECURED PARTY:**
Avnet, Inc.

**ADDRESS:**
121 Wilbur Drive NE
North Canton, OH 44720
Attn: David Stanfill

**ADDRESS:**
2211 South 47th St.
Phoenix, AZ 85034
Attn: Dennis Losik

Avnet, Inc., through its divisions ("AVNET" or "Secured Party"), enters into this Security Agreement ("Agreement") with Squirrels Research Labs LLC ("Debtor") as of the 20th day of March, 2019 ("Effective Date").

Debtor agrees that in order to secure the full, prompt and satisfactory performance of each and every obligation of Debtor to AVNET, including but not limited to Debtor's obligation to make full and timely payment of the invoices issued by AVNET, (the "Obligations") Debtor grants to AVNET a purchase money security interest and continuing lien on all Debtor's right, title and interest (the "Security Interest") in and to the following described collateral:

All inventory, goods or other tangible assets, whether or not such assets are delivered to the Debtor, as well as all accounts, chattel paper, deposit accounts, accounts receivable, rights to payment of every kind, general intangibles, instruments, that arise from the sale of the inventory and goods to the Debtor, as each of those terms are defined by the Uniform Commercial Code of the State of Arizona in effect as of the date of this Agreement, now existing or hereafter arising out of the business of the Debtor and regardless as to whether such collateral is in the possession of Debtor, warehouseman, bailee, or any other third party (collectively, the "Collateral").

The Security Interest granted shall at all times be valid, perfected and enforceable against the Debtor and all third parties, in accordance with the terms hereof, as security for the unpaid Obligations owing to AVNET as provided above, and the Collateral shall not at any time be subject to any other lien(s) without the prior written approval of AVNET.

Debtor warrants, covenants and agrees: (1) to pay and perform all of the obligations secured by this Agreement (including but not limited to AVNET's cost of enforcement, collection and attorney's fees), to defend title to the Collateral, to keep the Collateral free and clear of all mortgages, liens, pledges, charges, encumbrances, further security interests, taxes and assessments and to keep, at its sole expense, the Collateral in good repair and condition; (2) to keep the Collateral insured (with insurers acceptable to AVNET) against loss by fire, theft and other hazards in an amount equal to at least one hundred percent (100%) of the replacement value of the Collateral and evidence such by providing AVNET current certificates of insurance with the loss payable and proceed clauses directly payable to AVNET; (3) that on demand by AVNET, to furnish further assurance of title, execute and deliver any instrument or do other acts necessary to effectuate the purposes of this Agreement; (4) to promptly notify AVNET of any change in the location of or with respect to the financial condition or the discontinuance of Debtor's business; (5) promptly notify AVNET of the commencement of any litigation or governmental proceeding against the Debtor which, if adversely determined, might affect Debtor, or Debtor's business, or Debtor's ability to repay the Obligations in any material respect; and

SQRLBKPTCY0537

(6) its operations are and will continue to be in compliance with and not in violation of all applicable laws and regulations.

{N0540971_1} If Debtor shall fail to procure or to pay the premium on any insurance required to be maintained by this Agreement, AVNET is hereby authorized (but not obligated) to pay and advance any sums required and all such advances shall be secured by the Collateral and be repaid immediately by Debtor upon notice by AVNET. Upon a material breach of this Agreement, Debtor shall give AVNET or any persons designated by AVNET the right, without hindrance or delay, upon two Business Days' notice, during normal business hours, to inspect, audit, check and make copies of Debtor's books, records and accounts.

Debtor will be in default of the Agreement upon the occurrence of any of the following and if Debtor fails to cure as set forth below:
(1) failure to perform any obligation under the Agreement;
(2) failure to pay any invoice, note, account, obligation or liability due AVNET when due;
(3) making any false or misleading statement, representation or warranty in connection with this Agreement;
(4) commencement of insolvency or like proceedings against Debtor or its parent, affiliate, subsidiary or division or any assignment for the benefit of creditors, receiver or trustee;
(5) any material adverse change in the financial condition of Debtor, reduction in value of the Collateral, or any action by Debtor to cease operations or business conducted;
(6) any loss, theft, damage, sale, transfer or conveyance of the Collateral, except in the ordinary course of business;
(7) the death, dissolution, termination of existence, insolvency, business failure, or like event of Debtor or any guarantor or surety for Debtor; or
(8) when AVNET, in its sole judgment, deems itself unsecured for any reason whatsoever.

