# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SQUIRRELS RESEARCH LABS LLC, *et al.*,[1] | ) | Case No. 21-61491 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Judge Russ Kendig |

## OBJECTION OF AVNET, INC. TO MOTION OF CARL FORSELL FOR RELIEF FROM SALE ORDER

Avnet, Inc. ("**Avnet**"), by and through its attorneys, hereby objects to the *Motion for Relief from the Sale Order for the Limited Purpose of Amending the Distribution Scheme Pending Discovery* [Docket No. 166] (the "**Rule 60(b) Motion**")[2] filed by creditor Carl Forsell ("**Mr. Forsell**" or "**Movant**"). In his Rule 60(b) Motion, Mr. Forsell requests that the Court grant relief from the Court's *Order: (I) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. §§ 105 and 363; and (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 131] (the "**Sale Order**"), but purports to limit that request to "amending the distribution scheme provided in the Sale Order." (Rule 60(b)(2) Mot. at 1.) Avnet asks that the Court deny the Rule 60(b)(2) Motion in its entirety for the reasons discussed below.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), Case No. 21-61491, and The Midwest Data Company LLC (1213), Case No. 21-61492.

[2] Capitalized terms used but not otherwise defined herein are intended to have the meanings ascribed to them in the Rule 60(b) Motion.

QB\73298093.2

## SUMMARY OF ARGUMENT

During the ten weeks between November 23, 2021 (the date of commencement of the captioned bankruptcy cases) (the "**Petition Date**") and February 2, 2022, Debtor Squirrels Research Labs LLC (the "**Debtor**" or "**SQRL**") filed the above-captioned small business bankruptcy case under Subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq.* (the "**Code**"); obtained entry of an order approving the Debtor's proposed bidding and auction procedures for a sale of substantially all of the Debtor's assets; completed "a robust and extensive marketing and sale process" (Sale Order, ¶I(i)); obtained entry of the Sale Order, and closed the sale of its assets to the stalking horse bidder, Instantiation LLC. The Sale Order became final and non-appealable on February 2, 2022.

The sale process employed by the Debtors was made possible by the consent and agreement of Avnet – the Debtor's senior secured lender – to, among other things, (a) permit the Debtor to take advantage of the small business reorganization provisions of Subchapter V; (b) consent to the sale of the Debtor's assets free and clear of Avnet's senior security interests for the purposes of Code §363(f); (c) accept just over one-third of its total claim in full satisfaction of the Debtor's obligations to Avnet, and (d) waive payment on the remainder of its claim, to the benefit of all unsecured creditors. In making and keeping these commitments, Avnet relied upon the Debtor's agreement to pursue the sale process described above and upon the Sale Order itself, which ordered payment to Avnet from the sale proceeds at closing in the agreed amount of Avnet's reduced secured claim.

Meanwhile, during the period from November 23, 2021 through February 2, 2022, Mr. Forsell took no action to timely object to the sale proposed by the Debtor. Prior to entry of the Sale Order on January 18, 2022 – and despite service of papers that included (but were not

limited to) the Sale Motion, the proposed Sale Order, and the asset purchase agreement of buyer Instantiation LLC (the "**APA**") – Mr. Forsell filed no objections to, and sought no discovery regarding, the Sale Motion. If he even attended the hearing on the Sale Motion, he made no statements or arguments. He allowed the appeal period on the Sale Order to run without filing a motion that would have tolled that period and without filing a notice of appeal.

Finally, on February 21, 2022 – five-and-a-half weeks after this Court entered the Sale Order and almost three weeks after it became final and non-appealable – Mr. Forsell filed his Rule 60(b) Motion, in which, for the first time, he complains about the Sale Order and asks the Court to relieve him of some, but not all, of its consequences. For the reasons set forth below, and based on controlling Sixth Circuit law, the Court should deny Mr. Forsell a do-over, aimed at re-writing the Sale Order to his advantage.

The sole basis for the relief Mr. Forsell requests in his Rule 60(b) Motion is that the Security Agreement between Avnet and the Debtor – which was described in papers filed on the first day of the Debtor's case – constitutes "newly discovered evidence" under Fed. R. Civ. P. 60(b)(2) (made applicable to this matter by Fed. R. Bankr. P. 9024) ("**Rule 60(b)(2)**"). Mr. Forsell fails to cite the controlling Sixth Circuit standards for granting the extraordinary relief provided by Rule 60(b)(2), much less explain how his lack of diligence in seeking discovery can comply with the Sixth Circuit's rigorous standards for determining what constitutes "newly discovered evidence" under that Rule.

