UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| SQUIRRELS RESEARCH LABS, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| | ) | |
| | ) | |

**REPLY TO OBJECTION AND RESPONSES REGARDING MOTION FOR RELIEF FROM THE SALE ORDER FOR THE LIMITED PURPOSE OF AMENDING THE DISTRIBUTION SCHEME PENDING DISCOVERY**

Carl Forsell ("Movant"), by his undersigned counsel, hereby replies to the *Objection of Avnet, Inc. To Motion of Carl Forsell for Relief from Sale Order* (Doc. No. 202, "Avnet's Objection"), the *Response of Debtor and Debtor-In-Possession Squirrels Research Labs, LLC to Motion for Relief from the Sale Order for the Limited Purpose of Amending the Distribution Scheme Pending Discovery* (Doc. No. 203, "SQRL's Response"), and *Instantiation, LLC's Memorandum in Opposition to Motion for Relief from the Sale Order for the Limited Purpose of Amending the Distribution Scheme Pending Discovery* (Doc. No. 204, "Instantiation's Response")[1]. Avent, SQRL[2], and Instantiation, in their various Responses, all conveniently ignore (1) their tripartite arrangement to rush the sale process in this case under subchapter v in order to avoid scrutiny of either a creditor's committee or a chapter 7 trustee, (2) the inconsistent and potentially false representations of Avnet's lien in the record, and (3) the economic quandary that their predetermined strategy forced on all other creditors of SQRL's estate, to Avnet's benefit. In support of this Reply, the Movant states as follow:

---

[1] Anvet's Objection, SQRL's Response, and Instantiation's Response are collectively the "Responses."
[2] Squirrels Research Labs, LLC and joint debtor The Midwest Data Company will be jointly referred to as "SQRL".

## RELIEF REQUESTED

1.  To be clear, at this point, Movant is asking the Court to order the parties to the sale to participate in discovery, and to set a date for an evidentiary hearing on the substance of his 60(b) Motion. Movant's position is that there is enough evidence in the record for the Court to order this matter to proceed, but Movant has made no assertion that he can fully prove either the 60(b) basis for the 60(b) Motion or the underlying substance of the 60(b) Motion at this time. Perhaps Movant could have filed a Rule 2004 motion against Avent and Instantiation and waited until that process was complete to file the 60(b) Motion, but Movant did not want to hide the ball before the Court or the other parties given the nature of his allegations once Movant had collected enough information to bring the initial allegation. Movant reached out to both Avent and Instantiation regarding discovery into this matter prior to filing the 60(b) Motion, and was rebuffed by each, so filing a pleading to compel discovery was necessary. Under either Rule 2004 or the 60(b) Motion as filed, this matter is in the same place it would have been – with Avnet and Instantiation resisting discovery, and the Court in a position to decide if discovery is warranted or the matter should be concluded without any discovery. That is the only issue before the Court at this time.

## BACKGROUND

2.  The various allegations in the Responses that Movant did not exercise proper diligence in investigating the sale fall apart under the most basic scrutiny, as will be demonstrated below, and these allegations give away the game of Avnet, SQRL, and Instantiation in manipulating the sale process to escape any real scrutiny, so that this case could be administered essentially for Avnet's benefit to the exclusion of all other creditors.

3. Avnet, SQRL, and Instantiation prearranged the sale process through an agreement by which each party agreed to support each other's positions during the pendency of the bankruptcy case, which they are each now doing in response to the 60(b) Motion. As part of this arrangement, Avnet agreed to write down the debt it was owed by SQRL so that SQRL would qualify for subchapter v of chapter 11. The agreement also set very aggressive deadlines for the consummation of the sale, including requiring that the Sale Order be entered no later than January 25, 2022. This document is attached as **Exhibit A**.

4. Avnet wrote down its debt and SQRL squeezed into subchapter v based on its self-reported debt of less than $7,500,000.00, but there are currently $18,067,670.10 in claims against SQRL in the claims register. It is not unreasonable that in a standard chapter 11 case with at least three million dollars in assets and eighteen million dollars in debt, a committee may have been provided a reasonable budget from the DIP to conduct a lien investigation. The parties to the sale, however, were able to duck the scrutiny of a committee by structuring this chapter 11 case as a subchapter v, and choosing not to use chapter 7 and avoiding a chapter 7 trustee, although this is essentially a liquidating case.

5. Movant was not listed on Debtor's petition as one of the twenty largest creditors, despite having a claim for $744,373.60 which David Stanfill, SQRL's principal, testified was "not disputed" in substance or in amount at the 341 meeting of creditors. The proper disclosure of this one claim would have brought SQRL out of eligibility for subchapter v. A cursory review of the claims register shows that several other significant unsecured claims that have come to light were also not listed on SQRL's petition.

