The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 04:27 PM April 29, 2022**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SQUIRRELS RESEARCH LABS, LLC, *et al.*, | ) ) | CASE NO. 21-61491 (Jointly Administered) |
| | ) | |
| Debtors. | ) | RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |

On February 21, 2022, Carl Forsell ("Forsell") filed a Motion for Relief from the Sale Order for the Limited Purpose of Amending the Distribution Scheme Pending Discovery ("Motion"). Avnet, Inc. ("Avnet"), Debtors, and Instantiation LLC ("Instantiation") filed responses in opposition. The court held a telephonic hearing on April 12, 2022. The following parties participated in the hearing: Brian Sisto, counsel for Forsell; Christopher Combest, counsel for Avnet; Marc Merklin, attorney for Debtors; John Cannizzaro and Jeannie Kim, representing Instantiation; Kate Bradley on behalf of the United States Trustee; and Frederic Schwieg, the subchapter V trustee.

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the United States District Court for the Northern District of Ohio. General Order 2012-7. The court is authorized to enter final orders in this matter. Pursuant to 28 U.S.C. § 1409, venue in this court is proper.

This opinion is not intended for publication or citation. The availability of this opinion,

1

in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

### The Parties

The debtors in this jointly administered case are Squirrels Research Labs LLC ("SQRL") and Midwest Data Company LLC ("Midwest"). SQRL "creates, manufactures, and repairs hardware, including Datacenter Accelerator Boards, used in cryptocurrency mining machines." (Decl. of David Stanfill ¶ 6, ECF No. 37.) Midwest "provides hosting services for cryptocurrency mining machines." (Id. at ¶ 7.) Debtors each filed a chapter 11 petition on November 23, 2021, electing to proceed under subchapter V of Chapter 11. (Pet., p. 2, ECF No. 1; Pet., p. 2, Case No. 21-61942, ECF No. 1.)

Forsell is a creditor of SQRL by virtue of several prepetition purchase orders for cryptocurrency mining equipment. (Proof of Claim 19-1.) He paid hundreds of thousands of dollars for the equipment and requested a refund upon notification that the boards were delayed. (Id.) He only received a small partial refund. (Id.) Forsell was included in the original creditor matrix through an attorney. (Pet., p. 18, ECF No. 1.) He filed a proof of claim for $744,373.60.

Avnet was Debtors' senior secured lender. In March 2019, SQRL borrowed $4,621,092.50 and executed a security agreement, granting Avnet a lien. (M. of Debtors for Int. and Final Orders Authorizing DIP Fin. ¶ 9, ECF No. 3.) In April 2021, the parties amended and restated their loan agreement, increasing the amount borrowed to $7,864,779.76, secured by the same lien. (Id. at ¶ 10.)

Instantiation provided postpetition financing and also purchased Debtors' assets. (Fin. Order Auth. Postpetition Financing, ECF No. 68; Order Auth. Sale of Certain of Debtors' Assets, ECF No. 131.)

### Relevant History

Debtors entered into chapter 11 on November 23, 2021, with a prepackaged plan negotiated bewteen Debtors, Avnet and Instantiation for the sale of Debtors' assets. They filed a motion to approve bid procedures and conduct an auction sale on the same date they filed their cases. ("Sale Motion") (Mot. for Order Establishing and Approving Bid Proc., ECF No. 6.) As part of the sale process, Avnet agree to limit its $7,000,000.00+ claim to $5,751,000.00 and set the secured claim at $3,000.000.00. (Id. ¶ 11.) Instantiation offered to act as the stalking horse bidder, offering $3,010,000.00 for Debtors' assets. (Id., Exh. B.) On December 1, 2021, the court approved Debtors' plan to auction their assets. (Order Approving Bid Proc., ECF No. 40.) After Debtors failed to obtain any competing bids and cancelled the auction, the court approved the sale to Instantiation on January 18, 2022. ("Sale Order") (Order Auth. Sale of Certain of Debtors' Assets, ECF No. 131.) The sale was to close as soon as practicable. (Id.)

2

In the first day motions, Debtors disclosed information concerning the initial note and the amended and restated note with Avnet. The papers reference execution of a security agreement "granting a lien in the collateral described therein." (M. Debtors for Int. and Fin. Orders Auth. The Midwest Data Co LLC to Obt. DIP Financing ¶ 9-10, ECF No. 3.) Their schedules indicated Avnet held a "blanket" lien on "all physical assets" by virtue of a UCC financing statement. (Decl. under Penalty of Perjury, p. 29, ECF No. 62.)

