UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Squirrels Research Labs LLC, *et al.*[1] | ) Case No. 21-61491 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Judge Russ Kendig |
| _____ | ) |

### SQUIRRELS RESEARCH LABS LLC'S REPLY TO TOREA CONSULTING, LTD'S OBJECTION TO PLAN

Squirrels Research Labs LLC ("SQRL"), one of the above-captioned debtors and debtors in possession, files this reply (the "Reply") to Torea Consulting, Ltd.'s ("Torea") *Objection to Chapter 11 Plans Filed by Squirrels Research Labs, LLC and the Midwest Data Company LLC* (Doc. #209) (the "Objection"), filed April 6, 2022. In support of this Reply, SQRL respectfully represents as follows:

#### JURISDICTION & VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

#### BACKGROUND

3. On November 23, 2021 (the "Petition Date"), SQRL and The Midwest Data Company LLC ("MWDC", and collectively with SQRL, the "Debtors") each filed a voluntary

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and The Midwest Data Company LLC (1213), case no. 21-61492.

1

petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Debtors' cases were jointly administered for procedural purposes. *See* Fed. R. Bankr. P. 1015(b).

4. Prior to the Petition Date, Torea filed a lawsuit against SQRL in the Stark County Court of Common Pleas (the "State Court Case"). MWDC is not a party to the State Court Case and Torea is not one of MWDC's creditors.

5. SQRL filed its *Plan of Liquidation* (Doc. #169) (the "Plan") on February 21, 2022. Article 1.02 of the Plan explains that the Debtors are each pursuing insurance claims (the "Insurance Claims") against their mutual insurance company, Cincinnati Insurance. The Insurance Claims relate to property damage and business interruptions the Debtors suffered prepetition as a result of a fire at the 8050 Freedom Avenue location. SQRL's Plan will be implemented and funded through, *inter alia*, SQRL's recovery on the Insurance Claims.

6. Article 1.04 of the Plan explains that SQRL is "in the process of investigating prepetition transactions" and details potential causes of action under Chapter 5 of the Bankruptcy Code that may be pursued for the benefit of the estate. (Plan, Art. 1.04, at 6.) The Plan also states that:

> [SQRL] is evaluating various sales, including without limitation sales to MM LLC and TorEA Consulting, where it appears transactions may have taken place outside of the ordinary course of business and the price paid for hardware purchased may have been significantly less than fair market value for the hardware resulting, potentially, in a constructively fraudulent transfer.

(*Id*. at 8.)

7. In the Objection, Torea states that "[i]t is unclear from either Plan how the [insurance] proceeds are to be allocated between the two Debtors." (Torea Obj. at 4.) Torea argues that "[d]ue to the small number of creditors of [MWDC] and thus the opportunity for a windfall for [MWDC]

shareholders – the Plans must address this allocation or otherwise merge the Plans to channel the insurance proceeds to creditors of Squirrels." (*Id.*)

8. Torea also objects to the language in Article 1.04 of SQRL's Plan regarding a potential cause of action against Torea. Torea contends that the "statement is not substantiated by any schedule filed by the Debtors, is ambiguous, and is detrimental to the Debtors' estate in the absence of a showing of what was ordinary in the Debtors' businesses." (*Id.*) Torea states that "[b]y this threat – one can only imagine that Squirrels intends to target Torea as part of Squirrels' defense to the outside ordinary course of business nature of the transaction between Squirrels and Maranda." (*Id.*) The Court should overrule the Objection.

## LAW & ARGUMENT

### I. Allocation of Insurance Proceeds / Merger of the Debtors' Plans.

9. The allocation issue does not need to be - nor can it be - decided prior to confirmation. The insurance recovery process is ongoing and will be resolved in due course. At this point, however, it is not clear exactly how much insurance proceeds SQRL will recover. The Plan's liquidation analysis estimates that SQRL's recovery will be approximately $848,117.84. This estimate is "based on a business judgment utilizing direct losses from the reduction in value of scheduled assets as compared to the sale price, as well as the policy limit of business interruption." (Ex. A to Plan, n.3.) For purposes of confirmation, SQRL's estimate is sufficient.[2]

