# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC, *et al.*[1] | ) | Case No. 21-61491 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| _____ | ) | |

## SQUIRRELS RESEARCH LABS LLC'S BRIEF IN SUPPORT OF CONFIRMATION OF AMENDED PLAN OF LIQUIDATION DATED JUNE 2, 2022

Squirrels Research Labs LLC (the "Debtor"), one of the above-captioned debtors and debtors in possession, files this brief in support of the confirmation of its Plan of Liquidation dated February 21, 2022 [Doc. #169] and amended on June 2, 2022 [Doc. #237] (the "Plan") and seeks the entry of an order confirming the Plan, substantially in the form attached hereto as **Exhibit A** (the "Confirmation Order").

Torea Consulting, Ltd. filed an Objection to the plan [Doc. #209] on April 6, 2022. Debtor replied to the Objection on June 2, 2022 [Doc. #240] (the "Reply"). The court should overrule the Objection for the reasons set forth in the Reply.

In addition, the Subchapter V Trustee (the "Sub V Trustee") filed a Report and Statement Concerning Confirmation of the Debtor's Plan [Doc. #219] (the "Trustee Report") on April 25, 2022. Although not styled as an objection, the Trustee Report raises several issues regarding confirmation of the Debtor's February 21 liquidation plan. The Debtor, after consulting the Sub V Trustee, drafted and filed the amended Plan in an effort to address the Sub V Trustee's concerns.

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and The Midwest Data Company LLC (1213), case no. 21-61492.

The Plan, as amended, was not served on all creditors and parties in interest because the amendments therein are not prejudicial to any creditor or party in interest.[2] However, the Plan, as amended was served on the general service list on June 2, 2022, along with a copy of this Brief in Support of Confirmation. Debtor understands the Sub V Trustee's concerns to be resolved by the Plan, as amended.

## I. CONFIRMATION CRITERIA

This brief has been submitted to demonstrate that the Plan complies with all relevant requirements for confirmation pursuant to Section 1191 of Title 11 of the United States Code (the "Bankruptcy Code"). Each of the pertinent requirements for confirmation of the Plan is briefly reviewed below.

### A. INTRODUCTION

Section 1191 of the Bankruptcy Code[3] contains the standards for confirmation of a Subchapter V plan. Section 1191(a) states that a plan shall be confirmed if all the provisions of Section 1129(a) (other than paragraph 15) are met. However, under Section 1191(b), the court shall still confirm a plan even where paragraphs (8) and (10) of Section 1129(a) are not met. Here, notwithstanding that Sections 1129(a)(8) and (10) are not met, the court may confirm the Plan under Section 1191(b).

### B. COMPLIANCE WITH APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE (11 U.S.C. § 1129(A)(1)).

Section 1129(a)(1) requires the court to confirm a plan only if the plan complies with the applicable provisions of the Bankruptcy Code. Sections 1122 and 1123 are the substantive

---

[2] The Confirmation Order will provide 14-days' negative notice to all creditors and parties in interest with respect to a new provision in Article 8 of the Plan that states: "Upon completion of all payments under this Plan, the Debtor may dissolve and is authorized to execute, deliver, file or record such documents and take any and all such actions as may be necessary or appropriate to dissolve." Am. Plan. Art. 8.

[3] Hereinafter, each reference to a "Section" or a "Chapter" is to a section or chapter of the Bankruptcy Code.

2

provisions that are most relevant in satisfying Section 1129(a)(1).  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir. 1988).  Section 1122 governs classification of claims and interests, and Section 1123 sets forth the provisions that are required to be included - and those that may be included - in a Chapter 11 plan.  As shown below, the Plan satisfies the requirements of Section 1129(a)(1).

> 1. *Classification of Claims and Interests (11 U.S.C. §§ 1122 and 1123(a)(1)).*

Section 1123(a)(1) requires that a plan designate, subject to Section 1122, classes of claims, other than claims of the kind specified in Sections 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8) (unsecured priority tax claims), and classes of interests. In designating classes of claims and interests in Article 3 of the Plan, the Debtor has satisfied the requirement of Section 1123(a)(1).

