# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Squirrels Research Labs LLC, *et al.*[1] | ) | Case No. 21- 61491 |
| | ) | |
| Debtors. | ) | (*Jointly Administered*) |
| | ) | |
| | ) | Judge Tiiara N.A. Patton |
| | ) | |

### MOTION OF SQUIRRELS RESEARCH LABS LLC FOR ENTRY OF AN ORDER APPROVING COMPROMISE AND SETTLEMENT WITH FLEUR DE LIS DEVELOPMENT LLC, ROCCO PIACENTINO, AND CYNTHIA HEINZ

Squirrels Research Labs LLC ("SQRL"), by and through undersigned counsel, hereby submits this motion (the "Motion") for the entry of an order, pursuant to Section 105 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure, to approve the settlement of a controversy between SQRL and Fleur De Lis Development LLC ("FDLD"), Rocco Piacentino ("Piacentino"), and Cynthia Heinz ("Heinz," and together with Piacentino and FDLD, the "Defendants"). In support of this Motion, SQRL respectfully states the following:

### JURISDICTION & VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 & 1334(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 & 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Squirrels Research Labs LLC (9310), case no. 21-61491 and The Midwest Data Company LLC (1213), case no. 21-61492.

1

## BACKGROUND

2. On November 23, 2021 (the "Petition Date") SQRL filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court"). SQRL's case was jointly administered for procedural purposes with the subchapter V case of The Midwest Data Company LLC under Case No. 21-61491.

3. On July 28, 2022, the Bankruptcy Court entered an Order Confirming SQRL's Amended Plan of Liquidation, pursuant to which SQRL, as the Liquidating Debtor (as defined in the Amended Plan of Liquidation), has the authority to resolve disputed claims or causes of action with Court approval and compliance with the Federal Rule of Bankruptcy Procedure 9019.

4. Prior to the Petition Date, on or about March 1, 2021, SQRL sued the Defendants in the Stark County Court of Common Pleas Case Number 2021CV00251 asserting counts for: (1) Breach of Contract, (2) Defamation, (3) Fraud, (4) Trade Secrets Act, (5) Intentional Interference, (6) Punitive Damages, and (7) Injunctive relief (the "Litigation") relating to disputes over that certain Letter of Intent dated November 17, 2020 and that certain Membership Interest Purchase Agreement dated December 31, 2020. On April 6, 2021, FDLD asserted counterclaims in the Litigation for: (1) Breach of Fiduciary Duty, (2) Breach of Contract, (3) Fraudulent Misrepresentation, (4) Fraudulent Concealment, and (5) Defamation.

5. On February 17, 2022, SQRL filed a Notice of Removal, removing the Litigation to the Bankruptcy Court commencing Adversary Proceeding Case Number 22-06003-rk (the "Adversary Proceeding");

6. On March 10, 2022, FDLD filed a proof of claim in the Bankruptcy Case against Squirrels asserting a general unsecured claim, Claim No. 42 (the "Claim") based on its counterclaim asserted in the Litigation.

7. While the claims and counterclaims asserted in the Adversary Proceeding on their face appear to be straightforward breach of contract claims, the allegations asserted by each party are much more complex. In summary, the factual underpinnings of SQRL's claims are that Defendants entered into the Letter of Intent and the Purchase Agreement, and made promises to provide financing and capital, without the requisite backing and wherewithal to fulfill its promises. Defendants dispute these allegations. Defendants alleged that SQRL provided misleading financial statements upon which Defendants relied in entering into the Letter of Intent and Purchase Agreement. SQRL disputes these allegations.

8. The claims and counterclaims were hotly contested and rooted the torts of fraud, fraudulent misrepresentation, and defamation, rather than contract claims. These tort claims would be inherently challenging for either party to establish and they would be expensive to litigate and complex in nature, involving broad and intense discovery by each party. Even if SQRL was successful in prevailing upon its claims, it would incur substantial fees in that effort, with a questionable ability to collect on any judgment. These prospects are further handicapped by the risk of the counterclaims asserted against SQRL.

9. SQRL and the Defendants have reached a resolution that fully and finally resolves the Litigation, the Adversary, the Claim, and any and all other disputes, controversies, or causes of action related to the Letter of Intent, the Purchase Agreement, the Litigation, the Adversary, the Claim, or the Bankruptcy Case on the terms summarized herein and more fully set forth in the Settlement Agreement and Mutual Release attached hereto as **Exhibit A** (the "Settlement

Agreement"). In summary, SQRL and the Defendants agree to mutually dismiss all claims and counterclaims in the Adversary with prejudice, and to the withdrawal of the Claim with prejudice.

10. SQRL, as liquidating debtor, having analyzed and considered (a) causes of action against Defendants in the Litigation and the Adversary Proceeding, (b) the defenses asserted by Defendants therein, (c) FDLD's counterclaim in the Litigation and the Adversary Proceeding, (d) the Claim, and (e) the time, cost, and uncertainty of litigation and collection, believes that the Settlement Agreement is fair and reasonable and in the best interest of the bankruptcy estate. Furthermore, the Settlement Agreement was negotiated in good faith and at arms-length, and the settlement is within the range of reasonableness considering the likely expense associated with litigation. Accordingly, SQRL asks this Court to approve the Settlement Agreement pursuant to Bankruptcy Rule 9019(a).

