UNITED STATES BANKRUPTCY COURT 2024 APR 26 PM 12: 38
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| Squirrels Research Labs LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Tiiara N.A. Patton |

## OBJECTION OF SECOND FOUNDATION MINING LLC, TO THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE FILED BY DEBTOR SQUIRRELS RESEARCH LABS, LLC (DOC. 323)

Second Foundation Mining LLC, a creditor herein, hereby submits this objection to *Squirrels Research Labs LLC's Settlement Agreement and Mutual Release dated April 9, 2024* (Doc. 323) ("Agreement").

## BACKGROUND

1.      On November 23, 2021 (the *"Petition Date"*), Squirrels Research Labs, LLC ("SQRL") and Midwest Data Company LLC ("MWDC" and together with SQRL, the "**Debtors**") filed their voluntary petitions under Chapter 11 of Title 11 of the United States Code (the *"Bankruptcy Code"*), thereby commencing Chapter 11 jointly administered cases (the *"Cases"*) .

2.      On March 3, 2022, David Stanfill, the Chief Executive Officer of Squirrels ("Mr. Stanfill") attended a Bankruptcy Rule 2004 Examination as ordered by this Court ("2004 Exam"). At the 2004 Exam, Mr. Stanfill testified that MWDC was started in 2019 and never had employees – that all the work done for MWDC was done by Squirrels' employees. He further testified: (i) MWDC's primary business was providing hosting services to service SQRL's customers, (ii) that MWDC was "essentially" subletting space from SQRL s, and (iii) MWDC and SQRL operated shared cryptocurrency mining equipment and infrastructure.

## OBJECTIONS TO AGREEMENT

1. Second Foundation Mining LLC's first objection to the Agreement filed by SQRL relates to the allocation of insurance proceeds under the Debtors' $10,000,0000 policy with Cincinnati Insurance. Due to the small number of creditors of MWDC this represents a windfall for MWDC shareholders

   a. While there are two Debtors here – MWDC was never operated on a stand-alone basis as indicated above. The creation of MWDC and the partitioning of the entities appears to be an effort to "game" the bankruptcy process and maximize benefit to MWDC stakeholders, to the detriment of creditors.

2. Second Foundation Mining LLC's second objection to the Agreement filed by SQRL relates to disclosure of information necessary to the evaluation of this agreement.

   a. There has been no communication with the Unsecured Creditors as to who JS Mining and Aligned are. Why should the Unsecured Creditors approve these 2 entities being settled ahead of them? These 2 entities are not listed as Unsecured Creditors or Secured Creditors, nor in any other capacity on any documents. How is it that they suddenly have a superior role to the Unsecured Creditors in regard to this insurance settlement? What is Mr. Stanfill's (Debtor-in-Possession) interest in the entities, if any, and has this agreement been negotiated with the intent of unduly enriching himself? Mr. Stanfill is listed at CTO at a company operating on the MWDC premises called Aligned, very similar in name to Alignment Engine. The Unsecured Creditors must have these answers in order to have sufficient information to make a determination on this proposed settlement.

   b. In Brief in Support of Confirmation of Amended Plan of Liquidation Dated June 2,

2022 (Doc. 241) Exhibit A, expected Insurance Proceeds are listed as $848,117.84. This proposal appears to suggest $17,500 for SQRL's physical damage + $15,000 for business interruption for a total of $32,500. This represents only 3.83% of the projected amount. The Unsecured Creditors require an explanation for this massive reduction in payout before they can make a determination on this proposed settlement.

Respectfully submitted,

*Robert W. Oxsen* 4/23/24

Robert Oxsen
CEO, Second Foundation Mining LLC
E-Mail: sfmining@protonmail.com
Cell: 530-920-0062

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Objection of Squirrels Research Labs LLC's*

*Settlement Agreement and Mutual Release dated April 9, 2024* (Doc. 323) ("Agreement"). *To The*

*Settlement Agreement and Mutual Release By Debtor Squirrels Research Labs, LLC (Doc. 323)* was

served by mail as per the instructions provided in Notice of Hearing *(Doc. 326).*

Robert Oxsen
CEO, Second Foundation Mining LLC
Email: sfmining@protonmail.com
Cell: 530-920-0062

## HOSTING AGREEMENT

This Hosting Agreement (the "Agreement") is effective on ___June 29th___ **2021** ("Effective Date") by and between **Midwest Data Center** ("Seller") and ___SF Mining LLC___ (collectively, the "Purchaser"). This Agreement applies to orders and purchases of Hosting services ("Hosting") sold by the Seller to Purchaser and the maintenance and servicing of ___14 BCU-1525s___ ("Products"). Purchaser accepts the terms and conditions contained in this Agreement.

**1. Products.** Purchaser agrees to purchase, and Seller agrees to sell, Hosting services to include power, rigs and support and service.

**2. Prices and Payment Terms.** Purchaser agrees to pay $20 per 30 days per each Hosted FK33 Board Product and $30 per 30 days per BCU Board Product, $30 per 30 days per CVP and $30 per 30 days per JungleCat which is exclusive of taxes and shipping. Seller will issue Purchaser 30 day invoices through PayPal that shall be paid upon receipt and all amounts are payable in U.S. Dollars in immediately available funds. If no payment is received within 7 days of receipt, Seller will take over the hosted Product inventory until costs are recovered and will take over permanently if costs are not recovered within 60 days or before termination. Storage fees will be applied during period of non-payment.

