FILED
2024 MAY -8 AM 10: 49

In re: ) Case No. 21-61491
)
Squirrels Research Labs LLC, ) Chapter 11
)
Debtor. ) Judge Tiiara N.A. Patton

### <u>OBJECTION OF PAUL BILLINGER, TO THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE FILED BY DEBTOR SQUIRRELS RESEARCH LABS, LLC (DOC. 323)</u>

Paul Billinger, a party in interest herein, hereby submits this objection to *Squirrels Research Labs LLC's Settlement Agreement and Mutual Release dated April 9, 2024* (Doc. 323) ("Agreement").

### BACKGROUND

1.     On November 23, 2021 (the "***Petition Date***"), Squirrels Research Labs, LLC ("SQRL") and Midwest Data Company LLC ("MWDC" and together with SQRL, the "**Debtors**") filed their voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"), thereby commencing Chapter 11 jointly administered cases (the "***Cases***").

2.     On March 3, 2022, David Stanfill, the Chief Executive Officer of SQRL ("Mr. Stanfill") attended a Bankruptcy Rule 2004 Examination as ordered by this Court ("2004 Exam"). At the 2004 Exam, Mr. Stanfill testified that MWDC was started in 2019 and never had employees – that all the work done for MWDC was done by SQRL's employees. He further testified: (i) MWDC's primary business was providing hosting services to service SQRL's customers, (ii) that MWDC was "essentially" subletting space from SQRL, and (iii) MWDC and SQRL operated shared cryptocurrency mining

equipment and infrastructure.

## OBJECTION TO AGREEMENT

3.    My first objection to the Agreement filed by the Debtors relates to the allocation of insurance proceeds under the Debtors' $10,000,0000 policy with Cincinnati Insurance. Due to the small number of creditors of MWDC this represents a windfall for MWDC shareholders.

4.    While there are two Debtors here – MWDC was never operated on a stand-alone basis as indicated above. The creation of MWDC and the partitioning of the entities could be interpreted as an effort to "game" the bankruptcy process and maximize benefit to MWDC stakeholders, to the detriment of SQRL creditors.

5.    In the attached correspondence with the US Trustee, the Introduction section identifies that MWDC was a façade and the Comingling section of the same document provides confirming facts.

6.    My second objection to the Agreement filed by the Debtors relates to the lack of disclosure of information necessary to the evaluation of this agreement.

7.    There has been no communication with the Unsecured Creditors as to who JS Mining and Alignment Engine are. Why should the Unsecured Creditors approve these 2 entities being settled ahead of them and receiving the bulk of the proceeds? These 2 entities are not listed as Unsecured Creditors or Secured Creditors, nor in any other capacity on any documents. How is it that they suddenly have a superior role to the Unsecured Creditors in regard to this insurance settlement? What is Mr. Stanfill's (Debtor-in-Possession) interest in the entities, if any, and has this agreement been negotiated with the intent of unduly enriching himself? Mr. Stanfill is listed as CTO at a company operating on the MWDC premises called Aligned, very similar in name to Alignment Engine[1]. The Unsecured Creditors

---

[1] Please refer to Appendix I: Aligned in the attached Correspondence with US Trustee.

must have these answers in order to have sufficient information to make a determination on this proposed settlement.

8.    In Brief in Support of Confirmation of Amended Plan of Liquidation Dated June 2, 2022 (Doc. 241) Exhibit A, expected Insurance Proceeds are listed as $848,117.84.

9.    This proposal appears to suggest $17,500 for SQRL's physical damage + $15,000 for business interruption, for a total of $32,500. This represents only 3.83% of the projected amount. An explanation for this massive reduction in payout is required before the Unsecured Creditors can make a decision on this proposed settlement agreement.

10.    In the attached correspondence with the US Trustee, the Filing Discrepancies section identifies very concerning discrepancies in the initial filings. Given this additional massive discrepancy between the projected insurance proceeds and the proposed settlement, all the filings must now be questioned. The Unsecured Creditors, Parties in Interest, and the public in general, are due explanations in order to have necessary and sufficient information to consider this settlement agreement[2].

WHEREFORE, I hereby object to this Settlement Agreement as it fails to properly address two critical issues: (i) the allocation of insurance proceeds to the detriment of SQRL Unsecured Creditors and (ii) the necessary and sufficient information to make an appropriately informed decision on the requested approval.

---

[2] Please refer to Filing Discrepancies in the attached Correspondence with US Trustee

Respectfully submitted,

Paul Billinger
E-Mail:
paul.billinger@toreaconsulting.com

# CORRESPONDENCE WITH US TRUSTEE

To:
Bradley, Kate M. Trial Attorney United States Department of Justice Office of the United States
Trustee
Kate.M.Bradley@usdoj.gov

.cc
Frederic P. Schwieg
Trustee in Bankruptcy
fschwieg@schwieglaw.com

.cc
Zurn, Julie Kaplan
Council for the debtors Squirrels Research Labs LLC and the Midwest Data Company
jzurn@brouse.com

**Subject**: Seeking remedy to major issues with your ongoing bankruptcy case
**Relating to case**: Squirrels Research Labs LLC and The Midwest Data Company LLC (**21-61491**)
United States Bankruptcy Court, N.D. Ohio

## Introduction

Dear Ms. Bradley,

I am writing to bring to your attention significant concerns regarding the bankruptcy filing of Squirrels
Research Labs LLC ("SQRL") and The Midwest Data Company LLC ("MWDC"). I trust that you will
apply your expertise and oversight in addressing these matters.

