FILED

2024 JUN 27 PM 4: 42

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| Squirrels Research Labs LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Tiiara N.A. Patton |

### OBJECTION OF PAUL BILLINGER, TO THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE FILED BY DEBTOR SQUIRRELS RESEARCH LABS, LLC (DOC. 323)

Paul Billinger, a party in interest herein, hereby submits this objection to *Squirrels Research Labs LLC's Settlement Agreement and Mutual Release dated April 9, 2024* (Doc. 323) ("Agreement") and Supplemental Brief in Support of Allocation of Insurance (Doc. 347).

### BACKGROUND

1. On May 23, 2024, the Court ordered that "Debtors shall submit supplemental briefing and support for the proposed allocation of the Settlement Payment on or before June 21, 2024" (Doc. 342)

2. On June 10, 2024, an Objection (Doc. 346) was filed with the court. This Objection was submitted by mail on May 4, 2024 and was inexplicably delayed, resulting in the contents being somewhat stale, as a hearing was held and additional relevant information became available in the interim.

3. On June 21, 2024, the Debtor filed a Supplementary Brief and Supporting Documents (Doc. 347). This Objection is in response to this filing and its predecessor filings.

4. The amount of funds available from the insurance settlement are now set as per the

Court's ruling[1]. This amount is much lower than the losses incurred.

5.  The Debtor's proposed allocation is summarized[2]:

| MWDC | | | |
|---|---|---|---|
| JS Mining and Alignment Engine third party claims | $175,000 | | |
| Business Interruption | $40,000 | | |
| MWDC Total | | $215,000 | 92.5% |
| | | | |
| SQRL | | | |
| Business Interruption | $17,500 | | 7.5% |
| SQRL Total | | $17,500 | |
| | | | |
| Total Insurance Payout | | $232,500 | |

6.  The issue of insurance proceeds allocation was first identified in Objection (Doc. 209)[3] and was addressed in a subsequent hearing. Judge Kendig stated at hearing that the matter should be brought forward in the future. Due to the apparent wrongful filing of this large bankruptcy under Subchapter V[4], the creditors have been so restricted in their rights that there has been no opportunity to bring this forward until now.

### OBJECTION TO AGREEMENT AND SUPPLEMENTAL BRIEF

7.  Issues that were brought up previously via filed Objections and via the Court's commentary during the related hearing have not been sufficiently addressed by the Brief; the Brief has also surfaced significant additional issues (further below).

8.  The issue at hand is the allocation of $232,500 insurance proceeds between the

---

[1] Please refer to Order Approving Compromise and Settlement with Cincinnati Insurance Company (Doc. 341).
[2] As per Doc 323 Approve Compromise Under Rule 9019.
[3] Please refer to Paragraph 13 in Doc. 209.
[4] Please review the evidence of fraudulent bankruptcy filing in Doc. 332 section: False Filings.

Debtors. In order to make this determination, logically, the losses of each Debtor should be compared and a formula applied that apportions the sum based on the merits.

9. As per Debtor's Exhibit 1, there is a single insurance policy with both Debtors listed as NAMED INSURED (*additional evidence that MWDC is not a distinct entity*). As such, the full amount is available to apportion, and neither Debtor begins with a superior claim to any portion; allocation is within the purview of this Court. The Debtor's address is listed as 121 Wilbur Dr NE North Canton, Ohio 44720[5], providing additional evidence of the comingling of Mr. Stanfill's entities.

10. The Brief goes to great lengths to list the losses incurred by MWDC, but does not accurately articulate SQRL losses. It can be surmised that this information is presented in a lopsided manner with the intent to obfuscate and confuse the issue, while providing a favorable outcome to the benefit of Debtor-in-Possession David Stanfill.

11. Debtor confirms that Alignment Engine *did not have title to* Maranda's equipment[6] at the time the loss occurred. Objection (Doc. 346) described how Alignment Engine therefore has no basis of claim. Debtor at the same time reveals that the NJEB equipment was similarly sold to Instantiation / Alignment Engine *after the fire loss*, so again Alignment Engine has no basis of claim.

12. The Brief and predecessor documents go to great length to identify the losses of Jeff Schugart (dba JS Mining). It should be noted that neither Jeff Schugart nor JS Mining filed any bankruptcy claim against MWDC. It should also be noted that Mr. Stanfill has testified that the JS Mining agreement was *attributable to SQRL*, not MWDC[7].

13. The Brief and predecessor documents go to great length to identify the losses of

---

[5] The Squirrels LLC corporate address.
[6] Please refer to Paragraph 6 in Doc. 347 Supplemental Brief.
[7] Please refer to Exhibit 1 Page 23 Line 2 onward.

