|  |  |  |
|---|---|---|
| In re: | ) | Case No. 21-61491-TNAP |
|  | ) | (JOINTLY ADMINISTERED) |
| Squirrels Research Labs LLC, *ET AL.* | ) | Chapter 11 |
|  | ) | Subchapter V |
| Debtors | ) | Judge Tiiara N.A. Patton |

## OBJECTION OF AC HOC COMMITTEE OF CREDITORS, TO THE MOTION OF SUBCHAPTER V TRUSTEE FOR AUTHORITY TO COMPROMISE CONTROVERSIES WITH DAVID STANFILL, SIDNEY KEITH, ANDREW GOULD, JESSICA GRITZAN, KYLE SLUTZ AND SQUIRRELS LLC (DOC. 394)

### I. SUMMARY AND INTRODUCTION

The Ad Hoc Committee of Creditors ("Committee") respectfully objects to the Subchapter V Trustee's Motion to Approve Compromise [Doc. 394] ("Settlement Motion"). The proposed settlement is not fair, reasonable, or adequate; it severely prejudices creditor recovery, fails to address extensive evidence of fraud and asset diversion, and improperly releases valuable claims for grossly inadequate consideration.

### II. STANDING OF THE AD HOC COMMITTEE OF CREDITORS

While not formally appointed under 11 U.S.C. § 1102, the Committee is actively seeking capable counsel to represent its members and intends to file for formal recognition and derivative standing shortly. Despite this, the Committee asserts party-in-interest status under 11 U.S.C. § 1109(b) because of its direct, substantial interest in maximizing creditor recoveries and protecting estate assets.

The Committee has conducted extensive investigation and submitted detailed evidence of insider fraud, commingling, and asset concealment that the Trustee has insufficiently pursued. It respectfully requests the Court consider this objection without prejudice to its pending standing motion.

This position is supported by Northern District of Ohio and Sixth Circuit precedent endorsing broad participatory rights for creditor groups acting to safeguard estate interests. See In re Trailer Source, Inc., 555 F.3d 231 (6th

Cir. 2009).

## III. FACTUAL BACKGROUND AND RECORD EVIDENCE

1. The U.S. Trustee and this Court have received extensive evidence of fraud, commingling, concealment, and criminal activity involving the Debtor and affiliated entities[1], including:

   - Forsell submissions documenting deception and fraud (ECF 139, pp. 4–5) [2]

   - Billinger submissions showing perjury, asset diversion, and evidence suppression (ECF 332, 350–354)

   - Whistleblower leaks revealing deliberate bankruptcy subversion and offshore fund transfers (Exhibit A)

2. The Debtor-in-possession admitted under oath that Squirrels Research Labs LLC ("SQRL") was insolvent from 2018 onward[3].

3. The Committee has consistently provided comprehensive documentation, including whistleblower communications (Exhibit A), evidence of missing inventory fenced through insiders (Exhibit B), and reports of commingling (Exhibit C) [4].

## IV. BASIS FOR OBJECTION

A. Settlement Is Not Fair, Reasonable, or Adequate

The settlement provides for payment of only $75,000 by insider defendants (plus $500 from Gould), with a blanket release of all claims against the estate.

- The proposed recovery is de minimis compared to the millions of dollars in transfers and losses documented in the estate record and in the Committee's filings.

- The settlement does not account for fraudulent transfers, asset concealment, commingling with Midwest Data Company, Squirrels LLC, and other related entities, as established in Committee evidence

---

[1]Numerous additional examples exist. For brevity, only sufficient examples to demonstrate beyond doubt the existence of fraud has been included.
[2]Also see Forsell v. Squirrels Research Labs LLC (5:21-cv-02122) District Court, N.D. Ohio.
[3] Timestamp 1:10:53 on the 341 Hearing audio recording.
[4] Also see ECF. 353 for previous whistleblower leak. Note the referenced evidence file was moved to https://dub.sh/wstlblow due to spoilation.

- Multiple preference-period and fraudulent transfer claims remain unpursued; record suppression and spoliation require deeper investigation.

B. Trustee Has Not Addressed Controlling Evidence or Claims

The settlement and Trustee's adversary actions only address recharacterization of debt as equity and avoidable insider transfers.

- The Committee has presented substantial additional claims, including fraudulent transfer, breach of fiduciary duty, RICO, bankruptcy fraud, and undisclosed crypto asset movement, which have not been investigated or litigated.
- Numerous proofs of commingling, asset stripping, and criminal conduct are on record.

C. Release of All Claims is Prejudicial

The settlement requires the Defendants to irrevocably waive all claims against the estate and for the estate to release all claims against the Defendants, except for breach of the settlement agreement itself.

- This release would bar the estate and creditors from pursuing claims that have been credibly alleged and supported by documentary evidence, including those beyond avoidance and preference actions.

D. Failure to Maximize Estate Value and Creditor Recovery

Approval of this settlement risks unjust abandonment of viable claims and further prejudice to unsecured creditors and parties whose recoveries are dependent on full investigation and clawback of diverted assets. The failure to maximize estate value violates the mandate under 11 U.S.C. § 704(a)(1).

E. Ohio Uniform Fraudulent Transfer Act (UFTA) Lookback

As established in Section 1, SQRL has committed multiple frauds from its inception. As such, the 4-year preference rule applies. The Trustee has not pursued to the full extent.

- Pattern of ongoing criminal enterprise, racketeering (RICO) allegations, and asset fencing as documented here often support extension beyond statutory limitations. Fraudulent concealment, tolling, and equitable doctrines can extend the effective lookback period

F. Lack of Documentation

The Trustee's Motion relies heavily on the Debtor's failure to maintain adequate records to justify non-pursuit

of claims. This approach prejudices the estate and creditors who are legally entitled to a fair and thorough investigation. Courts have long recognized that where records have been lost, destroyed, or withheld—particularly under circumstances suggesting intentional concealment—an adverse inference arises that such records would support the claimant's case. See In re Pen Holdings, Inc., 316 B.R. 495 (Bankr. D. Del. 2004).

Furthermore, absent proper documentation, courts may credit reasonable inferences favorable to the estate and permit claims to be pursued on the basis that the lack of records cannot be held against creditors, particularly where debtor or insiders had motive and control to suppress relevant information. See Official Comm. Of Unsecured Creditors v. Ashinc Corp., 2004 WL 1090473 (D. Del.).

Additionally, statutes of limitations applicable to fraudulent transfer remedies are tolled by fraudulent concealment, preventing the Trustee or creditors from suffering undue time-bar from such failures. See In re Burger Boys, 94 F.3d 755 (2d Cir. 1996); Ohio Rev. Code §2304.10.

In this case, the pervasive record destruction, omission, and suppression documented in the evidentiary record requires the Court to presume that any lack of documentation works as a shield for the Debtor and insiders, not as a sword against the estate. For these reasons, the Trustee's refusal to fully pursue claims based on missing and incomplete records is legally untenable and unjust. [In re Herald, King & Co., 65 B.R. 451 (Bankr. D. Colo. 1986)

The Committee therefore requests the Court to interpret the record against the Debtor and insiders and to require expanded discovery and litigation on the full scope of claims regardless of alleged record deficiencies.

