UNITED STATES BANKRUPTCY
COURT NORTHERN DISTRICT OF
OHIO EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| Squirrels Research Labs LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Tiiara N.A. Patton |

**RESPONSE OF THE AD HOC COMMITTEE OF CREDITORS TO THE DEBTOR'S REPLY TO OBJECTION OF PAUL BILLINGER [ECF 403]**

NOW COME the individual creditors collectively known as the Ad Hoc Committee of Creditors (the "Committee"), each acting in their own capacity and collectively for efficiency, and respectfully submit this Response to the Debtor's *Reply to Objection of Paul Billinger* (ECF 403), which responded to the Committee's prior Objection (ECF 397). In support, the Committee states as follows:

I. **PRELIMINARY STATEMENT**

1. The Ad Hoc Committee is comprised solely of unsecured creditors, each of whom holds a scheduled or filed claim in this estate and thus qualifies as a "party in interest" under 11 U.S.C. §1109(b). The Committee's procedural vehicle serves to promote efficiency, not to represent non-creditors or to circumvent requirements for the practice of law, as clarified in *In re Bicoastal Corp.,* 164 B.R. 1009, 1015 (Bankr. M.D. Fla. 1993) (group standing is proper for a collective of individual creditors, but not for entities lacking a direct stake).

2. The Committee acknowledges that it is not presently represented by counsel. Nevertheless, under 11 U.S.C. §1109(b), each creditor and creditor group with a concrete stake in the outcome of this case has the right to appear and be heard. Courts have consistently held that this right is broadly construed to include informal creditor groups acting collectively to

protect their shared interests. See *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. ___ (2024); *In re Trailer Source, Inc.*, 555 F.3d 231, 243 (6th Cir. 2009); *In re Amatex Corp.*, 755 F.2d 1034, 1041–42 (3d Cir. 1985).

3. The Committee urges the Court to act immediately on the substantive matters raised in its Objection (ECF 397) because the Court's own docket now contains clear alleged evidence of perjury, fraud, and concealment of estate property involving the DIP. Delay pending formal representation would allow further harm to the estate and undermine public confidence in the integrity of these proceedings.

4. The Supreme Court has made clear that bankruptcy courts are courts of equity charged with preventing injustice, regardless of procedural technicalities. See *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939); *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-26 (1968). Once evidence of fraud or perjury appears in the record, the Court's **duty to act** arises independently of who brings the matter to its attention. As Pepper explains: "The bankruptcy court has the power and duty to sift the circumstances surrounding any claim to see that injustice or fraud is not done in the administration of the bankrupt estate." Id. at 307.

5. Courts have repeatedly held that their obligation to prevent fraud upon the court is self-executing and not dependent upon the standing of the party bringing it to light." See *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996).

6. Accordingly, the Committee submits that the Court must take notice of the record evidence already before it and exercise its authority under 11 U.S.C. §105(a), §1104(c), and 18 U.S.C. §3057 to investigate and act upon indications of fraud, even if questions remain about formal standing or representation.

7. The Committee respectfully notes that there is strong evidence suggesting that this case was

fraudulently filed under Subchapter V, despite the debtor's actual unsecured debt exceeding the statutory threshold. This improper filing deprived unsecured creditors of their right to a formal creditors' committee and meaningful participation in plan negotiation. Furthermore, despite an overwhelming rejection of the plan by unsecured creditors, a cramdown plan—available only in Subchapter V—was imposed, further compounding the denial of creditor rights and protections. Given these facts, traditional standing doctrines and procedural barriers should not be rigidly applied to disallow objections and oversight by legitimate unsecured creditor representatives.

## II. FACTUAL BACKGROUND

8. The Debtor filed for Chapter 11 relief under Subchapter V on November 23, 2021. The Debtor-in-Possession (DIP) and its insiders are implicated in multiple transfers and transactions that appear inconsistent with fiduciary duties owed to creditors. The Subchapter V Trustee has filed a motion to compromise insider litigation (Doc. 394) that, if approved, would release those insiders from liability for grossly inadequate consideration.

9. The Committee's Objection (ECF 397) identifies specific documentary inconsistencies, omissions, and sworn statements that constitute prima facie evidence of alleged perjury and concealment. These materials are already before the Court and, under the authorities cited below, require judicial action irrespective of any procedural challenge to the Committee's standing. These are matters that the Court has an independent duty to address, as set forth in *Pepper* and *TMT Trailer Ferry*.

