UNITED STATES BANKRUPTCY
COURT NORTHERN DISTRICT OF
OHIO EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491 |
| | ) | |
| Squirrels Research Labs LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Tiiara N.A. Patton |

**RESPONSE OF AD HOC COMMITTEE OF CREDITORS TO SUBCHAPTER V
TRUSTEE'S MOTION TO APPROVE COMPROMISE AND DEFENDANTS'
RESPONSE
BY: PAUL BILLINGER, COMMITTEE REPRESENTATIVE, PRO SE**

The Ad Hoc Committee of Creditors, by and through committee member Paul Billinger acting pro se, respectfully submits this comprehensive response to (1) the Subchapter V Trustee Frederic P. Schwieg's Response to Objections [Docket No. 407] and (2) the Defendants' Response [Docket No. 405], addressing the Motion to Approve Compromise with David Stanfill, Sidney Keith, Andrew Gould, Jessica Gritzan, Kyle Slutz, and Squirrels LLC.

The Committee is a self-organized group of creditors who have united to address common concerns regarding estate administration and creditor protection.

**CLARIFICATION ON COMMITTEE STRUCTURE AND REPRESENTATION**
The Ad Hoc Committee operates as a coordination of creditors, each representing their own individual interests pro se. This differs from an Official Committee of Unsecured Creditors under 11 U.S.C. § 1102, which requires court appointment and mandatory attorney representation. Ad hoc creditor groups are widely recognized in bankruptcy practice and face no statutory or case law requirement for attorney representation. See *In re Lehman Bros. Holdings Inc.,* 478 B.R. 570 (Bankr. S.D.N.Y. 2012) (recognizing ad hoc committees as legitimate participants); Bankruptcy Rule 2019 (requiring only disclosure, not attorney representation).

Each committee member proceeds pro se to advocate for their individual creditor interests while coordinating on matters of common concern. This coordination does not constitute unauthorized practice of law, as each member represents only their own claim and interest in the estate.

I.    **PRELIMINARY STATEMENT**
This Response does not seek to relitigate standing determinations previously made by this Court.

Rather, **it presents newly discovered evidence of perjury, fraud upon the Court, and asset**

**concealment** that establishes independent grounds for denying the proposed compromise under

the Court's inherent authority to protect the integrity of bankruptcy proceedings and maximize creditor recoveries, regardless of the objector's individual status.

Both the Trustee's and Defendants' responses recycle factual assertions from prior proceedings as if they were established truth, when in fact **substantial documentary evidence now demonstrates those representations were false, made under oath, and constitute perjury**. This new evidence creates an exception to res judicata and mandates full consideration of the objections presented.

## II. STANDING OF THE AD HOC COMMITTEE OF CREDITORS

### A. Ad Hoc Committees Are Legitimate Participants in Bankruptcy

Ad hoc committees are widely recognized in bankruptcy practice. Unlike Official Committees under § 1102, ad hoc committees are self-organized creditor groups that coordinate on matters of common concern without court appointment or mandatory attorney representation. See Katherine Waldock, Fighting Fire With Fire: Bankruptcy Committees in the Age of Hostile Restructurings, COLUMBIA BUS. L. REV. 1097, 1100 (2022) (discussing ad hoc committees as legitimate participants in bankruptcy proceedings).

Unlike Official Committees appointed under 11 U.S.C. § 1102, ad hoc committees:

- Require no court appointment or approval

- May self-organize around common interests

- Have no fiduciary duty beyond their members

- Face no attorney representation requirement

### B. No Attorney Requirement for Ad Hoc Committees

Defendants incorrectly suggest that the Committee's lack of retained counsel is fatal. This

argument conflates two distinct types of creditor groups:

**Official Committees (§ 1102):**

- Must be appointed by U.S. Trustee

- Must retain professionals under § 1103

- Attorney fees paid by estate

- Owe fiduciary duty to entire creditor class

**Ad Hoc Committees:**

- Self-formed by creditors

- No requirement for attorney representation

- Members act in their own interests

- Recognized throughout bankruptcy practice

No case law requires ad hoc committees to retain attorneys. To the contrary, courts recognize that "attorneys and advisors representing ad hoc committees do not have to file retention applications in bankruptcy court" precisely because they operate differently than official committees. Bloomberg Law Bankruptcy Practice Guide.

