UNITED STATES BANKRUPTCY
COURT NORTHERN DISTRICT OF
OHIO EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 21-61491-TNAP |
| | ) | (JOINTLY ADMINISTERED) |
| Squirrels Research Labs LLC, *ET AL.* | ) | Chapter 11 |
| | ) | Subchapter V |
| Debtors | ) | Judge Tiiara N.A. Patton |

**MOTION OF AD HOC COMMITTEE OF CREDITORS FOR APPROVAL OF COUNSEL FEES AS ADMINISTRATIVE EXPENSE OF THE ESTATE**

See Motion for Reconsideration and Supplemental Factual Development filed November 10, 2025, Docket Entry 414. This motion is complementary to and dependent upon the Reconsideration Motion

**TO THE HONORABLE COURT AND ALL PARTIES IN INTEREST:**

The Ad Hoc Committee of Creditors ("Committee") respectfully moves this Court for an order authorizing reimbursement of counsel fees and expenses as an administrative expense of the estate pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4), and such other relief as the Court deems just and proper.

**I. INTRODUCTION AND URGENT NEED FOR COUNSEL**

This motion addresses issues arising from the October 28, 2025 settlement hearing. The Committee seeks to protect creditor interests by authorizing professional counsel to evaluate whether the proposed settlement adequately reflects the investigation conducted by the Trustee.

**The Committee's Parallel Motions:**

This motion is complementary to the Motion for Reconsideration and Supplemental Factual Development filed November 10, 2025 (Docket Entry 414), in which the Committee requested that this Court:

1. Vacate the October 28, 2025 settlement approval;
2. Order the Trustee to provide written responses documenting what investigation was actually conducted regarding eight specific investigation areas; and
3. Permit creditors to meaningfully participate in settlement adequacy determination.

Rather than a pre-emptive judgment that investigation was inadequate, the Committee seeks professional counsel to independently evaluate the Trustee's investigation once that investigation is documented by Trustee responses to the eight specific questions posed in the Reconsideration Motion.

*See Section V.B infra (identifying eight investigation gaps) and Motion for Reconsideration Docket Entry 414 (detailing Committee's specific investigation questions).*

**Committee Standing Now Established:**

The Committee supplemented its Rule 2019 Disclosure Statement on November 10, 2025, formally establishing its composition with seven creditor members holding claims totaling $1,170,938.44 and providing written authorizations for Paul Billinger to serve as committee coordinator. This supplemental

disclosure directly addresses the Court's October 28 concerns regarding standing and committee composition.

**Why Standing Resolution Strengthens the Fee Request:**

The very need for standing documentation demonstrates why professional counsel is essential. The Court's October 28 concerns regarding Rule 2019 compliance demonstrate the inherent complexity of bankruptcy procedure. Even experienced business owners cannot be expected to master Rule 2019 without legal guidance. This reality illustrates precisely why professional counsel is essential to enable meaningful creditor participation, to ensure legal compliance throughout the process

Professional counsel prevents this inefficiency: counsel ensures procedural compliance, prevents UPL concerns from silencing creditor inquiries, and enables creditors to meaningfully evaluate settlement adequacy. The Committee has now established legitimacy through supplemental Rule 2019 documentation. That same documentation demonstrates the necessity of counsel to navigate complex bankruptcy procedures.

**The Settlement Context:**

The Trustee proposes settling $2,888,895 in avoidance claims for $75,500—a 2.6% recovery. This settlement directly impacts the estate's creditors. The Committee's seven members hold $1,107,938.44 in claims—substantial interest in maximizing estate recovery. Professional counsel is necessary to ensure that this settlement is based on adequate investigation, not hasty evaluation or incomplete analysis.

**Complementary Motions Framework:**

These two motions—the Reconsideration Motion and this Fee Request—implement a principled two-step process:

- Step 1 (Reconsideration Motion): Court orders Trustee to document investigation, responding to eight specific gaps identified by creditors

- Step 2 (This Fee Request): Court authorizes counsel to evaluate Trustee's documentation and provide independent professional assessment of investigation adequacy

Together, they ensure settlement approval (or rejection/renegotiation) is grounded in demonstrated investigation adequacy, not assumptions or undisclosed findings.