Upon Default, and only after Debtor fails to cure such default within 10 days of notice from AVNET of such Default, (1) AVNET may declare all obligations secured by this Agreement immediately due and payable in full without presentment, demand, protest or notice of dishonor of any kind, all of which are hereby expressly waived, and AVNET shall have all the rights, remedies and privileges with respect to repossession, retention and sale of the Collateral and disposition of the proceeds available to a secured party under the Uniform Commercial Code of the State of Arizona in effect as of the date of this Agreement; (2) AVNET may enter peaceably onto Debtor's premises to possess, render unusable by Debtor, dispose of or require Debtor to assemble the Collateral and deliver or make it available to AVNET at a place to be designated by AVNET; (3) AVNET may foreclose its liens, security interests and assignments or exercise any powers of sale; and/or (4) AVNET may pursue all rights and remedies available at law or in equity. If there is no good faith dispute related to such, all expenses, costs of collection, sale or storage or the like shall be borne by Debtor.

Debtor agrees that waiver or acquiescence in any Default, or AVNET's failure to strictly enforce Debtor's performance of the obligations under the Agreement, shall not constitute a waiver of any subsequent or other Default or failure. Notices to either party shall be sent by certified mail or other guaranteed delivery to the address set forth above. AVNET may assign this Agreement; however, Debtor may not. All rights of AVNET shall inure to its successors and assigns; and all obligations, duties and promises of Debtor shall be binding upon its heirs, executors or administrators. If the Debtor is a partnership, joint venture or proprietorship, then the liabilities pursuant to this Agreement shall be joint and several. Except as otherwise expressly provided herein, the rights and obligations of the parties shall be governed by the laws of the State of Arizona, including the Uniform Commercial Code as adopted by the State of Arizona.

Any amendment or modification of this Agreement must be in a separate writing expressly identified as such and signed by the authorized representatives of both parties in order to be effective. This Agreement and all

SQRLBKPTCY0538

other documents executed in connection herewith shall constitute the entire agreement between the parties hereto and shall supersede all other prior agreements, written or oral, with respect thereto. If any provision of this Agreement is held invalid, the remaining provisions shall continue in full force and effect and the parties shall substitute for the invalid provision a valid provision which most closely approximates the economic effect and intent of the invalid provision.

Debtor hereby irrevocably appoints AVNET (and any AVNET designated employees and/or agents) its attorney-in-fact to execute any Security Interest related financing statements, other instruments, and to do such other acts and things as may be reasonable and necessary to establish, perfect or preserve the Security Interest in and to the Collateral.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date.

**DEBTOR: Squirrels Research Labs LLC**

BY: */s/ David Stanfill/*

PRINTED NAME: David Stanfill
ITS AUTHORIZED REPRESENTATIVE

**SECURED PARTY: AVNET, INC.**

BY:_____

PRINTED NAME:\_\_\_Dennis E. Losik_____
ITS AUTHORIZED REPRESENTATIVE

# EXHIBIT B


**FRANK LAROSE**
Ohio Secretary of State

FS Number: OH00229347635
Date Filed: 29 March 2019
15:26:41

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

| | |
|---|---|
| **NAME OF CONTACT AT FILER:** | Lien Solutions B2B User |
| **PHONE NUMBER:** | 800-331-3282 |
| **EMAIL CONTACT AT FILER:** | uccfilingreturn@wolterskluwer.com |
| **SEND ACKNOWLEDGEMENT TO:** | Lien Solutions<br>P.O. Box 29071<br>Glendale<br>CA<br>91209-9071 |

## DEBTOR INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **ORGANIZATION'S NAME:** | SQUIRRELS RESEARCH LABS LLC | | | | | | |
| **MAILING ADDRESS:** | 121 Wilbur Drive NE | | | | | | |
| **CITY:** North Canton | **STATE:** OH | | **POSTAL CODE:** 44720 | | **COUNTRY:** USA | | |

## SECURED PARTY INFORMATION

| | |
|---|---|
| **ORGANIZATION'S NAME:** | Avnet Electronics Marketing, A Group of Avnet, Inc |
| **MAILING ADDRESS:** | 2211 South 47th Street |
| **CITY:** Phoenix | **STATE:** AZ    **POSTAL CODE:** 85034    **COUNTRY:** USA |

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

All inventory, goods or other tangible assets, whether or not such assets are delivered to the Debtor, as well as all accounts, chattel paper, deposit accounts, account receivable, rights to payment of every kind, general intangibles, instruments, that arise from the sale of inventory and goods to the Debtor, as each of those terms are defined by the Uniform Commercial Code of the State of Arizona in effect as of the date if the Agreement, now existing or hereafter arising out of the business of the Debtor and regardless as to whether such collateral is in possession of Debtor, warehouseman, bailee, or any other third party (collectively, the "Collateral").

## FILING TYPE

Public Finance: No

Transmitting Utility: No

Manufactured Home: No

Non-Ucc Filling: No

Agriculture Lien: No

## ALTERNATIVE DESIGNATION

Licensee/Licensor: No

Consignee/Consignor: No

Bailee/Bailor: No

Seller/Buyer: No

## PACKET NUMBER

56804497