Finally, the Court cannot simply undo the Sale Order's provision requiring payment to Avnet, while leaving the remainder of the Sale Order unaffected.[3] Avnet consented to the sale of

---

[3] Mr. Forsell did not file a timely motion to alter or amend the Sale Order under Fed. R. Civ. P. 59(e) (made applicable to this matter by Fed. R. Bankr. P. 9023), which would have been the proper procedural device for asking the Court to revise a limited aspect of the Sale Order,

3

QB\73298093.2

21-61491-rk    Doc 202    FILED 04/05/22    ENTERED 04/05/22 17:32:25    Page 3 of 16

its collateral for an amount far less than its full claim and provided other concessions in order to facilitate the sale under the terms provided in the Sale Order. The sale was approved based on Avnet's consent under the terms of the Sale Order, and Avnet provided that consent based on those terms. If the distribution provisions of the Sale Order are changed as requested by Mr. Forsell, Avnet's consents would be rendered invalid, potentially requiring the unwinding of the entire sale. The practical difficulty of putting all parties back in the positions they occupied prior to the approved sale – and the related prejudice to parties who have relied on the Sale Order – is the very reason that Rule 60(b) should not be cavalierly used to disrupt the finality of judgments, and, particularly, of bankruptcy court sale orders.

## BACKGROUND

A. **The Avnet Claim and the Account Settlement and Sale Support Agreement**

The relevant transactional background has been described in several filings by the Debtor. (*See, e.g.*, Sale Motion [Docket No. 6] at 3-4; Motion of The Midwest Data Company LLC ("**MWDC**") for approval of debtor-in-possession financing [Docket No. 3], at 3-4.) In brief, Avnet's claim against the Debtor was evidenced by a promissory note dated April 8, 2021, in the principal amount of $7,864,779.76, plus interest, fees, costs, and other charges (including attorneys' fees and costs) (the "**Avnet Claim**"). (This note amended and restated an earlier promissory note executed by the Debtor in favor of Avnet on March 26, 2019.) The Debtor's

---

because that Rule permits a court to "reconsider matters properly encompassed in a decision on the merits." *Ashburn v. General Nutrition Ctrs., Inc.*, 553 F. Supp.2d 770, 773 (N.D. Ohio 2008) (internal quotation marks omitted). Fed. R. Civ. P. 60(b) (made applicable to this matter by Fed. R. Bank. P. 9024) has a "distinct [and] different purpose and produce[s] different consequences." *U.S. v. Johnson*, 934 F. Supp 383, 385 (D. Kan. 1996) (internal quotation marks omitted). Rule 60(b), by its terms, provides relief from an entire judgment; its purpose is not to revise limited provisions of a judgment to suit the preference of a party who sat out the underlying proceedings, because a "[R]ule 60(b) motion addresses matters outside the issues on which the judgment was entered." *Id.* at 386 (internal quotation marks omitted).

obligations under the original note and under the amended and restated note were secured by a Security Agreement dated as of March 20, 2019 (a copy of which is attached to the Rule 60(b)(2) Motion).

Prepetition, the Debtor received an offer from Instantiation to purchase substantially all of its assets, including assets subject to Avnet's security interests. The Debtor and Avnet worked together to facilitate this sale, including a consensual resolution of Avnet's secured claim. Together with Instantiation and Debtor MWDC, Debtor SQRL and Avnet entered into the Account Settlement and Sale Support Agreement (the "**Support Agreement**"). Among other things, the Debtor agreed that, of the assets to be sold to Instantiation, those subject to Avnet's security interests had a value of at least $3 million; Avnet, in turn, agreed to consent to a sale of its collateral under the Code for substantially less than the full amount of the claim secured by its security interests, to accept $3 million in full satisfaction of the secured portion of the Avnet Claim, and to release the Debtor from all other claims and causes of action, including the remaining balance of the Avnet Claim.