6. Movant was eventually disclosed as a creditor in an unknown amount on SQRL's schedules filed on December 7, 2021. At this point, it appeared that SQRL would contest

Movant's claim, and a review of SQRL's schedules would have made it seem like an open and shut conclusion that Avnet's lien on SQRL's assets was a blanket lien. This is the context in which the Responses allege Movant should have spent his own resources to investigate Avnet's lien. There was no reasonable legal or economic basis for investigating Avnet's lien at that time.

7. The sale process in this case was consummated *prior to the 341 meeting of creditors*, as the Sale Order was granted from the bench on January 11, 2022, but the creditors' meeting was not held until January 14, 2022. At the meeting of creditors, David Stanfill testified that SQRL disputed neither the substance nor the amount of Movant's claim. Mr. Stanfill also offered testimony which raised issues about the financial health of SQRL as far back as mid-2018, when the company was founded.

8. After the 341 meeting, Movant, for the first time, determined that it made sense to conduct some discovery into SQRL's business dealings, because he was finally confident that SQRL would not be contesting the validity of his claim. Further, in light of the financial picture of SQRL painted by Mr. Stanfill at the 341 meeting, Movant determined that an investigation was warranted. Movant filed a Rule 2004 motion for discovery from SQRL on January 20, 2022. The very next day SQRL objected to the Rule 2004 motion and argued that it was *too early* for Movant to request Rule 2004 discovery.

9. SQRL eventually produced documents pursuant to the Rule 2004 motion on February 7, 2022, and included in that production was the March 26, 2019 Security Agreement between Avnet and SQRL. The Security Agreement states that Avnet takes a "*purchase money security interest* and continuing lien… in and to the following described collateral" (emphasis added), and goes on to state that the collateral covers assets "…that arise from the sale of the

inventory and goods to the Debtor…." This is the first time Movant had any reason to suspect that Avnet's lien was not a blanket lien, in contradiction to SQRL's schedules.[3]

10. Shortly after reviewing the Security Agreement, Movant, through counsel, promptly contacted representatives for Avnet and Instantiation with concerns regarding the Security Agreement and to request discovery, and was rebuffed by both, necessitating the filing of the 60(b) motion and the request for the Court's involvement in what is currently only a discovery dispute.

**ARGUMENT**

11. Bankruptcy Rule 9024 incorporates Fed. R. Civ. Pro. 60 to bankruptcy cases in most instances, including a sale order. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 363 (6th Cir. 1990) ("Bankruptcy Rule 9024 makes Rule 60 applicable to cases under the Bankruptcy Code."). . Fed. R. Civ. Pro. 60(b) provides that, "[o]n motion and just terms, the court may relieve a party… from a final judgment, order, or proceeding for the following reasons: …(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under FRCP 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; … or (6) any other reason that justifies relief."

12. The Responses focus narrowly on 60(b)(2), and conveniently ignore 60(b)(3) and 60(b)(6). To focus on 60(b)(2) for a moment, however, recall the Movant's circumstances while the Sale Motion was pending. There was no creditors' committee or case trustee with any significant investigatory powers, and all appearances were that SQRL would be contesting that Movant even had an allowable claim in the case. SQRL's schedules reflected that Avnet had a

---

[3] The language indicating that the lien is only a "purchase money security interest" is not present in the UCC-1 Financing Statement.

blanket lien. Why would Movant use his own resources to investigate a lien that he had absolutely no basis to believe was not a blanket lien, particularly when his financial stake in the case itself appeared to be contested? It is ridiculous that he would do that – but the way the parties to sale set up this case appears to have been designed to place all creditors but Avnet in exactly this predicament.

13. Movant requested discovery after the meeting of creditors, and even then SQRL objected that the request was *too early* – yet now the parties to the sale, including SQRL, are taking the position that Movant was *too late*. It was only after having to fight to obtain Rule 2004 discovery that Movant finally reviewed the Security Agreement and determined there may be a weakness in Avnet's "blanket" lien. The Rule 2004 discovery was not actually requested to investigate the scope of Avnet's lien – Movant had no idea that this issue existed until that point in time. At no point was Movant unreasonable in his actions or failure to act on discovery in this case.

14. Movant does not allege that he can carry the burden of any 60(b) basis at this time, but only that a reasonable basis exists to show that he is likely to be able to prove a 60(b) basis to contest the Sale Order after taking discovery, and the potential 60(b)(3) and 60(b)(6) bases cannot be ignored. If Movant's allegation is correct that Avnet's lien was not a blanket lien, then SQRL's schedules are flatly inaccurate. If this inaccuracy was intentional, Movant may have a 60(b)(3) basis to contest the Sale Order. When Movant takes discovery on this matter, which will necessarily include all communications between the parties to the sale concerning the sale negotiations, there may be other facts uncovered that provide a 60(b)(3) basis for relief from the Sale Order.