Forsell was listed a as a creditor in the original creditor matrix. (Ch. 11 Subch. V Voluntary Petition, ECF No. 1.) When Debtors filed their schedules, Forsell was listed on Schedule E/F with a contingent, unliquidated, disputed claim for in an "unknown" amount for a "product refund." (Decl. Under Pen. of Perjury, ECF No. 62.) On November 23, 2021, Debtors served him, through his attorney, with copies of the Sale Motion and the corresponding motion to expedite the Sale Motion, on November 23, 2021. (Cert. of Serv., ECF No. 14.) They served him, again through his attorney, with the order granting the expedited process on November 24, 2021. Under that order, objections to the Sale Motion were due by November 30, 2021. Forsell did not file an objection to the Sale Motion. When the court approved the Sale Motion, the deadline to object to the "Sale Transaction" was set for January 10, 2022. Forsell was served with this order on December 2, 2021. (Cert. of Serv., ECF No. 57.) He did not object to the sale to Instantiation.

## **DISCUSSION**

Approximately one month after the sale was approved, Forsell filed a motion for relief from the sale order. Forsell contends Avnet's lien was a purchase money security interest, not a blanket lien, and he wants discovery to determine if Avnet had an interest in collateral valued at $3,000,000.00. The court concludes he is not entitled to discovery related to the final sale order.

Parties have broad pretrial discovery rights in pursuit of claims and defenses and are authorized to obtain

> any nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery in resolving
> the issues, and whether the burden or expense of the proposed dis-
> covery outweighs its likely benefit.

Fed. R. Bankr. Pro. 7026; Fed. R. Civ. Pro. 26(b)(1). The right to discovery after entry of a judgment is more obscure. H.K. Porter Co., Inc. v. The Goodyear Tire & Rubber Co., 536 F.2d 1115, 1118 (6th Cir. 1976) (recognizing "Goodyear has not cited, and we have not found, any cases dealing with the right to post-judgment discovery."). While Federal Rule of Civil Procedure 69(a)(2) grants discovery rights to judgment creditors, and their successors, "in aid of the judgment or execution, the rules provide no other authority and courts have struggled to find

case law in support." Id., see also In re Wyatt, Inc., 168 B.R. 520, 523 (Bankr. D. Conn. 1994) (citations omitted) (stating "there is a dearth of cases discussing a party's right to post-trial or post-judgment discovery."); Pharmacy Records v. Nassar, 2010 WL 11545040, * 2 (E.D. Mich. 2010) (citing cases addressing post-judgment discovery). It has been suggested that when res judicata and collateral estoppel bar further litigation, discovery is also barred. In re Wilcher, 56 B.R. 428 (BAnkr. N.D. Ill. 1985); In re Silverman, 36 B.R. 254 (Bankr. S.D.N.Y. 1984).

After noting the paucity of case law, the Sixth Circuit expressed its concern about the implications of permitting post-judgment discovery:

> A request for discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending action prior to a judgment. Primary among these considerations is the public interest of the judiciary in protecting the finality of judgments.

H.K. Porter, 536 F.2d at 1118. Finality is particularly important in the context of chapter 11 sales. Without the comfort of finality, bidders and purchasers will be less inclined to offer maximum value for assets. In re Made in Detroit, 414 F.3d 576, 581 (6th Cir. 2005) (citations omitted). This is one reason a chapter 11 sale order receives statutory protection through 11 U.S.C. § 363(m). Any intent to disrupt a sale order must be carefully considered.

To balance the need for finality against a party's right to discovery, courts require the party seeking discovery to make a *prima facie* showing of an entitlement to relief. H.K. Porter, 536 F.2d at 1119 (stating "it is well within his discretion to require the moving party to make a showing in support of its allegations before requiring the prevailing party to submit a second time to extensive discovery."); Wyatt, 168 B.R. 520, 524 (finding "question thus becomes whether the noteholders have made a sufficient showing that they be allowed to obtain their requested discovery."). Forsell cited three grounds for relief from the sale order: (1) newly discovered evidence under 60(b)(2), (2) fraud, misrepresentation or misconduct on the court under 60(b)(3), and (3) another reason justifying relief under 60(b)(6). Movant must do more than suggest a right to relief to pursue discovery.

Forsell says he now understands that Avnet did not hold a blanket lien but held a purchase money security interest. He suggests that Avnet's interest in Debtors' assets may not have been secured for the stated $3,000,000.00. Rule 60(b)(2) requires Forsell to show (1) he exercised due diligence in obtaining the new information and (2) the evidence is material and would have led to a different outcome. Good v. Ohio Edison Co., 149 F.3d 413, 423 (6th Cir. 1998) (citations omitted). He has not made this showing.

First, there is nothing in the record to show Forsell was reasonably diligent in obtaining information about the nature of the lien. In fact, on the record in open court, he indicated he did not act because his claim was disputed. Movant made a strategic decision not to pursue the information prior to the sale. Second, the information was publicly available, as evidenced by the

4

copy of the UCC financing statement he attached as an exhibit to his motion. The language in that financing statement directly recites the language in the security agreement, giving Avnet a lien on "all inventory, goods or other tangible assets, whether or not such assets are delivered to the Debtor, as well as all accounts, chattel paper, deposit accounts, accounts receivable, rights to payment of every kind, general intangibles, instruments, that arise from the sale of inventory and goods to the Debtor." (M. Relief from Sale Order, Exh. A, p. 1; Ex. B, p. 1, ECF No. 166.) A simple search would have at least put Forsell on notice of what type of lien existed. Third, there is no proof that this information is material and would alter the sale outcome. Forsell has not provided any proof of a misvaluation of the collateral that would lower the value of the secured claim.