10. Torea argues that the Court should "merge" the Debtors' plans and "channel" the insurance proceeds to SQRL's creditors in order to prevent MWDC's shareholders from receiving a "windfall." (Torea Obj. at 4.) But MWDC and SQRL are separate legal entities with separate

---

[2] Torea does not dispute that SQRL's Plan is feasible. Nor does Torea challenge the accuracy of SQRL's estimates with respect to the Insurance Claims.

assets and liabilities, and Torea is not even a creditor of MWDC. As such, Torea has no right or claim to any of the insurance proceeds that MWDC ultimately recovers.[3] In the event SQRL files a Rule 9019 motion to settle or compromise the Insurance Claims, Torea may be able to object to same.

11. Torea is effectively asking the Court to substantively consolidate the Debtors' bankruptcy estates. *See In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 423 (3d Cir. 2005) (explaining that "[s]ubstantive consolidation treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased)."). But Torea has not cited any authority or alleged any facts that would support this extraordinary request for relief. *See*, *e.g.*, *In re Howland*, 674 F. App'x 482, 488 (6th Cir. 2017) (setting forth the elements of substantive consolidation); *see also In re Colfor, Inc.*, Nos. 96-60306, 96-60307, 1997 WL 605100, at *3 (Bankr. N.D. Ohio Sept. 4, 1997) (describing substantive consolidation as an "extreme" measure). Indeed, Torea has not provided any authority at all in support of its Objection.

**II. Plan Language Regarding Potential Fraudulent Transfer Claim.**

12. Torea's second argument also lacks merit. Section 1123(b)(3) of the Bankruptcy Code states that a Chapter 11 plan "may" provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest . . . ." Although § 1123(b)(3) uses the word "may," a debtor's failure to specify claims to be retained and enforced post-confirmation could result in the loss of such claims, which would

---

[3] To that end, confirmation of MWDC's Plan will not have any effect on Torea's rights. Consequently, Torea (i) is not a "party in interest" for purposes of §§ 1109(b) and 1128(b) – and therefore does not have statutory authority to object to MWDC's Plan – and (ii) likely does not even have Article III standing to object to MWDC's Plan. *See*, *e.g.*, *In re Vantage Drilling Int'l*, 603 B.R. 538, 545 (Bankr. D. Del. 2019) (discussing statutory authority under § 1128(b) and Article III standing in the context of objections to confirmation); *see also In re SII Liquidation Co.*, No. 14-6024, 2015 WL 5561347, at *8 (Bankr. N.D. Ohio Sept. 21, 2015) (Kendig, J.) (dismissing bankruptcy adversary proceeding based on Article III standing principles).

be detrimental to the estate. *See*, *e.g.*, *In re Hart Oil & Gas, Inc.*, 534 B.R. 35, 45 (Bankr. D.N.M. 2015) (collecting cases).

13. Here, the Plan's reservation of a possible fraudulent transfer claim against Torea was explicitly authorized by the Bankruptcy Code and necessary to preserve the claim. Moreover, the disclosure was sufficiently detailed to inform SQRL's creditors of a potential distribution in the event the claim is pursued. *See In re Mountain Glacier LLC*, 877 F.3d 246, 249 (6th Cir. 2017) (explaining that "a debtor's reservation is sufficient so long as it enables creditors to (1) identify the claims (or potential claims) at issue and (2) evaluate whether those claims might provide additional assets for distribution."); *see also In re Regional Diagnostics LLC*, 372 B.R. 3, 15-16 (Bankr. N.D. Ohio 2007) (same). If and when SQRL – as the "Liquidating Debtor" under the Plan – brings an adversary proceeding against Torea, Torea will have an opportunity to defend itself in the litigation. But Torea's fear of a lawsuit is not a basis to deny confirmation.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Reply and in SQRL's Brief in Support of Confirmation, SQRL respectfully requests that this Court (i) overrule Torea's Objection, and (ii) confirm SQRL's Plan.

Dated: June 2, 2022                    Respectfully submitted,

*/s/ Julie K. Zurn*
Marc B. Merklin (0018195)
Julie K. Zurn (0066391)
BROUSE MCDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@brouse.com

*Counsel for Squirrels Research Labs LLC*