Under Section 1122(a), a claim or interest may be placed in a particular class under a plan only if such claim or interest is substantially similar to the other claims or interests of such class. The Sixth Circuit interprets this provision to allow broad, though not unbounded, freedom in classifying claims.  *See In re U.S. Truck Co.*, 800 F.2d 581, 586 (6th Cir. 1986).  Article 3 of the Plan places only claims or interests in each class that are substantially similar to the other claims or interests in the class.  Therefore, the Plan complies with Section 1122(a).

> 2. *Identification of Unimpaired Claims and Interests (11 U.S.C. § 1123(a)(2)).*

Section 1123(a)(2) requires that a plan specify any class of claims or interests that is not impaired under the plan.  As set forth in Article 5 of the Plan, Classes 1, 2 and 3 are each unimpaired and therefore deemed to accept the Plan.  Thus, the Plan complies with Section 1123(a)(2).

3

### 3. *Specification of Treatment of Impaired Claims (11 U.S.C. § 1123(a)(3)).*

Section 1123(a)(3) requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan. Article 5 of the Plan provides that Classes 4 and 5 are both impaired. Thus, Section 1123(a)(3) is satisfied.

### 4. *Same Treatment for Class Members (11 U.S.C. § 1123(a)(4)).*

Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment. The Plan provides for the same treatment of each claim or interest of a particular class and complies with Section 1123(a)(4).

### 5. *Adequate Means for Implementation (11 U.S.C. § 1123(a)(5)).*

Section 1123(a)(5) requires that a plan provide adequate means for the plan's implementation and provides a number of examples of methods for doing so. The alternatives set forth in Section 1123(a)(5) may be proposed by a plan proponent notwithstanding non-bankruptcy law or agreements. 7 COLLIER ON BANKRUPTCY, P 1123.01[5] (Matthew Bender 15th Ed. Rev.). The examples of adequate means for implementation of a plan provided in Section 1123(a)(5) are illustrative and the section does not exclude or limit any other means. Article 8 provides adequate means for the Plan's implementation.

### 6. *Corporate Charter Provision Prohibiting Issuance of Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).*

Section 1123(a)(6) requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends,

adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. The Plan does not provide for the issuance of equity securities, but if applicable, its operating agreement or other legal document shall prohibit the issuance of nonvoting securities. Accordingly, Section 1123(a)(6) is not applicable.

7. ***Selection of Directors and Officers (11 U.S.C. § 1123(a)(7)).***

Section 1123(a)(7) states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director or trustee under the plan. Section 1129(a)(5), which is discussed below, augments Section 1123(a)(7) and requires, as a condition of confirmation, that the proponents of the plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of any affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan. In addition, Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director, officer or voting trustee be consistent with the interests of creditors and equity security holders and with public policy.

The Plan discloses these relationships in Article 8. Specifically, Article 8 states that the Debtor's president, David Stanfill, will serve as manager of the Liquidating Debtor after confirmation of the Plan and without compensation until the Liquidating Debtor identifies a successor to the Debtor's president, if any, or the Liquidating Debtor is dissolved.

8. ***Discretionary Plan Provisions (11 U.S.C. § 1123(b)).***

Section 1123(b) sets forth various discretionary provisions that can be included in a Chapter 11 plan. As set forth below, the Plan's discretionary provisions comply with Section 1123(b).

5

- Impairment (11 U.S.C. § 1123(b)(1)).

Section 1123(b)(1) allows a plan to "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan impairs Classes 4 and 5 but leaves Classes 1, 2 and 3 unimpaired.

- Leases and Executory Contracts (11 U.S.C. § 1123(b)(2)).

Section 1123(b)(2) permits a plan, subject to Section 365, to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Article 7 of the Plan provides for the assumption, rejection, or assignment of any executory contract or unexpired lease of the Debtor not previously rejected under Section 365.

- Retention of Claims (11 U.S.C. § 1123(b)(3)).

Section 1123(b)(3) permits a plan to provide for the "settlement or adjustment of any claim or interest belonging to the debtor or the estate" or the "retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3). Article 8 of the Plan provides that SQRL, as the Liquidating Debtor, "shall be deemed the successor in interest to the Debtor and be appointed the representative of the Estate for and have all the duties, powers, standing and authority necessary to implement the Plan and to administer the assets of the Estate for the benefit of holders of Allowed Claims." Am. Plan, Art. 8. In addition, the Liquidating Debtor "shall be vested with and shall be responsible for (i) the distribution of assets to holders of Allowed Claims; (ii) the prosecution and enforcement of the Avoidance Actions and other Causes of Action; (iii) the liquidation of remaining physical assets and collection of notes receivable; and (iv) the prosecution of objections to Claims." *Id*.