## STATEMENT OF LAW

11. Compromises and settlements are a normal part of the bankruptcy process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.*, 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

12. Bankruptcy Rule 9019(a) permits this Court to approve settlements. Bankruptcy Rule 9019 provides:

> (a) On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

13. Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by caselaw and focus upon whether the proposed settlement is reasonable and in the best interests of creditors.

14. When reviewing settlements, this Court is not required "to decide the numerous questions of law and fact raised by [parties]." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822. "Instead, the Court will … canvass the issues and see if the settlement falls below the lowest point in the range of reasonableness." *In re Lawrence & Erasquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); *see In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); *Carla Leather*, 44 B.R. at 470. The assessment of a settlement only requires identification of the issues in controversy "so that the Court can make an informed decision on the reasonableness of the settlement." *Lawrence*, 124 B.R. at 38.

15. In considering a proposed settlement, a court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] … an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied Down Prods.*, 150 B.R. at 522-23. In *Carla Leather*, the court explained the policy underlying the abbreviated review of settlements under Rule 9019 as follows:

> The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the

> Congressional infusion of a power to compromise … This could hardly be achieved if the test on hearing for approval meant establishing success or failure to certainty.

44 B.R. at 470; *see also Purofied Down Prods*, 150 B.R. at 522-23.

16. In evaluating a settlement's propriety, this Court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. Rather, this Court should simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972); *see also In re Int'l Distribution Ctrs. Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991) (hereinafter "*Drexel I*"). In so doing, this Court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson*, 390 U.S. at 444; *Purofied Down Prods.*, 150 B.R. at 524; *Int'l Distribution Ctrs.*, 103 B.R. at 423.

17. The settlement evaluation process is not designed to substitute this Court's judgment for that of the trustee or debtor in possession. *See Carla Leather*, 44 B.R. at 465. While this Court is not expected to "rubber stamp" the proposed settlement, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), this Court should give considerable weight to the parties informed judgment that a compromise is fair and equitable. *See Anderson*, 390 U.S. at 444; *Int'l Distribution Ctrs.*, 103 B.R. at 423; *Drexel I*, 134 B.R. at 496; *Carla Leather*, 44 B.R. at 472.

18. This Court is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Prods.*, 150 B.R. at 523; *In re Texaco, Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest in the range of reasonableness under the circumstances. *See W.T. Grant*, 699 F.2d at

21-61491-tnap    Doc 297    FILED 11/21/22    ENTERED 11/21/22 13:26:57    Page 6 of 8

613-14; *Newman*, 464 F.2d at 693; *Purofied Down Prods.*, 150 B.R. at 523-24 (district court affirmed approval of a settlement that although not ideal, "did not fall below the lowest point in the range of reasonableness"). This concept of "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion." *Newman*, 464 F.2d at 693.

19. In deciding whether a settlement should be approved, courts have reviewed proposed settlements based upon a consideration of some or all of the following factors:

> (i) the probability of success in litigation;
>
> (ii) the difficulties, if any, in collecting any judgment that might be rendered;
>
> (iii) the complexity of the litigation involved and the expense, inconvenience, and delay attendant to the litigation; and
>
> (iv) the paramount interests of the creditors with proper deference to their reasonable views.

*Lawrence*, 124 B.R. at 38 (citing *In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr. N.D. Ohio 1988)); *see also In re Parkview Hospital-Osteopathic Med. Ctr.*, 211 B.R. 603, 608 (Bankr. N.D. Ohio 1997).

## CONSIDERATION OF THE FACTORS

20. The Settlement Agreement is fair, reasonable, and in the best interest of the estate. In comparison, without settlement, the estate would incur substantial time and expense litigating the disputed factual and legal issues raised in the Adversary Proceeding, including without limitation SQRL's fraud and defamation claims are based on its allegations that Defendants entered into the Letter of Intent and Purchase Agreement knowing that they were unable to perform on the agreements. Additionally, Defendants fraudulent misrepresentation and concealment claims allege that SQRL provided false or misleading financial information that induced Defendants to enter into the agreements. The contested factual and legal issues are complex, and

7

21-61491-tnap    Doc 297    FILED 11/21/22    ENTERED 11/21/22 13:26:57    Page 7 of 8

the cost and expense of litigation would be required to be borne by the liquidating estate in the absence of a settlement.

21. Although SQRL is confident that its Claim has merit and that it would ultimately prevail in the Adversary Proceeding, SQRL believes that that the time, expense, inherent risks associated with litigating its Claim and defending against the FDLD Claim, and risk of non-collection of any judgment from the Defendant, support SQRL's decision to reach the resolution described above. SQRL believes that the Settlement Agreement is reasonable and in the best interest of the estate.

## CONCLUSION

WHEREFORE, SQRL respectfully asks this Court to enter the order, attached as **Exhibit B**, granting the relief sought herein and granting such other and further relief as the Court deems appropriate.

Dated: November 21, 2022

Respectfully submitted,

/s/ Julie K. Zurn
Marc Merklin (0018195)
Julie K. Zurn (0066391)
Nicholas Capotosto (0076436)
BROUSE McDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jzurn@brouse.com
ncapotosto (0076436)

*Counsel for Squirrels Research Labs LLC*