**3. Term.** The term of this Agreement (the "Term") shall be for one (1) year starting on the Effective Date unless terminated earlier pursuant to Part 4 hereof. Agreement will terminate automatically at the end of the Term, unless renewed by Purchaser.

**4. Termination.** This Agreement may be terminated at any time by either party if the other party is in breach of the Agreement and the party in breach does not fully correct the breach within thirty (30) days after receiving written notice of the breach from the non-defaulting party.

**4.1. Transfer of Service.** If Purchaser sells the hosted Products to a third party, this contract will be terminated, there will be a $50 transfer of service fee for each user and a new contract will be issued to the third party with similar terms set forth in this Agreement.

**5. Shipping.** Shipping of Product is only available at the end of a Term and Purchaser must elect to have the Product shipped within 14 business days. Purchaser will pay shipping costs to Seller prior to the shipment of Products. Seller has up to 21 business days to ship the hosted inventory upon payment from Purchaser.

**6. Warranty; Manufacturer/Supplier Warranties; Disclaimer of Warranties.** The Hosting and Product are being provided to Purchaser "AS-IS" without any express or implied warranty of any kind, including, but not limited to, any warranties of merchantability, non-infringement, or fitness of a particular purpose. No oral or written information given by Seller or any of Seller's authorized representatives shall create a warranty.

**7. Hardware Maintenance.** Seller will provide service for maintenance for all Hosted Products as needed for the life of this Agreement.

**8. NO Right to Cancellation.** This purchase is non-cancelable and non-returnable. Purchaser acknowledges that: (1) orders and/or material forecasts for Products may not be cancelled; (2) orders and/or material requirement forecasts for Products may not be rescheduled; (3) except for Product failure under an applicable Seller warranty, Purchaser may not return Products to Seller.

**9. Insurance.** Seller will provide reasonable insurance on hosted Products during the period of this contract.

**10. Limitation of Liability.** Limitation of Liability. In addition to other provisions limiting the liability of Seller in this Agreement, Purchaser waives any right to incidental or consequential damages, including, but not limited to, lost profits or revenues, related to this Agreement; and Seller is only liable to Purchaser for the total amount paid by Purchaser under this Agreement.

**11. Notices.** Any notice required under this Agreement shall be delivered, in writing, to the Seller or Purchaser as follows, which may be updated from time to time by the parties:

Seller:
Midwest Data Center
8050 Freedom Ave NW
Unit B
North Canton, OH 44720

Purchaser:

Robert Oxsen
Second Foundation Mining LLC
3326 Corinthian Ln
Auburn, CA 95603

**12. Assignment, Binding on Successor and Assigns.** The Purchaser may assign all or any portion of its rights or obligations with respect to the Hosting or Products or under this Agreement or any of its rights or obligations only with the prior written consent of Seller. This Agreement will be binding on and inure to the benefit of the parties hereto and their successors and assigns.

**13. Miscellaneous.**
**13.1. Relationship of the Parties.** Both parties agree and declare that their association for the carrying on of this Agreement does not, and is not intended to create a partnership, for either legal or taxation purposes. The parties agree to work together to accomplish the objectives of this agreement but neither party shall be obligated to offer any business opportunities or to conduct business exclusively with the other party by virtue of this Agreement. Each party shall each be responsible for the taxes on their respective portion of any benefits received pursuant to this Agreement. The parties hereto covenant and agree that they will each execute such other and further instruments and documents as are or may become reasonably necessary or convenient to effectuate and carry out the purposes of this Agreement.
**13.2. Force Majeure.** No party shall be liable for any delay or failure to meet its obligations under this Agreement, directly or indirectly, resulting from delays by an Act of God, outbreak of hostility (whether or not war is declared), insurrection, riot, civil disturbance, vandalism, Government Act or Regulation, fire, flood, accident, theft, strike, lock-out or trade dispute, shortage of or inability to secure materials, supplies, and labor; or other causes beyond the control of the Parties.
**13.3. Mutual Confidentiality Covenants.** Both parties, as the receiving parties, shall have access to certain information and materials which are not made publicly available and are of value to the producing party ("Confidential Information"). Both parties agree that they will not use Confidential Information in any way other than as expressly permitted by this Agreement nor will they disclose Confidential Information to any third-party. Upon the expiration or termination of this Agreement, each party agrees that it will either return to the producing party or destroy all copies of Confidential Information. Upon any breach or threatened breach of this provision, the producing party shall be entitled to injunctive relief in addition to any other remedies.

**13.4. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties regarding the Hosting and servicing of Products from the Seller and supersedes and replaces any previous communications, representations, or agreements, whether oral or written. No provision of this Agreement may be waived, amended, or modified by either party except in writing signed by both parties. Any delay or failure by either party to exercise any right or remedy will not constitute a waiver of that party to thereafter enforce such rights. If any provision of this agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, all other provisions will still remain in effect.

**13.5. Governing Law and Venue.** This Agreement will be governed by the substantive laws of the state of Ohio without giving effect to any choice of law rules. Both parties specifically agree to submit to the exclusive jurisdiction of, and venue in, the courts in Stark County, Ohio in any dispute arising out of or relating to this Agreement, the Hosting services or products.

**Customer Signature**

**Name:**   Robert Oxsen

**Signature:** *Robert Oxsen*

**Date:**   June 29, 2021