Our goal in bringing these matters to your attention is to bring us closer to making the creditors whole. Some
evidence has been omitted for brevity, but is available on request. You may note that there is a related civil
securities fraud case open against David Stanfill as well as fraudulent transfer claims against Mr. Stanfill,
one of the comingled companies, and many of his associates.

Possible courses of action include

1. Increasing the mandate of the Trustee in order to pursue additional recovery.
2. Investigation and audit of the debtor entities (*as well as the comingled personal and business
   entities*).
3. Making a recommendation and Motion to join Squirrels LLC (and any additional comingled entities
   as you deem appropriate) to the bankruptcy in order to maximize creditor recovery.
   a. MWDC existed *marginally* on paper only. As Mr. Stanfill testified, it has no distinct
      premises and all staff was compensated through other comingled entities. This can be
      joined in liquidation and the assets made available to the creditors.
   b. The recently filed fraudulent transfer suits demonstrates how comingled Squirrels LLC is
      with the debtor companies and is not a distinct entity.
   c. Also see Appendix H: Related / Comingled Companies & Appendix M: Comingling.

## Filing Discrepancies

It has come to our attention that SQRL's bankruptcy filing did not meet the criteria required for Subchapter
V. The Official Form 204 provided by SQRL vastly understated the list of debts owed (*which SQRL was
aware of at the time*). SQRL filed under Subchapter V of Chapter 11, despite not meeting the debt criteria
stipulated (i.e., <= $7,500,000). This discrepancy raises concerns regarding the validity of the filing under
this particular chapter. There is **$18,067,670.10** debt remaining after the resolution of the $7,864,779.76
senior claim.

The due process rights of creditors were egregiously disregarded as a result of the misclassification of this

bankruptcy case. They were deprived of the opportunity to form a Creditor Committee or to provide meaningful input into the direction of the proceedings. Shockingly, even when creditors overwhelmingly voted against the proposed Plan, the debtor was able to unilaterally impose the flawed plan through a "cram down" provision (only available through Subchapter V), effectively denying creditors any recourse or avenue for redress.

The Creditors were not able to contest the appointment of David Stanfill as Debtor in Possession, despite his implications in fraud. Mr. Stanfill was able to use this position to steer scrutiny away from suspected conspirators as well as suppress evidence. This blatant disregard for the principles of fairness and equitable treatment undermines the integrity of the bankruptcy process and severely prejudices the legitimate interests of creditors. Such actions not only erode trust in the legal system but also jeopardize the fundamental rights of stakeholders involved in bankruptcy proceedings.

## Clear Indications of Fraud

It's very clear, even from the limited information in the bankruptcy filings, that there is gaping financial hole.

Consider the massive amount of debt and the lack of assets given that every available product was sold (some more than once, but that's another issue). These products were in high demand and SQRL could not keep up with orders.

Debts include
1. payments collected for preorders that were not delivered or refunded
2. payments due to partners and vendors
3. massive borrowing from component suppliers
4. bank loans

SQRL also had leased equipment that was producing a sizable revenue stream in cryptocurrency. This equipment and revenue remain unaccounted. This is in addition to the equipment that it manufactures and provided the company with income.

The magnitude of these debts is astounding. There is a correlation between these debts and the flow of funds as alleged in the fraudulent transfer claims filed by the Trustee.

The financials warrant additional investigation with the goal of identifying the whereabouts of any additional recoverable funds.

There is a combination of massive debts, few assets, and massive external transfers.

## Locating Assets

Mr. Stanfill's testimony as well as the Bankruptcy filings portray a false narrative: Unable to continue operations due to global silicon shortage affected supply chain. Review of the court documents reveals this not to be case, with substantially all of the ordered components received.
  a. If there were undelivered components then there would be no debt or interest due on those components
  b. Any FPGA components that were delivered but could not be assembled into products could be quickly sold at a substantial markup due to a global shortage (there is a robust secondary market)
  c. None of these components were reported in inventory. The whereabouts of any surplus components are unaccounted
  d. In fact, a large quantity of matching components was offered for resale by one of SQRL's affiliates. See Appendix G: Tulip Tech
  e. An Intel Incentive is listed as an asset. You can reverse-engineer the amount of Intel chips SQRL received with this information (which is substantial). No Intel boards were ever delivered to customers. It's unknown if the chips were manufactured into boards or who is now in possession of these chips or boards

One of the contractors the worked for SQRL, Greg Almeida, had no record of wages and later changed his

Discord profile picture to a rack of FPGA cards that resemble those that are unaccounted for.

There is a large amount of cryptocurrency that has never been accounted for. SQRL was involved with the creation of bitstreams (used to "mine" cryptocurrency); mining was necessary in the course of business, yet they reported no inventory of cryptocurrency. I requested relevant records during Discovery at multiple times, but they were not forthcoming.