NJEB. It should be noted that NJEB did not file any bankruptcy claim against MWDC. NJEB did file a claim against SQRL[8]. As per this claim, *SQRL* (not MWDC) was hosting a substantial quantity of NJEB's equipment.

14. The Brief goes to great length to identify the losses of Michael Maranda. It should be noted that Michael Maranda did not file any bankruptcy claim against MWDC. Michael Maranda did file a claim against SQRL. It should also be noted that the Exhibit 6 invoice references the address 121 Wilbur Dr NE North Canton, Ohio 44720 as the address for MWDC, providing additional evidence of the comingling of Mr. Stanfill's entities.

15. As Mr. Stanfill testified, specific equipment was not assigned to specific customers; he only recorded the quantity of each type of equipment for each customer[9]. The Debtor's attribution of losses from the fire to the specified customers above <u>does not reconcile with Mr. Stanfill's testimony and records,</u> as **attribution of specific damaged items to specific customers is <u>not possible</u> based on these records and processes**. SQRL equipment and MWDC equipment was intermixed and comingled in the physical space as well as on records, with <u>no assignment as to which equipment was bound to either entity</u>.

16. Mr. Stanfill declares "under penalty of perjury under the laws of the United States of America[10]". The substantive evidence contradicting Mr. Stanfill's sworn statement indicates further review in this regard is warranted.

17. Bittware filed a claim against SQRL for a massive quantity of unpaid leased mining equipment[11]. It can be inferred that SQRL was hosting and operating this mining equipment (which produced a very substantial revenue stream), as Mr. Stanfill has indicated on several occasions that

---

[8] Claim # 32 $264,661.41.
[9] Please refer to Exhibit 1 Page 56 Line 4 onward.
[10] Please refer to Debtor's Exhibit B Page 1
[11] Claim # 29 $ 824,740.33.

MWDC only hosted equipment manufactured by SQRL. Bittware did not file any claim against MWDC. It should also be noted that the invoices indicate Squirrels LLC (not SQRL and not MWDC) at their corporate address, providing further evidence of the extensive comingling[12] of the Debtor entities with Mr. Stanfill's other entities.

18.  Mr. Stanfill admits SQRL hosted cryptocurrency mining via large profit-sharing agreements[13], which occupied a substantial portion of the SQRL hosting facility.

19.  Mr. Stanfill admits that SQRL rented the cards of TorEA Consulting Ltd. that SQRL hosted in the SQRL facility.[14]

20.  The *Declaration of David Stanfill in Support of Supplemental Brief in Support of Allocation of Insurance Proceeds* is misleading as the portrayal of MWDC and SQRL is inconsistent with the facts, as presented above. The attribution of loss is inconsistent with the facts, as presented above.

21.  On information and belief, Debtor-in-Possession David Stanfill has manipulated these proceedings to personally enrich himself by continually *tipping the scale* toward a large payout to MWDC equity holders and customers to which he has a stake in, to the detriment of SQRL creditors.

22.  Any allocation of funds to MWDC benefits its equity holders due to the absence of creditors. Debtor-in-Possession David Stanfill is the majority equity holder in MWDC[15] and would benefit tremendously from this proposed over-allocation of funds to MWDC.

23.  A case can be made that MWDC should receive 0% allocation. It was previously

---

[12] Extensive comingling evidence in Doc. 332 Page 6 Comingling.
[13] Please refer to Exhibit 1 Page 22 Line 18 onward.
[14] Please refer to Exhibit 1 Page 31 Line 19 onward and Page 55 Line 10 onward.
[15] "I own or control 16.7% of the membership units in SQRL and 40% of the membership units in MWDC." Declaration of David Stanfill in Support of First Day Filings Page 1 in Doc. 8.

established that MWDC is a sham and façade and purely the creation of financial engineering[16], having no distinct premises, no staff[17], etc. and essentially fronting for SQRL. If the inextricably entwined and comingled MWDC was a legitimate distinct entity then there would be no cause to place it into bankruptcy[18].

24. The lack of claims against MWDC[19] further indicates the extent that MWDC was a sham. The claims, as per the Claims List, indicate SQRL as the Debtor. MWDC was also available as a stand-alone or additional form option, but not utilized by claimants.

25. The evidence clearly indicates that the loss incurred by SQRL was most substantial. Given this, SQRL creditors should receive the bulk of the proceeds. MWDC should receive little or nothing. In fact, if any allocation is to go to MWDC then it should flow to the actual affected customers, and not Debtor-in-Possession David Stanfill and other equity holders or customers linked to Debtor-in-Possession David Stanfill.