## V. LEGAL AUTHORITY FOR OBJECTION

Pursuant to 11 U.S.C. § 1109(b), creditors have standing to object to settlements that do not maximize recovery or are otherwise not in the best interest of creditors. See In re Trailer Source, Inc., 555 F.3d 231 (6th Cir. 2009); Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968).

Additionally, consistent with the practice and precedents of the Northern District of Ohio Bankruptcy Court, this

Court has broad equitable powers under 11 U.S.C. § 105(a) to remedy fraud, spoliation, and obstruction, including the imposition of adverse inferences when debtors or insiders fail to produce or actively suppress relevant documentation. See In re Bonham, Case No. 20-10265 (Bankr. N.D. Ohio 2021).

Ohio state law further supports tolling and extension of avoidance rights where fraudulent concealment is shown, applying principles recognized by the Ohio Supreme Court. See O'Stricker v. Jim Walter Corp., 4 Ohio St.3d 84, 447 N.E.2d 727 (1983).

The Court in this district also applies the Dombroski v. WellPoint, Inc., 119 Ohio St.3d 506, 895 N.E.2d 538 (2008) six-factor veil-piercing analysis to determine whether corporate formalities have been disregarded in fraudulent schemes, making commingled assets subject to recovery for beneficiary creditors.

Given the compelling record of suppression and spoliation here, this Court should draw all reasonable inferences adverse to the Debtor and non-producing parties in line with these authorities. Further, the doctrine of equitable tolling and the Court's power to prevent injustice mandate that claims not be barred merely for lack of documentation where such lack is caused by the Debtor or insiders.

Therefore, considering the probability of success in expanded litigation if supported by the Committee's evidence, the value of estate claims when full evidence is credited, and the absence of sufficient justification for the low settlement amount, the Committee respectfully requests this Court deny the Settlement Motion.

## VI. REQUEST FOR RELIEF

WHEREFORE, based on the foregoing objections and the specific pattern of fraud and concealment documented, the Committee respectfully requests that the Court:

A. Primary Relief

The following requests are critical to protect creditor interests, maximize estate value under 11 U.S.C. §

704(a)(1), and ensure a fair resolution in this Subchapter V case:

1. Deny the Settlement Motion [Doc. 394]

   Rationale: The proposed $75,500 settlement is inadequate compared to the estate's potential claims, including $1.66 million in fraudulent transfers to Squirrels LLC and concealed cryptocurrency assets (Exhibits B, C). Denial is necessary to preserve viable claims and prevent prejudice to unsecured creditors. See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (i968).

2. Order Targeted Discovery

   Rationale: Subpoenas to cryptocurrency exchanges (e.g., Coinbase, Binance) and affiliates (e.g., Squirrels LLC, Tulip Tech) are essential to trace diverted assets, including FPGA inventory and crypto wallets, as evidenced by whistleblower leaks and forensic analysis (Exhibits A–C). Targeted discovery is cost-effective and aligns with Subchapter V's streamlined process. See In re Bonham, Case No. 20-10265 (Bankr. N.D. Ohio 2021).

3. Authorize a Forensic Audit

   Rationale: A forensic audit of the Debtor's and affiliates' financial accounts, inventory, and cryptocurrency transactions is necessary to quantify diverted assets and confirm commingling (Exhibit C). This audit is feasible within Subchapter V's resource constraints and critical to maximizing recoveries. See In re Cyberco Holdings, 431 B.R. 404 (Bankr. W.D. Mich. 2010).

4. Appoint an Examiner under 11 U.S.C. § 1104(c)

   Rationale: An examiner could comprehensively investigate allegations of fraud, suppression, and asset diversion (Exhibits A–C and additional evidence in the possession of the US Trustee).

5. Equitably Toll Statutes of Limitation

   Rationale: The Debtor's suppression of records (e.g., Slack logs, crypto wallet data) tolls limitations periods for fraudulent transfer claims under Ohio Rev. Code § 2305.09 and In re Burger Boys, 94 F.3d 755, 760 (2d Cir. 1996). Tolling ensures creditors are not prejudiced by intentional concealment.

B. Secondary Relief

The Debtor's misrepresentation of eligibility for Subchapter V, by omitting significant debts[5], enabled insider misconduct and prejudiced creditors by limiting oversight and committee formation. This misclassification justifies immediate action on the following remedies to address the scope of fraud and ensure equitable recovery, despite their broader resource demands. The Committee respectfully requests the Court consider these remedies now, or in the alternative, upon confirmation of further evidence through primary relief:

1. Grant Derivative Standing to the Committee

   Rationale: Allowing the Committee to pursue fraudulent transfer and veil-piercing claims not addressed by the Trustee ensures accountability for insider misconduct, as supported by evidence of $1.66 million in transfers and commingling (ECF #349; Exhibit B). Derivative standing is appropriate under In re Gibson Grp., Inc., 66 F.3d 1316, 1322 (6th Cir. 1995), given the Committee's substantial claims ($1.3 million+) and investigative efforts.

2. Enjoin Suspect Assets to Prevent Dissipation

   Rationale: Freezing insider accounts (e.g., David Stanfill's cryptocurrency wallets on Coinbase, Binance) is critical to prevent further dissipation, particularly given the false Subchapter V filing that reduced creditor protections. This remedy is justified now to secure assets pending discovery, under 11 U.S.C. § 541.

3. Substantively Consolidate Affiliated Entities

   Rationale: Consolidating entities like Squirrels LLC, Midwest Data Company LLC, and Tulip Tech could expand the estate to include commingled assets, based on evidence of shared operations and transfers (Exhibit C; Dombroski v. WellPoint, Inc., 119 Ohio St.3d 506 (2008)). This complex remedy is secondary pending discovery to confirm the extent of commingling under In re Owens Corning, 419 F.3d 195 (3d Cir. 2005).

4. Refer to U.S. Trustee for Federal Investigation

---

[5] ECF 332, pages 5-6; Exhibit A, Issue 2; Claims List

Rationale: Evidence of potential bankruptcy fraud (e.g., concealed assets, record suppression) may warrant referral to the U.S. Trustee under 18 U.S.C. § 3057 (Exhibit A).

5. Grant Leave for RICO and Additional Claims

Rationale: The false Subchapter V filing enabled a pattern of fraud, including false insurance claims and asset diversion (Exhibit B), potentially constituting RICO predicate acts under 18 U.S.C. § 1962. Immediate authorization to pursue such claims is justified to address systemic misconduct enabled by the misclassification, pending confirmation of predicate acts through discovery.

6. Order Turnover of Crypto Assets

Rationale: Tracing and recovering crypto assets under 11 U.S.C. §§ 541, 542, and 550 is desirable but depends on discovery to identify specific wallets and transactions (Exhibit C). This is secondary to initial discovery and audit efforts.

7. Grant Other Equitable Relief

Rationale: The Court's broad equitable powers under 11 U.S.C. § 105(a) allow for additional remedies as justice requires. This catch-all request remains secondary to ensure flexibility without overburdening the Court.