## III. ARGUMENT
### A. The Committee, Acting as Individual Creditors, Has Standing Under 11 U.S.C. §1109(b)

10. Section 1109(b) grants any "party in interest," including creditors, the right to "appear and be heard on any issue." Courts interpret this provision broadly to ensure creditor participation when estate recoveries or fairness are at stake. *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. ___ (2024); *In re Amatex Corp.*, 755 F.2d at 1041–42.

11. The Committee members are individual creditors, each asserting their own right to be heard under §1109(b). Their decision to coordinate filings collectively does not deprive them of standing. Federal Rule of Bankruptcy Procedure 9010(a) expressly allows creditors to appear "in their own behalf" and to perform any act not constituting the practice of law.

12. The Court should therefore recognize the Committee as a coalition of individual creditors with independent participatory rights and consider their filings on the merits.

13. Unlike the unsuccessful movant in *In re Bicoastal Corp.*, each Committee member here holds an actual unsecured claim in this bankruptcy and thus has direct standing to appear and be heard. Collective filing, as permitted by procedural rules and *In re Amatex Corp.*, is for judicial efficiency—not to create new rights.

**B. The Court Has an Affirmative Duty to Scrutinize Insider Compromises**

14. The Supreme Court in *TMT Trailer Ferry*, 390 U.S. at 424–26, held that a bankruptcy court must independently assess whether a proposed settlement is fair and equitable. Likewise, in *Pepper v. Litton*, 308 U.S. at 307–08, the Court emphasized the duty of bankruptcy judges to ensure that insiders do not exploit the bankruptcy process for personal gain.

15. The Trustee's proposed compromise here releases insider claims for minimal consideration without sufficient factual support. Under *Fed. R. Bankr. P. 9019(a)*, any compromise must be demonstrated to be "fair and equitable" and in the best interests of the estate. The Court has both the power—and indeed the obligation—to investigate and deny approval if fairness

is not affirmatively shown. See *In re Bonham*, Case No. 20-10265 (Bankr. N.D. Ohio Jan. 28, 2021). A trustee's failure to conduct an adequate investigation of insider transactions or to substantiate the fairness of a compromise may itself constitute a breach of fiduciary duty. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991) (holding that a trustee's duty of care requires active investigation and informed judgment before settling insider matters).

16. Given the credible evidence of potential fraud and asset concealment referenced in ECF 397, the Court should act sua sponte if necessary, under §105(a) to safeguard the estate and creditor recoveries.

17. The standard set in *TMT Trailer Ferry* requires this Court to independently review any proposed compromise, particularly where evidence suggests preferential or fraudulent transfers, and when the record shows gaps in diligence by the Trustee or Debtor. Under Rule 9019(a), approval of a compromise requires a finding that the settlement is fair and equitable and in the best interests of the estate.

18. The *Pepper v. Litton* doctrine and related authorities, including recent applications in this District (*In re Bonham*, Bankr. N.D. Ohio 2021), make clear that "once evidence of fraud or perjury appears in the record, the Court's duty to act arises independently of who brings the matter to its attention."

**C. Immediate Relief Is Necessary to Prevent Further Prejudice**

19. Delay in reviewing or ruling on these issues may result in continued harm to the estate, loss of assets, or foreclosing recovery opportunities. The equitable nature of bankruptcy demands timely intervention where creditor rights and estate preservation are at risk. See *Pepper v. Litton*, 308 U.S. at 307 (bankruptcy court must prevent fraud and injustice regardless of form).

20. The Committee therefore requests that the Court address the substantive issues raised in ECF 397 and this Response now, rather than deferring them pending uncertain future representation.

## IV. ADDITIONAL EVIDENCE DISCOVERED AFTER FILING OF ORIGINAL OBJECTION

21. Since filing the initial Objection (ECF 397), the Committee's further review of the docket and related records has revealed additional evidence of serious irregularities and potential fraud in the Debtor's transactions with insiders, particularly involving individuals Gould and Slutz. These matters underscore why judicial action and independent investigation are urgently warranted.

**A. The Gould Matter**

22. The adversary complaint against Mr. Gould (*Schwieg v. Gould* 23-06030) originally sought $182,249.43. As reflected in the Trustee's Motion to Compromise (Doc. 394 ¶17), the Trustee subsequently reduced that figure to $1,297.02 after concluding that most of the payments attributed to Gould were made on a company credit card in the name of the Debtor.