**C. Committee Standing Distinct from Prior Individual Standing Ruling**

The Court's prior ruling on September 9, 2024 [Docket No. 379] addressed Paul Billinger's individual standing as a party-in-interest. The Ad Hoc Committee presents a different legal basis for participation:

**Prior Ruling**: Individual party-in-interest status under § 1109(b)

**Current Basis:** Collective creditor group under Rule 2019

Committee status serves judicial efficiency by aggregating creditors with common concerns and

is independently recognized in bankruptcy law and practice. The Court's prior determination regarding individual standing does not preclude committee participation, which rests on separate legal grounds.

## D. Alternative Basis: Fraud Exception and Court's Inherent Authority

Even if the Court were to find the Committee lacks technical standing, the newly discovered evidence of perjury and fraud upon the Court creates an independent basis for consideration under:

- The Court's inherent authority to investigate fraud (*Hazel-Atlas*)
- The fraud exception to res judicata (*Throckmorton*)
- 11 U.S.C. § 105(a) equitable powers
- Public policy favoring creditor protection

As detailed below, substantial evidence of systematic perjury and asset concealment requires examination regardless of the objector's technical status.

## III. REBUTTAL TO DEFENDANTS' ARGUMENTS (DOCKET NO. 405)

Defendants' counsel Jack B. Cooper raises five arguments in favor of overruling Billinger's objections. Each argument is either procedurally improper, factually incorrect, or legally insufficient:

### A. Counter to "Torea Transaction" Narrative

**Defendants' Claim:** Cooper argues that SQRL tendered 136.2 ETH in full payment to Torea, which Billinger refused, and that subsequent litigation (Torea v. Stanfill) resulted in summary judgment for Stanfill, confirming SQRL satisfied its obligations [Docket No. 405, Pages 2-3].

**Rebuttal:**

## 1. Mischaracterization of "Tender"

The Defendants characterize SQRL's placement of 136.2 ETH in a "segregated digital wallet" as an unconditional tender. This is factually and legally incorrect:

- **No actual tender occurred:** Merely placing cryptocurrency in a wallet controlled by SQRL (not delivered to Torea) does not constitute legal tender under contract or commercial law.

- **Cryptocurrency was subsequently spent:** The Defendants admit that "ultimately the funds in the digital wallet were used for other purposes" [Docket No. 405, Page 2]. This confirms the funds were **never set aside for Torea** and destroys any claim of tender.

- **If tender had occurred, SQRL would have no debt:** The fact that Torea filed a bankruptcy claim demonstrates there was no valid tender or payment.

## 2. State Court Litigation Does Not Establish Facts for Bankruptcy Purposes

The summary judgment in *Torea v. Stanfill* (Stark County Common Pleas, Case No. 2022 CV 00974) does not bind this bankruptcy court or establish that SQRL satisfied its obligations:

- **Different Parties:** The state litigation was against David Stanfill individually, not SQRL. Summary judgment on Stanfill's personal liability does not establish SQRL paid its debts.

- **Automatic Stay Prevented Full Litigation:** Torea could not pursue SQRL directly due to the bankruptcy stay, forcing litigation against Stanfill as an individual. This procedural limitation does not validate SQRL's claimed payment.

- **Bankruptcy Court Has Independent Authority:** This Court must make its own factual findings regarding estate obligations and cannot defer to state court rulings on different parties.

## 3. Torea's Bankruptcy Claim Establishes Unpaid Debt

If SQRL had truly tendered full payment as claimed, **Torea would have no basis to file a bankruptcy claim**. The existence of Torea's filed claim is prima facie evidence that the debt

remains unpaid and the "tender" narrative is false.

## B. Counter to Standing Arguments

**Defendants' Claim:** Cooper argues Billinger "is not a creditor and has been previously found to lack party-in-interest status" and "has not filed a proof of claim" [Docket No. 405, Pages 3-4].