**Without Counsel, the Committee Cannot Meaningfully Participate:**

The Committee recognizes that the Trustee bears ultimate responsibility for estate administration under § 1106. However, creditors have legitimate interest in ensuring that $2.89M in documented claims are treated as the estate's primary asset, not as obstacles to settlement. Without professional counsel:

- Creditors cannot overcome UPL barriers that silence investigation methodology questions

- Creditors cannot independently evaluate adequacy of investigation into complex issues (cryptocurrency diversion, credit card removal timing, equipment tracing)

- Creditors cannot provide meaningful input regarding whether $75,500 settlement represents reasonable recovery or inadequate investigation

Professional counsel is necessary to remedy this imbalance and enable creditor participation contemplated by bankruptcy law.

For all these reasons, the Committee respectfully submits that professional counsel is necessary to:

1. Enable meaningful creditor participation in settlement adequacy determination
2. Provide independent professional evaluation of investigation scope when Trustee documentation is provided
3. Identify whether additional investigation or litigation is warranted based on investigation adequacy analysis
4. Ensure procedural compliance and overcome UPL concerns that silence creditor inquiry

The Committee seeks authorization for professional counsel in the amount of $30,000 as detailed in Section VI below.

## II. FACTUAL BACKGROUND CREATING URGENT NEED

### A. Factual Circumstances Requiring Professional Investigation

The Committee identified the following patterns warranting professional investigation: the synchronized removal of corporate card authorized users David Stanfill and Amanda McConnell on September 2, 2021 (74 days before bankruptcy), unexplained $75,000 loan payments to Stanfill within the preference period, and untraced cryptocurrency mining assets that formed the company's primary business.

These require forensic accounting and legal analysis beyond a creditor coordinator's capabilities.

### B. Need for Professional Representation

The Creditor's Reconsideration Motion specifically requests that the Trustee provide written responses to eight investigation questions. This presents a procedural challenge: once the Trustee provides those responses, creditors must evaluate whether the disclosed investigation was adequate. However:

1. Trustee has raised UPL concerns: On October 29, 2025, the Trustee suggested that creditor inquiries regarding investigation methodology could implicate unauthorized practice of law concerns.
2. This creates a procedural barrier: Creditors cannot meaningfully evaluate investigation adequacy if detailed inquiry into investigation methodology raises UPL concerns.
3. Solution: Professional counsel: With professional counsel authorized, creditor evaluation of the Trustee's investigation documentation will not implicate UPL concerns. The Committee's counsel can:
    - Review investigation documentation professionally
    - Assess adequacy under bankruptcy law standards
    - Conduct supplemental investigation if needed
    - Provide legal analysis without triggering UPL concerns

Result: Counsel authorization enables the Committee to effectively participate in the process contemplated by the Reconsideration Motion—evaluating whether the Trustee's investigation was adequate—without triggering UPL concerns.

## III. JURISDICTION AND AUTHORITY

### A. Jurisdictional Basis

The Court has authority under 11 U.S.C. § 105(a) to issue orders necessary to protect the bankruptcy process. Reimbursement is sought under 11 U.S.C. § 503(b)(3)(D) and (b)(4) for substantial contribution to the estate.

### B. Legal Authority: § 503(b)(3)(D) & § 503(b)(4) Substantial Contribution

#### 1. Statutory Framework in Subchapter V

Section 1181(b) excludes § 1103 from Subchapter V cases. Because 11 U.S.C.§ 330(a) authorizes compensation only for professionals employed under 11 U.S.C. § 327 or § 1103, it does not apply to an ad hoc committee. Reimbursement is instead available under § 503(b)(3)(D) and (b)(4) for a substantial contribution to the estate.

#### 2. Substantial Contribution Standard

Section 503(b)(3)(D) authorizes reimbursement of "actual, necessary expenses" incurred by a creditor who makes a "substantial contribution" to the estate. The Sixth Circuit has recognized that § 503(b)(3)(D) permits administrative expense recovery for creditors who make substantial contributions to the estate, even when formal committee structures under § 1103 are unavailable—*In re Connolly North America, LLC*, 802 F.3d 810, 819 (6th Cir. 2015). To qualify for reimbursement, the Committee must demonstrate three elements:

(a) **Direct Benefit**: Services confer a tangible, financial benefit on the estate;

(b) **Necessity**: Services are necessary to protect the estate's interests; and

(c) **Reasonableness**: Fees are reasonable and properly documented.

Courts routinely approve such reimbursement for ad hoc creditor committees that investigate potential avoidance actions or challenge inadequate settlements. Although case law specifically addressing ad hoc committee reimbursement in Subchapter V remains developing, § 503(b) expressly applies by its terms to "any case under this title." Because Subchapter V debtors are excluded from the § 1103 official committee regime, and § 330 authorizes compensation only for professionals employed under § 327 or § 1103, reimbursement under § 503(b)(3)(D) is the proper statutory framework for compensating ad hoc creditors who make substantial contributions to the estate. The Committee's proposed investigation satisfies all three elements of this standard, as detailed in Section IV below.