B. **The Sale Process, Bid Procedures Order, and Sale Order**

The Sale Motion and the exhibits attached thereto recited much of the information set forth above, including:

(a) the total amount of the Avnet Claim;

(b) the existence of the Security Agreement;

(c) that the assets to be sold under the APA included assets subject to Avnet's security interests;

(d) the negotiated amount of the secured portion of Avnet's Claim (the "**Avnet Secured Claim**");

(e) the Debtor's intent to run an auction process aimed at obtained a higher or otherwise better offer for the Debtor's assets than the offer of Instantiation, and

(f) the Debtor's intent to pay $3 million of the sale proceeds to Avnet to fully discharge the Avnet Secured Claim.

(*See* Sale Motion at 3-4; Exhibit A [Bidding Procedure Order] at 6 (referring to the Debtor's agreement to the Avnet Claim, to the Avnet Secured Claim, and to the extent, validity and priority of Avnet's liens and security interests); Exhibit 1 [Form of Bidding Procedures] to Exhibit A, at 6 (Avnet's waiver of its credit bid rights, in support of the bidding procedures and sale process); and Exhibit B [APA], at 18 (Purchaser required to pay $3 million of sale proceeds to Avnet, in full satisfaction of the Avnet Secured Claim).

The Sale Motion was served on Mr. Forsell by first class U.S. mail on the day it was filed, November 23, 2021 (see Certificate of Service, Docket No. 14, at 2). Other papers describing the sale process, including relevant objections and hearing dates, that were served on Mr. Forsell include:

(i) the order setting a hearing and objection deadline regarding entry of the bidding procedures order [Docket No. 12], served November 24, 2021 (*see* Certificate of Service, Docket No. 28, PDF page 2 of 6);

(ii) the entered bidding procedures order [Docket No. 40] (which included notice of the January 10, 2022 deadline for filing objections to the Sale Motion), served December 2, 2021 (*see* Certificate of Service, Docket 57, PDF page 3 of 7);

(iii) an additional notice [Docket No. 46] of the entry of the bidding procedures order, and various dates associated with the auction sale, including the

deadline for filing objections to the sale, served December 3, 2021 (*see* Certificate of Service (amended), Docket No. 67, at PDF page 3 of 8);

   (iv) the Debtor's status report [Docket No. 102], which (at paragraph 8) noted the deadline for competing bids and date of the hearing on the Sale Motion, served December 28, 2021 (*see* Certificate of Service, Docket No. 103, at PDF page 4 of 8);

   (v) notice of the cancellation of the auction sale and of the Debtor's intent to sell its assets to Instantiation pursuant to the APA (Docket No. 106), served on January 3, 2022 (*see* Certificate of Service, Docket No. 107, at PDF page 4 of 9), and

   (vi) the entered Sale Order [Docket No. 131], served January 21, 2022 (*see* Certificate of Service, Docket No. 143, PDF page 4 of 9).

The Court found that the certificates of service described above "evidenced … proper, timely, adequate, and sufficient notice of the [Sale] Motion, the Auction, the Sale Hearing, the APA, and the Sale" and that "no other or further notice … is required."  (Sale Order, ¶E, at 5.)

  **C.** <u>**Statutory Deadlines Relevant to Rule 60(b)(2) Motion**</u>

  The deadline for filing objections to entry of the Sale Order was January 10, 2022.  The Sale Order was entered on the docket of the captioned case on January 18, 2022 (*see* Docket No. 131).  Pursuant to Rules 8002(a) and 8002(b) of the Federal Rules of Bankruptcy Procedure, February 1, 2022 was the last day on which a party could timely file either (i) a notice of appeal or (b) a motion for (i) a new trial under Fed. R. Civ. P. 59(b) or (ii) to alter or amend the judgment under Fed. R. Civ. P. 59(e) (each of Fed. R. Civ. P. 59(b) and 59(e) made applicable by Fed. R. Bankr. P. 9023) (each of (b)(i) and (b)(ii), an "**8002(b) Motion**").

Mr. Forsell sought no discovery and filed no objection during the period between the filing of the Sale Motion on November 23, 2021 (the "Petition Date") and the Sale Hearing on January 18, 2022. He filed neither a notice of appeal nor an 8002(b) Motion.

Mr. Forsell filed his Rule 60(b)(2) Motion on February 21, 2022 – nearly a month and a half after the Court entered the Sale Order; three and a half weeks after the sale to Instantiation had closed, and nearly three weeks after the Sale Order had become final and non-appealable.