6

21-61491-tnap    Doc 210    FILED 04/11/22    ENTERED 04/11/22 14:16:20    Page 6 of 10

15. Finally, 60(b)(6) provides this Court with discretion to allow Movant to contest the Sale Order, even if he cannot satisfy the particular requirements of 60(b)(2) or 60(b)(3) in a strict fashion. If, for example, the scheduling of Avnet's lien as a blanket lien was inadvertent as opposed to malicious, the Court could still determine that it provides a 60(b)(6) basis to contest the Sale Order (particularly in light of the totality of the circumstances) even if 60(b)(3) cannot be technically satisfied. This is why Movant must be authorized to proceed with discovery, so that these questions can be answered.

16. Instantiation's Response alleges that it would be unduly burdensome for Instantiation to produce some basic documents concerning the sale. If the sale negotiations were indeed conducted at arms-length and in good faith, Instantiation could produce some records and communications regarding the sale in half the time it took to draft its Response. There is no great burden for Instantiation to comply with Movant's requests.

17. In the over thirty combined pages of Responses the parties to the sale filed to contest having to participate in some basic discovery, it is noteworthy that not one sentence defends Avnet's lien as a blanket lien. If any of the parties to the sale had any evidence to prove that Avnet's lien was a blanket lien sufficient to contradict the plain language of the Security Agreement, they could have provided such evidence to Movant shortly after or even before the 60(b) Motion was filed when Movant first reached out, and this matter would have been resolved immediately and painlessly at that time. That path to resolving this matter remains open to them. That none have or are choosing to take it (particularly Avnet) indicates that consistent with Movant's reading of the Security Agreement, Avnet indeed collected sale proceeds from assets upon which it had no lien ahead of its fellow unsecured creditors.

# CONCLUSION

18.   Based on what is known to the Movant at this time, there is a good faith basis to proceed with discovery on the 60(b) Motion, and for the Court to ultimately hold an evidentiary hearing on the allegations in that Motion, and those that may come to light, once the discovery process is complete.

WHEREFORE, Movants respectfully requests this Court enter an Order:

(1) authorizing Movant to request discovery from Avnet and Instantiation, as it pertains to the allegations in the 60(b) Motion;

(2) directing Avnet and Instantiation to comply with such discovery requests;

(3) setting a date for an evidentiary hearing on this matter within the next 60-90 days;

(4) all other relief which the Court deems just and proper under the circumstances.

Dated: April 11, 2022

Respectfully submitted,

/s/ *Bryan J. Sisto*
Bryan J. Sisto (OH 0088143)
**FROST BROWN TODD LLC**
400 W. Market Street, Suite 3200
Louisville, KY 40202
Phone: (502) 589-5400
Email: bsisto@fbtlaw.com

*Counsel for Carl Forsell*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: ) | Case No. 21-61491 |
| ) | |
| SQUIRRELS RESEARCH LABS, LLC, *et al.*, ) | Chapter 11 |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | Judge Russ Kendig |
| ) | |
| ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon the following on February 18, 2022, via the Court's electronic mail notice list:

• **John C. Cannizzaro** John.Cannizzaro@icemiller.com,

lauren.prohaska@icemiller.com

• **Christopher Paul Combest** christopher.combest@quarles.com

• **John G. Farnan** jfarnan@westonhurd.com

• **Robert E. Goff** rgoff@westonhurd.com, jroberts@westonhurd.com

• **Jeannie Kim** JeKim@sheppardmullin.com, dgatmen@sheppardmullin.com

• **Marc Merklin** mmerklin@brouse.com, tpalcic@brouse.com;mmiller@brouse.com

• **Christopher Niekamp** cniekamp@bdblaw.com

• **Paul J. Schumacher** pschumacher@dmclaw.com, tgross@dmclaw.com

• **Frederic P. Schwieg** fschwieg@schwieglaw.com

• **Frederic P. Schwieg** fschwieg@schwieglaw.com

• **United States Trustee** (Registered address)@usdoj.gov

• **Joshua Ryan Vaughan** jvaughan@amer-collect.com,

SAllman@AMER-COLLECT.COM; HouliECF@aol.com

- **Julie K. Zurn** jzurn@brouse.com, tpalcic@brouse.com

- **Kate M. Bradley ust44** kate.m.bradley@usdoj.gov

| | |
|---|---|
| Dated: April 11, 2022 | Respectfully submitted,<br><br>/s/ *Bryan J. Sisto*<br>Bryan J. Sisto (OH 0088143)<br>**FROST BROWN TODD LLC**<br>400 W. Market Street, Suite 3200<br>Louisville, KY 40202<br>Phone: (502) 589-5400<br>Email: bsisto@fbtlaw.com<br><br>*Counsel for Carl Forsell* |

0149594.0752621   4880-5823-3371v1

10

21-61491-tnap    Doc 210    FILED 04/11/22    ENTERED 04/11/22 14:16:20    Page 10 of 10