It's difficult to say "you don't have proof" while not giving Forsell the chance to look for it. But when the finality of the sale order is at issue, and Forsell sat on his hands during the sale process, the court is compelled to say it.

He reaches no more success under 60(b)(3). To succeed here, he must 'show that the adverse party commmited a deliberate act that adversely impacted the fairness of the relevant legal proceding [in] question." Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448 (6th Cir. 2008) (quoting Jordan v. Paccar, Inc., No. 95-3478, 1996 WL 528950, *6 (6th Cir. Sept. 17, 1996) (unpublished)). The only "evidence" he references is Debtor's calling the lien a "blanket" lien rather than a purchase-money lien. Neither the Uniform Commercial Code nor the Bankruptcy Code define "blanket lien," leaving it open to interpretation.

Cases reveal that there is no unified understanding of what constitutes a "blanket" lien. Sometimes it may indicate a literal interest in all of the assets of a debtor. In re Nightlife Enterprises, L.P., 2010 WL 5264600 (Bankr. S.D.N.Y. 2010). Or it could apply to all of a certain type of assets, such as real estate interests. In re Quicksilver Resources Inc., 544 B.R. 781 (Bankr. D. Del. 2016). It also appears to reference something less than all of the assets of a debtor, referring to a comprehensive combination of assets. In re 3PL4PL, LLC, 619 B.R. 441 (Bankr. D. Col. 2020). One court described the unitary nature of an IRS lien, which covers real and personal property, as a blanket lien. In re Vargas Quinones, 581 B.R. 705, 714 (Bankr. D. P.R. 2017). In the context of mechanic's liens, other courts have used the term to apply to a lien covering all lots in a subdivision that benefitted from work on a single lot. In re Homesteads Community at Newtown, LLC, 526 B.R. 1, 11 (D. Conn. 2014); In re Old Town North, LLC, 519 B.R. 307 (Bankr. D. Col. 2014). Since there is no clear definition of what assets comprise a blanket lien, parties must exercise due diligence in determining the assets that serve as collateral.

The court is not convinced that Debtor's classification of the lien as a "blanket lien" was a misrepresentation. In this case, the schedules indicated the blanket lien was on "all physical assets." Not every item of collateral can be identified in the schedules because of the limited space. Describing a security interest in a broad array of assets as a "blanket" lien does not offend the court.

Forsell also raises 60(b)(6) as a basis for relief. This is a hard sell in any situation because

5

it applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990). The court finds nothing exceptional or extraordinary warranting relief. The court must re-emphasize that Forsell had notice of the sale motion and the truncated sale process. He did not seek discovery during that time period. The information that he now uses as a basis to attempt to alter the sale order was publicly available prior to the sale. He admits he took no action during the sale process because his claim was disputed. He did not object to the sale. He did not seek a stay of the sale order. Learning something that you wish you'd known sooner is not the exceptional or extraordinary circumstance intended to be covered by Rule 60(b)(6). Forsell has not made an elemental showing he is entitled to relief from the sale order. The court will therefore deny his request for post-judgment discovery.

## CONCLUSION

There is no clear right to post-judgment discovery. While it may be available, the principles of finality must be considered, and these principles are more consequential when a final chapter 11 sale order is at issue. The prospect of disrupting a final order requires the movant to make a prima facie showing that there is a basis for allowing the post-judgment discovery. Forsell failed to make this showing. The new evidence he references is not new, it was publicly available, and it could have been discovered prior to entry of the sale order. Debtors' use of the term "blanket lien" was not clearly erroneous. There is no indication Debtors used the term with deliberate intent to mislead others. Finally, the facts are not exceptional or extraordinary and therefore cannot provide a basis for relief.

The court will deny Forsell's Motion by separate order to be entered immediately

#   #   #

**Service List:**

Bryan J. Sisto
Frost Brown Todd LLC
400 W. Market Street, Suite 3200
Louisville, KY 40202 Marc Merklin

Julie K. Zurn
Brouse McDowell
388 South Main Street, Suite 500
Akron, OH 44311

Christopher Combest
Quarles & Brady LLP
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654

Jeannie Kim
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA 94111

John C. Cannizzaro
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215

Frederic P. Schwieg
19885 Detroit Road #239
Rocky River, OH 44116

Kate M. Bradley
Office of the U.S. Trustee
H.M. Metzenbaum U.S. Courthouse
201 Superior Avenue East Suite 441
Cleveland, OH 44114