Finally, as authorized by Section 1123(b)(3), the Sub V Trustee shall be vested the power and authority to prosecute and enforce avoidance actions against the Debtor's insiders.

- <u>Liquidation Plans are Permissible Under Subchapter V (11 U.S.C. § 1123(b)(6)).</u>

Section 1123(b)(6) also permits a plan to contain any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.

The Debtor submits that liquidation plans are permissible in cases under Subchapter V, just as they are under Chapter 11. "[E]ven though the primary purpose of SBRA is to assist small businesses in reorganizing, nothing in the legislative history or the text of the statute precludes a small business debtor, who has gone out of business, from availing itself of Subchapter V and pursuing a liquidation plan." *In re Offer Space, LLC*, 629 B.R. 299, 308 (Bankr. D. Utah 2021). In *Offer Space*, the court held that a company that ceased operations and began windup activities at the time of its bankruptcy filing qualified for relief under Subchapter V. Later, in that same case, the court confirmed the debtor's consensual liquidating plan pursuant to Section 1191(a). *Offer Space*, No. 20-27480, ECF Nos. 52 & 71 (Bankr. D. Utah July 22, 2021). Indeed, Section 1181 lists sections of the Bankruptcy Code that do not apply in Subchapter V cases and does not exclude Chapter 11's liquidating plan provisions in Sections 1123(a)(5)(D), 1123(b)(4) and 1129(a)(11).

At least one other court has confirmed a liquidating Subchapter V plan.[4] *See, e.g., In re MyCell Technologies LLC*, No. 20-12748, ECF Nos. 69, 73 & 82 (Bankr. S.D.N.Y. Mar. 4, 2022) (confirming non-consensual liquidating plan). In *MyCell*, the court initially approved a sale of substantially all the debtor's assets. Under the sale order, the purchaser paid $75,000 to the estate

---

[4] And at least one court has a form plan for Subchapter V debtors that expressly permits plans of liquidation. https://www.njb.uscourts.gov/forms/chapter-11-subchapter-v-small-business-debtors-plan-reorganization-or-liquidation.

for administrative expenses. The debtor subsequently confirmed a liquidating plan under Section 1191(b). The 5-year projections attached to the plan showed that the debtor would not be making any distributions because the debtor was no longer operating and did not have any income.

Here, the Debtor sold substantially all of its physical assets in a Section 363(f) sale. The Plan provides that the Debtor will cease operations and its remaining assets will be liquidated for the benefit of creditors and the estate. This is permitted under Subchapter V.

The Plan does not contain any provision that is inconsistent with the applicable provisions of the Bankruptcy Code. The Plan therefore complies with both Section 1122 and with the mandatory and permissive provisions of Section 1123. Thus, the Plan satisfies the requirements of Section 1129(a)(1).

    C.    **PROPONENT COMPLIANCE (11 U.S.C. § 1129(A)(2)).**

Section 1129(a)(2) states that the court shall confirm a plan only if the proponent of the plan complies with the applicable provisions of the Bankruptcy Code. Under that subsection, the court must determine whether the proponent of the plan has complied with the requirements of Section 1125 in the solicitation of acceptances of the plan, but, unless the court orders otherwise, Section 1125 does not apply in a case filed under Subchapter V. 11 U.S.C. § 1181(b).

In its Order on Motion for Establishment of Applicable Hearing Dates and Deadlines for Plan of Liquidation [Doc. #183] (the "<u>Procedures Order</u>"), the Court established procedures for the Debtor's solicitation of the Plan. The Debtor served the Plan, the Procedures Order, the Confirmation Hearing Notice and the Certification of Ballots on all creditors, interest holders and other parties in interest in this case, in compliance with the Procedures Order and the requirements

of Rule 3017(d) of the Federal Rules of Bankruptcy Procedure. [Docs. #197, #198, #199, and #233].[5]

1. ***Results of Voting on the Plan.***

Only classes of creditors and interest holders with a claim or interest impaired under a plan of liquidation are entitled to vote on the plan. Under 11 U.S.C. § 1126(c), an impaired class of claims is deemed to have accepted the plan if class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all allowed claims of class members actually voting have voted in favor of the plan.