Stanfill was involved with cryptocurrency long before creation of SQRL. He uses the moniker GPUHOARDER on Discord messaging, as a legacy of his persona in GPU mining from the genesis when cryptocurrency values were magnitudes lower than current. This mining occurs via Squirrels LLC and continues on those business premises. Mr. Stanfill characterizes these assets as belong to SQRL or Squirrels LLC based on whim. Refer to the YouTube video in <u>Appendix I: Missing Equipment / Components / Cryptocurrency</u> to see how SQRL equipment is utilized under the dominion and for the benefit of Squirrels LLC and Mr. Stanfill personally.

Only with the publishing of the fraudulent transfer cases by the Trustee has it become apparent where the "missing" fiat currency went. The whereabouts of the cryptocurrency and components remains unknown, but represent additional value; some multiple of the debts incurred due to value add.

MWDC, one of the comingled entities that emerged from bankruptcy, was recently banned from doing business in the FPGA community Discord. The bankruptcy did not lead to rehabilitation of these entities.

## Comingling

Staff, equipment, and resources were shared among a number of entities under the control and dominion of David Stanfill.

      a.   Mr. Stanfill testified at the 341 hearing that staff at Squirrels LLC are used to perform functions for SQRL. See <u>Appendix L: Comingling 341 Excerpts</u>.

      b.   Mr. Stanfill testified at the 341 hearing that Amanda McConnell was not compensated by SQRL, but through his other entities. See <u>Appendix K: Comingling 341 Excerpts</u>.

      c.   Mr. Stanfill testified at the 341 hearing that staff and other resources from Squirrels LLC were used by SQRL, absent of any contractual arrangement. See <u>Appendix M: Comingling</u>

In a March 2021 <u>fund solicitation presentation</u>, pictures of Squirrels LLC staff were represented as belonging to SQRL (page 13). Also note, that these fund solicitations were performed at a time when SQRL was insolvent, a fact that was not disclosed to investors.

Mr. Stanfill has testified in a civil case that he has comingled his personal funds with those of SQRL. See attached Torea 341 Deposition transcript. On information and belief, Mr. Stanfill maintained multiple exchange accounts under personal names that were comingled. Relevant Discovery records were requested via council, but never received.

The insurance policy, that represent a large portion of the assets of the debtor entities, is comingled and not distinct between SQRL and MWDC. There is no defined method to apportion the proceeds. MWDC has no declared employees, so there is no imperative to allow this company to continue to operate.

There was comingling of infrastructure between Stanfill's entities. The email systems were shared; email was often sent from a domain of a different company. The support provided to SQRL and MWDC customers was via Squirrels Support <support@airsquirrels.com>, which belongs to Squirrels LLC. Other IT and Cloud infrastructure was also shared.

In court filings, Mr. Stanfill presents invoices from DAS Factory LLC as well as SQRL as interchangeably attributable to SQRL.

The mailing address for Mr. Stanfill's entire web of comingled entities was the Squirrels LLC main office, as he testified at the 341 hearing.

## Withheld Evidence

SQRL maintained a Slack account that is believed to contain pertinent valuable evidence. This was requested via counsel during Discovery, but was not provided. An implausible excuse was provided indicating the account was cancelled.

There was litigation between SQRL and FDL, which has now been dismissed by both parties. This action has revealed that false information was provided to FDL to solicit an investment. FDL, upon discovering

this, did not consummate the deal.

This is similar to the situation where Mr. Stanfill solicited and received investment in 2021 by conveying false information about the health and prospects of SQRL.

## Criminal Infiltration

Further to the indications of fraud, Michael Maranda is a convicted felon who is notorious in the crypto community for many frauds. He is the subject of an ongoing FBI investigation.

    f.  Michael Maranda's involvement is highly unusual

    g.  He was a customer, an owner, and taking a sales commission

    h.  Note documents indicating he is "due a cut"

    i.  He was allowed to purchase a large quantity of equipment and then resell at a profit without taking any hit in the bankruptcy

See Appendix D: Michael Maranda.

## Appendix A: Open Questions

1. They are "insolvent" but keep expanding and leasing new facilities?
2. Michael Miranda conflict of interest / insider dealing
   a. Substantial equity partner
   b. Substantial size customer
   c. Directing substantial sales commission to himself
   d. Was able to remove all his hosted equipment just before the default
3. David's stated salary of $100,000 is extremely low. An engineer of his calibre should be making at least $150,000. With added CEO responsibility he should be at $200K.
   a. He coordinates his salaries from his other companies and balances to avoid tax; essentially there is only one company
4. Amanda McConnel is not working for free. She draws salary from the other companies.
5. $390,400 DAI stable coin converted to ETH on Oasis.Direct 6 years ago

## Appendix B: Conjectured Narrative

Prior to 2018, Stanfill owned a successful software company: Squirrels He mined cryptocurrency at Squirrels as a side business. He discovered that off the shelf FPGA devices could be modified to mine cryptocurrency extremely profitably. He set up a company Squirrels Research Labs LLC to supply and market these boards to mostly non-commercial miners with small home-based set ups, later even setting up his own production line.

David Stanfill used the company as a vehicle for fraud from the very beginning in 2018. There is court-filed evidence of customer Carl Forcell being defrauded of ~$750 thousand dollars, and Stanfill admitting so in a 341 deposition.