26. There may have been additional evidence of the hosting situation at SQRL that would further tip the allocation of funds toward SQRL, but spoilation has occurred[20]. Discovery Requests were not fulfilled.[21] In Deposition, Mr. Stanfill admits to poor record keeping, inaccessible records, has distorted recollection of pertinent matters, and indicates a reckless level of non-compliance with SQRL internal processes.[22] [23] The inadequate record keeping may be intentional in order to thwart anticipated Discovery and investigation.

27. A recent Whistleblower leak[24] has revealed that David Stanfill orchestrated an

---

[16] Please refer to Paragraph 4 & 5 in Doc. 332.
[17] Please refer to Exhibit 1 Page 18 Line 9 onward & Page 13 Line 18 onward.
[18] Please refer to Exhibit 1 Page 61 Line 23 onward.
[19] The only claim filed against MWDC was Claim 1 IRS $1,000 on case 21-61492.
[20] Please refer to Exhibit 2.
[21] Please refer to Exhibit 1 Page 72 Line 25 onward and Exhibit 2.
[22] Please refer to Exhibit 1 throughout.
[23] Please refer to Doc. 8 Paragraph 16 which appears to be a reference to Mr. Maranda, and characterizes him as an "unauthorized party" placing orders, in a further reckless disregard to process and record keeping.
[24] Please refer to Exhibit 2 and the linked data archive referenced at the top of the first page.

elaborate confidence scheme against his customers. Mr. Stanfill says "It is always best to stay as close to 100% true as possible when bending things"[25] after bragging of a successful deception. Given the apparent recurring pattern of "bending" truth, the veracity of his attestations must be examined. The manipulation appears to have continued into and throughout the bankruptcy, as evidenced by above and the previously noted evidence of fraudulent bankruptcy filing[26] and evidence of preferential transfers of assets out of the entities that appear causal to the bankruptcies.

28. A review of the filed claims in conjunction with the financial records within the multiple Preferential Transfer Complaints associated with this bankruptcy[27] indicate massive financial movements that do not reconcile with the narrative portrayed by the Debtor throughout the court filings, eroding even further the level of confidence in the Declarations and assertions.

WHEREFORE, I hereby object to this Settlement Agreement as it unfairly over-allocates limited funds to both MWDC equity holders and customers to which Debtor-in-Possession David Stanfill has a stake at the expense of SQRL creditors, contrary to the legal principles of Equitable Distribution of Assets, Fairness, and Good Faith. The evidence indicates that a few customers

---

[25] Exhibit 2, follow Whistleblower leak link to 23 June 2019 at 23:45
[26] Please review the evidence of fraudulent bankruptcy filing in Doc. 332 section: False Filings.
[27] Schwieg v. Stanfill (23-06028) Doc. 1
Schwieg v. Squirrels LLC (23-06033) Doc. 1
Schwieg v. Gritzan (23-06029) Doc. 1
Schwieg v. Gould (23-06030) Doc. 1
Schwieg v. Slutz (23-06031) Doc. 1
Schwieg v. Keith (23-06032) Doc. 1

were loosely associated with MWDC on documents, while the actual effort and resources are attributed to SQRL. There is no record or method available to attribute the insured loss to any particular SQRL or MWDC customer. Furthermore, the vast majority of business activities took place under the direct dominion of SQRL, not attributable to MWDC in any way.

Given that this is the second attempt to resolve the allocation with no progress being made, the Court may wish to determine and impose an allocation to avoid wasting additional time and expense on this matter.

If the Court determines that an allocation greater than 0% to MWDC is appropriate, I request that the proceeds be directed to all the affected customers that incurred actual business interruption losses (not just the ones favored by Debtor-in-Possession David Stanfill), and no funds be allocated to the equity holders (primarily Debtor-in-Possession David Stanfill) who caused the bankruptcies.

Bankruptcy law aims to ensure fairness and honesty in financial dealings, which often involves detailed scrutiny of the debtor's financial affairs to prevent abuse of the system. This scrutiny serves to maintain the integrity of the bankruptcy process and to protect the interests of creditors and the public. Evidence cited here indicates deeper issues that the Court may feel deserves greater scrutiny. I respectfully request that the Court take such actions and further relief as it feels appropriate to apply these principals, which may extend beyond the scope of this Objection.

Dated: June 27th, 2024

Respectfully submitted,

_____
Paul Billinger
E-Mail:
paul.billinger@toreaconsulting.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Objection Of Paul Billinger, To The Settlement Agreement and Mutual Release By Debtor Squirrels Research Labs, LLC (Doc. 323)* and Supplemental Brief in Support of Allocation of Insurance (Doc. 347) was served by fax on June 27th, 2024, as permitted by the Court.

        With an emailed copy to Julie K. Zurn on June 27th, 2024:
        Julie K. Zurn
        Brouse McDowell LPA
        388 S. Main Street, Suite 500
        Akron, Ohio 44311
        jzurn@brouse.com

_____
Paul Billinger