Respectfully submitted,

Paul Billinger, on behalf of Ad Hoc Committee of Creditors

**EXHIBIT A: WHISTLEBLOWER LEAK REGARDING SUBVERSION OF BANKRUPTCY PROCESS / OFFSHORE CRYPTO FUND FLOWS**

From: Paul Billinger <paul.billinger@toreaconsulting.com>
Sent: August 25, 2025 12:57 PM
To: 'david.toepfer@usdoj.gov' <david.toepfer@usdoj.gov>; 'USTP.Bankruptcy.Fraud@usdoj.gov' <USTP.Bankruptcy.Fraud@usdoj.gov>
Cc: 'jzurn@ralaw.com.' <jzurn@ralaw.com.>; 'Lauren.Schoenewald@usdoj.gov' <Lauren.Schoenewald@usdoj.gov>; 'Fred Schwieg' <fschwieg@schwieglaw.com>
Subject: BREAKING: New Whistleblower Evidence -- Squirrels Research Labs LLC Bankruptcy (Case No. 21-61491)


New Information

- Whistleblower Leak: The most recent leak (attached) provides fresh insight into the deliberate subversion of the bankruptcy process and manipulation of fund flows.

- Greg Almeida Involvement: We now have additional confirmation that Stanfill's operative, Greg Almeida, interfered in the claims process even after the bankruptcy was filed.

- Offshore Exchanges: Evidence confirms that funds were moved through high-risk non-KYC offshore exchanges, including Kucoin and TradeOgre.

- Recoverable Assets: The Ad Hoc Committee has already uncovered substantial assets available for recovery, but there is much, much more. The undisclosed mining and exchange wallets belonging to those already named in Fraudulent Transfer suits can have the existing suits amended to include these assets. The same rules apply to these transactions as to the already discovered fraudulent bank transfers. Transfers to those not yet named in suits will require additional actions if the amounts are significant enough, but its expected that the bulk of these additional fraudulent transfers will be attributable to those already named.

- Traceable Wallets: Wallets and fund flows can be traced, though further investigation and subpoena power are required to complete the mapping.

- Need for Professional Investigation: Critical evidence remains locked away or deliberately suppressed by the DIP — including message-app records, Slack archives, blockchain forensics, exchange statements, and communications. Only an independent investigator with full subpoena power can access and preserve these records.

- Victims & Whistleblowers: Multiple victims and whistleblowers remain ready to provide testimony. Despite this, no substantive investigation has yet been undertaken.

- Prior Revelations Ignored: The earlier whistleblower disclosure of the multi-million-dollar confidence scheme (attached) and the involvement of criminal mastermind Michael Maranda should, each on their own, have triggered immediate investigation and enforcement action.


Previously provided evidence, for reference:

One of the contractors the worked for SQRL, Greg Almeida, had no record of wages and later changed his Discord profile picture to a rack of FPGA cards that resemble those that are unaccounted for.

Appendix O: Subversion of the Bankruptcy Process

Gregory Almeida, a known associate of David Stanfill, purchases a number of claims, perhaps operating as a front for David Stanfill.

| 34 | View | $2500.00 | 02/20/2022 | 27162170 | Gregory Almeida |
|---|---|---|---|---|---|
| 35 | View | $3505.47 | 02/20/2022 | 27162170 | Gregory Almeida |
| 36 | View | $8500.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 37 | View | $18659.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 38 | View | $4996.42 | 02/20/2022 | 27162170 | Gregory Almeida |

The claim buyouts include a gag clause:

**parties not explicitly or implicitly settled shall be sole property of the Buyer. In addition, this matter is to be held confidential and not discussed or shared with any other third party other than the party or parties negotiating this deal.**

The below messages from Gregory Almeida demonstrates additional subversion of the bankruptcy process, if indeed they can be linked back to instigation from David Stanfill through tools such as Discovery and Deposition. Special deals may not be offered to certain creditors in order to keep them silent, at the expense of all other creditors.



The following statement was received in Discovery from a civil case against David Stanfill (GPUHoarder):



Well into the bankruptcy, he offers to pay Gregory Almeida off-book.

Regards,

Paul Billinger

SQRL Bankruptcy Ad Hoc Committee

<<ATTACHED TO EMAIL AS *SQRL Whistleblower Leak Aug 2025.pdf,* user name redacted>>

.

.



2025-08-23 11:48 PM

Hi again,

I have signed NDA with SQRL so I can't say anything in public.

I'm also on the list of unsecured-creditors.
But I have sold mine pre-order FPGA Intel MX 16GB  (which was $18000 for 11 modules) to a member of SQRL during chapter 11 bankrupt. It was few months after I have registered as unsecured-creditor, this guy approached me via discord and told me he found mine claim on the list for unsecured-creditors and if I was open to sell the pre-order to him. I asked him if this was a joke and for which price he want to buy and he offered me 100% refund ($18000 = 8 ETH), but under 1 condition that i sign NDA and never mention it to anyone. I agreed and took the offer.

June 7 2021 Lims approached me and text me:
(Hi! Are you still looking to sell any of your BCU's? I have someone asking if anyone from hosting is selling. They may be interested in the full 9x depending on price but they were initially looking for a few)
Same day I had sold all 9 bcu1525 that I have bought from you and a 12 more bcu1525 (all of them hosted at mwdataco-hosting) that I have bought just few months before. Last communication with Fiona/Lims was July 9 2021 after that no response anymore.  This was just before they went bankruptcy. (edited)

 pbi
Is this the NDA you are talking about or was there something more more comprehensive?

Appendix O: Subversion of the Bankruptcy Process
Gregory Almeida, a known associate of David Stanfill, purchases a number of claims, perhaps operating as a front for David Stanfill.

| | | | | | |
|---|---|---|---|---|---|
| 34 | View | $2500.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 35 | View | $3505.47 | 02/20/2022 | 27162170 | Gregory Almeida |
| 36 | View | $8500.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 37 | View | $18659.00 | 02/20/2022 | 27162170 | Gregory Almeida |
| 38 | View | $4996.42 | 02/20/2022 | 27162170 | Gregory Almeida |

The claim buyouts include a gag clause:

parties not explicitly or implicitly settled shall be sole property of the Buyer. In addition, this matter is to be held confidential and not discussed or shared with any other third party other than the party or parties negotiating this deal.



2025-08-24 7:17 AM
Looks like #37

**pbi**
Do you have the exact text of what was said? It may be important. (edited)

Sorry, can't share that, part of NDA

**pbi**
I completely understand. And its totally your choice. I appreciate what you have shared so far. This is very helpful. That text is actually not an NDA and the wording is so poor it obviously wasn't written by a lawyer. Also, since you are in a different jurisdiction you probably don't need to be concerned.

l
Yes, i found claim sales / settlement agreement signed at January 9 2022. Value $18659. Which is indeed #37 on your list.

👍 1  😮

**pbi**
The discord ID of the person that approached you was probably PharmEcis (or one of his alias). We know that's Greg Almeida.

l
Yes, it was him. He was also the guy who bought mine bcu1525 that I have bought from you.

**pbi**
Did he give any reason why he wanted your claim / mention David Stanfill at all?

Settle all dispute against SQRL and mwdataco-hosting.

His last sentence was:
please do not discuss this agreement with anyone and hopefully no more fires 🙂
Paul: I have told you more than I should.

So if you say anything in public I will ignore it and will say I don't know what you are talking Paul. (edited)

**pbi** 2025-09-24 8:45 AM

I wont post anything from this conversation on Discord. Many people have sent tips. Part of the reason why is that people appreciate my discretion. You can see my posts focus on the facts and evidence, while Stanfill and his sock puppet accounts just use intimidation and insults.