23. This fact raises profound questions. Mr. Gould was not directly involved in SQRL's business operations. The issue, therefore, is not whether he incurred legitimate charges—but why he possessed access to a corporate credit card at all, and how those charges were categorized in SQRL's books.

24. Every corporate credit card generates monthly statements detailing each transaction. Those statements represent a verifiable paper trail of company expenditures. The refusal to produce or review those statements—especially in a case already marked by insider self-dealing—constitutes an abdication of fiduciary responsibility.

25. Without a thorough review of the Gould card statements, the record cannot support any good-faith conclusion that the proposed settlement is fair, or that funds were properly spent for legitimate business purposes.

**B. The Slutz Adversary**

26. Similar patterns of unexplained insider transfers appear in the Slutz adversary proceeding (*Schwieg v. Slutz* 23-06031). According to the Debtor's Statement of Financial Affairs, Mr. Slutz is identified as a 4% equity member. He is also listed on Schedule E/F as holding a purported priority wage claim of $384.19 and a nonpriority unsecured claim of $97,853.55 identified as "Owner."

27. The Trustee sought $151,343.97 from Mr. Slutz, of which only $1,000 was within the preference period. Yet the Debtor's own accounting records provide little to no explanation of these payments—many described simply as "payment on account." See Doc. 394 ¶¶21–22.

28. Mr. Stanfill has characterized certain transfers as reimbursement for expenses or component purchases, but this explanation is unsubstantiated and inconsistent with the lack of supporting records. The pattern instead suggests that SQRL funds were diverted to non-SQRL properties or ventures operated by insiders, for which there is no legitimate corporate purpose or documentation.

29. Available evidence indicates that Mr. Slutz serves as caretaker or manager for extensive real estate holdings associated with the Debtor's insiders. The absence of any detailed accounting of these transactions, coupled with the presence of unexplained reimbursements, strongly suggests misappropriation and concealment of estate value.

### C. The Pattern of Insider Misconduct

30. The same recurring pattern—diversion of funds, inadequate records, and resistance to disclosure—appears across both the Gould and Slutz matters. Each instance demonstrates that assets were removed or disguised before creditors could recover, precisely the kind of insider abuse that the Bankruptcy Code's fiduciary duties and oversight mechanisms exist to prevent.

31. The failure to pursue these leads not only prejudices creditors, but also undermines faith in the integrity of this Court's process. The United States Trustee and the Bankruptcy Court were created to prevent this very form of self-dealing and insider enrichment at the expense of legitimate investors and creditors.

32. Allowing these transactions to pass without further inquiry would set a dangerous precedent, signaling that insiders may exploit Subchapter V proceedings as a mechanism to launder or shield misused assets. The law and the record demand immediate judicial intervention and accountability. This Court's intervention is essential to preserve the integrity of the bankruptcy system and ensure that this proceeding does not become a vehicle for shielding insider misconduct.

33. To deny substantive review on purely procedural grounds would risk converting the court's protective powers into a shield for fraud, contrary to the core teaching of *Pepper v. Litton* and *TMT Trailer Ferry*, and would undermine the integrity and remedial purpose of the bankruptcy process.

### V. REQUEST FOR RELIEF

WHEREFORE, the Ad Hoc Committee of Creditors, each member acting in their individual capacity, respectfully requests that this Court:

1. Consider and rule on the substantive issues raised in ECF 397 immediately, finding

that the Committee and its members are parties in interest entitled to be heard under 11 U.S.C. §1109(b);

2. Exercise its equitable authority under 11 U.S.C. §105(a) to independently review the fairness of the proposed insider compromise and to take protective action as necessary to safeguard the estate;

3. Deny approval of the Trustee's proposed compromise, or alternatively, order targeted discovery, forensic audit, or appointment of an examiner under §1104(c) to ensure transparency and fair value;

4. Preserve all creditor rights and objections raised to date; and

5. Grant such other and further relief as the Court deems just and proper to protect the integrity of the estate and ensure equal treatment of creditors.

Dated: October 11th, 2025
Respectfully submitted,

*Paul Billinger*

Paul Billinger
E-Mail:
paul.billinger@toreaconsulting.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response to Debtor's Reply to Objection of Paul Billinger (DOC. 403) was served by mail on the Court and via email to the Debtor by email to CMillard@ralaw.com, Trustee Fred Schweig at fschwieg@schwieglaw.com, and the US Trustee at lauren.schoenewald@usdoj.gov.

*(signature)*
Paul Billinger
Ad Hoc Committee representative
Date: October 11th, 2025