**Rebuttal:**

### 1. Standing Argument Does Not Address Fraud Exception

As explained in Section IV below, **fraud upon the court creates an independent basis for judicial review** that operates outside traditional standing requirements. When perjury and material misrepresentations affect the integrity of proceedings, the Court has inherent authority to investigate regardless of the objector's technical status.

### 2. Torea's Creditor Status

While Billinger may not have filed an individual proof of claim, **Torea Consulting Ltd. (controlled by Billinger) is a creditor** with a filed claim. The Defendants' own narrative acknowledges the SQRL-Torea commercial relationship and debt [Docket No. 405, Page 2].

### 3. Party-in-Interest Under 11 U.S.C. § 1109(b)

Section 1109(b) grants standing to "a party in interest" to be heard on any issue. Courts interpret this broadly to include any person with a sufficient stake in the bankruptcy outcome. Supreme Court precedent confirms that entities with financial interests in estate claims qualify as parties-in-interest. *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 144 S. Ct. 1414 (2024).

### 4. Evidence of Fraud Requires No Legal Expertise

Presenting documentary evidence of perjury, contradictory testimony, and fraudulent conduct requires no legal license. Billinger is entitled to bring evidence of fraud to the Court's attention, and the Court has independent authority to act on such evidence.

## C. Counter to "Settlement Satisfies Rule 9019" Argument

**Defendants' Claim:** The settlement is fair under *In re Anderson*, 377 B.R. 865 (6th Cir. B.A.P. 2007), because Judge Harris (the mediator) expressed skepticism about the Trustee's recharacterization theory and because defendants "supplied materials and services of equivalent value" [Docket No. 405, Page 4].

**Rebuttal:**

### 1. Mediator's Opinion Is Not Binding

While mediators' perspectives may inform settlement negotiations, **a mediator's informal opinion does not satisfy Rule 9019's requirement for independent judicial review**. The Court must make its own findings regarding settlement fairness based on the full record.

### 2. "Equivalent Value" Assertion Is Conclusory and Contradicted

The claim that defendants supplied "materials and services of equivalent value" is:

- **Unsupported by evidence:** No accounting, invoices, or valuation documentation accompanies this assertion.

- **Contradicted by Trustee's adversary complaints:** The Trustee filed suit alleging fraudulent transfers totaling over $3 million, inherently based on findings of inadequate consideration.

- **Belied by missing assets:** As documented in Section V below, millions in cryptocurrency, components, and equipment remain unaccounted, undermining any "equivalent value" narrative.

### 3. Settlement Recovers Only 2.5% of Documented Transfers

The proposed settlement provides $75,500 against documented fraudulent transfers exceeding $3 million—approximately **2.5% recovery**. Under the *Anderson* factors:

**(a) Probability of Success:** The Trustee's adversary complaints allege fraudulent transfers with substantial supporting documentation. The probability of success is strong, not weak.

**(b) Difficulties in Collection:** Defendants appear solvent with assets available for collection. The Trustee has not demonstrated collection impossibility.

**(c) Complexity and Expense:** While litigation involves costs, potential recoveries of $3+ million dwarf estimated expenses.

**(d) Paramount Interest of Creditors:** Accepting 2.5% recovery while releasing all claims and leaving millions in assets uninvestigated **severely harms creditor interests** and fails this critical factor.

**D. Counter to "Speculative Allegations" Argument**

**Defendants' Claim:** Billinger's objection "recycles conspiracy allegations—'whistleblower leaks,' 'offshore exchanges,' and 'RICO predicate acts'—without a single affidavit, document, or evidentiary citation" [Docket No. 405, Page 5].

**Rebuttal:**

**This is demonstrably false.** Billinger's objections are supported by:

**1. Sworn Testimony** (Stanfill's Rule 2004 Examination) [Docket No. 332, ¶2; Docket No. 349, Exhibit 1]

**2. Court Documents** (insurance allocation declarations, claims register, adversary complaints) [Docket Nos. 332, 347, 349]

**3. Whistleblower Communications** (documentary evidence attached as exhibits) [Fraudulent Transfer Objection, Exhibit A]

**4. Business Records** (Tulip Tech offering documents, cryptocurrency wallet addresses, creditor invoices) [Docket No. 332, Appendices; Fraudulent Transfer Objection, Exhibit B]

**5. Contradictory Testimony** (side-by-side comparison of Stanfill's conflicting sworn statements) [Section IV.A below]

The characterization of well-documented fraud allegations as "speculative" is itself a misrepresentation designed to prevent investigation.