#### 3. Complementary Motions Framework

These motions should be read and decided together:

- Reconsideration Motion: Asks Court to order Trustee documentation of investigation conduct
- Fee Request: Asks Court to authorize counsel to evaluate the Trustee's documentation when provided

Together, they ensure that settlement approval is grounded in demonstrated investigation adequacy, not assumptions or undisclosed findings. The statute contemplates precisely this scenario: creditors need § 503(b)(3)(D) counsel to understand whether the Trustee's investigation was adequate under § 1106(a) standards.

## IV. SUBSTANTIAL CONTRIBUTION ANALYSIS

### A. Direct Benefit to the Estate

The estate's primary asset is $2,888,895 in documented avoidance transfers verified from filed complaints. However, the adequacy of the investigation supporting settlement of these claims is disputed.

**The Committee's Direct Benefit:**

1. Evaluation of Investigation: Independent counsel can review what investigation the Trustee actually conducted (to be documented per the Reconsideration Motion) and assess whether it was adequate under § 1106 standards.

2. Settlement Validation or Rejection: If counsel determines investigation was adequate, creditors can accept settlement with confidence. If counsel identifies gaps, settlement can be rejected and litigation pursued.

3. Avoidance Recovery: Even if the settlement stands, counsel can identify claims within the $2,888,895 documented that may warrant focused litigation (e.g., cryptocurrency tracing, credit card removal pattern analysis).

**Direct Benefit Measure:**

- Conservative scenario: Counsel validates settlement, creditors have confidence settlement is adequate
- Optimistic scenario: Counsel identifies gaps, settlement increases or litigation recovers additional $250K–$2500K+
- Either outcome provides direct benefit: creditor confidence OR incremental recovery

If investigation achieves even 10% recovery ($288,889) instead of the proposed 2.6% ($75,500), the incremental gain of $213,389 justifies the $30,000 fee investment by a 7:1 ratio. This would:

- Fund counsel fees multiple times over
- Provide meaningful distribution to unsecured creditors
- Fulfill the Trustee's duty to maximize recovery

The cost-benefit analysis supports funding supplemental investigation to verify settlement adequacy.

### B. Necessity of Services

Complex avoidance actions involving cryptocurrency, pre-bankruptcy planning, and potential fraudulent transfers require forensic accounting and legal expertise beyond a non-attorney coordinator's capabilities. Independent counsel ensures the Committee can meaningfully evaluate settlement adequacy.

### C. Reasonableness of Fees

The $30,000 fee cap is reasonable:

- 75 hours total at $450/hour (partner rate) for specialized work ($400/hr average rate, including paralegals, etc.)

- 13% of potential incremental recovery

- Comparable to fees awarded in similar investigations within this district

**D. Estate's Ability to Pay**

Fees can be funded from:

- Settlement proceeds if approved post-investigation

- Incremental recovery achieved through counsel's efforts

- Administrative expense priority under § 503(b)(1)(A)

**Fee Reasonableness in Context of Reconsideration Motion**

The proposed fee of $30,000 is reasonable given:

1. **Two-Phase Engagement**: Phase 1 (January-February): Review Trustee's investigation documentation. Phase 2 (February+): Conduct supplemental investigation if needed.

2. **Contingency Structure**: If Trustee's responses to the eight Reconsideration Motion questions are comprehensive and demonstrate adequate investigation, Phase 2 may be minimal or unnecessary.

3. **Cost-Benefit Tied to Actual Outcome**:
   - If investigation was adequate: Counsel validates settlement, counsel cost is small relative to creditor confidence achieved
   - If gaps identified: Counsel assists in obtaining additional recovery or supports further litigation, counsel cost is easily justified by incremental recovery

**E. The Court's Prior Standing Concerns Demonstrate the Need for Professional Guidance**

The Court's legitimate concerns at the October 28, 2025 hearing regarding the Committee's Rule 2019 compliance illustrate precisely why professional counsel is necessary. A non-attorney creditor coordinator, despite acting in good faith, inadvertently presented incomplete disclosure that triggered procedural concerns and delayed the Committee's ability to protect creditor interests.

**This sequence proves three critical points:**

1. **Procedural Complexity**: Rule 2019 compliance is not intuitive—even for sophisticated business creditors. The Committee's initial disclosure was incomplete not from bad faith, but from lack of legal training on what bankruptcy law requires.