ARGUMENT[4]

A. <u>**Mr. Forsell Cannot Meet the Sixth Circuit's Standards for Relief under Rule 60(b)(2)**</u>.

A court may grant relief under Rule 60(b)(2) only if the movant can show "newly discovered evidence that, *with reasonable diligence*, *could not* have been discovered *in time to move for a new trial* under Rule 59(b)." Fed. R. Civ. P. 60(b)(2) (emphasis added). That showing must be made, not by a preponderance, but by *clear and convincing* evidence. *See Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).

Moreover, because "public policy favor[s] finality of judgments and the termination of litigation," a court's discretion to grant relief under Rule 60(b) is not open-ended, but, rather, "is circumscribed by [that] public policy…." *See Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (citing *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). Therefore, relief under Rule 60(b)(2) is "extraordinary" and is "only to be granted in exceptional circumstances." *Good v.*

---
[4] By filing this response to the Rule 60(b)(2) Motion, Avnet does not intend to waive any claims, defenses, or arguments – including arguments regarding standing and jurisdiction – in connection with the Security Agreement, the Avnet Claim, the Avnet Secured Claim (including with regard to the extent, validity, and priority of its liens and security interests), or otherwise regarding any substantive claim or cause of action that Mr. Forsell has raised or may raise in the future against Avnet.

*Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (internal quotation marks omitted) (citing with approval *Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)).

Consequently, the movant "has an extremely difficult burden to overcome before [a c]ourt can grant relief under Rule 60(b)(2)." *Wilson v. Upjohn Co.*, 808 F. Supp. 1321, 1323 (S.D. Ohio 1992). The movant must demonstrate – again, by *clear and convincing* evidence – *both* "(1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *Good*, 149 F.3d at 423 (6th Cir. 1998) (internal quotation marks omitted; brackets in original). Mr. Forsell has satisfied neither prong of this standard.

1. ***Mr. Forsell failed to exercise due diligence in seeking information he now claims as "newly discovered evidence."***

"To qualify as 'newly discovered', the evidence must pertain to facts that existed at the time of the judgment, *and could not have been discovered by due diligence*." *Wilson*, 808 F. Supp. at 1323 (emphasis added) (citing *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 135, 136 (6th Cir. 1990)) (where movants under Rule 60(b)(2) had been aware, prior to court's ruling against them on summary judgment, of existence of doctor's opinion helpful to them, but had simply failed to timely seek the doctor's deposition, doctor's affidavit was not "newly discovered evidence").

As set forth above, the following facts were disclosed in the Sale Motion and the APA attached thereto, which were filed on November 23, 2021 (the Petition Date) and served on Mr. Forsell by U.S. mail the same day: (a) the existence of promissory notes made by the Debtor in favor of Avnet; (b) the existence of a security agreement securing the Debtor's obligations under those notes; (c) the Debtor's intent to sell assets to Instantiation that included assets subject to

Avnet's Security Agreement; (d) the settlement among the parties to the Support Agreement on the minimum value of the assets subject to Avnet's Secured Claim, and (e) the proposed payment of that amount to Avnet out of the proceeds of an auction sale.[5]

Further, Mr. Forsell now asserts that a declaration of the Debtor's president, David Stanfill [Docket No. 37] and the Debtor's schedules of assets and liabilities [Docket No. 62] raise issues regarding the scope of Avnet's security interest. (*See* Rule 60(b) Mot. at 3.)

As noted above, the deadline to object to the Sale Motion was **January 10, 2022** (the "**Sale Objection Deadline**") – seven weeks after filing and service of the Sale Motion and proposed APA. The declaration that purportedly troubles Mr. Forsell was filed on December 1, 2021, and the schedules of assets and liabilities on December 7, 2021 – six weeks and five weeks, respectively, before the Sale Objection Deadline. Finally, the Sale Order was entered on January 18, 2022; therefore, the last day for Mr. Forsell to have filed a motion for a new trial under Fed. R. Civ. P. 59(b) (or to have asked the Court to alter or amend the Sale Order under Fed. R. Civ. P. 59(e)) was February 1, 2022 – a full two-and-a-half months after the filing of the Sale Motion.