In this case, Classes 1, 2 and 3 are each unimpaired and deemed to accept the Plan. Class 5 is impaired and deemed to reject the Plan. Class 4 is impaired and is the only class entitled to vote on the Plan. In Class 4, 23.08% by number and 94.97% by value of Claims voted to reject the Plan. Thus, Class 4 rejected the Plan.

**D. PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW (11 U.S.C. § 1129(A)(3)).**

Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law. The term "good faith" is not specifically defined in the Code. However, the Sixth Circuit has held that "§ 1129(a)(3) expressly requires an inquiry into the debtor's motives in proposing the plan . . . ." *In re Village Green I, GP*, 811 F.3d 816, 819 (6th Cir. 2016); *cf. In re Wahlie*, 417 B.R. 8, 12 (Bankr. N.D. Ohio 2009) ("Good faith generally means that the debtor seeks to achieve results consistent with the objectives and purposes of the Bankruptcy Code.").

---

[5] The amended Plan filed on June 2, 2022 was not served on all creditors and parties in interest because the amendments and changes therein are not prejudicial to any creditor or party in interest. The amended Plan was, however, served on the general service list, along with this Brief. Notwithstanding the foregoing, the Confirmation Order will provide 14-days' negative notice to all creditors and parties in interest with respect to an amended provision in Article 8 that states: "Upon completion of all payments under this Plan, the Debtor may dissolve and is authorized to execute, deliver, file or record such documents and take any and all such actions as may be necessary or appropriate to dissolve." Am. Plan. Art. 8, at 18.

The court's determination of good faith under Section 1129(a)(3) must be made in light of "the totality of the circumstances surrounding" the plan. *In re Jasik,* 727 F.2d 1379, 1383 (5th Cir. 1984).

The Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery for the Debtor's creditors. Therefore, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with Section 1129(a)(3).

E. **DISCLOSURE OF PAYMENTS (11 U.S.C. § 1129(A)(4)).**

Section 1129(a)(4) requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable.

The procedures provided by the Plan for review and ultimate determination by the Court of the professional fees and expenses to be paid by the Debtor satisfy the requirement of Section 1129(a)(4). *See In re Future Energy Corp.,* 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions – e.g., §§ 328, 329, 330, 331 and 503(b) - - and need not be explicitly provided for in a Chapter 11 plan."). The Plan complies with Section 1129(a)(4).

F. **IDENTIFICATION OF OFFICERS, DIRECTORS AND INSIDERS (11 U.S.C. § 1129(A)(5)).**

Section 1129(a)(5)(A) requires the proponents of a plan to disclose the identity and affiliation of any individual proposed to serve after confirmation as a director, officer or voting trustee of the debtor, or a successor of the debtor under the plan, and requires the appointment or continuance of such individual to be consistent with the interests of creditors and equity security

holders and with public policy. Section 1129(a)(5)(B) requires the proponent of the plan to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. The term "insider" is defined in Section 101(31).

Article 8 of the Plan discloses that the Debtor's president, David Stanfill, shall serve as manager of the Liquidating Debtor after confirmation of the plan and without compensation until such time as the Liquidating Debtor identifies a successor to the Debtor's president, if any, or the Liquidating Debtor is dissolved. Therefore, the requirements of Section 1129(a)(5), to the extent applicable, have been satisfied.

    G.    **REGULATORY APPROVAL OF RATE CHANGE (11 U.S.C. § 1129(A)(6)).**

Section 1129(a)(6) requires as a condition precedent to confirmation that any governmental regulatory entity with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. The Plan does not provide for any rate change nor is there any governmental entity with jurisdiction over the Debtor's rates. Thus, Section 1129(a)(6) does not apply to the Plan.

    H.    **BEST INTEREST OF CREDITORS TEST (11 U.S.C. § 1129(A)(7)).**

Section 1129(a)(7) sets forth the "best interest of creditors" test. That section provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan property of a value, as of the effective date, not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 on such date.