In 2019, David Stanfill produced a doctored video purporting results of ETH mining of 2000 MH/s on a prototype FPGA board. This video and related demonstrations were for the purpose of soliciting product pre-orders. The pre-orders were placed but never filled, resulting in legal action. Actual production boards only achieved an average of 55 MH/s on ETH, a miniscule fraction of what was purported.

Stanfill continued this pattern of soliciting pre-orders and never delivering, accumulating millions of dollars in this manner.

Cognizant of the exposure due to the massive accumulation of frauds within SQRL and with no other possible course of action, Stanfill begins planning his Exit Scam. He starts similar, separate entities like Viking Data Center so that he continues in the sector after his planned SQRL collapse.

Squirrels LLC was previously marketed as a "sister" company in order to bolster the credibility of SQRL. Stanfill now takes steps to sever the companies (on paper only) and plans out a bankruptcy of SQRL and MWDC, but maintain his many other businesses as unaffected. This includes Press Releases and executive changes.

In 2021, Stanfill engages Michael Manada as a Sales Manager, in order to milk the last possible pre-orders before the scheme collapses, overlooking or not caring that Maranda is a convicted felon with a long history of crypto-mining fraud and financial frauds.

During the entire operation of the company large quantities of various crypto-currencies are mined and not reported on the books (SQRL as well as Squirrels LLC.). Large quantities of components are received and never delivered as manufactured boards to the customers that pre-ordered them. The location of these has never been disclosed, but assumed to be within the knowledge of David Stanfill.

A large amount of debt was taken on to acquire even more components. The debt is refinanced several times and, ultimately, never repaid. Note that SQRL was insolvent at the time the debt was acquired, begging questions regarding the veracity of the financial information disclosed to lenders.

Other debt, such a government pandemic-related loans are taken out and never repaid. Employees and contractors outside of Stanfill's inner circle are not paid.

Large sums of currency are siphoned off into Stanfill's comingled companies and inner circle.

Profit-sharing agreements made with business partners start going unpaid around 2000.

Stanfill entices TorEA Consulting Ltd. to enter into a sales agreement under duress, after withholding

rental payments, while simultaneously issuing threats and intimidation through his proxies. Stanfill makes a deal to sell these hosted boards held in trust at a higher price, without informing TorEA. Soon after, Stanfill withdraws the funds and deposits them into his personal Nexo account for use in leveraged crypto-currency gambling, and never paid as owed.

There is a fire.

SQRL declares bankruptcy strategically so as to avoid certain claw backs not desired by Stanfill.

Key records on Slack become unavailable to Discovery as the bill is not paid.

A false narrative is reported: "unable to continue to operate its business when the global silicon shortage affected our supply chain" in the Bankruptcy filing, even though the included figures indicate that substantially all ordered components were delivered.

## Appendix C: Fraudulent Transfer Summary

This list includes Stanfill's other company, which receives the bulk of the drained funds. The others are Stanfill's associates and partners from Squirrels LLC and his other entities.

| | |
|---|---|
| Squirrels LLC | $1,662,239.59 |
| SIDNEY KEITH | $132,132.80 |
| KYLE SLUTZ | $151,343.97 |
| ANDREW GOULD | $183,249.43 |
| JESSICA GRITZAN | $177,987.88 |
| DAVID STANFILL | $714,074.32 |
| | |
| | $3,021,027.99 |

## Appendix D: Michael Maranda

News Articles

1. New York Bitcoin Mining Magnate Accused of Stealing Over 5000 Crypto Miners

Testimony

**Kate Bradley (US Trustee)**

Who is Michael Maranda?

**David Stanfill (SQRL and Midwest)**

21:20

Clarify that briefly ... I will clarify that briefly, and you just lead into that. Midwest Data Company has a claim against Michael Maranda. However, Midwest Data Company ... Michael Maranda is not a member of; and Squirrels Research Labs does not have a claim against Michael Maranda, of which he is a member, to provide additional clarity to your previous question. So, to answer your current question, Michael Maranda is a ... was a. large customer of Squirrels Research Labs in the spring of 2021, who later purchased some equity interest in the company.

Court Cases

| Litigants of Interest | Status | Case | Summary |
|---|---|---|---|
| Maranda, Stanfill | Ongoing | Maranda v. Stanfill (5:22-cv-02015) | • The case is a personal property fraud lawsuit filed by Michael Maranda and Michael Maranda LLC against David Stanfill on November 8, 2022 in the |