2025-09-24 8:46 AM

I have agreement with Greg Almeida, and I gave mine word.

✓ 1 ☻

I'm guy who keeps he's word

**pbi** 2025-09-24 8:47 AM

The ETH account for the payment may be key .... if we can tie it back to Stanfill and the missing SQRL crypto

There is soo much missing crypto that everyone can be made whole if we can track it down

Yes, i have received twice 3 ETH coming from wallet which has now a balance of 182.032390941477037643 ETH (value of $864,708.97)

Got total of 6 ETH ($18659)

It is account on Tradeorge

This account is tied to Greg from where he send ETH to me.

**pbi** 2025-09-24 8:49 AM

Did Stanfill actually pay you for the BCUs? With ETH from the same account? If so, you were very lucky. Leading up to the bankruptcy Stanfill was running a Ponzi where he rented or purchased hashrate and pretended the hash was from newly created JC boards in order for him and Maranda to make additional sales. During this time he also diverted hashrate from his profit sharing customers to support the scheme. Rental payments and purchase agreements were never fulfilled, as he simultaneously looted the company of all substantial assets. The trustee is pursuing only a small portion through the Fraudulent Transfer suits but there is much, much more. When he could no longer perpetuate the Ponzi, he orchestrated the bankruptcy. He's running the same business again in the exact same location. This time its named Aligned.

No, different account. Refund Intel from Tradeorge wallet and buying bcu from kucoin wallet

Balance kucoin wallet is now $500

**EXHIBIT B: SQRL Bankruptcy Fraud Investigation August 2025 Update**

From: Paul Billinger <paul.billinger@toreaconsulting.com>
Sent: August 21, 2025 8:58 AM
To: 'david.toepfer@usdoj.gov' <david.toepfer@usdoj.gov>; 'USTP.Bankruptcy.Fraud@usdoj.gov'
<USTP.Bankruptcy.Fraud@usdoj.gov>
Cc: 'jzurn@ralaw.com.' <jzurn@ralaw.com.>; 'Lauren.Schoenewald@usdoj.gov' <Lauren.Schoenewald@usdoj.gov>;
'Fred Schwieg' <fschwieg@schwieglaw.com>
Subject: SQRL Bankruptcy Fraud Investigation August 2025 Update -- Squirrels Research Labs LLC Bankruptcy (Case
No. 21-61491)


SQRL Bankruptcy Fraud Investigation August 2025 Update

If you are new to this matter, please refer to the extensive research and evidence previously submitted (full evidence package available on request). The U.S. Trustee's office has been repeatedly furnished with documentation of fraud, perjury, and other serious criminal conduct associated with Squirrels Research Labs LLC ("SQRL") and its affiliated entities. This office is now in possession of sufficient evidence to demand immediate escalation.


New Development: Tulip Tech Fencing Operation

We have uncovered evidence that several thousand of the unaccounted FPGA boards from SQRL were diverted and fenced through Tulip Tech, LLC, a New York-based affiliate operated by Benjamin George — a known associate of David Stanfill (Debtor-in-Possession) and Michael Maranda (serial fraudster and convicted criminal).


Pattern of Racketeering Activity – Grounds for RICO

The scope, complexity, and interlocking nature of these fraudulent acts exceed ordinary bankruptcy misconduct. The investigation has already revealed numerous predicate acts consistent with racketeering (RICO), including:

- Fraudulent transfers and concealment of corporate assets.

- Perjury in sworn testimony.

- Fencing of unaccounted inventory through related entities (including Tulip Tech).

- Diversion of cryptocurrency mining revenue and concealment of active wallets.

- Collusion with convicted criminal Michael Maranda, serving in a key operational role.

The evidence demonstrates not a single bad act, but an ongoing criminal enterprise functioning through SQRL, Squirrels LLC, Tulip Tech, and other associate entities acting under the control of David Stanfill.


Assets Identified for Creditor Recovery

The following evidence confirms that sufficient assets exist to make unsecured creditors whole:

- Unaccounted FPGA inventory resold through Tulip Tech and brokers.

- Cryptocurrency wallets, including one confirmed with 8 BTC (>$800,000) concealed from the bankruptcy estate.

- Extensive commingling with Stanfill's personal accounts and other affiliated companies (Squirrels LLC, Viking Data Center, DAS Factory, Tulip Tech, etc.), holding significant diversion of funds.

- Insurance funds and equipment resale proceeds improperly withheld from the estate.

The current fraudulent transfer actions filed by the Trustee represent only a fraction of the available claims and assets for recovery. Without expanded legal action, most of these assets will remain concealed or dissipated.

## Maranda / Stanfill / George Conspiracy

This is not an isolated fraud. The evidence establishes a criminal syndicate operating around Stanfill, with:

- David Stanfill steering the bankruptcy process to shield himself and insiders while perpetrating asset diversion.

- Michael Maranda, a notorious fraudster with multiple federal convictions, positioned as a key operator in SQRL and involved in asset movements.

- Benjamin George, principal of Tulip Tech and known associate of Stanfill and Maranda, directly implicated in fencing unaccounted FPGA boards.

This triad has operated in concert, leveraging commingled entities and straw transactions to misappropriate millions in assets, disenfranchise creditors, and perpetuate ongoing fraud.

## Conclusion

The bankruptcy system is at risk of subversion if David Stanfill, Tulip Tech, and their known affiliates are permitted to continue misleading the Court and creditors. A rapid and coordinated escalation — including criminal prosecution — is urgently required.

## Maranda / Stanfill Crime Syndicate

**<< picture moved to next page >>**

## Urgent Issues Requiring Immediate Action

| Issue | Factual Evidence | Issue References | Factual References |
|---|---|---|---|
| Stated cause of bankruptcy: financial distress due to operational and market challenges | Funds siphoned; substantially all contracted components were delivered, as indicated in the filed documents | ECF # 37 | • ECF # 349<br>• Schwieg v. Stanfill<br>• Schwieg v. Keith<br>• Schwieg v. Slutz<br>• Schwieg v. Gould<br>• Schwieg v. Gritzan<br>• Schwieg v. Squirrels LLC |

| | | | |
|---|---|---|---|
| Size of bankruptcy exceeds Subchapter V threshold: marks TorEA and Forsell claims as disputed | Mr. Stanfill's sworn testimony confirms the Forsell claim as undisputed and the TorEA claim as overdue in their accounting system, therefore valid | ECF # 1 | • 2004 Transcript<br>• 341 Transcript |
| Manufactured boards, FPGA Chips: no significant inventory | Insider reveals he took possession of Intel FPGA boards ordered by customers and not delivered<br><br>Claims indicated ordered and paid boards were not delivered | | • Discord<br>• Claims List |
| Crypto currency assets: none reported | Large electricity invoices reveal large consumption, large number of BitWare FPGA boards leased, large value of mining profit sharing agreements unpaid | | • Claims List |
| Commingling | Court records reveal invoices from DAS Factory represented as SQRL; emails, infrastructure, crypto exchange accounts / banking extensively commingled across personal and business | | • ECF # 37<br>• Forsell v. Squirrels, LLC<br>• 2004 Transcript |
| Insurance Payout: Funds diverted from SQRL creditors | DIP statements disproven | | • ECF # 349 |

Regards,

Paul Billinger

SQRL Bankruptcy Ad Hoc Committee



**EXHIBIT C: Request to amend Adversary Complaint**

From: Paul Billinger <paul.billinger@toreaconsulting.com>
Sent: July 30, 2025 1:31 PM
To: 'Fred Schwieg' <fschwieg@schwieglaw.com>
Cc: jzurn@ralaw.com.; Lauren.Schoenewald@usdoj.gov
Subject: Amendment of Adversary Complaint and Action on Commingling Evidence-Squirrels Research Labs LLC
Bankruptcy (Case No. 21-61491)

Dear Trustee Schwieg,

I write to urge immediate action in the pending adversary proceeding against Squirrels LLC to maximize estate recovery and protect creditor rights. Recent evidence from the Forcell Rule 2004 examination and forensic accounting, alongside prior findings, now provides overwhelming support for expanding claims based on commingling, asset diversion, and the "single enterprise" theory.