## IV. THE FRAUD EXCEPTION TO RES JUDICATA

### A. Legal Foundation for Fraud Exception

The Trustee's assertion that res judicata bars consideration of these objections fundamentally misapplies the doctrine because it ignores well-established exceptions for fraud and newly discovered evidence.

### 1. Fraud on the Court Exception

Federal courts have consistently held that res judicata does not apply when a party has obtained a favorable ruling through fraud, perjury, or material misrepresentation:

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 245 (1944): "Tampering with the administration of justice in [this] manner ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

- Federal Rule of Civil Procedure 60(b)(3) expressly permits relief from judgment obtained through "fraud ... misrepresentation, or misconduct by an opposing party."

- *United States v. Throckmorton*, 98 U.S. 61 (1878): The "fraud exception" allows courts to set aside judgments procured through fraudulent concealment of material information.

### 2. Newly Discovered Evidence

Courts may revisit issues when newly discovered evidence reveals that prior proceedings were based on false information:

- *Hazel-Atlas,* 322 U.S. at 244-45: A fraud practiced on the court "vitiates the entire

proceeding" and justifies setting aside all orders based on the fraudulent foundation.

- Evidence unavailable during prior proceedings but now discovered creates an independent basis for judicial review under Federal Rule of Bankruptcy Procedure 9024 (incorporating Rule 60(b)).

## B. Application to This Case

The proposed compromise and prior rulings relied upon by the Trustee were premised on factual representations made under oath by David Stanfill that documentary evidence now proves were false. This is not speculation—it is demonstrated by comparing:

1. Stanfill's sworn testimony at his Rule 2004 Examination and in declarations filed with this Court

2. Contradictory documentary evidence including court filings, business records, claims filed by creditors, and communications

The discovery of systematic perjury affecting multiple material facts creates an exception to res judicata and requires this Court to examine the merits of the objections

## V. SPECIFIC EVIDENCE OF PERJURY AND FALSE STATEMENTS

## A. False Statements Regarding Equipment Attribution and Customer Claims

Stanfill's Sworn Statement:

In his Declaration in Support of Supplemental Brief in Support of Allocation of Insurance Proceeds, David Stanfill testified under penalty of perjury regarding the attribution of customer equipment losses to specific entities (SQRL vs. MWDC). [See Docket No. 347, Exhibit B]

Contradictory Evidence (Docket No. 349, ¶¶ 11-15):

1. JS Mining: Stanfill testified that JS Mining agreements were attributable to SQRL, not MWDC [Docket No. 349, ¶ 12, citing Exhibit 1 Page 23 Line 2]. Yet insurance allocation documents attribute $175,000 in JS Mining losses to MWDC.

2. NJEB Equipment: Stanfill confirmed that NJEB equipment was sold to Alignment Engine *after* the fire loss, meaning Alignment Engine had no basis for claim [Docket No. 349, ¶ 11]. Yet NJEB did not file any claim against MWDC; NJEB filed Claim #32 for $264,661.41 against SQRL [Docket No. 349, ¶ 13], demonstrating SQRL (not MWDC) was hosting NJEB equipment.

3. Michael Maranda Equipment: Michael Maranda did not file any bankruptcy claim against MWDC; he filed a claim against SQRL [Docket No. 349, ¶ 14]. The invoice exhibits reference 121 Wilbur Dr NE (the Squirrels LLC corporate address), providing additional evidence of commingling.

4. Equipment Assignment Records: Stanfill testified that "specific equipment was not assigned to specific customers; he only recorded the quantity of each type of equipment for each customer" [Docket No. 349, ¶ 15, citing Exhibit 1 Page 56 Line 4 onward]. This admission directly contradicts the Debtor's detailed attribution of specific fire losses to specific MWDC customers in the insurance allocation briefing.