2. **Inefficiency of Pro Se Representation**: The Committee spent weeks attempting to cure the Court's concerns without counsel, expending significant volunteer time that could have been directed to substantive investigation. With counsel, future compliance would have been seamless from the outset.

3. **Risk to Estate**: Procedural missteps waste judicial resources and delay resolution of the estate's primary asset. The November 10, 2025 supplemental disclosure cured the issue, but only after risk of exclusion from the settlement hearing. Estate-funded counsel ensures the Committee contributes value rather than creating procedural drag.

## V. SUBSTANTIAL CONTRIBUTION IS NOT SPECULATIVE – CONCRETE LEADS IDENTIFIED

## A. Overview

**Relationship to Reconsideration Motion**

This Fee Request is complementary to the Motion for Reconsideration and Supplemental Factual Development (Docket Entry 414, filed November 10, 2025). The Reconsideration Motion identified eight specific investigation areas requiring Trustee documentation: (1) non-reported cryptocurrency assets and mining operations, (2) component orders and equipment procurement patterns, (3) Squirrels LLC entity transfers and asset diversion, (4) synchronized credit card user removal timing (September 2, 2021), (5) travel expenses and insider business diversions, (6) 'paid against open balance' payments without documentation, (7) systematic equipment and materials purchases across defendants, and (8) coordinated asset stripping patterns between Stanfill and Gritzan. See Reconsideration Motion Section V.B (pages 12-21) for detailed descriptions of each investigation area and supporting transaction analysis. Section V.B.D infra identifies the concrete investment opportunities within these eight investigation areas.

The $2,888,895 Documented Base:

- David Stanfill: $714,074.32 (travel, open balance, cryptocurrency, equipment)
- Jessica Gritzan: $177,987.88 (coordinated travel, open balance, components)
- Kyle Slutz: $151,343.97 (travel, open balance, equipment)
- Andrew Gould: $183,249.43 (corporate card activity)
- Squirrels LLC: $1,662,239.59 (entity transfers)

These transactions are documented in filed complaints and form the evidentiary foundation for the eight investigation questions posed in the Reconsideration Motion.

---

## B. Low Effort / High Return Investigation Opportunities

### 1. David Stanfill – $714,074.32

Adversary Case: 23-06028-tnap
Filed: November 20, 2023
Source: Schwieg *v.* Stanfill (23-06028) ECF # 1

Transaction Summary:

David Stanfill received transfers totaling $714,074.32 across approximately 93 documented transactions. These transfers include:

- Travel Expenses ($5,411.92): Documented charges for Arizona, Columbus, Canada, and Chicago travel spanning March – June 2019. Charges were made to corporate cards and the company checking account.
- "Paid Against Open Balance" Payments ($318,729.67): Recurring payments marked as settlements of account balances, with multiple entries lacking supporting documentation in the complaint.

- Reimbursement Claims ($65,000+): Claimed reimbursements for items including personal credit card charges, customer refunds, and international shipping.
- Cryptocurrency Transfers ($8,010): Direct transfer to Coinbase dated October 10, 2019.
- Equipment and Materials ($95,000+): Payments for Generac, Mouser, Digikey, and other industrial equipment.

Legal Basis: 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550 (fraudulent transfer; recovery).

Characteristics: Numerous entries are marked "Not listed in report provided by D Stanfill," suggesting the transfers were not disclosed by the defendant in response to trustee inquiry. Several charges lack supporting invoices or business purpose documentation.

---

### 2. Jessica Gritzan – $177,987.88

Adversary Case: 23-06029-tnap
Filed: November 20, 2023
Source: Schwieg v. Gritzan (23-06029) ECF # 1

Transaction Summary:

Jessica Gritzan received transfers totaling $177,987.88 across approximately 50+ documented transactions. These transfers include:

- Travel Expenses ($3,210.47): Single charge dated July 22, 2019 for $3,210.47, described as "Michael PDaveJess flights 81619." The charge was marked in the complaint as "Component order" but the description references flight charges. This charge is consistent with a multi-person flight booking.
- "Paid Against Open Balance" Payments ($75,000+): Recurring payments described as settlements of account balances, spanning February 2020 – May 2021, with many entries marked "Not listed in report provided by D Stanfill."
- International Shipping Reimbursements ($7,308.16): Claimed reimbursements dated October 16, 2018.
- Component Orders ($59,000+): Multiple payments to Digikey and related suppliers for components.
- Construction and Labor ($10,000+): Payments described as construction crew costs.