Mr. Forsell does not explain in his Rule 60(b) Motion why he could not have obtained a copy of the Security Agreement during the period from November 23, 2021 to February 1, 2022, had he exercised the simple diligence of asking for it. Mr. Forsell's sole argument on the "due diligence" prong of Rule 60(b)(2) is a *non sequitur*: (i) to qualify as "newly discovered evidence"

---

[5] Notwithstanding Mr. Forsell's insinuations (*see* Rule 60(b) Mot., ¶12, at 4; ¶21, at 7), the fact that the majority of the proceeds of a sale under Section 363 were paid to the seller's senior secured creditor does not suggest any sinister dealings by the parties; it is, rather, simply a function of the auction sale process itself, which, despite "robust and extensive marketing" (Sale Order, ¶I(i)), did not produce a bidder who valued the assets at more than the $3,010,000 bid of Instantiation.

under Rule 60(b)(2), the Security Agreement must have been *unobtainable* in time to file a motion for a new trial during the two weeks after the Sale Order was entered; (ii) Mr. Forsell "*did not gain possession* of the Security Agreement until three weeks after the Sale Order was entered," and (iii) "*[t]herefore* … the Security Agreement constitutes newly discovered evidence." (Rule 60(b)(2) Mot. at 6-7 (emphasis added).)  Mr. Forsell's only explanation for *why* he did not obtain the Security Agreement until after the Sale Order had become final and non-appealable: the Debtor might have objected.  (*Id.* at 7.)

Mr. Forsell's own assertions show why the Rule 60(b)(2) Motion should be denied.  Where the movant was not prevented from conducting discovery in the underlying proceeding, and the purported "newly discovered evidence" was available for the entirety of that proceeding, "nothing but a lack of due diligence prevented the [movant] from discovering the evidence upon which [the movant] now so heavily rel[ies]."  *Wilson*, 808 F. Supp. at 1324.

Moreover, even if the above-described circumstances did not demonstrate a lack of diligence fatal to the Rule 60(b)(2) Motion, Mr. Forsell has further doomed his request for relief from the Sale Order.  Mr. Forsell's argument for rewriting the Sale Order relies solely on his reading of language from the first page of the Security Agreement,  (Rule 60(b)(2) Motion, ¶15, at 2.)  However, as he then goes on to note, the *exact same language* that purportedly causes him concern is contained, *verbatim*, in the UCC-1 financing statement filed by Avnet in the office of the Ohio Secretary of State.  That financing statement is a public record that is available to anyone with five minutes and an internet connection.  Indeed, Mr. Forsell must have been able to access it, as he has attached it as an exhibit to his Rule 60(b)(2) Motion.  (*Id.*, ¶16, at 5, and Exhibit B).  Publicly available records that predate the judgment from which a movant seeks relief are not "newly discovered evidence" within the meaning of Rule 60(b)(2).  *See HDC, LLC*

11

*v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (evidence that "has been publicly available since well before the district court entered judgment" was not "newly discovered" for purposes of Rule 60(b)(2)).

> **2. *Mr. Forsell has not demonstrated that presentation of the Security Agreement at the Sale Hearing would clearly have resulted in denial of the Sale Order presented to the Court.***

Mr. Forsell's failure to satisfy the "due diligence" prong of Rule 60(b)(2) is, by itself, cause for the Court to deny the Rule 60(b)(2) Motion. Moreover, it is not sufficient under Rule 60(b)(2) for evidence to be "newly discovered"; the movant must also show – again, by clear and convincing evidence, *see Info-Hold*, 538 F.3d at 454 – that the new information "clearly would have produced a different result if presented before the original judgment." *Good*, 149 F.3d at 423; *see also Wilson*, 808 F. Supp. at 1323.

Mr. Forsell fails to carry his burden on this prong, as well. In the Sale Motion, the Debtor did not characterize the security interests of Avnet; instead, the Sale Motion simply states that the Security Agreement defines the scope of Avnet's collateral (Sale Mot. at 3). The Sale Motion further states that the Instantiation APA provides for the purchase of assets of the Debtor, "including" assets subject to the Security Agreement that constituted Avnet's collateral. (*Id.* at 3-4.)[6] Finally, the Sale Motion made clear that the agreement to treat the Avnet Claim as fully secured by collateral worth $3 million constituted a *settlement*, under which Avnet agreed to support the sale of the Debtor's assets in this bankruptcy case, and accept barely a third of its full

---

[6] In addition to the language quoted by Mr. Forsell (Rule 60(b)(2) Mot. at 5), the Security Agreement also provides Avnet, more broadly, with "a continuing lien on all Debtor's right, title and interest" in "[a]ll accounts, goods or other tangible assets, whether or not such assets are delivered to the Debtor…." (Security Ag. at 1.) Although the merits of Mr. Forsell's characterization of the scope of Avnet's security interests are not properly at issue with regard to the Rule 60(b)(2) Motion, Avnet disagrees with that characterization and reserves all of its rights to dispute it, when (if ever) it becomes a live issue.