In this case, the Plan satisfies the best interest of creditors test. As explained in Article 1.05 of the Plan and Exhibit A, a liquidation of the Debtor's assets under the Plan will provide for recoveries that will result in payment of allowed administrative and priority claims in full and will

allow a pro rata distribution to holders of allowed unsecured claims. The Debtor estimates that unsecured creditors will receive an 8.4% dividend in a Chapter 7 whereas they will receive a 9.2% dividend under the Plan. Conversion of this case to a Chapter 7 case may require the retention of new estate professionals, duplication of efforts already completed during this Chapter 11 case and the additional payment of administrative fees and expenses incurred post conversion. In addition, the Plan provides for the voluntary subordination of insider deferred compensation claims totaling $40,950. Thus, the Debtor submits that the value of the Debtor's assets and the ability to maximize that value for distribution to creditors is no less in a Chapter 11 liquidation than in a Chapter 7 liquidation.

The Sub V Trustee raises several issues with SQRL's liquidation analysis. The Sub V Trustee states that (i) it is not clear why a Chapter 7 trustee would have to retain new professionals, (ii) there is no explanation as to why the insider deferred compensation claims would not remain subordinated in a Chapter 7, (iii) there is no way for creditors to evaluate whether the best interests of creditors test is satisfied because there is no explicit calculation or projection of the future expenses of liquidating the estate, and (iv) it is not clear how the Debtor arrived at the stated dollar amount of $14,716,704.39 in general unsecured claims listed on Exhibit A.

First, Section 327(e) provides that a Chapter 7 trustee "may" retain Debtor's current counsel. However, there is no requirement for a Chapter 7 trustee to do so. Second, the subordination agreements for the insider deferred compensation claims are contingent on a Chapter 11 plan being confirmed. Third, the projected future expenses of liquidating the estate are set forth on Exhibit A to the Plan. Finally, additional unsecured claims were filed after the Debtor filed its original plan on February 21, 2022. Exhibit A to the amended Plan sets forth the accurate dollar amount of general unsecured claims.

## I. ADMINISTRATIVE AND PRIORITY CLAIMS (11 U.S.C. § 1129(A)(9)).

Section 1129(a)(9) states the rules applicable to payment of those unsecured claims entitled to priority distribution in Chapter 11 cases. Section 1129(a)(9)(A) requires that holders of Section 507(a)(2) or Section 507(a)(3) claims receive, as of the effective date of the plan, cash equal to the allowed amount of such claims, unless the holders agree to a different treatment.

Article 4.02 of the Plan provides that, if the Plan is not consensually confirmed under Section 1191, then administrative expenses entitled to priority under Section 507(a)(2) and allowed under Section 503(b) of the Bankruptcy Code will be paid as follows consistent with Section 1191(e): (i) expenses arising in the ordinary course of business after the petition date will be paid in full on the Plan's effective date, or according to the terms of the obligation, if later; and (ii) all other administrative claims will be paid pro-rata from the recoveries at such time as the disbursing agent makes disbursement with other administrative claims and in the order of priority set forth in Sections 503 and 507. Thus, the treatment of Section 507(a)(2) claims under the Plan complies with Section 1129(a)(9)(A).

Next, Section 1129(a)(9)(C) requires that holders of Section 507(a)(8) priority claims receive on account of such claims deferred cash payments, over a period not exceeding five years after the date of commencement of the Chapter 11 case, of a value, as of the effective date of the Plan, equal to the allowed amount of such claims.

Article 4.03 of the Plan provides that the priority portions of the Tax Claims will bear interest at 3% and will be paid pro rata from the recoveries to each agency in a monthly amount to account for pro rata distribution of any Allowed Tax Claim upon the earlier of 36 months from the

Plan's effective date or within 5 years after the petition date.[6]  Thus, the treatment of Section 507(a)(8) claims under the Plan complies with Section 1129(a)(9)(C).