| | | | |
|---|---|---|---|
| | | | U.S. District Court for the Northern District of Ohio. |
| | | | • The plaintiffs allege that they entered into a contract with the defendant to purchase mining machines that were not delivered |
| | | | • The plaintiffs accuse the defendant of breaching the contract, misrepresenting his financial situation and business operations, diverting the machines to other locations or persons, and refusing to return them upon demand. |
| | | | • The plaintiffs seek damages for their losses, an injunction to prevent further use or disposal of their machines, and an order for their return or compensation. |
| | | | • Cause of Action: Fraud, Securities Fraud |
| Maranda | Default Judgment against Defendant Hash Deploy Inc. granted in the amount of $220,000.00 | Maranda v. Hash Deploy, Inc et al | • It is a breach of contract and fraud case over a dispute involving the delivery of crypto mining equipment. |
| | | | • The plaintiff, Michael Maranda, claims that he paid $220,000 worth of bitcoin to the defendant, Hash Deploy Inc., for 100 S17 Antminers, but never received them. |
| | | | • He also alleges that the defendants made false representations about their business and products. |
| | | | • The case was filed on October 16, 2019 |
| | | | • Cause of Action: Breach of Contract, Fraud, Conversion |
| Maranda (by way of Northway Mining) | Case transferred to Northern District of New York. | Serenity Alpha, LLC v. Northway Mining, LLC (1:19-cv-00501) | • It is a RICO case involving allegations of theft and fraud of crypto mining equipment. |
| | | | • The plaintiffs, Serenity Alpha LLC, MinedMap Inc., and Quebec Inc., claim that they leased over 5,000 crypto miners to the defendant, Northway Mining LLC, but never received any payments or profits. |
| | | | • They also allege that the defendant and its associates engaged in a scheme to divert the miners to other locations and use them for their own benefit. |
| | | | • The case was filed on April 26, 2019 and is still pending. |
| | | | • Cause of Action: RICO, Replevin, Civil Conspiracy, Conversion, Fraud, Breach of Contract, Fraudulent Transfer, Unjust Enrichment |
| Maranda (by way of Northway | Dismissed | Serenity Alpha, LLC v. 9384-2557 Quebec, Inc. | • Same as above |

| Mining) | | (1:19-cv-01994 | |
|---------|---|----------------|---|
| Maranda (by way of Northway Mining) | order of the district court is AFFIR MED | 21-1480 Serenity Alpha, LLC v. Northway Mining, LLC | • Appeal of above<br>• Serenity Alpha, LLC v Northway Mining, LLC \| 21-1480 \| Court Records - UniCourt<br>• https://business.cch.com/ald/MinedmapIncvNorthwayMiningLLC2282022.pdf<br>• Complaining mining company's allegations of scheme centered on fraud and theft of mining equipment did not suffice to establish a closed-ended or open-ended pattern of racketeering activity, in appellate panel's view. |
| Maranda | Settled | Software LLC v. Maranda (5:20-cv-01509) | • The plaintiff alleges that the defendants engaged in a scheme to defraud Software LLC by using its services without paying for them, and by creating fake invoices and contracts to cover up their fraud.<br>• Cause of Action: RICO, breach of contract, fraud, unjust enrichment, conversion |
| Maranda | Pending | Libertas Funding, LLC v. Michael Maranda et al | • The plaintiff alleges that the defendants breached a series of contracts by failing to repay loans that Libertas Funding provided to them for various business ventures. The plaintiff claims that the defendants owe Libertas Funding more than $2 million in principal, interest, fees, and costs.<br>• Cause of Action: breach of contract, personal guarantee, unjust enrichment, fraud |
| Maranda | Pending | NEW YORK COMMERCIAL REAL ESTATE, LTD. v. MICHAEL MARANDA LLC et al | • The plaintiff alleges that the defendants breached a lease agreement by failing to pay rent and utilities for a property that they used for bitcoin mining operations. The plaintiff claims that the defendants owe NEW YORK COMMERCIAL REAL ESTATE more than $1 million in unpaid rent, late fees, interest, and damages. |
| Maranda | Pending | BIT INTELLIGENCE, LLC,BIT INTELLI vs. MARANDA,MICHAEL MICHAEL | • The defendants, Michael Maranda and his company, Michael Maranda LLC, purport to be Bitcoin farmers, but they are not legitimate Bitcoin farmers. Instead, they have unlawfully converted plaintiffs' miners. Pursuant to agreements between plaintiffs and defendant MMLLC, beginning in September 2021, plaintiffs sent thousands of their miners, worth almost $40 million dollars, to facilities under defendants' control. While under defendant MMLLC's custody, over 3,000 of those miners have disappeared without justification or explanation from defendants, who to date have refused to return |

| | | | |
|---|---|---|---|
| | | | • the miners to plaintiffs or to even provide any information as to their whereabouts.<br>• "flagrant and repeated disregard for court orders" -Hon. Michael R. Cuevas, Justice |
| Maranda | Pending | Direct Energy Business, LLC et al v. Michael Maranda, LLC | • The Direct Energy Business companies are suing Michael Maranda LLC, also known as Hudson Data Center, for failing to pay its electric bills of $331,831.75. Direct Energy Business is seeking to collect the debt. The plaintiffs are energy service companies selling natural gas and electricity to end-users. |
| Maranda, Northway Mining) | Ongoing | GREEN MOUNTAIN ELECTRIC SUPPLY, INC. vs. NORTHWAY MINING LLC, MICHAEL MARANDA | • The complaint alleges that the defendants breached contracts by failing to pay for materials provided by the plaintiff. The plaintiff seeks damages of $206,207.90, plus interest and attorney's fees and costs. |
| Northway Mining, CSX4236 MOTORCYCLE SALVAGE, LLC | Disposition Date: 11/22/2021 | PREMIER PROPERTIES, INC vs. CSX4236 MOTORCYCLE SALVAGE LLC, AND NOR | • Premier Properties claims that CSX and Northway have overlap in ownership and funds are commingled, and that Northway pays the debts of CSX. The complaint alleges that CSX and Northway have failed to comply with the conditions of a mortgage note and have not paid the balloon payment due on May 22, 2018, and that Northway has made a payment on behalf of CSX in the sum of $3,462.00. Premier Properties demands judgment for the amounts due for principal, interest, costs, and reasonable attorney's fees, and that the defendant and all persons claiming by and through or under them, or either or any of them, may be barred and forever foreclosed of all right, claim, and lien.<br>• 707 Flats Rd Athens, NY 12015 foreclosed / sold. |