**1. Centrality of Insurance, Inventory, and Asset Diversion to Commingling**

It is critical to emphasize: **the insurance-proceeds fraud, inventory manipulation, and asset diversion are not merely supporting details, but the very facts evidencing that SQRL and Squirrels LLC discarded any pretense of corporate independence.** For example:

- Insurance payouts for lost or damaged equipment were claimed and processed across SQRL, Midwest Data, and Squirrels LLC with no contractual basis or transparent allocation, effectively pooling assets for insider benefit and to the detriment of creditors.
- FPGA inventory and hardware routinely "disappeared" from SQRL's books, later surfaced through Squirrels LLC or affiliated entities (e.g., Tulip Tech), with proceeds unaccounted for and no arm's-length compensation.
- Cryptocurrency mining operations and wallets were shared arbitrarily among SQRL, Squirrels LLC, and personal accounts, with revenue omitted from bankruptcy filings.
- These practices are direct, probative evidence that assets and liabilities were interchangeable and that Stanfill and his accomplices actively blurred operational lines for personal gain.

**2. Paradoxical DIP Incentives**

Paradoxically, the DIP (Mr. Stanfill) may not oppose, and may even support, aggressive remedies like substantive consolidation or shifting liability toward Squirrels LLC. This is because:

- **Stanfill has repeatedly put personal interests above his fiduciary obligations as DIP**, manipulating finances and key decisions for personal benefit and diverting scrutiny from his associates.
- **He and key insiders are already defendants in pending fraudulent-transfer and alter-ego suits.** Any strategy that increases Squirrels LLC's allocation of liability (even at the expense of the estate's total assets) may reduce direct personal exposure.
- **Stanfill and associates have divested their equity interests in Squirrels LLC**, leaving outside parties (Volaris Holdings) "holding the bag" on liabilities, while insulating themselves.
- **Shifting recovery toward Squirrels LLC and away from Stanfill and co-defendants** perfectly aligns with Stanfill's pattern of self-dealing and avoidance, as documented by forensic accounting and court testimony.

Any apparent cooperation or absence of opposition from the DIP should be viewed not as an act of good faith, but as further evidence of self-preservation and insider manipulation to the detriment of creditors and the bankruptcy process.

**3. Legal Path and Procedural Authority**

- Under Fed. R. Bankr. P. 7015 and Rule 15, you have broad latitude to amend the complaint to add/expand veil-piercing, substantive consolidation, and enhanced fraudulent transfer

counts, as justice requires and discovery is ongoing.

- The Dombroski v. WellPoint, Inc. standard is fully met: operational dominion, asset and financial misrepresentation, undercapitalization, lack of separate books, improper distributions, and disregard for corporate formality are all present.
- Substantive consolidation is supported by the Owens Corning and Baker & Getty doctrines, given the inextricable mingling of assets and debts.
- The growing evidence of insurance/inventory fraud, concealment of crypto assets, and bankruptcy misstatements all provide strong grounds for such amendments.

## 4. Recommendations

- Promptly file a motion to amend the adversary complaint in Adv. No. 23-06029 to reflect this expanded theory and relief.
- Seek preliminary injunctive relief (asset freeze) to prevent further dissipation.
- Continue targeted discovery, especially subpoenas to cryptocurrency exchanges, Slack archive recovery, and tracing of hardware inventory.
- Be explicit in filings about the DIP's self-serving incentives and history, to support any motions for judicial scrutiny or expanded trustee authority.
- Where appropriate, refer evidence of bankruptcy crimes to the U.S. Trustee for immediate investigation and action under 18 U.S.C. § 3057.

**EXHIBIT D: Additional Commingling Evidence / Unaccounted Equipment**

*<<attachment <u>Benjamin George boasting SQRL embezzled inventory.mhtl</u> omitted. While extremely relevant, the size of the file makes it inconvenient to include. The file can be provided on request>>*

From: Paul Billinger <paul.billinger@toreaconsulting.com>
Sent: July 15, 2025 7:34 AM
To: 'Zurn, Julie Kaplan' <jzurn@brouse.com>; 'Lauren.Schoenewald@usdoj.gov'
<Lauren.Schoenewald@usdoj.gov>; 'Fred Schwieg' <fschwieg@schwieglaw.com>
Cc: 'carol.skutnik@usdoj.gov' <carol.skutnik@usdoj.gov>; 'USTP.Bankruptcy.Fraud@usdoj.gov'
<USTP.Bankruptcy.Fraud@usdoj.gov>
Subject: RE: Additional Evidence: Missing equipment SQRL Bankruptcy United States Bankruptcy Court
Northern District of Ohio, Case No. 21-61491

Benjamin George has been caught fencing some unaccounted Intel boards:



As a reminder:

- These were sold to customers in a pre-sale, but never delivered to the actual purchasers
- SQRL was the only manufacturer
- Were unaccounted for in bankruptcy documents
- Have been generating hundreds of thousands of dollars since being manufactured (while in possession of SQRL and afterward)
- These have depreciated substantially in value over time, but still have significant value
- Mr. George was also involved in fencing SQRL's FPGA chips (see attached)
- Mr. Stanfill's 341 testimony establishes the link between SQRL and Mr. George / Tulip Tech

<u>This new evidence closes the loop on the previously presented evidence and the recommended actions below still stand.</u>

Tulip Tech, LLC – Corporate Details

Entity Name and Structure
Tulip Tech, LLC is a New York limited liability company (LLC) formed as a single-member entity in April 2018. Its sole member is Benjamin George.

State of Formation
– Jurisdiction: New York
– Formation Date: April 26, 2018

Principal Business Address
5464 Lake Avenue
Orchard Park, NY 14127

Registered Agent and Service Address
Tulip Tech, LLC
5464 Lake Avenue
Orchard Park, NY 14127

Member and Contact
– Member: Benjamin George
– Title: Member
– Phone: (716) 597-5668

Industry Classification
– Primary NAICS Code: 541512 (Computer Systems Design Services)
– SIC Code: 7379 (Computer Related Services, NEC)
– Business Description: Online services technology consulting, specializing in design, deployment, and support of IT solutions for small and medium-sized enterprises

Corporate Registration Number
While the New York Department of State does not publicly display the LLC's DOS ID without direct SOS database access, Tulip Tech, LLC's registration records can be retrieved using the entity name and state of formation on the New York Secretary of State's website.