**Legal Significance:**

Stanfill declared "under penalty of perjury under the laws of the United States of America" [Docket No. 349, ¶ 16, citing Debtor's Exhibit B Page 1]. The substantive evidence contradicting these sworn statements indicates perjury warranting further investigation and casting doubt on all factual assertions underlying the proposed settlement.

**B. False Statements Regarding Entity Separation and Commingling**

Stanfill's Representations:

Throughout these proceedings, the Debtor and Stanfill have characterized SQRL and MWDC as distinct entities with separate operations, and have portrayed Squirrels LLC as a separate, unrelated company.

Contradictory Evidence (Docket No. 332, Pages 1-6):

1. **No Distinct MWDC Operations**: At his Rule 2004 Examination on March 3, 2022, Stanfill testified under oath that:

   - MWDC was started in 2019 and never had employees

   - All work for MWDC was done by SQRL's employees

   - MWDC was "essentially" subletting space from SQRL

   - MWDC and SQRL operated shared cryptocurrency mining equipment and infrastructure

   [Docket No. 332, ¶ 2]

2. **Shared Insurance Policy**: Both SQRL and MWDC were listed as NAMED INSURED on a single policy, with the address listed as 121 Wilbur Dr NE (the Squirrels LLC corporate address), providing evidence of commingling [Docket No. 349, ¶ 9].

3. **Shared Staff and Resources:** Stanfill testified that Amanda McConnell (SQRL's key accounting personnel) was not compensated by SQRL but through his other entities, and that staff and resources from Squirrels LLC were used by SQRL absent any contractual arrangement [Docket No. 332, referencing Appendices K, L, M].

4. **Commingled Addresses and Communications:** Customer support for SQRL and MWDC was provided via Squirrels Support **support@airsquirrels.com**, which belongs to Squirrels LLC. The mailing address for all entities was the Squirrels LLC main office

[Docket No. 332, Commingling section].

**Legal Significance:**

These admissions establish that MWDC was a facade—a paper entity used for "gaming" the bankruptcy process to maximize benefit to MWDC stakeholders (primarily Stanfill, who owns 40% of MWDC vs. only 16.7% of SQRL) to the detriment of SQRL creditors [Docket No. 332, ¶¶ 4-5; Docket No. 349, ¶ 22].

## C. False Statements Regarding Subchapter V Eligibility

**Filed Representation:**

SQRL filed under Subchapter V of Chapter 11, representing that its debts were below the $7,500,000 threshold required for Subchapter V eligibility.

**Contradictory Evidence (Docket No. 332, Page 5-6, "Filing Discrepancies"):**

The Official Form 204 provided by SQRL "vastly understated the list of debts owed (which SQRL was aware of at the time)." According to the Claims Register, there is $18,067,670.10 in debt remaining after resolution of the $7,864,779.76 senior claim, for a total exceeding $25 million—more than three times the Subchapter V limit.

**Legal Significance:**

This fraudulent misclassification:

- Deprived creditors of their right to form a creditor committee
- Eliminated meaningful creditor input into proceedings
- Enabled a "cram down" plan over overwhelming creditor opposition
- Allowed Stanfill to remain as Debtor-in-Possession despite evidence of fraud
- Limited the Trustee's investigative authority and resources

[Docket No. 332, Pages 5-6]

**D. False Statements Regarding Missing Assets and Equipment**

**Stanfill's Narrative:**

Throughout these proceedings, Stanfill has portrayed SQRL as unable to continue operations due to global silicon shortage affecting the supply chain.

Contradictory Evidence (Docket No. 332, Pages 7-9, "Locating Assets"):

1. **Components Were Received:** Review of court documents reveals substantially all ordered components were received. If components were undelivered, there would be no debt or interest due on those components [Docket No. 332, Page 7].

2. **No Reported Inventory:** Despite receiving components during a global shortage, none were reported in inventory. Any surplus FPGA components could be quickly sold at substantial markup due to robust secondary market [Docket No. 332, Page 7].

3. **Tulip Tech Fencing Operation:** A large quantity of matching components was offered for resale by Tulip Tech (an SQRL affiliate operated by Benjamin George, a known associate of Stanfill) shortly after bankruptcy [Docket No. 332, Appendix G; See also fraudulent transfer objection, Exhibit B].