Legal Basis: 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550 (fraudulent transfer; recovery).

Characteristics: Similar to Stanfill transfers, numerous Gritzan entries are marked "Not listed in report provided by D Stanfill." The July 22, 2019 flight charge references multiple travelers ("Michael," "DaveJess") suggesting coordinated travel with other insiders.

---

### 3. Kyle Slutz – $151,343.97

Adversary Case: 23-06031-tnap
Filed: November 20, 2023
Source: Schwieg v. Slutz (23-06031) ECF # 1

Transaction Summary:

Kyle Slutz received transfers totaling $151,343.97 across 39 documented transactions. These transfers include:

- Travel-Related Costs ($1,386.12): Penske rental car charge of $1,273.23 (April 20, 2020) and additional rental charges of $112.89 (June 24, 2020).
- "Paid Against Open Balance" Payments ($76,000+): Recurring payments marked as account settlements, concentrated during April – October 2020.
- Equipment and Supplies ($20,000+): Payments to Home Depot ($1,000–$1,359.63), Digikey ($13,712.22), Best Supply ($5,190.12), and Cobra equipment ($425–$850).
- Fuel Costs ($8,500+): Multiple fuel charges from April – June 2020.
- Other Costs ($3,000+): Miscellaneous charges including Gamstone Gas, build-out charges, and other items.

Legal Basis: 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) (fraudulent transfer).

Characteristics: Slutz is identified in the complaint as not being an employee of SQRL. Approximately 50% of transfers are marked "paid against open balance," suggesting settlement of disputed or undocumented account balances.

### 4. Andrew Gould – $183,249.43

Adversary Case: 23-06030-tnap
Filed: November 20, 2023
Source: Schwieg v. Gould (23-06030) ECF # 1

Transaction Summary:

Andrew Gould received transfers totaling $183,249.43 across approximately 27 documented transactions. These transfers consist primarily of:

- Corporate Card Payments/Loads ($163,000+): Systematic transfers to the corporate card account (Account #***9736) ranging from $250 to $30,695.91 per transaction. Payments span August 2018 – October 2021.
- Account Transfers ($20,000+): Direct transfers to various accounts, primarily during 2020–2021.
- Equipment ($1,297.02): Single payment for "Power Cords-NEMA" dated April 21, 2020.

Legal Basis: 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) (fraudulent transfer).

Characteristics: Gould appears to have managed the corporate card account, with systematic deposits suggesting either direct loads to the card or settlements of card spending. No supporting documentation is

provided in the complaint for the payments. Note: many of these charges were subsequently linked to a corporate credit card with multiple authorized users (see Section D. below).

### 5. Squirrels LLC (Entity) – $1,662,239.59

Adversary Case: 23-06033-tnap
Filed: November 20, 2023
Source: Schwieg *v.* Squirrels LLC (23-06033) ECF # 1

Transaction Summary:

Squirrels LLC received transfers totaling $1,662,239.59 across approximately 60+ documented transactions. These transfers include:

- July 2018 Transfers ($424,000+): Multiple transfers during July 17–20, 2018, including a single transfer of $155,290 on July 20, 2018.

- August 2018 Transfers ($500,000+): Concentrated transfers during August 2018, including individual transfers of $384,267 and $236,900.

- October 2018 Transfers ($135,000+): Additional transfers during October 2018.

- 2019–2021 Transfers ($200,000+): Residual transfers continuing through February 2021.

Legal Basis: 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 544 (fraudulent transfer; trustee avoidance powers).

Characteristics: The concentration of $1.66M in transfers during a three-month period (July – October 2018) suggests systematic acquisition or transfer of equipment and assets. The nature of the entity and its relationship to SQRL requires additional investigation to determine whether this represents legitimate business transactions or fraudulent transfers.

### C. Common Issues Across Defendants

The following characteristics appear across multiple defendant transactions:

1. Absence of Supporting Documentation: Many transactions lack invoices, receipts, purchase orders, or other supporting documentation in the complaints.

2. "Not Listed in Report" Notation: Numerous entries, particularly in Stanfill and Gritzan transactions, are marked "Not listed in report provided by [defendant]," suggesting the defendants did not disclose these transfers in response to trustee inquiry.

3. "Paid Against Open Balance" Characterization: Significant portions of transfers to Stanfill, Gritzan, and Slutz are characterized as payments against open account balances, which may represent settlements of undisclosed prior transfers rather than documented current expenses.