12

claim, in exchange for what any creditor expects out of a settlement of its claims: a predictable – if reduced – recovery, in lieu of the expense and uncertainty of state court or bankruptcy court litigation over the extent and value of its collateral. (Sale Mot. at 4; *see also* MWDC's motion for approval of debtor-in-possession financing [Docket No. 3], at 6 (Support Agreement included an "agreed…resolution of the amount and treatment of the Avnet Claim").)

Nothing in the language of the Security Agreement quoted by Mr. Forsell (Rule 60(b)(2) Mot. at 15) is even inconsistent with these statements from the Debtor's pleadings; much less does it show that an objection to the Sale Order based on that language "clearly would have produced a different result" from the Sale Order obtained by the Debtor at the Sale Hearing. *See Good*, 149 F.3d at 423; *see also Wilson*, 808 F. Supp. at 1323. This is particularly true, given that the treatment of the Avnet Claim is the result of a negotiated prepetition settlement agreement, which is enforceable in this bankruptcy case. *See, e.g.*, *In re University Commons, L.P.*, 204 B.R. 80, 81-82 (Bankr. M.D. Fla. 1996) (prepetition stipulation by debtor to relief from the automatic stay was enforceable postpetition without court approval, in absence of evidence that debtor's consent was obtained through coercion or trickery).[7]

Whatever Mr. Forsell's rights might have been – had he diligently sought discovery and raised objections before the Sale Objection Deadline – today, he has failed to establish his entitlement to the extraordinary relief he seeks under Rule 60(b)(2) by anything like clear and convincing evidence. The Court should deny his Rule 60(b)(2) Motion.[8]

---

[7] That the Debtor proposes to assume the Support Agreement under its plan of liquidation suggests that the Debtor was neither coerced nor tricked. *See* Plan of Liquidation for SQRL [Docket No. 169], at 16.

[8] To the extent Mr. Forsell intends to rely upon Fed. R. Civ. P. 60(b)(3) or 60(b)(6) as separate grounds for relief from the Sale Order (*see* Rule 60(b)(2) Mot. at 7), he does not attempt to support a request for relief under those two Rules; rather, he asks for relief from the Sale Order under those Rules, so that he can conduct discovery to determine whether those Rules might

21-61491-rk    Doc 202    FILED 04/05/22    ENTERED 04/05/22 17:32:25    Page 13 of 16

B.   **Avnet and Other Parties Have Relied on the Sale Order, and Movant Cannot Seek to Separate the Distribution Provisions from the Remainder of the Sale Order**.

By styling the Rule 60(b)(2) Motion as one for "limited relief," Mr. Forsell apparently hopes to preserve the benefits of the sale to Instantiation, while improving his own position as a large unsecured creditor by clawing back sale proceeds already paid to Avnet under the Sale Order. Movant may not so dissect the Sale Order; he cannot pretend that the Rule 60(b)(2) Motion is an attack solely on Avnet, as opposed to being a challenge to the Sale Order as a whole. *See, e.g., In re Propex, Inc.*, 432 B.R. 725, 729-39 (E.D. Tenn. 2010) (sale order required payment of secured lender's claim from sale proceeds; creditors who had not objected to, or appealed from, sale order later challenged the payment of those proceeds under a second order of the court; on appeal of that second order, district court held that challenge to the distribution provision of the sale order was effectively a challenge to the entire sale order itself).

Rule 60(b) requires the Court to exercise its equitable power to properly balance the parties' and public's interest in finality and the termination of litigation, on the one hand, against the needs of justice, on the other. *See Charter Twp. of Muskegon v. City* of *Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002). In this case, however, there is no conflict between the two principles. In reliance on the Sale Order and, in particular, on the payment of the negotiated and agreed amount of its secured claim, Avnet (a) consented to the sale of its collateral free and clear of its security interests; (b) accepted the compromised amount in satisfaction of its claim; (c) released the Debtors and Instantiation, under the Support Agreement, from all claims and cause of action, (d) by that release, waived a distribution on the unpaid portion of the Avnet Claim, to the benefit

---

entitle him to relief from the Sale Order. In any event, he has not advanced any grounds for relief under Rule 60(b)(3), and he cannot obtain relief under the "catch-all" of Rule 60(b)(6), because the grounds he asserts for relief under Rule 60(b) are already covered by Rules 60(b)(1) through (5). *See, e.g., Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).