    **J.    FEASIBILITY (11 U.S.C. § 1129(A)(11)).**

Section 1129(a)(11) requires as a condition of confirmation that the court find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of a debtor or any successor to a debtor under the plan, unless such liquidation or reorganization is proposed in the plan. For liquidating plans, "[s]ome courts 'take a narrow approach and interpret the plain language of § 1129(a)(11) to say that feasibility need not be established when liquidation is proposed in the plan,' while 'other courts take a broader approach and apply the feasibility test to plans of liquidation, focusing their analysis on whether the liquidation itself, as proposed in the plan, is feasible.'" *In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 519 (Bankr. S.D. Ohio 2021) (quoting *In re Heritage Org., LLC*, 375 B.R. 230, 311 (Bankr. N.D. Tex. 2007)).  For purposes of Section 1129(a)(11), the court "need not require a guarantee of success." *In re T-H New Orleans LP*, 116 F.3d 790, 801 (5th Cir. 1997); *see also In re Brice Rd. Developments, LLC*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008).

Because liquidation is proposed in the Plan, feasibility need not be established. *See Heritage Org.*, 375 B.R. at 311 (collecting cases).  Even if it did, the liquidation itself, as proposed in the Plan, is feasible. To the extent the Sub V Trustee had concerns related to feasibility, those concerns are resolved by the Plan amendments which provide the Sub V Trustee is responsible for prosecuting avoidance actions against insiders, and the Liquidating Debtor is responsible for prosecuting other causes of action. Am. Plan at 1; Art. 1.04; Art. 8.

---

[6] The Debtor disputes certain of the amounts of the Tax Claims.

K.  **U.S. TRUSTEE FEES, RETIREE BENEFITS, DOMESTIC SUPPORT OBLIGATIONS AND PROPERTY TRANSFERS (11 U.S.C. §§ 1129(A)(12), (13), (14) & (16)).**

The Debtor is not required to pay quarterly U.S. Trustee fees, there are no "retiree benefits" within the meaning of Section 1114 to be paid directly by the Debtor, the Debtor does not owe any domestic support obligations, and the Debtor is not a nonprofit corporation or trust. Accordingly, Sections 1129(a)(12), (13), (14) and (16) are inapplicable.

## II. CRAMDOWN

Because not all classes have accepted the Plan, the Debtor seeks confirmation of the Plan pursuant to Section 1191(b). A plan need only satisfy the requirements of Section 1191(b) with respect to classes that have not accepted the plan. In this case, Class 4 is impaired and voted to reject the Plan, and Class 5 is impaired and deemed to reject the Plan. The requirements of Section 1191(b) are satisfied because the Plan does not discriminate unfairly and is fair and equitable with respect to these classes.

A.  **CONTRIBUTION OF PROJECTED DISPOSABLE INCOME (11 U.S.C. § 1191).**

Section 1191 provides in pertinent part:

(a)  Terms.—The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met.

(b)  Exception.—Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(c)  Rule of Construction. —For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

(1)  With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

(2)  As of the effective date of the plan—

15

> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
>
> (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.
>
> (3) (A)
>
> > (i) The debtor will be able to make all payments under the plan; or
> >
> > (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
>
> (B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.
>
> (d) Disposable Income.—For purposes of this section, the term 'disposable income' means the income that is received by the debtor and that is not reasonably necessary to be expended—
>
> . . .
>
> > (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

11 U.S.C. § 1191.

The Plan complies with Section 1191(b) in that all the Liquidating Debtor's projected disposable income over the next 5 years is committed to payment of creditors under the Plan. *See* Am. Plan Art. 1; Art. 13. Article 9 provides that if the Liquidating Debtor does not comply with the requirement to provide timely reporting as set forth in Article 13 then the Sub V Trustee (or, if the Sub V Trustee's services have been terminated under Section 1183(c)(1), any party in interest), may move for the appointment of a trustee to take control of the Liquidating Debtor and its assets or conversion to Chapter 7. Thus, the Plan complies with Section 1191(b)'s cramdown provisions.

## III. CONCLUSION

The Debtor's Plan complies with all applicable provisions of Section 1191. Therefore, the Debtor is entitled to an order of the Court confirming the Plan.

Dated: June 2, 2022

Respectfully submitted,

*/s/ Julie K. Zurn*
Marc B. Merklin (0018195)
Julie K. Zurn (0066391)
BROUSE MCDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@brouse.com

*Counsel for Squirrels Research Labs LLC, the Debtor and Debtor-in-Possession*