Maranda has previously pleaded guilty to several state and federal crimes, including in a New York State criminal matter for attempting to operate an unregistered vehicle dismantler business; in the United States District Court for the Eastern District of New York ("EDNY") for conspiring to possess and distribute over 100 marijuana plants, for which he was sentenced on August 14, 2014 to one year and one day imprisonment and three years of supervised release; and in the EDNY for transporting and selling endangered fish and reptiles, for which he was sentenced on May 1, 2007 to four years of probation.

Northway Mining LLC,
707 Flats Rd.
Athen, NY 12012

Mining Power Group Inc., DBA
Canna Corporation

20200 Dixie Highway Suite 906
Miami, FL 33180

Michael Maranda
Hudson Data Center Inc.
H20 Custom Aquatics, L.L.C
CSX4236 MOTORCYCLE SALVAGE, LLC
38 Oaklawn Ave.
Farmingville, NY 11738

## Appendix E: Maranda's Commission

1

**Kate Bradley (US Trustee)**

52:57

Okay

Let's turn to the statement of financial affairs. Question number four for Squirrels. There's a payment to Michael Maranda for $150,000 that was paid out. It states that it was for a payout on sales and then quotes "stated he was due a cut". Does … did … did the debtor dispute that that Mr. Maranda was due the amounts paid here?

3

**David Stanfill (SQRL and Midwest)**

53:31

Mr. Maranda had determined that he would take a commission on sales he directed to the debtor and directed the debtor to pay him that portion of his commission.

## Appendix G: Stanfill testimony re: Maranda

**Kate Bradley (US Trustee)**

Who is Michael Maranda?

3

**David Stanfill (SQRL and Midwest)**

21:20

Clarify that briefly … I will clarify that briefly, and you just lead into that. Midwest Data Company has a claim against Michael Maranda. However, Midwest Data Company …  Michael Maranda is not a member of; and Squirrels Research Labs does not have a claim against Michael Maranda, of which he is a member, to provide additional clarity to your previous question. So, to answer your current question, Michael Maranda is a … was a. large customer of Squirrels Research Labs in the spring of 2021, who later purchased some equity interest in the company.

## Appendix F: Stanfill admits his Modus Operandi
https://www.reddit.com/r/AskReddit/comments/o6y9oq/what_is_the_easiest_way_to_make_a_million_dollars/h2yjoeq/?context=3

Posted by u/Imaginary-Cycle-5600 3 years ago

51.3k **What is the easiest way to make a million dollars?**

☐

💬 **18.1k Comments**    ↗ Share    🔖 Save    ⊘ Hide    ⚑ Report

> 🗄 **This thread is archived**
> New comments cannot be posted and votes cannot be cast

Sort By: Best ▾

**View all comments**                    **View discussions in 5 other communities**

**DavidStanfill** · 3 yr. ago

It is surprisingly easy to actually make a million dollars. The key is to realize that people will tend to accept a reasonable 10-20% profit margin on just about anything. This scales up even to really expensive things. Sell a $10M home to someone, take $1M commission.

You don't need to own the thing worth $5-10M, you only need to be convincingly good at playing the part of the type of person one would trust to sell them a $5-10M thing. If that is out of reach just do it ten times with $500k-$1M things. It is all about confidence and presenting as if such a size of transaction is perfectly normal and everyday for you.

## **Appendix G: Tulip Tech**

Tulip Tech has an equity interest in and a close business relationship with SQRL. Tulip Tech offered 1.8M of chips through a 3rd party broker similar to those missing from SQRL, shortly after the bankruptcy.

**From:** Scott Offord <offordscott@gmail.com>
**Sent:** March 24, 2022 10:27 PM
**To:** Paul Billinger <paul.billinger@toreaconsulting.com>
**Cc:** Ben@crypfalo.com
**Subject:** Re: VU35P

Hi Paul.


There are 1440 units of the VU35P in USA. They are brand new.

I've CC'd Ben who you can coordinate a phone call with if you'd like.

We are asking $1.8M for the entire lot. We could do a smaller quantity, but the price per unit would be higher.





Thanks,
Scott Offord



Scott's Deals      826 🕒 Scott Offord   11:05 AM

**XILINX VU35P Chips For Sale in Bulk**

*Very niche product.*

Already landed in USA.

Asking $1.8M.

< Data Sheet >

Offer ID: #VU35P via @offordscott or offordscott@gmail.com

Also, Tulip Tech purchased (or facilitated straw purchases) to acquire equipment at a deep discount just prior to the bankruptcy filing. Tulip Tech then sells the equipment on the open market at a much higher price.