Annual Revenue and Size
– Estimated Annual Revenue: ~$110,000
– Employees: Approximately 2 at the Orchard Park location

Key Highlights

1. Tulip Tech, LLC operates as a single-location technology consulting firm, offering IT services and custom software solutions.

2. Benjamin George, the company's member, oversees all operational and financial decisions.

3. The company has maintained continuous activity since 2018, focusing on local and regional clients in the Buffalo–Cheektowaga–Niagara Falls metropolitan area.

This summary provides the core corporate and contact details for Tulip Tech, LLC and its principal, Benjamin George.


**From:** Paul Billinger <paul.billinger@toreaconsulting.com>
**Sent:** April 8, 2025 10:29 AM

**To:** 'Zurn, Julie Kaplan' <jzurn@brouse.com>; KATE.M.BRADLEY@usdoj.gov; 'Fred Schwieg' <fschwieg@schwieglaw.com>
**Cc:** carol.skutnik@usdoj.gov
**Subject:** Additional Evidence: Missing equipment SQRL Bankruptcy United States Bankruptcy Court Northern District of Ohio, Case No. 21-61491

I am writing to provide an update regarding the ongoing investigation into the unaccounted FPGA inventory from SQRL. Recent evidence not only implicates Benjamin George and Tulip Tech, LLC but also ties them directly to David Stanfill, a central figure in SQRL's bankruptcy and related fraudulent activities.

New Evidence Overview

Benjamin George, a member (MBR) of Tulip Tech, LLC—a domestic limited liability company registered in New York—has been identified as a known associate of David Stanfill, who serves as Debtor-in-Possession for SQRL during its bankruptcy proceedings. George has reportedly boasted about his knowledge of the whereabouts of the missing Intel FPGA inventory from SQRL. This behavior aligns with a broader pattern of boasting by individuals implicated in fraudulent activities tied to Stanfill and his network of entities.

Attached to this email is a transcript of a Discord conversation where Benjamin George discusses his knowledge of the missing FPGA inventory. While the technical nature of the conversation requires specific context to fully understand and some messages appear to have been deleted before they could be captured, it is clear that George possesses direct knowledge of these assets. This evidence further ties Tulip Tech to the diversion of SQRL's assets and strengthens the case for deeper scrutiny into their operations.

Contextual Background

Tulip Tech, LLC was established on April 26, 2018, with its principal address at 5464 Lake Ave, Orchard Park, NY. Kyle Tricarico is listed as the contact for service of process, and Benjamin George holds a membership role within the company. Tulip Tech has been implicated in several transactions involving SQRL's assets, including reselling FPGA components matching descriptions of those unaccounted for in SQRL's filings.

David Stanfill's role in SQRL's bankruptcy has been marked by significant allegations of fraud, including asset diversion and commingling across his network of entities. Benjamin George's association with Stanfill raises serious concerns about Tulip Tech's involvement in these schemes. Evidence suggests that Tulip Tech acted as a conduit for offloading SQRL's assets at substantial profit while creditors were left unpaid.

Key Connections Between Benjamin George, Tulip Tech, and David Stanfill:

1. Fraudulent Transfers: Tulip Tech facilitated transactions involving FPGA components that match descriptions of those missing from SQRL's inventory shortly after its bankruptcy filing.

2. Close Association: Benjamin George is a known associate of David Stanfill and has been involved in transactions that align with broader patterns of fraud orchestrated by Stanfill across his network of entities.

3. Pattern of Boasting: Similar to whistleblower evidence implicating other conspirators tied to Stanfill, George has openly discussed his knowledge of fraudulent activities, reinforcing concerns about systemic misconduct within this network.

Implications

1. Corroboration of Broader Fraud Patterns: The connection between Benjamin George and David Stanfill strengthens existing evidence against Tulip Tech and its affiliates by demonstrating their involvement in asset diversion schemes tied to SQRL's bankruptcy.

2. Potential Recovery Pathways: The acknowledgment by George that he knows the whereabouts of the missing inventory suggests that these assets may still be recoverable if immediate action is taken.

3. Legal Exposure for Tulip Tech: As an entity implicated in both asset diversion and resale schemes, Tulip Tech faces significant legal consequences under bankruptcy fraud statutes (11 U.S.C. § 548) and other applicable laws.

Recommended Actions

1. Issue Subpoenas: Subpoena financial records, communications, and inventory logs from Tulip Tech to identify transactions involving SQRL assets.

2. Conduct Interviews: Formally interview Benjamin George and Kyle Tricarico to determine their knowledge or involvement in asset misappropriation schemes linked to SQRL's bankruptcy.

3. Forensic Audit: Engage forensic experts to trace connections between Tulip Tech's operations and diverted funds or assets from SQRL.

4. Expand Investigation Scope: Review whistleblower evidence alongside this new development to identify broader patterns of fraud implicating additional entities or individuals.

5. Coordinate with Authorities: Share findings with federal investigators already probing related cases involving SQRL and its affiliates.

Conclusion

This new evidence highlights Benjamin George's direct connection to both the missing FPGA inventory and David Stanfill's broader fraudulent schemes involving SQRL and its network of entities. The attached Discord transcript provides further insight into these connections while underscoring the urgency for swift investigative action against Tulip Tech and its members.

Please find the transcript attached for your review as part of this correspondence. I am available to discuss these developments further and assist in coordinating next steps.

**From:** Paul Billinger <paul.billinger@toreaconsulting.com>
**Sent:** March 5, 2025 10:02 AM
**To:** 'Zurn, Julie Kaplan' <jzurn@brouse.com>; KATE.M.BRADLEY@usdoj.gov; 'Fred Schwieg' <fschwieg@schwieglaw.com>; 'Merklin, Marc B.' <MMerklin@brouse.com>

**Subject:** Grounds for Enjoining Squirrels LLC in Connection with the SQRL Bankruptcy (21-61491) - Substantive Consolidation

**The newly released** 2004 Examination of David Stanfill buttresses the previously provided evidence of commingling. See below for required actions.

https://storage.courtlistener.com/recap/gov.uscourts.ohnd.290063/gov.uscourts.ohnd.290063.58.4_5.pdf

## Legal Analysis: Commingling Grounds for Enjoining Squirrels LLC to SQRL Bankruptcy

1. **Commingling Foundations Under Bankruptcy Law**

Bankruptcy courts may **pierce the corporate veil** or **enjoin non-debtor affiliates** under 11 U.S.C. § 105(a) when entities are so commingled that they operate as a **single enterprise**, depriving creditors of assets. The testimony and financial records of Squirrels Research Labs (SQRL) and Squirrels LLC reveal systemic commingling that justifies consolidation:

### A. Operational and Financial Commingling

- **Shared Resources**:
    - **Staff**: SQRL relied on Squirrels LLC employees (e.g., Amanda McConnell) for accounting, IT, and customer support without formal agreements.
    - **Infrastructure**: SQRL used Squirrels LLC's mailing address (121 Wilbur Dr.) and Slack/Discord channels for communications; customer support and real estate were shared across entities without formal agreements
    - **Payment Processing**: SQRL's early deposits (July 2018) show $440,000 (52.7% of revenue) transferred to Squirrels LLC for "components," with no proof of pass-through pricing.
- **Leadership Overlap**:
    - David Stanfill served as CEO of both SQRL and Squirrels LLC until 2019, directing transactions between entities.
    - Andrew Gould, Sidney Keith, and Cory Shoaf held equity in both companies.