4. **Intel Chips:** An "Intel Incentive" is listed as an asset, allowing reverse-engineering of the substantial quantity of Intel chips SQRL received. No Intel boards were ever delivered to customers. The whereabouts of these chips or boards is unknown [Docket No. 332, Page 7].

5. **Cryptocurrency Assets**: SQRL was involved with creation of bitstreams for cryptocurrency mining and mining was necessary in the course of business, yet reported no cryptocurrency inventory. Relevant records requested multiple times during discovery were not provided [Docket No. 332, Page 8].

6. **Bittware Equipment:** Bittware filed Claim #29 for $824,740.33 against SQRL for massive quantity of unpaid leased mining equipment. This equipment was producing substantial revenue streams but remains unaccounted [Docket No. 349, ¶ 17].

**Legal Significance:**

The "missing" fiat currency is partially explained by the fraudulent transfers now subject to the Trustee's adversary proceedings. However, cryptocurrency, FPGA components, and equipment representing value multiples of the debts remain unaccounted and uninvestigated [Docket No. 332, Page 8].

## VI. THE TRUSTEE'S FACTUAL NARRATIVE IS COMPROMISED

### A. Reliance on Debtor's Unverified Assertions

The Trustee's response extensively quotes and relies upon factual assertions made by the Debtor and Stanfill in prior proceedings, treating them as established facts. However, as demonstrated above, these assertions are contradicted by documentary evidence and Stanfill's own prior sworn testimony.

The Trustee states he lacks sufficient records to pursue certain claims due to the Debtor's inadequate record-keeping. **This inadequate record-keeping appears intentional to thwart discovery and investigation** [Docket No. 349, ¶ 26].

### B. Spoliation and Suppressed Evidence

### 1. Slack Records

SQRL maintained a Slack account believed to contain pertinent valuable evidence. This was requested via counsel during discovery but was not provided, with an implausible excuse that the account was cancelled [Docket No. 332, Page 10, "Withheld Evidence"].

### 2. Cryptocurrency Exchange Records

Discovery requests for cryptocurrency exchange account statements and wallet information were repeatedly requested but never received [Docket No. 332, Page 8].

## 3. Whistleblower Evidence

Whistleblower communications reveal:

- Deliberate subversion of the bankruptcy process
- Offshore cryptocurrency fund transfers through non-KYC exchanges (Kucoin, TradeOgre)
- Greg Almeida (Stanfill associate) purchasing creditor claims with gag clauses to suppress testimony
- Stanfill offering to pay Almeida "off-book" well into the bankruptcy
- [Fraudulent Transfer Objection, Exhibit A]

**Legal Consequence:**

Federal courts apply adverse inference when debtors fail to produce or actively suppress relevant documentation. *In re Pen Holdings, Inc.*, 316 B.R. 495 (Bankr. D. Del. 2004); *Official Comm. of Unsecured Creditors v. Ashinc Corp.*, 2004 WL 1090473 (D. Del.).

The Trustee's inability to pursue claims due to missing records cannot be held against creditors when the Debtor had motive and control to suppress this information.

## VII. COMPROMISE FAILS RULE 9019 STANDARDS

Even setting aside the fraud and perjury issues, the proposed compromise fails to satisfy the requirements of Federal Rule of Bankruptcy Procedure 9019.

### A. Grossly Inadequate Consideration

The settlement provides for payment of only **$75,500 total** ($75,000 from insiders plus $500

from Gould), with blanket release of all claims.

**Documented Transfers and Potential Recoveries:**

- Squirrels LLC: $1,662,239.59

- Sidney Keith: $132,132.80

- Kyle Slutz: $151,343.97

- Andrew Gould: $183,249.43

- Jessica Gritzan: $177,987.88

- David Stanfill: $714,074.32

- **Total Known Fraudulent Transfers: $3,021,027.99**

[Docket No. 332, Appendix C; Trustee's Adversary Complaints]

The proposed settlement represents recovery of approximately **2.5% of documented fraudulent transfers**, with no recovery for:

- Missing cryptocurrency assets (including documented 8 BTC wallet worth >$800,000)

- Missing FPGA inventory fenced through Tulip Tech

- Intel components never accounted for

- Commingled assets in Squirrels LLC and other affiliates

**B. Insufficient Investigation**

The Trustee acknowledges limited investigation due to:

- Debtor's inadequate record-keeping

- Missing Slack communications

- Unavailable cryptocurrency records

- Time and resource constraints of Subchapter V

However, the **magnitude of fraud and asset concealment documented in the record demands expanded investigation**, not abandonment of valuable claims for nominal consideration.