4. Corporate Card Usage: Multiple transactions reflect payments to or through the corporate card account (Account #***9736), with insufficient documentation of the business purpose for individual card charges.

5. Timing: Concentrated transfers during periods when the debtor was experiencing operational challenges (e.g., inability to fulfill customer orders or refund customer prepayments).

**D. JPMorgan Chase Corporate Credit Card Account #***9736**

**Background**

The corporate credit card Account #***9736 was maintained in SQRL's name from July 2018 through November 2021. Three individuals were authorized users:

- Andrew Gould (primary, authorized 07/25/2018, Status: NORMAL)
- David Stanfill (employee, authorized 03/15/2019, removed 09/02/2021)
- Amanda McConnell (employee, authorized 05/17/2021, removed 09/02/2021)

**User Removal Pattern**

JPMorgan Chase subpoena response (received 07/29/2024) documents synchronized removal of authorized users 74 days before bankruptcy filing:

- David Stanfill removed: September 2, 2021
- Amanda McConnell removed: September 2, 2021

The synchronized removal of both authorized users on the same date—74 days before bankruptcy filing—presents a potential badge of fraud. The removal pattern warrants investigation under 11 U.S.C. § 548 fraudulent transfer theories (actual fraud based on badges of fraud; constructive fraud based on retention of benefit while becoming insolvent)

**Investigation Needed**

Detailed forensic analysis of the account is required to fully evaluate potential fraudulent transfer claims. Investigation must address:

1. Card balance and credit utilization at removal date (09/02/2021, when both users removed simultaneously)
2. Transaction patterns during each authorized user's period of access
3. Post-removal account activity between removal dates and bankruptcy filing
4. Business purpose documentation for both removals and their timing
5. Coordination patterns between removals and other pre-bankruptcy transfers identified in the Committee's investigation

Potential Recovery

Preliminary estimate of card-related recovery: $5,000–$50,000+, depending on:

- Unauthorized post-removal activity or fraudulent charges
- Undisclosed balance transfers or cash advances
- Unlawful retention of card access

### E. Cryptocurrency Mining Assets – Untraced Primary Business Asset

**Background:**
The debtor's primary business involved cryptocurrency mining operations. Critical evidence includes:

1. FPGA Chip Orders (Xilinx / Intel) + related component orders

2. Unfulfilled Obligation: Order not delivered or refunded through bankruptcy filing (11/15/2021)— 3+ years without resolution

3. Company Announcement: August 2018 delays announced; April 2019 settlement agreement never performed

4. No Asset Disclosure: No mining equipment or cryptocurrency holdings listed on bankruptcy schedules

**Asset Diversion Pattern:**

The company's simultaneous inability to fulfill the Forsell order while making $2,888,895 in insider transfers suggests systematic asset diversion:

- June 2018: Forsell order ($744,373.60)

- July–October 2018: Squirrels LLC entity receives $1,662,239.59 (potential equipment acquisition/transfer)

- March 2019–February 2021: Individual insiders receive $1,226,661.20 additional transfers

- November 15, 2021: Bankruptcy filed; mining assets absent from schedules

**Investigation Status**: Cryptocurrency holdings and mining equipment have not been traced. Forensic blockchain analysis is required to:

- Identify wallet addresses associated with SQRL or insiders

- Trace blockchain transactions (July 2018–November 2021)

- Determine current value and holder of digital assets

- Subpoena exchange records (Coinbase, Kraken, Binance, etc.)

- Identify mining pool operations and revenue flow

**Potential Recovery:** $250,000–$2,500,000+ (highly dependent on forensic findings)

**Legal Basis:** 11 U.S.C. §§ 548 (fraudulent transfer); 544 (trustee avoidance powers); 1106(a)(1) (trustee investigation duties)

### H. Conclusion

The Committee has identified $2,888,895 in documented transfers to five defendants across court filings, plus two significant additional investigation leads—credit card removal and cryptocurrency asset tracing—with potential recovery of $250,000–$2,500,000+. The Committee's request for counsel

authorization is grounded in specific, documented transactions rather than speculation regarding potential claims.

Professional counsel is necessary to evaluate settlement adequacy, develop litigation strategy, and ensure the estate's interests are appropriately represented in the avoidance action proceedings.

## VI. PROPOSED SCOPE AND FEE STRUCTURE

### A. Counsel's Investigation Scope and Allocation Strategy

The Committee requests authorization for qualified bankruptcy counsel to perform a comprehensive two-phase investigation evaluating settlement adequacy and directing supplemental fact development as appropriate. The fee request is structured to prioritize Phase 1 investigation adequacy evaluation within the $30,000 cap, with Phase 2 only authorized if Phase 1 identifies genuine investigation gaps and the Committee directs supplemental work.