21-61491-rk    Doc 202    FILED 04/05/22    ENTERED 04/05/22 17:32:25    Page 14 of 16

of the estate, and (e) refrained from filing a proof of claim on or before the bar date established in the Debtor's case, in reliance on the exception for "any person or entity whose claim has been allowed by, or paid pursuant to, an order of the Bankruptcy Court entered on or before the [b]ar [d]ate." (*See* Order Establishing General and Government Claims Bar Dates and Approving Form and Manner of Notice Thereof [Docket No. 84], Exhibit 1, at 3). Instantiation has closed the sale of the Debtor's assets and, presumably, has been operating them in the ordinary course. The Debtor has filed a plan of liquidation that presumes the finality of the consummated sale and assumes the Support Agreement.

To nullify now only the payment to Avnet under the Sale Order, and permit a single unsecured creditor, who sat out the entirety of the sale process, to start over with an after-the-fact objection to the Sale Order, would deprive Avnet of the consideration it received in exchange for the concessions described above (including its consent to a sale free and clear of its security interests, upon which consent the sale was approved under Code §363(f)), while allowing the other parties, and the estate, to retain their own consideration and the other benefits of the sale and Sale Order. That result would not be equity, but its opposite.

WHEREFORE, Avnet, Inc. respectfully requests that the Court (A) deny the Rule 60(b)(2) Motion in its entirety and (B) grant Avnet such other and further relief as the Court deems appropriate.

Dated: April 5, 2022

Respectfully submitted,

*/s/ Christopher Combest*
Christopher Combest
**QUARLES & BRADY LLP**
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654
Telephone: (312) 715-5000
Facsimile: (312) 632-1727
christopher.combest@quarles.com
*Counsel for Avnet, Inc.*

# CERTIFICATE OF SERVICE

I, Christopher Combest, hereby certify that, on April 5, 2022, a true and correct copy of the foregoing *Objection of Avnet, Inc. to Motion of Carl Forsell for Relief from Sale Order* was served via the Court's CM/ECF system on the following:

- **John C. Cannizzaro**  John.Cannizzaro@icemiller.com, lauren.prohaska@icemiller.com
- **Nicholas Paul Capotosto**  ncapotosto@brouse.com, tpalcic@brouse.com
- **John G. Farnan**  jfarnan@westonhurd.com
- **Robert E. Goff**  rgoff@westonhurd.com, jroberts@westonhurd.com
- **Steven Heimberger** sheimberger@rlbllp.com, HeimbergerSR82735@notify.bestcase.com
- **Jeannie Kim**  JeKim@sheppardmullin.com, dgatmen@sheppardmullin.com
- **Marc Merklin**  mmerklin@brouse.com, tpalcic@brouse.com;mmiller@brouse.com
- **David M. Neumann**  dneumann@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com
- **Christopher Niekamp**  cniekamp@bdblaw.com
- **Matthew T. Schaeffer**  mschaeffer@baileycav.com, lpatterson@baileycav.com
- **Paul J. Schumacher**  pschumacher@dmclaw.com, tgross@dmclaw.com
- **Frederic P. Schwieg**  fschwieg@schwieglaw.com
- **Bryan Sisto**  bsisto@fbtlaw.com
- **Richard J. Thomas**  rthomas@hendersoncovington.com, dciambotti@hendersoncovington.com
- **United States Trustee**  (Registered address)@usdoj.gov
- **Joshua Ryan Vaughan**  jvaughan@amer-collect.com, SAllman@AMER-COLLECT.COM;HouliECF@aol.com
- **Julie K. Zurn**  jzurn@brouse.com, tpalcic@brouse.com
- **Kate M. Bradley ust44**  kate.m.bradley@usdoj.gov

Dated: April 5, 2022

Respectfully submitted,

*/s/ Christopher Combest*
Christopher Combest
**QUARLES & BRADY LLP**
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654
Telephone: (312) 715-5000
Facsimile: (312) 632-1727
christopher.combest@quarles.com
*Counsel for Avnet, Inc.*

QB\73298093.2