**Scott Heasley (representing TorEA Consulting)**
1:34:30
Okay, what was that transaction?

**David Stanfill (SQRL and Midwest)**
1:34:34
That was a transaction in, involving parties. parties that were introduced, sales that were introduced by a known, calling an associate of ours from the Tulip Tech mining company. They had brought some parties down who were interested in purchasing boards and they've made some some check, written some checks and made some purchases in which they physically took the hardware with them at the time.

## Appendix H: Related / Comingled Companies

1. SQUIRRELS NEST ASSETS LLC
2. SQUIRRELS INC
3. DAS FACTORY LLC
4. D2A ENTERPRISES LLC
5. DJ SQUARED, LLC
6. VIKING REAL ESTATE HOLDINGS LLC
7. VIKING DATA CENTERS
8. MAGNI HOLDINGS LLC – very sketchy

## Appendix I: Aligned

Stanfill restarted business in the same location by scratching out the SQRL name and inserting an Aligned sign. Everything at this location remains the same. He is using the SQRL Intellectual Property, SQRL supplies, and equipment. Has any consideration been provided from Aligned? It should be a significant amount, especially considering the value of the Rendering IP.



## Appendix I: Missing Equipment / Components / Cryptocurrency

The crypto revenue will be difficult to recover. Mined crypto is created and has no history. You need to know the wallet address and who owns the wallet. I understand that SQRL lost the records or never kept any, but wallet addresses used in any transactions or crypto exchange accounts might provide clues through inference. SQRL was in the business of designing and testing bitstreams. They manufactured mining equipment as well as leased a substantial additional amount. The mining revenue must have gone somewhere. This would have substantial value at today's prices. They never had idle equipment. All equipment was mining from date of manufacture until time of shipment (if ever).

The missing equipment should be easier to recover. Much of it may still be at Squirrels LLC facilities. Some may be at the Tulip facility in New York. Still more may be with Stanfill's other businesses such as Viking Data Center. Some of it may have been personally transported off-book, but some might have tracible shipping records.

This video shows some equipment that was in Squirrels LLC offices;

https://www.youtube.com/watch?v=w-T0c4sU5K0
The building is here:



Crypto mining has taken place on these premises since the early days of crypto; asset values have appreciated remarkedly since then. Where did the revenue go? To which entity? These operations are characterised as belong to SQRL or to Squirrels LLC at various times.

## **Appendix J: Slack Recovery**

SQRL claims that the Slack data is lost and refused to disclose this under Discovery. The following proves that this is false. Also, SQRL shares infrastructure between SQRL, MWDC, Squirrels LLC. Etc., so the data may be accessible via these entities. Even so, the data can always be obtained for a few dollars by reactivating the account, if in fact it is dormant.

Paul Billinger
From: Sam (Slack) <feedback@slack.zendesk.com>
Sent: March 7, 2022 2:30 PM
To: paul.billinger@toreaconsulting.com
Subject: Re: Billing and plans
﹟- Please type your reply above this line -﹟
Sam (Slack)
Mar 7, 2022, 11:30 AM PST
Hi Paul,
Thank you for reaching out. If you are unable to make payment, your workspace will have 28 days to remedy this. Owners and billing contacts of the workspace will receive notice of failed payment and a possible downgrade.
If you're unable to make payment within that grace period, we will automatically downgrade the workspace to the Free plan. The data will be stored, but inaccessible in some cases (messages beyond 10K will be hidden from search). You can get your paid features and data back upon re-upgrading.
If you're unsure, you can review a list of features that will be lost at the point of downgrading here:
https://slack.com/help/articles/218395808-Upgrade-or-downgrade-a-paid-subscription#downgradeto-free-plan

Kindly,
Sam
paul.billinger@toreaconsulting.com
Mar 7, 2022, 8:25 AM PST
What happens if payments are missed? Is the data retained? Is the account downgraded to a free account with those associated benefits?
–
Get unlimited apps, access to all your messages, and so much more: my.slack.com/pricing
This email is a service from Slack.

## Appendix K: Comingling 341 Excerpts

Stanfill testifies that assets are comingled:

**Kate Bradley (US Trustee)**
10:37
Okay, does it have any other locations?

**David Stanfill (SQRL and Midwest)**
10:41
It does not have any other formal locations. It has used the 121 Wilbur Dr. address as a mailing address, because several of the owners, the original equity owners of the business, own that building and have a secretary there who is can receive mail and packages that are later picked up by SQRL staff.

**Kate Bradley (US Trustee)**
11:07
Okay. And who owns the Wilbur Drive property?

**David Stanfill (SQRL and Midwest)**
11:13
That is owned by a company called Squirrels Nest assets.

**Kate Bradley (US Trustee)**
11:20
Is it an affiliate? Is it owned by you? In part?

**David Stanfill (SQRL and Midwest)**
11:23
Actually, I need to clarify, I need to clarify that that exact address is actually owned by the company Squirrels LLC, which is I believe, listed as an affiliate company.

…

**Kate Bradley (US Trustee)**
1:04:50
Who is Amanda McConnell?

**David Stanfill (SQRL and Midwest)**

1:04:53
She is the bookkeeper for Squirrels Research Labs and Midwest Data Company.

**Kate Bradley (US Trustee)**
1:04:58
so how is she ... so she is ... There is an employee?

**David Stanfill (SQRL and Midwest)**
1:05:03
She has maintained because she is a bookkeeper for several of the companies that are owned by the ... by myself and other equity holders to she is directly or indirectly around and has essentially voluntarily helped with this post-petition.