### B. Asset and Liability Blurring

- **Real Estate**: SQRL's warehouse and offices were owned by Squirrels Nest Assets LLC (a Scurry Holdings subsidiary).
- **Cryptocurrency Wallets**: Mining revenue and FPGA hardware were interchangeably attributed to SQRL, Squirrels LLC, and Stanfill's personal ventures (e.g., Freedom Mining).
- **Mining Activities**: YouTube videos document crypto mining at Squirrels LLC's 121 Wilbur Dr. address in multiple buildings, contradicting Mr. Stanfill's sworn testimony
- **Undisclosed Transfers**: $1.66M in fraudulent transfers to Squirrels LLC pre-petition, per Trustee Schwieg's filings.

- **Alignment Engine**, Stanfill's post-bankruptcy venture, operates from SQRL's former facilities using identical FPGA IP and equipment

## 2. Legal Standards for Veil-Piercing

Courts in the Northern District of Ohio apply the **six-factor test** for veil-piercing (*Dombroski v. WellPoint, Inc.*):

1. **Dominion/Control**: Stanfill's dual CEO roles and equity stakes in both entities.
2. **Misrepresentation**: SQRL marketed itself as a "sister company" to Squirrels LLC to attract investors.
3. **Capitalization**: SQRL lacked independent financial infrastructure, relying on Squirrels LLC for payroll and procurement.
4. **Separate Books**: No formal accounting for intercompany transactions (e.g., July 2018 $440K transfer).
5. **Dividend Payments**: Profits funneled to Squirrels LLC instead of creditors.
6. **Corporate Formalities**: No board resolutions or contracts governing shared services.

## 3. Subchapter V Misclassification

SQRL's bankruptcy filing under Subchapter V (debts < $7.5M) was predicated on omitting:

- **Undisclosed Debts**: $18M in post-petition creditor claims, including undeclared Form 201 debts ≥$1,350,000 (i.e. Forsell, TorEA; see Claims List for additional omissions)
- **Squirrels LLC Liabilities**: Unpaid vendor invoices (Avnet, Intel) processed through Squirrels LLC accounts.
  This misclassification deprived creditors of committee formation rights and enabled a **fraudulent "cram down"** plan.

## 4. Equitable Grounds for Injunction

- **Asset Diversion**: Post-bankruptcy, Stanfill launched **Alignment Engine** using SQRL's FPGA IP, facilities, and staff.
- **Fraudulent Transfers**: $3.02M diverted to Squirrels LLC and insiders.
- **Spoliation**: SQRL withheld Slack logs and cryptocurrency wallet data, violating discovery obligations.
- **Bankruptcy Deposition Gaps**: Stanfill denied preparing documents for his deposition, yet his testimony aligned verbatim with debtors' filings, indicating coordination with counsel to suppress contradictions.

## 5. Required Actions

1. **Motion to Consolidate**: File under Fed. R. Bankr. P. 1015(b) to join Squirrels LLC and Midwest Data Centers LLC as debtors.
2. **Forensic Audit**: Subpoena Nexo, Binance, and Coinbase for Stanfill's crypto wallets linked to SQRL mining operations.
3. **RICO Referral**: Forward evidence of Michael Maranda's criminal history and Stanfill's fraudulent solicitations to the FBI, as well as all perjury and frauds uncovered or perpetrated within the bankruptcy proceedings.

4. **Expand Trustee Mandate** to pursue RICO claims against Stanfill and Squirrels LLC.

**Conclusion**

The commingling between SQRL and Squirrels LLC meets the **"alter ego" threshold**, warranting injunction to prevent further creditor harm. The Trustee should expand its mandate to unwind this scheme and maximize recoveries.

Stanfill's testimony systematically obscured SQRL's insolvency timeline, asset dissipation, and self-dealing. The bankruptcy process was manipulated to shield Squirrels LLC and Stanfill's affiliates. Forensic accounting of blockchain transactions, FPGA inventory, and intercompany transfers is critical to unwind this scheme.

**Key Citations**

- Stanfill Deposition
- Courtlistener SQRL Bankruptcy Docket
- Courtlistener Midwest Data Company LLC Docket
- Courtlistener Schwieg v. Squirrels LLC Adversary Proceeding
- Courtlistener Schwieg v. Stanfill Adversary Proceeding
- Courtlistener Maranda v. Stanfill Fraud Case
- Courtlistener US v. Maranda Criminal Case
- Press Release SQRL and Squirrels LLC Split
- Crain's Cleveland Business Squirrels splits from sister company
- SQRL About Us Page
- Aligned Company About Us Page
- BBB Business Profile Squirrels Research Labs LLC
- Justia Dombroski v. WellPoint, Inc. Ohio Supreme Court Decision
- Youtube: Mining RUMBLE IN OHIO DAY 3: A Tour of Squirrels
- Youtube: GPUHoarder, Why You Gotta Hoard GPU's?! LIVE Developer Interview
- Youtube: FPGA Miner Update: HURRY UP & WAIT!!! (BCU1525 NEWS) SQRL, FPGA.Land, Mineority
- Youtube: Live Webcast with Squirrel Labs Founder David Stanfill (GPUHoarder)

**Entities Subject to Injunction in SQRL Bankruptcy Based on Commingling Evidence**

**1. Squirrels LLC**

**Rationale**:

- **Operational Commingling**: Provided accounting, IT, and customer support to SQRL without formal contracts.
- **Financial Integration**: Received $440,000 (52.7% of SQRL's July 2018 deposits) for "component procurement," with no documentation validating cost-based pricing.
- **Shared Leadership**: David Stanfill served as CEO of both entities until 2019, directing transactions.
- **Asset Diversion**: Sold 1,440 Xilinx VU35P chips via Tulip Tech, matching SQRL's missing inventory.

**Legal Basis**: Alter ego doctrine under *Dombroski v. WellPoint, Inc.* (shared infrastructure, overlapping ownership, lack of corporate formalities).

## 2. Scurry Holdings Group and Subsidiaries

### A. Squirrels Nest Assets LLC

- **Real Estate Commingling**: Owned SQRL's warehouse and offices at 121 Wilbur Dr., leased to SQRL rent-free.
- **Asset Retention**: Retained FPGA boards and cryptocurrency mining equipment later diverted to Stanfill's ventures.

### B. Squirrels Incorporated

- **Ownership Chain**: Wholly owned Squirrels LLC and facilitated intercompany transfers via Scurry Holdings.

**Legal Basis**: 11 U.S.C. § 105(a) (single enterprise theory for veil-piercing).

## 3. Midwest Data Centers LLC (MWDC)

**Rationale**:

- **Shell Entity**: No employees or operations; received insurance proceeds despite SQRL creditors' claims
- **Fraudulent Allocation**: Used to siphon $356,319.55 in "damaged" FPGA assets from SQRL's insurance claim
- **Post-Petition Manipulation**: Retained hosting revenue from SQRL's equipment sales

**Legal Basis**: Fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

## 4. Alignment Engine

**Rationale**:

- **Continuation of Business**: Operates from SQRL's former facilities using identical FPGA IP and equipment.
- **Undisclosed Compensation**: No consideration paid for SQRL's IP or infrastructure.