## C. Settlement Benefits Insiders at Creditor Expense

The proposed settlement:

- Releases insiders who received $3+ million in fraudulent transfers for $75,500

- Provides no recovery for cryptocurrency or equipment assets

- Fails to address the Squirrels LLC commingling (recipient of $1.66 million)

- Ignores evidence of ongoing criminal enterprise involving Stanfill, Michael Maranda (convicted felon and serial fraudster), and Benjamin George (Tulip Tech)

[Docket No. 332, Pages 10-14, Appendices D-G; Fraudulent Transfer Objection, Exhibits A-B]


## VIII. COURT'S INHERENT AUTHORITY TO ADDRESS FRAUD

### A. Authority Independent of Objector's Standing

This Court possesses inherent authority to investigate and sanction fraud upon the court, regardless of who brings the evidence forward:

- 11 U.S.C. § 105(a) grants bankruptcy courts broad equitable powers to prevent abuse of process

- Courts have inherent power to investigate fraud affecting the integrity of judicial proceedings

- *Hazel-Atlas*, 322 U.S. at 246: Courts must have power "to protect themselves and their decrees from fraud"

**This authority exists independent of traditional standing requirements** because fraud on the

court undermines the entire bankruptcy process and harms all creditors and the public interest.

**B. Duty to Maximize Creditor Recovery**

The Trustee has a fiduciary duty under 11 U.S.C. § 704(a)(1) to "collect and reduce to money the property of the estate ... for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."

**Approving a settlement that recovers 2.5% of documented fraudulent transfers while leaving millions in assets uninvestigated violates this duty.**

## IX. REQUESTED RELIEF

Paul Billinger respectfully requests that this Honorable Court:

1. DENY the Motion to Approve Compromise [Docket No. 394], and OVERRULE the Trustee's Response [Docket No. 407] and Defendants' Response [Docket No. 405] as they fail to address the fraud exception and Court's inherent authority to prevent fraud upon the Court;

2. **OVERRULE the procedural objections** raised by Defendants in Docket No. 405 as they fail to address the fraud exception and Court's inherent authority;

3. ORDER a hearing to receive testimony and evidence regarding the perjury and false statements identified herein;

4. EXPAND the Trustee's authority and resources to conduct comprehensive investigation of:

    a. Cryptocurrency assets and exchange accounts

    b. Missing FPGA inventory and Intel components

    c. Tulip Tech fencing operation

d.  Squirrels LLC commingling and substantive consolidation

e.  Offshore fund transfers documented in whistleblower evidence

5.  ISSUE subpoenas to cryptocurrency exchanges (Coinbase, Binance, Nexo, Kucoin, TradeOgre) for account records related to Stanfill, SQRL, MWDC, and Squirrels LLC;

6.  AUTHORIZE forensic audit of Debtor's and affiliates' financial accounts, inventory records, and cryptocurrency transactions;

7.  REFER this matter to the U.S. Trustee for investigation of bankruptcy fraud under 18 U.S.C. § 152-157;

8.  GRANT such other and further relief as the Court deems just and proper to protect creditor interests and the integrity of these proceedings.


Dated: October 21, 2025

Respectfully submitted,

On behalf of the Ad Hoc Committee of Creditors

Paul Billinger, Committee Representative
E-Mail: paul.billinger@toreaconsulting.com
Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response to Trustee's Motion and Defendants'

Response was served by mail on the Court and via email to the Debtor by email to Trustee Fred

Schweig at fschwieg@schwieglaw.com, and Counsel for Defendants Jack Cooper at

jcooper@milliganpusateri.com.

_____
Paul Billinger, Committee Representative
E-Mail: paul.billinger@toreaconsulting.com
Pro Se
Dated: October 21, 2025