### Phase 1: Investigation Adequacy Evaluation (Primary Deliverable)

The core objective of counsel's engagement is to independently evaluate whether the Trustee's responses to the eight investigation areas identified in the Reconsideration Motion (Docket Entry 414) demonstrate adequate investigation prior to settlement approval. This Phase 1 work will be completed within the $30,000 fee cap.

*Phase 1 Scope:*

- Review Trustee's written responses to eight investigation questions (ordered by Reconsideration Motion)
- Independently assess whether responses demonstrate adequate investigation of:
    - (1) Non-reported cryptocurrency assets and mining operations
    - (2) Component orders and equipment procurement patterns
    - (3) Squirrels LLC entity transfers and asset diversion ($1.66M+)
    - (4) Synchronized credit card user removal timing (September 2, 2021)
    - (5) Travel expenses and insider business diversions
    - (6) "Paid against open balance" payments without documentation
    - (7) Systematic equipment and materials purchases across defendants
    - (8) Coordinated asset stripping patterns between Stanfill and Gritzan
- Identify any material gaps or inadequacies in Trustee investigation
- Provide Committee with professional legal analysis of investigation sufficiency
- Prepare report for hearing on December 23, 2025

*Phase 1 Timeline:* January–February 2026 (aligned with Reconsideration Motion schedule)

*Phase 1 Estimate:* 40 hours at blended rates

Phase 2: Supplemental Investigation (Contingent/Conditional)

If Phase 1 identifies material investigation gaps or the Trustee's responses prove inadequate, the Committee may authorize supplemental Phase 2 work. Phase 2 would only be undertaken upon explicit Committee direction following Phase 1 completion.

*Phase 2 Scope (if authorized):*

- Conduct supplemental investigation in identified gap areas
- Coordinate forensic services (blockchain analysis, equipment tracing, card forensics)
- Evaluate evidence of fraudulent transfer liability and avoidance action viability
- Assess whether settlement should be accepted or litigation pursued

*Phase 2 Timeline:* March–April 2026 (contingent on Phase 1 findings and Committee authorization)

*Phase 2 Status:* Any Phase 2 work would require separate authorization and fee request to the Court, demonstrating specific investigation gaps identified in Phase 1 and justifying incremental counsel fees.

**B. Fee Structure and Allocation**

Primary Allocation (Phase 1): $23,500

Within the $30,000 cap, the Committee allocates counsel fees as follows for Phase 1 investigation adequacy evaluation:

| Component | Hours | Rate | Amount |
|---|---|---|---|
| Senior Counsel | 35 | $450/hr | $15,700 |
| Associate Counsel | 25 | $250/hr | $6,250 |
| Paralegal Support | 10 | $150/hr | $1,500 |
| Phase 1 Subtotal | 70 | — | $23,500 |

*Senior Counsel ($450/hr):* Investigation strategy, legal analysis of Trustee responses, preparation of report to Committee, participation in December 23 hearing

*Associate Counsel ($250/hr):* Document review, legal research on investigation adequacy standards, analysis of adversary complaint factual bases

*Paralegal Support ($150/hr):* Administrative coordination, record organization, document compilation, factual timeline development

Contingency and Reserve Allocation (within cap): $6,500

The remaining $6,500 within the $30,000 cap is allocated as follows:

| Purpose | Amount |
|---|---|
| Discovery responses and document production | $2,000 |
| Phone/deposition participation if required | $2,500 |
| Unforeseen procedural issues | $1,500 |
| Contingency Subtotal | $6,500 |
| Total $30,000 Cap | $30,000 |

This contingency reserve ensures that Phase 1 work remains fully funded within the cap even if unexpected procedural matters arise (e.g., supplemental discovery, emergency telephone conferences with Committee).

### C. Cost-Benefit Justification

The proposed fee structure demonstrates substantial value to the estate:

| Item | Amount |
|---|---|
| Total documented avoidance claims (five defendants + Squirrels LLC entity) | $2,888,895 |
| Current settlement recovery (2.6%) | $75,500 |
| Potential recovery at 10% (conservative estimate) | $288,889 |
| Incremental gain from improved investigation | $213,389 |
| Proposed counsel fee cap | $30,000 |
| Return on Investment Ratio | 7.1:1 |

The Committee's $30,000 investment represents 1/7th of the incremental recovery potential if improved investigation yields only a modest improvement from the current 2.6% settlement rate (75,500) to a conservative 10% recovery rate ($288,889). This cost-benefit analysis strongly justifies counsel authorization.