...

## Appendix L: Cryptocurrency Income

**Kate Bradley (US Trustee)**
24:43
Do you look at Question 4 of Schedule A B. for Squirrels Research? The debtor scheduled a cryptocurrency wallet and mining revenue wallet which were both valued at zero. Is that still true today? Is there no value in either of those?

**David Stanfill (SQRL and Midwest)**
25:04
To the best of my knowledge that is true. There may be, what in the cryptocurrency world is referred to as dust, left in the wallet ... wallets that exist as there's no way to close a cryptocurrency wallet? But yes, all of the wallets were emptied into the bank account prior to filing.

**Kate Bradley (US Trustee)**
25:26
And to the extent there are any funds, residual funds, or funds have come in or ... I'm not even going to pretend to understand how that works ... but would any amounts be reflected in any operating reports that the debtor will file?

**David Stanfill (SQRL and Midwest)**
25:43
I don't believe because there's no there's no known income into those accounts. Which is simply be the increase in value of cryptocurrency making sub-penny value rise and a nominal value.

## Appendix M: Comingling

**David Stanfill (SQRL and Midwest)**
45:24
Sure, Squirrels LLC, was, or is, a company that has some shared ownership with Squirrels Research Labs, that exists in completely different markets, developed software for screen sharing and video technology. When Squirrels Research Labs was formed, Squirrels LLC was initially a

equity holder in Squirrels Research Labs. That equity interest was later divested from Squirrels LLC, and Squirrels Research Labs split off to be entirely separate. During the time in which Squirrels LLC had an ownership interest in Squirrels Research Labs, it provided some funding to Squirrels Research Labs. In the form of … I shouldn't say funding, it provided some resources to Squirrels Research Labs, in the form of staff that was contracted out. That was never paid for. And therefore, that insider claim accumulates, which, again, to address this briefly, the Squirrels LLC entity does not intend to pursue that claim. It will not be, it will essentially be abandoned.

### Appendix N: Carl Forcell

You can read the allegations of `$750K fraud in the documents filed by his lawyer.

Following is Mr. Stanfill's testimony in regard to Mr. Forcell

David Stanfill (SQRL and Midwest)

59:36

"Yes, Mr. Forsell purchased hardware at the very beginning of the existence of the Squirrels Research Labs company in 2018. Summer of 2018. The vendor subsequently had a significant multi-month delay in shipping the hardware that had been purchased on that fill-to-order non-cancellable, non-returnable basis. Mr. Forsell refused shipment of the hardware when it did eventually arrive and insisted on a refund. We indicated that while it was non-refundable, non-cancellable, non-returnable orders, we would make an effort to pay refunds. But at that time, we had accumulated the deposition with the senior secured creditor and did not have the funds to fully refund or I'm not sure if we even refunded it at all. We did not have the funds to refund the order. And we remained in discussion about potential options for refunding the order over time or otherwise. And then, at some point, the date of which I don't recall, the Mr. Forsell indicated that he had been out sick for several months and hadn't been attending to this matter. We responded to that communication and then communication again went radio silent for several years We visited this with our accountants, presuming that the party, because the party was not local, they were international, that the party had either passed away or some event had transpired that made them unable to further, our accountants advised that we list that on our balance sheet as a debt that was out there until whatever period at which such debts would expire. We did so. And then just prior to the bankruptcy situation, the party reappeared and made demands upon the company for that refund, the amount of which we don't dispute, but the ability to pay was never due given the senior secured creditor interest."

This was the inauspicious start of SQRL.

You can also see that some alleged fraudulent transfers match the timeframe where Mr. Stanfill claims he has no funds to pay.

### Appendix O: Subversion of the Bankruptcy Process

Gregory Almeida, a known associate of David Stanfill, purchases a number of claims, perhaps operating as a front for David Stanfill.

| 34 | View | $2500.00 | 02/20/2022 | 27162170 | Gregory Almeida |
|----|------|----------|------------|----------|-----------------|
| 35 | View | $3505.47 | 02/20/2022 | 27162170 | Gregory Almeida |
| 36 | View | $8500.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 37 | View | $18659.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 38 | View | $4996.42 | 02/20/2022 | 27162170 | Gregory Almeida |

The claim buyouts include a gag clause:

parties not explicitly or implicitly settled shall be sole property of the Buyer. In addition, this matter is to be held confidential and not discussed or shared with any other third party other than the party or parties negotiating this deal.

The below messages from Gregory Almeida demonstrates additional subversion of the bankruptcy process,

if indeed they can be linked back to instigation from David Stanfill through tools such as Discovery and Deposition. Special deals may not be offered to certain creditors in order to keep them silent, at the expense of all other creditors.



The following statement was received in Discovery from a civil case against David Stanfill (GPUHoarder):



Well into the bankruptcy, he offers to pay Gregory Almeida off-book.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Objection Of Paul Billinger, To The Settlement Agreement and Mutual Release By Debtor Squirrels Research Labs, LLC (Doc. 323)* was served by mail as per the instructions provided in Notice of Hearing *(Doc. 326)*.

_____
Paul Billinger