**Legal Basis**: Successor liability under *Tex. Indus. v. Dupont* (continuity of operations/assets).

## 5. Stanfill-Affiliated Entities

### A. DAS Factory LLC

- **Resource Sharing**: Managed SQRL's Bitcoin mining facilities and real estate development.

### B. Freedom Mining LLC

- **Cryptocurrency Commingling**: Mined Ethereum using SQRL's hardware; wallets interchangeable with SQRL's.

### C. Magni Holdings LLC

- **Staffing Shell**: Paid SQRL employees (e.g., Amanda McConnell) through Squirrels LLC.

### D. Viking Data Centers/Real Estate Holdings

- **Asset Diversion**: Hosted SQRL equipment pre-bankruptcy; sold post-petition without creditor disclosure.

**Legal Basis**: 11 U.S.C. § 544(b) (state law fraudulent conveyance claims).

## 6. Tulip Tech

**Rationale**:

- **Inventory Liquidation**: Sold SQRL's missing Xilinx chips in March 2022, controlled by Stanfill associates.

**Legal Basis**: Recovery of fraudulently transferred property under 11 U.S.C. § 550.

## 7. Michael Maranda's Entities (MMLLC, RPNY Holdings)

**Rationale**:

- **Unauthorized Commissions**: Received $150,000 from SQRL without contractual basis.
- **Preferential Transfers**: Removed FPGA hardware pre-bankruptcy for resale.

**Legal Basis**: Avoidance of preferential transfers under 11 U.S.C. § 547.

**Recommended Action Plan**

1. **Consolidate Estates**: File motion under Fed. R. Bankr. P. 1015(b) to jointly administer SQRL, Squirrels LLC, MWDC, and Aligned Engine.
2. **Clawback Transfers**: Pursue $3.02M in fraudulent transfers to insiders via 11 U.S.C. § 548.
3. **Subpoena Cryptocurrency Exchanges**: Trace wallets linked to Nexo, Binance, and Coinbase for commingled crypto assets.
4. **Liquidate MWDC**: Redirect insurance proceeds to SQRL creditors under 11 U.S.C. § 363.

**Conclusion**: The commingling between SQRL and its affiliates meets the *alter ego* threshold, justifying injunction to prevent further creditor harm. Forensic tracing of blockchain transactions and intercompany transfers is critical to unwind this scheme.


**Legal Basis for Enjoining Commingled Entities to SQRL Bankruptcy**

**1. Bankruptcy Code Authority for Substantive Consolidation**

**A. 11 U.S.C. § 105(a): Equitable Powers**

Bankruptcy courts may **"issue any order, process, or judgment necessary or appropriate to carry out the provisions of [the Bankruptcy Code]"** to prevent abuse of the bankruptcy process. This includes enjoining non-debtor entities when commingling creates an **"identity of interests"** between debtors and third parties (*In re Owens Corning*, 419 F.3d 195 [3d Cir. 2005]).

### B. 11 U.S.C. § 541(a): Property of the Estate

Commingled assets (e.g., cryptocurrency wallets, FPGA inventory) held by Squirrels LLC or Alignment Engine may be deemed **property of SQRL's bankruptcy estate** if creditors can prove the assets were diverted through fraudulent transfers or sham transactions (*In re Cyberco Holdings*, 431 B.R. 404 [Bankr. W.D. Mich. 2010]).

## 2. Alter Ego Doctrine (Veil-Piercing)

### A. Six-Factor Test (Northern District of Ohio)

Under *Dombroski v. WellPoint, Inc.* (2010), courts assess:

1. **Dominion/Control**: Stanfill's dual CEO roles and equity in all entities.
2. **Misrepresentation**: SQRL marketed as a "sister company" of Squirrels LLC to creditors.
3. **Undercapitalization**: SQRL lacked independent financial infrastructure.
4. **Separate Books**: No formal accounting for $440K July 2018 transfers to Squirrels LLC.
5. **Dividend Payments**: Profits funneled to Squirrels LLC instead of creditors.
6. **Corporate Formalities**: Absence of board resolutions or service agreements.

### B. Single Enterprise Theory

The **"single enterprise" doctrine** applies when entities operate as a unified business. Evidence includes:

- Shared staff (Amanda McConnell), IT systems, and real estate.
- Identical FPGA IP used by Alignment Engine post-bankruptcy (*Tex. Indus. v. Dupont*, 186 F. Supp. 2d 777 [S.D. Tex. 2002]).

## 3. Fraudulent Transfer Statutes

### A. 11 U.S.C. § 548(a)(1)(A): Actual Fraud

The $1.66M in transfers to Squirrels LLC pre-petition meets the "actual intent to hinder, delay, or defraud creditors" standard. Key indicators:

- Transfers occurred while SQRL was insolvent.
- Stanfill retained control over assets via Alignment Engine.

### B. Ohio Rev. Code § 1336.04(B): Constructive Fraud

SQRL received **"less than reasonably equivalent value"** for transfers to Squirrels LLC, given the lack of documented cost-based pricing.

## 4. Subchapter V Misclassification

SQRL's filing under Subchapter V (debts < $7.5M) violated **11 U.S.C. § 1182(1)** by omitting:

- **Undisclosed debts**: $18M in post-petition creditor claims.

- **Cryptocurrency mining liabilities**: Utility bills showing sustained power usage.

## 5. RICO Implications (18 U.S.C. § 1962)

Stanfill's pattern of **racketeering activity** includes:

- **Mail/wire fraud**: False insurance claims and inventory reports.
- **Money laundering**: Cryptocurrency transfers via Nexo/Binance wallets.
- **Obstruction**: Slack data spoliation (18 U.S.C. § 1519).

## 6. Successor Liability

### A. Continuity of Operations

Alignment Engine operates from SQRL's former facilities using identical FPGA IP, meeting the **"mere continuation" test** (*Tex. Indus. v. Dupont*).

### B. Fraudulent Asset Transfers

Post-bankruptcy diversion of SQRL's insurance proceeds to MWDC violates **11 U.S.C. § 363(b)**, requiring court approval for asset sales.

## 7. Trustee Mandate Under 11 U.S.C. § 704(a)(1)

Trustee Schwieg has a duty to **"collect and reduce to money the property of the estate"**, including:

- Forensic tracing of blockchain transactions.
- Subpoenas to Nexo, Binance, and Coinbase for wallet ownership data.

### Key Case Law

1. **Pepper v. Litton** (308 U.S. 295[1939]): Equitable subordination of insider claims.
2. **In re Bonham** (Case No. 20-10265, Bankr. N.D. Ohio 2021): Applied § 105(a) to enjoin crypto wallet providers.

### Recommended Actions

1. **File Motion to Consolidate** (Fed. R. Bankr. P. 1015(b)): Join Squirrels LLC, MWDC, and Aligned Engine.
2. **Pursue Avoidance Actions**: Claw back $3.02M in transfers under § 548.
3. **Expand Trustee Mandate**: Include cryptocurrency and FPGA inventory audits.

This framework aligns with bankruptcy's core purpose: **maximizing creditor recoveries while deterring fraud**.