## D. Phase 2 Contingency (Not Included in Current Fee Request)

Should Phase 1 investigation identify material inadequacies, and should the Committee authorize Phase 2 supplemental investigation, counsel would submit a supplemental fee request to the Court (after December 23 hearing) demonstrating:

- Specific investigation gaps identified in Phase 1
- Why supplemental work is necessary and proportional to potential recovery
- Incremental fees required for Phase 2 work

This approach ensures the Court retains control over Phase 2 authorization and fees, preventing any appearance that counsel is committing the estate to work beyond the stated $30,000 cap.

## E. Counsel Qualifications

Counsel shall be selected from bankruptcy practitioners with demonstrated experience in:

- Avoidance action litigation
- Fraud investigation and forensic analysis
- Subchapter V proceedings
- Settlement adequacy determination
- Trustee relationship litigation

## VII. CONCLUSION: COORDINATED APPROACH TO SETTLEMENT ADEQUACY

The Committee has filed two motions on November 10, 2025:

1. Motion for Reconsideration – seeks to vacate settlement and require Trustee to document investigation
2. This Motion for Counsel Fees – seeks authorization for professional counsel to evaluate Trustee's documentation

These motions implement a principled, two-step process:

Step 1 (Ordered by Reconsideration Motion): Trustee documents what investigation was actually conducted, addressing eight specific investigation gaps identified by creditors.

Step 2 (Enabled by This Fee Request): Professional counsel evaluates the Trustee's documentation and provides independent assessment of whether investigation was adequate.

Result: Settlement approval (or rejection/renegotiation) will be grounded in demonstrated investigation adequacy, not assumptions.

**Committee's Commitment to Fair Process:**

- Committee is NOT prejudging investigation adequacy
- Committee is NOT assuming Trustee investigation was inadequate
- Committee IS requesting process to determine adequacy

- Committee WILL accept settlement if Trustee demonstrates adequate investigation

**Professional Counsel Essential:**

- Creditors cannot independently evaluate whether investigation was adequate under § 1106 standards
- UPL concerns prevent unrepresented creditors from detailed investigation methodology inquiry
- Professional counsel removes both barriers

**The Committee respectfully requests that this Court:**

1. Grant the Reconsideration Motion (vacate settlement; order Trustee responses)
2. Grant this Fee Request ($30,000 counsel authorization to evaluate Trustee's responses)
3. Preserve creditor participation in settlement adequacy determination

For all these reasons, the Committee respectfully requests that this Court approve the Motion for Counsel Fee Authorization in the amount of $30,000 as an administrative expense of the estate.

**WHEREFORE**, the Committee respectfully requests:

1. An Order authorizing reimbursement of counsel fees and expenses as an administrative expense under 11 U.S.C. § 503(b)(3)(D) and (b)(4);
2. Approval of fees capped at $30,000;
3. Payment from estate funds with § 503(b)(1)(A) priority; and
4. Such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Paul Billinger
Coordinator, Ad Hoc Committee of Creditors
1 Bow Street, Stouffville, ON L4A 1Z3
paul.billinger@toreaconsulting.com

Date: November 10, 2025

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion of Ad Hoc Committee of Creditors for Approval of Counsel Fees as Administrative Expense of the Estate was served electronically on all parties in interest on November 10, 2025.

**SERVICE LIST**
*[Electronic Service]*
Trustee Frederic P. Schwieg
19885 Detroit Rd #239
Rocky River, Ohio 44116-1815
Email: **fschwieg@schwieglaw.com**
*[Electronic Service]*
U.S. Trustee Lauren Schoenewald
**Lauren.Schoenewald@usdoj.gov**
*[Electronic Service]*
Debtor's Counsel Christopher Millard
Email: **CMillard@ralaw.com**
*[Electronic Service]*
Defendants' Counsel Jack Cooper
Email: **jcooper@milliganpusateri.com**
*[Mail Service]*
United States Bankruptcy Court
Ralph Regula Federal Building & U.S. Courthouse
401 McKinley Avenue SW Canton, Ohio 44702

Paul Billinger
Coordinator, Ad Hoc Committee of Creditors
1 Bow Street, Stouffville, ON L4A 1Z3
paul.billinger@toreaconsulting.com

Date: November 10, 2025